1  William C. Dresser, 104375
   Law Offices of William C. Dresser
2  4 North Second Street, Suite 1230
   San Jose, California 95113
3  Tel:   408/279-7529
   Fax:   408/298-3306

4

5  Attorneys for Qui Tam Relator and Plaintiff
   Gregor Lesnik and Plaintiff Stjepan Papes
   individually and on behalf of all others similarly situated

6

7              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
8                  SAN JOSE DIVISION

9

10  United States of America, ex rel. Gregor        No:  C16-1120 LCK
    Lesnik, Stjepan Papes,

11          Plaintiffs,                             **SECOND AMENDED COMPLAINT
                                                    FOR DAMAGES AND OTHER
12      vs.                                         RELIEF UNDER THE FALSE
                                                    CLAIMS ACT AND OTHER
13  Eisenmann SE, Eisenmann Anlagenbau              CLAIMS INCLUDING WAGES
    GmbH & Co. KG, Eisenmann Anlagenbau             AND VISA BASED CLAIMS,
14  Verwaltung GmbH, Eisenmann Corporation,         COLLECTIVE AND CLASS
    ISM Vuzem d.o.o., ISM Vuzem USA, Inc.,          ACTION CLAIMS, LABOR
15  Vuzem USA, Inc., Robert Vuzem, Ivan Vuzem,      TRAFFICKING CLAIMS, AND
    Tesla Motors, Inc., Gregurec Ltd, Daimler AG,   RICO CLAIMS**
16  Mercedes-Benz U.S. International, Inc.,
    Bayerische Motoren Werke, CiTic Dicastal
17  Co., Ltd., Volkswagen,  LB metal d.o.o., aka    **CLASS ACTION**
    Mos LB Metal d.o.o., D2N Tehnologije d.o.o.
18  aka D2N d.o.o.. Primiko, d.o.o., Volvo Car
    Corporation sued herein as Doe 1, John          Filed Under Seal
19  Deere, sued herein as Doe 2, Lax Fabricating
    Ltd sued as Doe 3, Keystone Automotive sued     Hon. Lucy H. Koh
20  as Doe 4, Phoenix Mechanical sued as Doe 5,
    REHAU Incorporated, sued herein as Doe 6,       Jury trial demanded
21  HRD/ MONT d.o.o. sued as Doe 7, VV Mont
    sued as Doe 8, Magma, Intl sued as Doe 9,
22  Magma Services Gmbh, sued herein as Doe
    10, Magma, d.o.o, sued herein as Doe 11,
23  We-Kr d.o.o. sued as Doe 12, RIMSA PLUS
    Sp. z o.o. sued herein as Doe 13, Enterprise
24  MDM Poland Sp. z o. o. (parent) sued herein
    as Doe 14, MDM Polska sp. z.o.o. sued herein
25  as Doe 15, Moss, d.o.o. sued herein as Doe
    16, and Does 18 through 50,
26
            Defendants.
27  _____/

28

COMES NOW Plaintiff Gregor Lesnik on behalf of the United States of America and alleges against Defendants, and each of them, as follows:

## I. GENERAL ALLEGATIONS

### A. Fraudulent Scheme

1. This is an action to recover damages and civil penalties on behalf of the United States of America for false and/or fraudulent statements, records, and claims made or caused to be made by Defendants, as well as their affiliates, departments, subsidiaries, agents, employees, and co-conspirators, including in not paying the United States of America money owed to it, in violation of the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq.

2. Defendants and each of them made and used, or knowingly ratified and assisted this making and using, false records and statements to avoid obligations to pay money to the United States, including but not limited to, delivering false and fraudulent documents to the United States to secure illegal visas for their direct and indirect employees to come to the United States; sending alien employees to work in the United States on B-1 visas when such employees did not in fact qualify for B-1 visas, obtaining B-1 visas instead of the more restrictively issued H-B1 visas and L-1B  visas to avoid paying the higher fees required to obtain H-1B and L-1B  visas; employing aliens in full time jobs at client sites in the United States on B-1 visas and not paying to the United States Social Security and Medicare taxes; not obtaining for employees social security numbers thus avoiding Social Security and Medicare taxes; failing to document employees working in the United States; failing to identify cash payments and thus avoiding social security and Medicare taxes; and falsely attesting that employees were authorized to work in the United States.

3. This is also an action to recover damages and obtain injunctive relief on behalf of Plaintiffs and people similarly situated to Plaintiffs who individually and as a class have been wrongfully denied wages and other benefits due to them for working for defendants

1    and each of them, and to recover the profits obtained by defendants based on

2    underpaying wages and other benefits.  For example, records of defendant ISM Vuzem

3    d.o.o. identify Gregor Lesnik as having worked 50 days out of 54 for a total of 483 hours

4    and no overtime pay at compensation rate of substantially less than minimum wages, let

5    alone of prevailing wages..

6        4.  Defendants and each of them have invested and continue to invest in an

7    enterprise which derives income from a pattern of racketeering activities.  The

8    racketeering committed by defendants in this enterprise include fraud in connection with

9    identification documents, mail fraud, wire fraud, fraud in foreign labor contracting,

10   reproduction of visa, naturalization or citizenship papers, false statements in application

11   and uses of passports, forgery and false use of passports, fraud and misuse of visas,

12   permits and other documents, peonage, slavery and trafficking in persons, laundering of

13   money, actions indictable under the Currency and Foreign Transactions Reporting Act,

14   acts indictable under the Immigration and Nationality Act, and aiding or assisting aliens to

15   enter the United States.

16       5.  Plaintiff and Relator Gregor Lesnik is a former employee of ISM Vuzem d.o.o.

17   who pursuant to the provisions of California Labor Code section 2750.5 was also an

18   employee of each of the other named entity defendants.  Plaintiff Gregor Lesnik worked

19   at the Tesla plant in Fremont California, and had been contemplated by defendants to be

20   assigned to work at other locations in Michigan and South Carolina before May 16, 2015,

21   when he was injured.  Plaintiff Gregor Lesnik was given a B-1 visa based on

22   representations by Robert Keller of Eisenmann Corporation, on behalf of each of the

23   defendants, which was made to obtain from the United States a B-1 visa to obtain entry

24   to work in the United States, that Gregor Lesnik would work as a supervisor of electrical

25   and mechanical installation

26       6.  The November 5, 2014 dated letter by Robert Keller of Eisenmann Corporation

27   was addressed to the United States Consulate.  This letter represented that Gregor

28

Lesnik would be hired because of his specialized knowledge and long history of working with Eisenmann equipment and process systems to work in the United States at an automotive plant at which Eisenmann Corporation was managing construction activities. Gregor Lesnik in fact had never worked on any Eisenmann project, material or equipment, Gregor Lesnik did not have essential and specialized knowledge, and Mr. Keller, Eisenmann Corporation and the Eisenmann entities, and the Vuzem entities and individuals, knew that Gregor Lesnik did not have either specialized knowledge or a long history of installing Eisenmann equipment and process systems.  Gregor Lesnik at that time had just been hired by ISM Vuzem d.o.o. and had not worked on any Eisenmann project.

This was essentially the same as the April 29, 2013 dated letter for Stjepan Papes obtaining a B-1 visa, signed by Friedburga Betsch, Golbal Procurement Engineer, on letterhead of Eisenmann Corporation which stated, among other things, "Because of their specialized knowledge of the EISENMANN equipment and process systems and their long experience in installing them, the services of Co. Gregurec and their employees will be required for our projects and their presence will be necessary on our jobsite in Vance, Alabama for around 12 months."

7.  ISM Vuzem d.o.o. by as yet unknown management personnel working out of offices in Zavrc, Slovenia, on its own behalf and on behalf of all named defendants made in November of 2014 further written representations to the United States that Gregor Lesnik would be a supervisor of electrical and mechanical installation at a BMW project in South Carolina working for Defendant Gregurec Ltd.  Gregor Lesnik in fact was not hired to be a supervisor, did not work as a supervisor, and did not work for Gregurc Ltd.

This is essentially the same as a Potrdilo O Zaposlitvi (Certificate of Employmenet) dated 13.02.2013 and signed by Direktor Ivan Vuzem over an ISM Vuzem d.o.o. stamp prepared in connection with the company prepared application for Stjepan Papes to obtain a B1 visa.

8.   Defendants further represented that Gregor Lesnik would work in South Carolina, being the address of ISM Vuzem USA, Inc.  Gregor Lesnik in fact was assigned to work in Fremont, California.  He did not work on the project, or at the time, or under the company, or at the residence location, stated in the defendants' written representations to the United States.

9.   Plaintiff Relator Gregor Lesnik has intimate knowledge of the above details and the documents given to him.  Further, based on his work in Fremont, California he became aware that Eisenmann Corporation and subcontractors including ISM Vuzem d.o.o. made the same false written representations to the United States on behalf of every one of more than 200 individuals who were similarly situated to Gregor Lesnik in being hired to work for subcontractors, including more than 150 to work under Vuzem entities as subcontractor, for work at the Tesla site in Fremont, California alone.  This also included individuals to work under Gregurec, Ltd., an English business entity, Slovenian based companies LB metal d.o.o., aka Mos LB Metal d.o.o. and D2N Tehnologije d.o.o. aka D2N d.o.o., and German based entity Durr AG.  Plaintiffs are informed and believe and thereon allege that this also includes individuals to work under Primiko, d.o.o., a Croatia based entity.  All other than a handful of actual supervisors did not qualify for B-1 visas, even though the defendants represented to the United States that literally hundreds of workers were all supervisors.

10.   Stjepan Papes was admitted to the United States under two B-1 visas, each issued through a welcome letter issued under Eisenmann Corporation.  Each was for each for work that he did that was inconsistent with the representations in the welcome letter and other documents prepared by defendants including Robert Keller, Gregurec Ltd, Robert Vuzem, Ivan Vuzem, and ISM Vuzem, d.o.o.  Each was for work and under terms of employment inconsistent with the provisions of the statutes and regulations concerning the permissible bases and conditions for issuance of a B-1 visa.

11.   Each of defendants Tesla Motors, Inc., Daimler AG, Mercedes-Benz U.S.

1  International, Inc., Bayerische Motoren Werke, CiTic Dicastal Co., Ltd., Volkswagen,

2  Volvo Car Corporation, John Deere, Lax Fabricating Ltd, Keystone Automotive, Phoenix

3  Mechanical, REHAU Incorporated hired for work at their job sites and manufacturing and

4  production facilities either Gregor Lesnik or Stjepan Papes or other workers similarly

5  situated to Mr. Lesnik and Mr. Papes.

6      12.  Each of these site and manufacturing and production facilities defendants did

7  so as part of and through a pattern of racketeering activities orchestrated by and though

8  defendants Eisenmann SE, Eisenmann Anlagenbau GmbH & Co. KG, Eisenmann

9  Anlagenbau Verwaltung GmbH, and Eisenmann Corporation.

10     13.  Each of the Eisenmann defendants and the hiring, site and manufacturing

11  defendants did so - and continue to do so - hiring workers through one or  more of

12  "subcontractor" defendants  ISM Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc.,

13  Robert Vuzem, Ivan Vuzem, Gregurec Ltd, LB metal d.o.o., aka Mos LB Metal d.o.o.,

14  D2N Tehnologije d.o.o. aka D2N d.o.o.. Primiko, d.o.o., HRD/ MONT d.o.o., VV Mont,

15  Magma, Intl, Magma, d.o.o, We-Kr d.o.o., RIMSA PLUS Sp. z o.o., Enterprise MDM

16  Poland Sp. z.o.o., MDM Polska sp. z.o.o., Moss, d.o.o., and other entities.

17     14.  The enterprise and pattern of conduct included:

18     a.  workers were admitted on the basis of the Eisemann assurances - and other

19  defendants' assurances - in the welcome letter presented to the embassy/consulate;

20     b.  the letter claimed that they were employees of a subcontractor and were being

21  admitted as supervisors to oversee the installation of specialized equipment

22  manufactured by Eisemann;

23     c.  the letter identified a specific geographic location where the installation was to

24  be performed;

25     d.  the letter includes assurances that the subcontractor, such as Gregurec Ltd.,

26  would be responsible for payroll, as well as all expenses, including airfare to and from the

27  US, hotel accommodations, per diem, as would continue to be covered by social security

28

and health insurance;

e.  the workers travel on the B1 business visa but not necessarily to the location listed in the Eisemann letter;

f.  the workers were not engaged in supervisory tasks but rather as laborer, HVAC, plumbing and other trades;

g.  the workers were not necessarily skilled in the trades that they were assigned by defendants to work at;

h.  the workers labored from 7 am until 6 pm, with a lunch period and brief breaks in the morning and afternoon;

i.  the workers routinely worked 6 days a week, and often 7;

j.  the workers were not paid prevailing wages;

k.  the workers received a monthly salary, in most instances of 800 euros that was deposited directly in their bank account in their home country (expressly stated in the Potrdilo O Zaposlitvi (Certificate of Employment) dated 13.02.2013 signed by Direktor Ivan Vuzem as being E 783,66 gross pay);

l.  some of the workers also received 1200 euros per month, represented to be compensation for work out of the area for expenses, such as referenced in the Eisemann welcome letter for Mr. Lesnik as a per diem payment of $48 per day;

m.  in most instances a cash payment of $500 per month in the nature of a per diem was paid by the subcontractor - subject to unstated conditions such as never being sick, staying through the completion of a project - although it was not reflected in any document as a wage payment and was not based on numbers of hours worked;

n.  the workers were not paid for the numbers of hours worked, or based on overtime, or where applicable under state law for breaks;

o.  each worker was owed back wages by defendants and each of them;

p.  no Medicare or FICA or social security taxes were paid either on the money paid to each of the workers or the money that should have been paid;

q.  each of the contracts that Gregor Lesnik, Stjepan Papes and similarly situated workers worked under was unlawful including because of the visa fraud;

r.  the Eisemann entities orchestrated and the subcontractors and all named defendants conspired to commit visa fraud in procuring the B1 visas;

s.  the defendants did not pay for the full visa filing fee, application fee, and issuance fees and charges for H2B visas;

t.  the defendants have intimidated affected workers by, among other things, trying to coerce them to sign a waiver of wages claims.  Among other things, in September of 2016 ISM Vuzem prepared a document that it sent to workers and former workers in which ISM Vuzem states "An allegation was made that Employee did not receive adequate compensation under California and/or United States law," with implication of negative work and references if the waiver was not signed; and

u.  each of the defendants was aware of the actions of the other defendants, and ratified, and continue to ratify, the conduct and actions of their co-conspirator defendants.

15.  Defendants' knowing submission of false and fraudulent claims for payment constitutes a violation of the FCA, 31 U.S.C. §§ 3729 et seq.

16.  Defendants by this scheme knowingly concealed, avoided or decreased their obligations to pay or transmit money or property to the Government, thus causing the United States to sustain a direct loss of funds and damage to its interests, being further violations of the FCA.

17.  The practices of the Defendants as set forth herein of employing illegally documented aliens to work on clients sites under improper visas in contravention of federal law also is costing American citizens jobs.

18.  Defendants engaged and are engaging in this illegal conduct to increase their profits.

19.  Defendants have as part of this enterprise underpaid Gregor Lesnik, Stjepan

1   Papes, and people similarly situated to Mr. Lesnik and Mr. Papes.  Defendants have not

2   paid minimum wages under federal law, minimum wages under state law, or prevailing

3   wages as required under visa laws and regulations.

4          20.  Defendants have not completely ceased their misconduct.  To the extent any

5   such misconduct continues, Plaintiff Relator Gregor Lesnik and Plaintiff Stjepan Papes

6   intend that this Complaint address and remedy it.

### B.  The False Claims Act

8          21.  Defendants' conduct alleged in this Complaint violates the federal False

9   Claims Act, 31 U.S.C. §§ 3729 et seq.  The federal False Claims Act was originally

10  enacted during the Civil War.  Congress substantially amended the Act in 1986 to

11  enhance the ability of the United States Government to recover losses sustained due to

12  fraud against it.  Congress amended the Act after it found that fraud in federal programs

13  was pervasive and that the Act, which Congress characterized as the primary tool for

14  combating government fraud, was in need of modernization.  Congress intended the

15  amendments to create incentives for individuals with knowledge of fraud against the

16  Government to disclose the information without fear of reprisals or Government inaction

17  and to encourage the private bar to commit legal resources to prosecuting fraud on the

18  Government's behalf.

19         22.  The FCA establishes liability to the United States for "any person," whether an

20  individual or an entity, who "knowingly presents, or causes to be presented, a false or

21  fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be

22  made or used, a false record or statement material to a false or fraudulent claim."  Id. §

23  3729(a)(1)(A)-(B).  "Knowingly" is defined to include actual knowledge, reckless

24  disregard, and deliberate indifference.  Id. § 3729(b)(1).  No proof of specific intent to

25  defraud is required.  Id.  Any person who violates the FCA is liable for a civil penalty of up

26  to $11,000 for each violation, plus three times the amount of the damages the United

27  States sustains.  Id. § 3729(a)(1).

28

23.  In May 2009, Congress amended and renumbered the False Claims Act pursuant to Public Law 111-21, the Fraud Enforcement and Recovery Act of 2009 ("FERA").  Section 3279(a)(1)(B) was formerly section 3729(a)(2) and applies to Defendants' conduct for the entire time period alleged in the Complaint by virtue of Section 4(f) of FERA.  Section 3279(a)(1)(A) (formerly section 3729(a)(1)) of the FCA prior to FERA, and as amended in 1986, applies to conduct on or after May 20, 2009.

24.  Section 3729(a)(1) of the pre-FERA FCA provides that any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval" is liable for "a civil penalty of "not less than $5,000 and not more than $10,000, . . plus 3 times the amount of damages which the Government sustains because of the act of that person."

25.  The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States and to share in any recovery.  The FCA also awards reasonable attorneys' fees and costs to the prevailing qui tam plaintiff as a matter of right.  Id. § 3730(d).  The FCA requires the Complaint, and in most instances an Amended Complaint, be filed under seal for a minimum of 60 days (without service on the defendant(s) during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.

### C.  Wages claims and RICO violations

26.  The Federal Labor Standards Act ("FLSA") sets forth minimum wage obligations, including minimum wages, and payments for overtime hours.  The FLSA is a remedial statute that was enacted to eliminate "the existence . . . of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  Generally under the FLSA, employers must pay employees the applicable minimum wage for each hour worked, and must pay 1½ times the regular rate for all hours worked in excess of

1  forty in one week.  *Id.* §§ 206, 207.

2      27.  The laws and regulations of the United States for issuance of visas for entry

3  to the United States require persons applying for visas to meet certain criteria for

4  issuance of visas.  Certain of those visas, being the only types of visas that Gregor

5  Lesnik, Stjepan Papes and the workers similarly situated to them would have been

6  issued if properly and accurately applied for, provide for payment to the workers of

7  prevailing wages.

8      28.  Defendants and each of them as part of their enterprise and pattern of

9  racketeering conduct knowingly failed and refused to pay the wages due to Gregor

10  Lesnik, Stjepan Papes, and workers similarly situated to them.

11      29.  Gregor Lesnik, Stjepan Papes, and workers similarly situated to them were

12  each employed by one or more of the defendants, each of the defendants failed to pay

13  the workers prevailing wages, minimum wages, overtime compensation, and other wages

14  benefits as required by law.

15      30.  Title 18, Section 1962(c), of RICO, states:

16  "It shall be unlawful for any person employed by or associated with any enterprise
   engaged in, or the activities of which affect, interstate or foreign commerce, to
17  conduct or participate, directly or indirectly, in the conduct of such enterprise's
18  affairs through a pattern of racketeering activity."

19      31.  Each of the defendants knowingly participated in the pattern of racketeering

20  conduct in an enterprise engaged in commerce or the production of goods for commerce

21  that had annual gross sales of at least $500,000.

22      32.  Each of the defendants knew and know of, and have ratified the actions of

23  their co-defendants, in the fraud in connection with identification documents, mail fraud,

24  wire fraud, fraud in foreign labor contracting, reproduction of visa, naturalization or

25  citizenship papers, false statements in application and uses of passports, forgery and

26  false use of passports, fraud and misuse of visas, permits and other documents,

27  peonage, slavery and trafficking in persons, laundering of money, actions indictable

28

1   under the Currency and Foreign Transactions Reporting Act, acts indictable under the

2   Immigration and Nationality Act, and aiding or assisting aliens to enter the United States.

3   **C.  Jurisdiction**

4   33.  The Court has subject matter jurisdiction to entertain this action under 28

5   U.S.C. § 1331, 28 U.S.C. § 1367, and 31 U.S.C. § 3732, the last of which confers

6   jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

7   Under 31 U.S.C. § 3730(e), there has been no statutorily relevant public disclosure of the

8   "allegations or transactions" in this complaint.

9   34.  This Court has further subject matter jurisdiction over this action pursuant to

10   18 U.S.C. § 1964.

11   35.  The Court may exercise personal jurisdiction over Defendants pursuant to 31

12   U.S.C. § 3732(a), which authorizes nationwide service of process, and because

13   Defendants have minimum contacts with the United States.  Moreover, Defendants can

14   be found in, reside, and/or transact or have transacted business in this District.

15   **D.  Venue**

16   36.  Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28

17   U.S.C. §§ 1391(b) and 1395(a), and 31 U.S.C. § 3732(a) because Defendants can be

18   found in and/or transact or have transacted business in this District.  At all times relevant

19   to this Complaint, Defendants regularly conducted substantial business, maintained

20   employees, and/or made significant sales in this District.  In addition, statutory violations,

21   as alleged in this Complaint, occurred in this District.

22   **E.  Parties**

23   37.  Plaintiff Gregor Lesnik is, and at all times mentioned herein has been, an

24   individual residing in Slovenia.  He worked at the Tesla manufacturing plant in Fremont,

25   California in 2015

26   38.  Plaintiff Stjepan Papes is, and at all times mentioned herein has been, an

27   individual residing in Croatia.  He worked at, among other places:

28

Mercedes Benz U.S. plant in Tuscaloosa, Alabama in 2013, and as special employee at Rehau, which makes bumper assemblies for Mercedes in Cullman, Alabama;

BMW plant in Spartanburg, South Carolina in 2013 and 2014 and again in 2015;

Phoenix Mechanical in Greer, SC as a joint employer in 2014

Lax Fabricating Ltd as a joint employer in Spring Grove, Minnesota in 2013;

REHAU Incorporated as a joint employer;

Tesla Motors in Fremont, California in 2015; and

Dicastal in Greenville, Michigan in 2015.

39.  Defendant Eisenmann Corporation also known as Eisenmann Corporation USA holds itself out to be a Delaware corporation with its principal place of business at 150 E Dartmoor Dr., Crystal Lake, IL 60014

40.  Defendant Eisenmann Corporation had supervisors that came from time to time to take a look to see how the work performed by Gregor Lesnik, Stjepan Papes and the other similarly situated alien "B-1" workers was progressing and to assess it.  Further, Eisenmann Corporation through multiple employees and agents provided instructions to Gregor Lesnik and Stjepan Papes.  Eisenmann Corporation had all "subcontractor" defendants come to its headquarters in Illinois for directions.  Eisenmann Corporation had its employees present at each of the construction sites to oversee and supervise the work performed by "subcontractor" defendants.

41.  Defendant Eisenmann Corporation by its authorized Purchasing Manager Robert Keller made the written representations in the letter dated November 5, 2014 referenced in paragraphs 5 and 6, above, and by its authorized Golbal Procurement Engineer Friedburga Betsch made the written representations in the April 29, 2013 dated letter referenced in paragraph 6, above.

42.  Defendant Eisenmann Corporation is an employer of Plaintiffs Gregor Lesnik and Stjepan Papes - and all similarly situated B1 workers - because it had the right to

1  control their work and related activities, because it gave some instructions to Gregor

2  Lesnik and to Stjepan Papes in their work activities and reserved the right to give

3  instructions, because Gregor Lesnik was between March of 2015 and May 16, 2015 and

4  Stjepan Papes was between 2013 and 2016 performing services for defendant which

5  required a license under Chapter 9 (commencing with Section 7000) of Division 3 of the

6  California Business and Professions Code, and because Eisenmann issued to Stjepan

7  Papes an Contractor security tag - ID no. s29127 - as a Contractor with Eisenmann

8  working at Mercedes-Benz U.S. in Tuscaloosa, Alabama.

9       43.  Defendant Eisenmann SE is a German entity with its principal place of

10  business at Tübinger Str. 81, 71032 Böblingen, Germany.  Defendant Eisenmann SE

11  represents that it is a holding company of the Eisenmann Group and that it holds one

12  hundred percent of the shares of Eisenmann Anlagenbau GmbH & Co. KG.

13       44.  Plaintiffs are informed and believe and thereon allege that Defendant

14  Eisenmann SE acted through its subsidiary Eisenmann Corporation in the matters

15  alleged herein.

16       45.  Plaintiffs are informed and believe and thereon allege that Defendant

17  Eisenmann SE is an employer of Gregor Lesnik and of Stjepan Papes because it acted

18  through its owned subsidiaries Eisenmann Anlagenbau GmbH & Co. KG, Eisenmann

19  Anlagenbau Verwaltung GmbH and Eisenmann Corporation had the right to control their

20  work and related activities and because Gregor Lesnik was between March of 2015 and

21  May 16, 2015 and Stjepan Papes was between 2013 and 2016 performing services

22  which required a license under Chapter 9 (commencing with Section 7000) of Division 3

23  of the California Business and Professions Code.

24       46.  Plaintiffs are informed and believe and thereon allege that defendant

25  Eisenmann Anlagenbau GmbH & Co. KG is a German entity in the form of a limited

26  partnership.  Among other things, GmbH or "Gesellschaft mit beschrankter Haftung" and

27  KG or "Kommanditgesellschaft" means that it is a limited partnership with its sole general

28

1   partner being a limited liability company.

2       47.  Plaintiffs are informed and believe and thereon allege that Defendant

3   Eisenmann Anlagenbau GmbH & Co. KG acted directly and also acted indirectly through

4   its subsidiary Eisenmann Corporation in the matters alleged herein.  Among other things,

5   its employee Torsen Moelgg:

6       a. acted as field manager at the BMW plant in South Carolina;

7       b. directed various B1 workers including Stjepan Papes to perform manufacturing

8   related services at and for defendants LAX Fabricating, Phoenix Mechanical, and

9   REHAU Incorporated when the Eisenmann entities needed materials, parts or

10  assemblies for construction at the manufacturing plants; and

11      c.  had the plans and directions for the construction of several of the

12  manufacturing plants at which work was provided by the B1 visa workers.

13      48.  Plaintiffs are informed and believe and thereon allege that Defendant

14  Eisenmann Anlagenbau GmbH & Co. KG is an employer of Gregor Lesnik and of

15  Stjepan Papes because Gregor Lesnik was between March of 2015 and May 16, 2015

16  and Stjepan Papes was between 2013 and 2016 performing services for defendant

17  which required a license under Chapter 9 (commencing with Section 7000) of Division 3

18  of the Business and Professions Code, and because some of the on site supervisors

19  who represented themselves to be from "Eisenmann" were German foreign nationals.

20      49.  Plaintiffs are informed and believe and thereon allege that defendant

21  Eisenmann Anlagenbau Vertvaltuilg GmbH is a German entity which is the general

22  partner of  Defendant Eisenmann Anlagenbau GmbH & Co. KG and is identified under

23  German law as having unlimited liability for the actionable wrongs and breaches of

24  contract of the limited partnership Eisenmann Anlagenbau GmbH & Co. KG.  Defendant

25  Eisenmann Anlagenbau Verwaltung GmbH is the general partner of Defendant

26  Eisenmann Anlagenbau GmbH & Co. KG and as general partner is legally responsible in

27  that capacity for the liabilities of that limited partnership.

28

50.  Plaintiffs are informed and believe and thereon allege that Defendant Eisenmann Anlagenbau Vertvaltuilg GmbH acted through its affiliated entity Eisenmann Corporation in the matters alleged herein.

51.  Plaintiffs are informed and believe and thereon allege that defendant ISM Vuzem USA, Inc. is a business entity holding itself out to be a South Carolina corporation with its principal place of business at 1600 Azalea Hill Drive, Unit 304 Greenville, SC 29607.  Plaintiffs are informed and believe and thereon allege that defendant ISM Vuzem USA Inc. was at all relevant times on or before June of 2015 a wholly owned domestic subsidiary of ISM Vuzem, d.o.o.  Plaintiffs are informed and believe and thereon allege that ISM Vuzem USA Inc. was at various times during the actions alleged herein dissolved involuntarily for failure to comply with requirements for corporations under South Carolina law.

52.  Plaintiffs are informed and believe and thereon allege that Defendant Vuzem USA, Inc. was set up to be represented to be an exclusive service and materials supplier in South Carolina and other states for ISM Vuzem, d.o.o.  This is and was a fiction. Defendant Vuzem USA, Inc. has dissolved, and ISM Vuzem, d.o.o. continues to act in violation of visa regulations, wages obligations, and other laws as hereinafter set forth.

53.  Defendant ISM Vuzem USA, Inc. was during the time period of March through May of 2015 an employer of Plaintiff Gregor Lesnik both because it had the right to control his work and related activities, because it provided some of the compensation for Gregor Lesnik, and because Gregor Lesnik was between March of 2015 and May 16, 2015 performing services for defendant which required a license under Chapter 9 (commencing with Section 7000) of Division 3 of the California Business and Professions Code.

54.  Defendant ISM Vuzem USA, Inc. was during the time period of 2013 through 2016 an employer of Plaintiff Stjepan Papes both because it had the right to control his work and related activities, because it provided some of the compensation for Stjepan

1   Papes, and because Stjepan Papes was between 2013 and 2016 performing services for

2   defendant which required a license under Chapter 9 (commencing with Section 7000) of

3   Division 3 of the California Business and Professions Code.

4       55.  Plaintiffs are informed and believe and thereon allege that defendant Vuzem

5   USA Inc. is a business entity of unknown type holding itself out to be a California

6   corporation with its principal place of business at 965 West 11th St. #2, San Pedro, CA

7   90731.  Plaintiffs are informed and believe and thereon allege that defendant Vuzem

8   USA Inc. is and at all relevant times mentioned herein has held itself out to be a wholly

9   owned domestic subsidiary of ISM Vuzem, d.o.o.

10      56.  Plaintiffs are informed and believe and thereon allege that Defendant Vuzem

11  USA, Inc. was set up to be the exclusive service and materials supplier in California for

12  ISM Vuzem, d.oo., performing the following activities in connection with construction

13  projects which ISM Vuzem, d.o.o. contracts to perform: HVAC mechanical, welding, pipe

14  fitting, assembly, marketing, processing invoices, and receiving of all customer

15  complaints and accident reports for California.  Plaintiffs are informed and believe and

16  thereon allege that Vuzem USA, Inc. is or was the general manager in California of ISM

17  Vuzem d.o.o.

18      57.  Defendant Vuzem USA, Inc. is an employer of Plaintiff Gregor Lesnik and of

19  Stjepan Papes because Gregor Lesnik was between March of 2015 and May 16, 2015

20  and Stjepan Papes was in 2015 performing services for defendant including on behalf of

21  ISM Vuzem d.o.o. and ISM Vuzem USA, Inc. at the Tesla plant in Fremont, California

22  which required a license under Chapter 9 (commencing with Section 7000) of Division 3

23  of the California Business and Professions Code.

24      58.  Plaintiffs are informed and believe and thereon allege that defendant ISM

25  Vuzem d.o.o., aka ISM VUZEM inženiring, storitve, montaža d.o.o., is a Slovenian

26  business entity with its principal place of business at Goricak 4, 2283 Zavrc, Slovenija.

27      59.  Defendant ISM Vuzem d.o.o. was at all times mentioned herein a direct

28

1   employer of Gregor Lesnik pursuant to a November 13, 2014 dated Pogodbo O

2   Zaposlitvi (employment agreement), and of Stjepan Papes under a written employment

3   agreement.  Defendant ISM Vuzem d.o.o. was also an employer of Plaintiff Gregor

4   Lesnik and of Stjepan Papes both because it had the right to control their work and

5   related activities and did control their work and related activities and because Gregor

6   Lesnik was between March of 2015 and May 16, 2015 and Stjepan Papes was between

7   2013 and 2016 performing services for defendant which required a license under

8   Chapter 9 (commencing with Section 7000) of Division 3 of the California Business and

9   Professions Code.

10       60.   Plaintiffs are informed and believe and thereon allege that Robert Vuzem is a

11   resident of Slovenia.  Plaintiffs are informed and believe and thereon allege that all

12   actions taken by ISM Vuzem, d.o.o. were made under the direction of or consent of

13   Robert Vuzem.

14       61.  Plaintiffs are informed and believe and thereon allege that Ivan Vuzem is a

15   resident of Slovenia.  Plaintiffs are informed and believe and thereon allege that all

16   actions taken by ISM Vuzem, d.o.o. were made under the direction of or consent of Ivan

17   Vuzem.

18       62.  Plaintiffs are informed and believe and thereon allege that Ivan Vuzem and

19   Robert Vuzem are the owners of Defendant ISM Vuzem d.o.o. and in turn of each of ISM

20   Vuzem USA, Inc. and of Vuzem USA, Inc.  Plaintiffs are further informed and believe and

21   thereon allege that Ivan Vuzem and Robert Vuzem are the also the owners of Defendant

22   HRD/ MONT d.o.o. with ownership purportedly in the name of the wife of Robert Vuzem.

23       63.  Plaintiffs are informed and believe and thereon allege that between Ivan

24   Vuzem and Robert Vuzem and each of ISM Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem

25   USA, Inc., and HRD/ MONT d.o.o. there is such a unity of interest and ownership

26   between the entities and their equitable owners that the separate personalities of the

27   entities and the owners do not in reality exist.  Further, an inequitable result will be

28

1  reached for the wrongful acts alleged herein if they are treated as those of the entities

2  alone.  Plaintiffs are informed and believe and thereon allege that each of Ivan Vuzem,

3  Robert Vuzem, ISM Vuzem d.o.o., ISM Vuzem USA, Inc. and Vuzem USA, Inc. have

4  commingled funds and other assets, each of the entities has held itself out to be liable for

5  the debts of the others, there is identical equitable ownership in all of the entities, the

6  entities use the same offices and employees, and the individuals and entities each use

7  each other as mere shells or conduits for the affairs of each other.  Further, ISM Vuzem

8  USA, Inc. has been inadequately capitalized, each entity has been without necessary

9  insurance to cover liabilities of each, there has been a disregard of corporate formalities,

10  there has been a lack of segregation of corporate records, there has been a lack of

11  segregation of corporate contracts and agreements, and they have identical directors

12  and officers.  Adherence to the fiction of the separate existence of Defendants ISM

13  Vuzem d.o.o., ISM Vuzem USA, Inc., and Vuzem USA, Inc. as entities distinct from

14  Defendants Robert Vuzem and Ivan Vuzem and other entities they control would permit

15  an abuse of the corporate privilege, sanction fraud, and promote injustice.

16      64.  Defendant Tesla Motors, Inc. is and at all times mentioned herein was a

17  Delaware corporation.

18      65.  Defendant Tesla Motors, Inc. is an employer of Plaintiff Gregor Lesnik and

19  Stjepan Papes both because it had the right to control their work and related activities

20  and because Gregor Lesnik was between March of 2015 and May 16, 2015 and Stepan

21  Papes was in 2015 performing services for defendant which was required to obtain a

22  license required under Chapter 9 (commencing with Section 7000) of Division 3 of the

23  California Business and Professions Code.  Among other things, Tesla Senior EHS

24  Engineer Bobby Gonzales provided instructions to Gregor Lesnik and Tesla prepared,

25  and maintained, all job hazard forms for work at the Tesla site.  Among other things,

26  none of defendants ISM Vuzem, d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc.,

27  Gregurec Ltd., Eisenmann SE, Eisenmann Corporation, Eisenmann Anlagenbau GmbH

28

1  & Co. KG, Eisenmann Anlagenbau Verwaltung GmbH or Tesla Motors, Inc. held at any

2  time relevant herein a license as required pursuant to Chapter 9 (commencing with

3  Section 7000) of Division 3 of the California Business and Professions Code for the

4  services provided during that time period by Gregor Lesnik, Stjepan Papes, and the other

5  workers who obtained entry to the United States under false B-1 visas.  Among other

6  things, Tesla Motors, Inc. cancelled prior to the time of the events at issue herein its

7  license previously issued by the California Contractors State Licensing Board, and Tesla

8  obtained hundreds of construction permits from the City of Fremont, meaning that it knew

9  the work being done by Gregor Lesnik, Stjepan Papes, and the other workers who

10 obtained entry to the United States under false B-1 visas were of construction work by

11 unlicensed workers.  Further, Defendant Tesla Motors, Inc. copied the passport and visa

12 cards for Gregor Lesnik, Stjepan Papes, and the other workers who obtained entry to the

13 United States under false B-1 visas at the time that it took photographs for and issued a

14 two sided 'Contractor Safety Card' and a one sided 'Tesla Motors Subcontractor'

15 identification card for Gregor Lesnik, Stjepan Papes, and the other workers who obtained

16 entry to the United States under false B-1 visas.

17     66.  Defendant Gregurec Ltd is an English business entity, with its principal place

18 of business at 226 St. Leonards Road, Horsham, RH13 6AU.  Plaintiffs are informed and

19 believe and thereon allege that Gregurec Ltd and ISM Vuzem d.o.o. have related or

20 affiliated ownership and a profit sharing relationship.  Defendant Gregurec Ltd acted as

21 "subcontractor" to broker or supply B1 visa workers at virtually all, if not all, construction

22 and manufacturing site or company mentioned herein.

23     67.  Defendant Daimler AG is a German Aktiengesellschaft (joint-stock company)

24 business entity, doing business as Mercedes-Benz, Mercedez-Benz USA, and

25 Mercedes-Benz U.S. International, Inc., with its corporate headquarters and principal

26 place of business at Mercedesstr. 137, 70327 Stuttgart, Baden-Württemberg, Germany.

27     68.  Defendant Mercedes-Benz U.S. International, Inc. is an Alabama corporation

28

1  and affiliate of Daimler AG, of Stuttgart, Germany, with its principal office and place of

2  business at 1 Mercedes Drive, Vance, Alabama 35490.

3      69.  Defendants Daimler AG and Mercedes-Benz U.S. International, Inc. did

4  support and assist and continue to support and assist the hiring and employment by

5  Eisenmann entities of Vuzem employees, and employees of other foreign business

6  entities, under visas it knew were fraudulently obtained, for expanding its production

7  facility in Tuscaloosa, Alabama.

8      70.  Plaintiffs are informed and believe and thereon allege that Defendants

9  Daimler AG and Mercedes-Benz U.S. International, Inc. did support and assist and

10 continue to support and assist the hiring and employment by Eisenmann entities of

11 Stjepan Papes and other workers who obtained entry to the United States under false B-

12 1 visas.  Defendants Daimler AG and Mercedes-Benz U.S. International, Inc. knew that

13 the workers were working under fraudulently obtained visas at the new paint shop and

14 body shop at 8501 Palmetto Commerce Parkway, North Charleston, South Carolina.

15     71.  Defendant Bayerische Motoren Werke is a German Aktiengesellschaft

16 business entity, doing business as BMW, with its principal place of business at Petuelring

17 130; Munich, Germany.

18     72.  Plaintiffs are informed and believe and thereon allege that Defendant

19 Bayerische Motoren Werke did support and assist and continued to support and assist

20 the hiring and employment by Eisenmann entities of Stjepan Papes and other workers

21 who obtained entry to the United States under false B-1 visas at the vehicle assembly

22 facility of BMW in Greer and Spartanburg South Carolina.  Among other things, BMW

23 issued an expansion site pass - no, 18540 - to Stjepan Papes.

24     73.  Defendant CiTic Dicastal Co., Ltd. is a (mainland) Chinese business entity,

25 doing business as CiTic Dicastal Wheel Manufacturing Co., Ltd. and CITIC Dicastal

26 North America, Inc., with its principal place of business at No. 185, Longhai Road,

27 Funing, Qinhuangdao, He Bei Province, China, and with its principal place of business in

28

1  the United States at 1 Dicastal Drive Greenville, Michigan.

2       74.   Plaintiffs are informed and believe and thereon allege that Defendant CiTic

3  Dicastal Co., Ltd. did support and assist and continue to support and assist the hiring

4  and employment by Eisenmann entities of Stjepan Papes and other workers who

5  obtained entry to the United States under false B-1 visas at the vehicle wheel production

6  facility at the site of the former United Solar Ovonic LLC (Uni-Solar) campus in

7  Greenville, Michigan.

8       75.   Defendant Volkswagen is a German Aktiengesellschaft business entity, doing

9  business as Volkswagen of America, Inc., with its headquarters at Volkswagen

10 Aktiengesellschaft VHH, 2nd Floor, PO Box 1849, D-38436 Wolfsburg, Germany.

11      76.   Plaintiffs are informed and believe and thereon allege that Defendant

12 Volkswagen did support and assist and continue to support and assist the hiring and

13 employment by Eisenmann entities of Stjepan Papes and other workers who obtained

14 entry to the United States under false B-1 visas at the vehicle production facility in

15 Chattanooga, Tennessee.  This work at the Enterprise South Industrial Park,

16 Chatanooga, TN from late 2008 through 2010 was designated by Eisenmann to hire 20%

17 of its construction workers locally, meaning 80% were not local.  These non-local workers

18 included Klemen Vuzem, ISM Vuzem d.o.o. employees, and employees working under

19 the name Gregurec, Ltd.  Other foreign workers under B1 visas were working under

20 Defendants Rimsa, MDM, and Moss, d.o.o.

21      77.   Defendant LB metal d.o.o., aka Mos LB Metal d.o.o., is a Slovenian

22 corporation with its principal place of business at Zagrebška cesta 22, 2000 Maribor,

23 Slovenia.  It supplied workers under false B-1 visas at multiple locations including at the

24 Tesla facility in Fremont, California.

25      78.   Defendant D2N Tehnologije d.o.o. aka D2N d.o.o.. is a Slovenian corporation

26 with its principal place of business at Trstenjakova ulica 1, 2250 Ptuj, Slovenia.  It

27 supplied workers under false B-1 visas at multiple locations including at the Tesla facility

28

1   in Fremont, California.

2   79.  Defendant Primiko, d.o.o. is a Croatian corporation with its principal place of

3   business at Frankopanska 66 40315 Mursko Središče with Krešo Korbelj as the

4   production director manager.  Among other things, it was the entity used to pay hospital

5   bills for Gregor Lesnik.  It assisted the Vuzem entities and individual defendants to

6   supply workers under false B-1 visas at multiple locations including at the Tesla facility in

7   Fremont, California.

8   80.  Defendant Volvo Car Corporation dba Volvo Cars, sued herein as Doe 1, is a

9   corporation, wholly owned by Volvo Car AB with its registered office is in Gothenburg,

10  Sweden, which is in turn wholly owned by Shanghai Geely Zhaoyuan International

11  Investment Co., Ltd., registered in Shanghai, China, which is itself wholly owned by

12  Zhejiang Geely Holding Group Ltd., registered in Hangzhou, China.

13  81.  Defendant Volvo Car Corporation is and since 2015 has been building a car

14  manufacturing plant in Charleston, Berkeley County, South Carolina.  The construction

15  was substantially funded by more than $200 million in incentives from the South

16  Carolina, Berkeley County and the state-owned Santee Cooper electric utility

17  82.  Volvo Car Corporation contracted with Eisenmann Corporation which in turn

18  contracted with other entities such as Magma Services Gmbh; Magma, d.o.o; ISM

19  Vuzem, d.o.o., and Gregurec, Ltd. to bring in construction workers under false B1 visas

20  who are paid less than prevailing wages.

21  83.  Defendant Deere & Company, dba John Deere, sued herein as Doe 2, is a

22  Delaware corporation with its principal place of business at One John Deere Place,

23  Moline, IL 61265.  Plaintiffs are informed and believe and thereon allege that Deere &

24  Company contracted with Eisenmann Corporation which in turn contracted with other

25  entities to bring in construction workers under false B1 visas who are paid less than

26  prevailing wages including under visas issued to workers as purported employees of

27  Eisenmann and of Gregurec, Ltd.

28

84.  Defendant Lax Fabricating Ltd sued as Doe 3, is a limited company with its principal place of business at 700 East Main Spring Grove, MN 55974, Tel: 507\498-6000. Defendant Lax Fabricating Ltd  contracted with Eisenmann Corporation which in turn contracted with other entities such as ISM Vuzem, d.o.o. to hire construction workers including Stjepan Papes under false B1 visas who were paid less than prevailing wages.  It also manufactured parts and assemblies for the construction at other manufacturing sites under the direct supervision of management of Eisenmann.

85.  Defendant Keystone Automotive Operations Inc. sued as Doe 4, is a corporation with its principal place of business at 44 Tunkhannock Avenue, Exeter, PA 18643.  Plaintiffs are informed and believe and thereon alleged that Defendant Keystone Automotive Operations Inc. is a wholly owned subsidiary of LKQ Corporation and that Defendant Keystone Automotive Operations Inc. does business as Keystone Automotive Operations (India) PVT LTD.  Defendant Keystone Automotive Operations Inc. contracted with Eisenmann Corporation which in turn contracted with other entities such as ISM Vuzem, d.o.o. to hire construction workers such as Stjepan Papes under false B1 visas who were paid less than prevailing wages.

86.  Defendant Phoenix Mechanical Contractors sued as Doe 5, is a corporation with its principal place of business at 1217 Gusdorf Rd., Taos, NM 87571, with alternative business address of 197 West Central Street, Natick, MA 01760.  Defendant Phoenix Mechanical Contractors contracted with Eisenmann Corporation which in turn contracted with other entities such as ISM Vuzem, d.o.o. to hire construction workers including Stjepan Papes under false B1 visas who were paid less than prevailing wages. It also manufactured parts and assemblies for construction at other manufacturing sites under the direct supervision of management of Eisenmann.

87. Defendant REHAU Incorporated, sued as Doe 6, is a Delaware corporation with its principal place of business at 1501 Edwards Ferry Road NE, Leesburg, VA 20176.  Defendant REHAU Incorporated contracted with Eisenmann Corporation which

1   in turn contracted with other entities such as ISM Vuzem, d.o.o. to hire construction

2   workers including Stjepan Papes under false B1 visas who were paid less than prevailing

3   wages.

4       88.  Defendants LAX Fabricating and Phoenix Mechanical were assigned by

5   Eisenmann Corporation and by the German based Eisenmann entities to manufacture

6   parts and assemblies for the construction at other construction sites.  LAX and Phoenix

7   Mechanical in turn contracted as special employer - as directed by the Eisenmann

8   entities - with other entities such as ISM Vuzem, d.o.o. to hire as manufacturing workers

9   individuals who heretofore had been construction workers including Stjepan Papes, all

10  under false B1 visas, all who were paid less than prevailing wages.

11      89.  Defendant HRD/ MONT d.o.o. sued as Doe 7 is a Slovenian corporation,

12  asserted to be owned by the wife of Robert Vuzem, with the same principal place of

13  business as ISM Vuzem, d.o.o., to wit, Goricak 4, 2283 Zavrc, Slovenija.  Many of the

14  workers who obtained false B-1 visas to originally work under ISM Vuzem, d.o.o. now

15  work under HRD/ MONT d.o.o.  The sole intent in changing the name of the purported

16  hiring entity was to conceal the visa fraud and to assist in hiding the assets and income

17  received from the scheme.  Plaintiffs are informed and believe and thereon allege that

18  HRD/ MONT d.o.o. contracted with Eisenmann Corporation which in turn contracted with

19  other entities to bring in construction workers under false B1 visas who are paid less than

20  prevailing wages.  This includes at, among other places, the BMW and Mercedes Benz

21  plants.

22      90.  Defendant VV Mont sued as Doe 8 is a Croatian corporation with its principal

23  place of business at Živković Kosa 27/B 47220 Vojnić Croatia, EU.  It was founded in

24  2017 as an alternative business for workers under false B-1 visas.  This was to conceal

25  the B-1 visas.  Plaintiffs are informed and believe and thereon allege that VV Mont d.o.o.

26  contracted with Eisenmann Corporation which in turn contracted with other entities to

27  bring in construction workers under false B1 visas who are paid less than prevailing

28

1  wages.  This includes at, among other places, the BMW and Mercedes Benz plants.

2      91.  Defendant Magma, Intl sued as Doe 9 is a Switzerland corporation with its

3  principal place of business at 15 Stratton Street, Mayfair, London, W1J 8LQ.  Plaintiffs

4  are informed and believe and thereon allege that Magma, Intl contracted with Eisenmann

5  Corporation which in turn contracted with other entities to bring in construction workers

6  under false B1 visas who are paid less than prevailing wages.  This includes at, among

7  other places, the Volvo plant.

8      92.  Defendant Magma Services Gmbh, sued herein as Doe 10, is a Switzerland

9  corporation with its principal place of business at Werftestrasse 4, 6005 Luzern,

10  Switzerland.  Plaintiffs are informed and believe and thereon allege that Magma, Intl

11  contracted with Eisenmann Corporation which in turn contracted with other entities to

12  bring in construction workers under false B1 visas who are paid less than prevailing

13  wages.  This includes at, among other places, the Volvo manufacturing plant in South

14  Carolina.

15      93.  Defendant Defendant Magma, d.o.o, sued herein as Doe 11 is a Croatian

16  corporation with its principal place of business at Varazdinska Ulica, Odvojak I Kbr. 14

17  Varazdin; Varazdin 42000.  Plaintiffs are informed and believe and thereon allege that

18  Magma, Intl contracted with Eisenmann Corporation which in turn contracted with other

19  entities to bring in construction workers under false B1 visas who are paid less than

20  prevailing wages.  This includes at, among other places, the Volvo manufacturing plant in

21  South Carolina.

22      94.  Defendant We-Kr d.o.o. sued as Doe 12 is a Croatian limited liability company

23  with its principal place of business at Donja Visnjica, Croatia.  Plaintiffs are informed and

24  believe and thereon allege that We-Kr d.o.o. contracted with Eisenmann Corporation

25  which in turn contracted with other entities to bring in construction workers under false B1

26  visas who are paid less than prevailing wages.

27      95.  Defendant RIMSA PLUS Sp. z o.o. sued herein as Doe 13 is a Polish

28

1    corporation with its principal place of business at ul. Podmiejska 10, PIEKARY SLASKIE,

2    41-940, Polen. Rimsa Plus Sp. z.o.o.  Plaintiffs are informed and believe and thereon

3    allege that Rimsa Plus Sp. Z.o.o. contracted with Eisenmann Corporation which in turn

4    contracted with other entities to bring in construction workers under false B1 visas who

5    are paid less than prevailing wages.  This includes at, among other places, the BMW,

6    Mercedes Benz and Tesla manufacturing plants.  Rimsa Plus has advertised that it is

7    looking to hire employees to work outside of the country, meaning individuals without a

8    history of working for Rimsa, let alone Eisenmann or with Eisenmann products or

9    technology, to work at the manufacturing sites in the US under B1 visas.

10        96.  Defendant Enterprise MDM Poland Sp. z.o.o. sued herein as Doe 14 is a

11   Polish corporation with its principal place of location is MDM Polska sp. z.o.o. 37-500

12   Jarosław ul. Lubelska 1 /4.  It is also the parent of subsidiary Poland Sp, a.o.o.  Plaintiffs

13   are informed and believe and thereon allege that MDM Poland Sp. z.o.o. contracted with

14   Eisenmann Corporation which in turn contracted with other entities to bring in

15   construction workers under false B1 visas who are paid less than prevailing wages.  This

16   includes at, among other places, the BMW, Mercedes Benz and Tesla manufacturing

17   plants.

18        97.  Defendant MDM Polska sp. z.o.o. sued herein as Doe 15, is a Polish

19   corporation with its principal place of business at Bobrówka 104A, 37-543 Laszki, Poland.

20   Plaintiffs are informed and believe and thereon allege that MDM Polska Sp. z.o.o.

21   contracted with Eisenmann Corporation which in turn contracted with other entities to

22   bring in construction workers under false B1 visas who are paid less than prevailing

23   wages - the same or at an even lesser rate of pay than the workers from the Croatian

24   and Slovenian based companies.  This includes at, among other places, the BMW and

25   Mercedes Benz manufacturing plants.

26        98.  Defendant Moss, d.o.o. sued herein as Doe 16 is a Slovenian corporation with

27   its principal place of employment at Colnarjeva ulica 5, 1000 Ljubljana.  Plaintiffs are

28

1  informed and believe and thereon allege that Moss, d.o.o. contracted with Eisenmann

2  Corporation which in turn contracted with other entities to bring in construction workers

3  under false B1 visas who are paid less than prevailing wages.  This includes at, among

4  other places the Tesla manufacturing plant in Fremont, California.

5      99.  Plaintiffs and Relator do not presently know the complete involvement in the

6  matters alleged herein and / or identities of the remaining Doe Defendants who have

7  knowingly submitted or participated in the submission of false and fraudulent claims to

8  the government.  For example, given that the work by workers at job sites extended to

9  Michigan, South Carolina, Tennessee, Alabama, New York, Washington, Illinois and

10 California, and that the visa applications were stated by the defendants to be for work

11 under different entities than the workers ended up working under, and were hired out as

12 special employees to other entities, and that Plaintiffs and Relator do not know all of the

13 companies hired by the Eisenmann entities, Plaintiffs and Relator do not yet know all of

14 the owners, operators, and persons responsible, or all of the potential holding companies

15 and affiliated entities answerable for the conduct and their involvement in the matters

16 alleged herein.  Further information on the details and extent of the fraud the Doe

17 Defendants committed and of the Doe Defendants' involvement are contained within

18 Defendants' records.

19     100.  Plaintiffs are informed and believe, and so alleges, that Defendants, and

20 each of them, were at all times herein mentioned, and now are, the agents, servants,

21 employees, and representatives of their co-defendants, were acting within the scope,

22 purpose, and authority of such agency, service, employment, and representation, made

23 such actions - and withheld from actions - with the permission, knowledge, and consent

24 of their co-defendants, and acted each acted with actual knowledge, deliberate ignorance

25 of the truth or falsity, or reckless disregard of the truth or falsity of the information

26 presented to the United States.  Each defendant which is an affiliated instruction of the

27 other defendants "orchestrated, either directly or indirectly" the false claims submitted by

28

affiliated institutions.

101.  Each of the entities were aware of and actively participated in the fraudulent scheme and failures to pay wages alleged herein.  For example, some of the HR employees for one company at which Eisenmann was supplying workers later worked in HR at another company that Eisenmann later supplied workers to.  For example, Eisenmann hired the same third party contractors and safety supervisors at the multiple job sites.  Each of the entities who are now continuing to use workers who obtained entry by fraudulently obtained visas have received knowledge of the scheme, yet continue to hire Eisenmann, the involved brokering entities, and the same workers after receiving knowledge of this fraudulent scheme and underpaying of wages.

## F.  Factual Background and Regulatory Framework

102  Section 1324 of Title 8 of the United States Code provides that it is unlawful for a person or other entity to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien (as defined in subsection (h)(3) of section 1324) with respect to such employment, or to hire, or to recruit or refer for a fee, for employment in the United States an individual without complying with the requirements of truthfully attesting under penalty of perjury that the alien is authorized under visa provisions to work or to continue to employ the alien in the United States knowing the alien is (or has become) an unauthorized alien with respect to such employment.  Further, the Immigration Reform and Control Act of 1986 (IRCA) Pub.L. 99–603, 100 Stat. 3445, requires employers to attest to their employees' immigration status.  Regulations issued pursuant to this act require "employers" including those hiring "subcontractors" to obtain visa documentation and to complete and verify under penalty of perjury on an I-9 form the completeness and accuracy of the workers immigration status.

103.  The B-1 visa is a non-immigrant visa that allows a foreign national to temporarily enter the United States for business purposes.  Business purposes entail

1   activities such as: consulting with business associates; traveling for business

2   conventions; negotiating a contract; participating in short term training; and certain other

3   activities of a temporary nature incident to international trade or commerce.  It does not

4   include local employment or labor for hire.  Pursuant to law and regulations, B-1 visa

5   holders may not perform skilled or unskilled labor.  B-1 visa holders may not be hired to

6   provide construction work.  B-1 visa holders may not be paid by United States entities or

7   in the United States.  B-1 visa work specifically excludes building or construction work,

8   whether on-site or in-plant.  B-1 visas are valid for ten years.  The application fee for a

9   B-1 visa is less than $500, in most instances $160.

10      104  The Immigration and Nationality Act states that a B-1 visa holder may not

11  come to the United States to perform skilled or unskilled labor.  The controlling Code of

12  Federal Regulation states that the term "business" as used by a B-1 visa holder does not

13  include local employment or labor for hire.  The governing policies within the Department

14  of State's Foreign Affairs Manual and the Department of Homeland Security's Inspector's

15  Field Manual interpret permissible B-1 activities as an alien coming to the United State to

16  engage in commercial transactions (e.g., buying or selling) that do not involve gainful

17  employment in the United States; to negotiate contracts; to consult with business

18  associates, including attending meetings of the Board of Directors of a U.S. corporation;

19  to litigate; to participate in scientific, educational, professional, or business conventions,

20  conferences or seminars; or to undertake independent research.  The U.S. Department

21  of State, Foreign Affairs Manual and Handbook, at section 402.2-5 states that aliens who

22  desire to enter the United States for business and who are otherwise eligible for visa

23  issuance may be classifiable as nonimmigrant B1 visitors provided they meet the criteria

24  described in 9 FAM 402.2-5 (B) through (F).  Engaging in business contemplated for B1

25  visa classification generally entails business activities other than the performance of

26  skilled or unskilled labor.  All controlling statutes and regulations state that the issuance

27  of a B1 visa is not intended for the purpose of obtaining and engaging in employment

28

1  while in the United States.

2      105.  The principal place of business of Eisenmann Corporation is in the United

3  States.  Materials and supplies for installation on the project that Gregor Lesnik worked

4  on in California and the several projects that Stjepan Papes worked on came from the

5  United States.  The work done by Gregor Lesnik, Stjepan Papes and by the similarly

6  situated "B-1" workers was in the United States.  The work done by Gregor Lesnik and

7  Stjepan Papes and by the similarly situated "B-1" workers did not require specialized

8  knowledge essential to the Eisenmann entities' obligations.  Most workers who had any

9  prior work experience in construction did not have work experience in the trades for

10  which they provided services.  The work performed was to build out manufacturing

11  plants, and did not entail robotics or other specialized tasks.  Remuneration was paid

12  under the table and from United States sources to all workers under all companies at all

13  sites - none of which was designated as overtime and none of which was based on the

14  amount of overtime.   Gregor Lesnik, Stjepan Papes and the similarly situated "B-1"

15  workers performed building and construction work.  Gregor Lesnik, Stjepan Papes, and

16  the similarly situated "B-1" workers - other than a few individuals - were not supervisors.

17      105.  Defendants took, and knowingly assisted the taking, among other things, the

18  following unlawful actions in furtherance of this unlawful scheme:

19      a.  defendants prepared, accepted from other defendants, and/or submitted

20  "invitation letters" to U.S. Consular Officials that contained materially false

21  representations regarding the true purpose of a B-1 visa holder's travel in order to

22  deceive U.S. Consular Officials and/or Customs and Border Protection Officers and

23  secure entry of the visa holder into the United States.  These "invitation letters" stated

24  that the purpose of travel was for a "supervisor" with "specialized experience" to provide

25  services that could not be provided by United States citizens, when the true purpose was

26  to engage in activities not authorized under a B-1 visa.  The November 5, 2014 letter

27  from Robert Keller submitted to U.S. Consular Officials concerning Gregor Lesnik was on

28

instance of submission of an invitation letter written and submitted in order to mislead the officials;

b.  defendants gave directions to the workers regarding the avoidance of certain terminology, the avoidance of contract terms, and the use of misleading job titles, in order to secure entry of the visa holder into the United States.  Among other things, defendants directed foreign nationals to inform U.S. Consular Officials and/or Customs and Border Protection Officers that their destination in the United States was the same as that provided in an introduction letter; however, defendants knew that the foreign nationals had been hired to be assigned to other destinations in the United States. Among other things, defendants directed foreign nationals to inform U.S. Consular Officials and/or Customs and Border Protection Officers that they would work as supervisors - even though the foreign nationals had been told after hiring and in most instances before entry to the United States that they would not work in the United States as supervisors.  Defendants in so doing "caused" submission of false claims and false information by instructing employees how to falsify information;

c.  defendants stated in "invitation letters" different named entities so as to conceal the number of "supervisors" hired.  The reference to "Gregurc Ltd" on the November 5, 2014 letter by Robert Keller to the United States Consulate for Gregor Lesnik is one example of this;

d.  defendants intentionally chose to not obtain licenses issued by the State of California or other states or local governments so as to conceal the fact that the workers were employed to provide construction services.  Among other things, none of Eisenmann SE, Eisenmann Anlagenbau GmbH & Co. KG, Eisenmann Anlagenbau Verwaltung GmbH, Eisenmann Corporation, ISM Vuzem d.o.o., ISM Vuzem USA, Inc., or Vuzem USA, Inc. hold or held contractors licenses issued by the State of California, required for work at the Tesla plant in Fremont, California;

e.  defendants made false representations about license status and employees so

1   as to conceal the fact that the workers were employed to provide construction services.

2   For example, the California State Licensing Board did issue Contractor License # 566486

3   to "VUZEM USA COMPANY."  Licensed principal "BRONCO TOMASOVIC" represented

4   to the CSLB that this was a sole proprietorship.  Licensed principal "Bronco Tomasovic"

5   also represented that this company did not need workers compensation insurance

6   because it had no employees.  "Bronco Tomasovic" is believed to also be known as

7   "BRANKO TOMAS."  Branko Tomas is the agent for service of process of "ISM Vuzem

8   USA, Inc." with an address of 1600 Azalea Hill Drive, Unit 304, Greenville, SC 29607.

9   Branko Tomas is also the agent for service of process of "Vuzem USA, Inc." with an

10  address of 965 West 11th St. #2, San Pedro, CA 90731.  Significant is that this licensee

11  is not a corporation, is not the same legal entity as any of the named defendants herein,

12  and - regardless of the correct name or legal designation - it knowingly and intentionally

13  stated that it had no employees;

14          f.  defendants provided assistance in locating and providing worker housing, the

15  manufacturers provided site trailers for management and supervisors, and the

16  defendants worked together to create contracts for construction, employment and hiring

17  which were intended to conceal the scheme of hiring B-1 visa workers at less than

18  prevailing wages;

19          g.  defendants provided and supported security pass access to each work site

20  using information from hundreds of workers visa and passport information, which, among

21  other things, limited public viewing and access to each work site;

22          h.  defendants prepared, signed and submitted false Form I-9 for those "general

23  contractor's employees", or "subcontractor's employees", or otherwise characterized site

24  construction workers whose employment lasted more than three days.  This includes the

25  failure of defendants, and of their authorized agents, to list in their prepared, signed and

26  submitted Form I-9s the fact of employment at many work sites of literally hundreds of

27  workers who defendants knew could not all have legitimately issued B1 visas.  This

28

1   includes at the Tesla facility in Fremont, California, the Mercedes Benz plant in

2   Tuscaloosa, Alabama, the BMW plant in South Carolina, and the Dicastale facility in

3   Greenville, Michigan.  This includes the failure to document verification of the identity and

4   employment authorization of each such employee similarly situated to Gregor Lesnik,

5   including proper Alien Registration Number(s).  Plaintiffs are informed and believe and

6   thereon allege that some or all of the defendants herein failed for at least a great number

7   of persons similarly situated to Gregor Lesnik and Stjepan Papes to retain with Form I-9s

8   the originals or copies of Acceptable Documents of all or many of such workers, thus

9   making photocopies of Acceptable Documents unavailable for inspection by DHS or

10  other federal government agency; and

11       i.  Once public notification of the fraudulent visa scheme and underpayment of

12  wages became highly publicized, entities changed their names and new entities were

13  created to conceal the fraudulent scheme and the defendants' role in the scheme.

14       106.  Defendants in furtherance of this scheme also wrote and revised contracts

15  with each other, and with their clients, in order to conceal the fact that the defendants

16  were providing B-1 visa holders to perform jobs that involved skilled or unskilled labor

17  that were otherwise required to be performed by United States citizens or require

18  legitimate H-1B visa holders.  One example was the series of contracts for work at the

19  Tesla plant in Fremont, California.  These included:

20       a.  Eisenmann Corporation prepared on or about April 1, 2002 a version of its

21  Eisenmann Subcontractor General Terms and Conditions which it represents applies to

22  its relationship with ISM Vuzem USA, Inc., and with other subcontractors who provided

23  services and materials at the Tesla site in Fremont, California;

24       b.  On or about June 6, 2014 Tesla Motors, Inc., by Peter Carlson, and Eisenmann

25  Anlagenbau GmbH & Co KG by Bruno Casorati entered into an agreement titled

26  "General Terms and Conditions" for work at the Tesla site.  Robert Keller, Purchasing

27  Manager for Eisenmann Corporation, has stated that the agreement generally described

28

Tesla Motors, Inc.'s agreement to purchase, and Eisenmann Anagenbau GmbH & Co KG's agreement to sell, goods and services related to the design, engineering, and manufacturing of equipment for the application of automotive paint in the manufacturing process at the Tesla Motors facility located in Fremont, California.  This agreement provided, among other things, that Eisenmann Corporation - a United States entity - was to provide safety supervisors to assist in providing a safe working environment for workers at the Tesla site;

c.  On or about June 9, 2014 a "Purchase Order" was submitted by ISM Vuzem USA, Inc. - a United States entity - to Eisenmann Corporation - another United States entity;

d.  On or about July 24, 2014 a Purchase Order was agreed to between Eisenmann Anlagenbau GmbH & Co KG and Tesla Motors, Inc. for Body Paint Shop - Phase 1;

e.  On or about July 25, 2014 a Statement of Work was executed by Deepak Ahuja, CFO on behalf of Tesla Motors, Inc., by Gabriele DiFuria, Sales Manager, and Bruno Casorati, Senior Vice President on behalf of Eisenmann Anlagenbau GmbH & Co KG and by Dr. Link (? Sp) Lebman, Chairman, on behalf of Eisenmann Corporation;

f.  On or about July 25, 2014 a Purchase Order was executed between Eisenmann Corporation and Tesla Motors, Inc.;

g.  On or about September 29, 2014 a Minutes of Meeting was prepared for an agreement between Tesla Motors, Inc., ISM Vuzem USA, and Eisenmann Corporation for Mechanical Installation.  These minutes were initialed on each page by a representative of Subcontractor ISM Vuzem USA and by a representative of Eisenmann. This asserts an agreement reached for mechanical installation.  The MOM identified multiple other Contract Documents which were incorporated in to the MOM and each Purchase Order.  The MOM states it is for the intention of Eisenmann to engage Subcontractor to provide labor, equipment, consumables and services for paint shop

1    projects (the "'Work") for Owner Tesla Motors, Inc.  Robert Keller has identified it as

2    generally describing Eisenmann's intention to engage ISM Vuzem USA to provide labor

3    for the installation of a paint shop at the Tesla Motors, Inc. facility located in Fremont,

4    California.  The identified attendees for the Minutes of Meeting were Klemen Vuzem for

5    Subcontractor ISM Vuzem USA, and Anton Borovac, Frank Ziegler, Matthias Heydlauff,

6    and Bernd Strumberger for Eisenmann, said minutes having been prepared by Frank

7    Ziegler of Eisenmann.  The MOM was executed by Frank Ziegler and Robert Keller on

8    behalf of Eisenmann Corporation and by Branko Tomas as "Direktor" on behalf of

9    Subcontractor.  Klemen Vuzem is the nephew of Robert Vuzem and was the on site

10   manager for ISM Vuzem d.o.o. at the Tesla site during construction activities by ISM

11   Vuzem d.o.o. at that site.  Branko Tomas is the agent for service of process for both ISM

12   Vuzem USA, Inc. and Vuzem USA, Inc. and is the owner as sole proprietor doing

13   business as Vuzem USA Company which has held a license issued by the California

14   Contractors Licensing Board, a license which has a various times been suspended; and

15         h.  Contract 04-2015, dated on or about January 3, 2015, was entered into

16   between ISM Vuzem d.o.o. and ISM Vuzem USA, Inc. for ISM Vuzem d.o.o. to provide

17   fully qualified engineers for installation of a paintshop at Tesla's Fremont plant.

18         107.  Plaintiffs are informed and believe and thereon allege that Eisenmann

19   Corporation and the other Eisenmann entities have conducted the same visa application

20   procedures for its work sites in the Greater Detroit area, for the Greenville, South

21   Carolina area, for the Chatanooga, Tennessee area, for the Mobile, Alabama area, and

22   for work sites in among other places Illinois, Washington and New York.

23         108.  Plaintiffs are informed and believe and thereon allege that each of the other

24   defendants knew and participated in similar contracts and contractual relationships which

25   provided knowledge to each of the defendants of the illegal and impermissible visa

26   application procedures followed by Eisenmann Corporation and the other Eisenmann

27   entities.

28

109.  Plaintiffs are informed and believe and thereon allege that Eisenmann Corporation has conducted the same visa application procedures through other entities which at the Tesla plant in Fremont included workers who Gregor Lesnik met from:

Durr AG of Germany with a US division address of 40600 Plymouth Road, Plymouth, MI 48170-4297;

LB metal d.o.o. aka Mos LB Metal d.o.o. of Slovenia;

D2N Tehnologije d.o.o. aka D2N d.o.o. of Slovenia, and

Gregurec Ltd.

110. Defendant Gregurec Ltd is mentioned on the November 5, 2014 letter from Robert Keller to the Consulate General of the United States in connection with the B-1 visa application for Gregor Lesnik as the employer of Gregor Lesnik.  Defendant Gregurec Ltd is mentioned on many other letters written between 2009 and 2017 by Robert Keller or other Eisenmann Corporation representatives to the Consulate General of the United States in connection with the B-1 visa application for other applicants, each of which falsely stated that Gregurec Ltd would be the employer of all of these other applicants, and that all of the applicants would be supervisors.

111.  Plaintiffs are informed and believe and thereon allege that Eisenmann Corporation acted on behalf of all defendants to supply workers to work on projects in the United States for among others defendants BMW, Daimler AG, Mercedes-Benz, Dicastale, Volvo, John Deere, Tesla Motors, Inc. and REHAU Incorporated.  Other similarly situated Vuzem "B-1" visa workers who worked with Gregor Lesnik and Stjepan Papes told them that they worked at or been stated to next be assigned to work at those projects.  Further, the November 5, 2014 letter from Robert Keller to the Consulate General of the United States represented that Gregor Lesnik would be working on an Eisenmann project for BMW in South Carolina.

112.  Plaintiffs Gregor Lesnik and Stjepan were paid some money in cash.  For example, ISM Vuzem d.o.o. asserts in writing that it paid Gregor Lesnik $505 US (cash)

in March by ISM Vuzem d.o.o. supervisors and managers Primo Planovsek and Klemen Vuzem, and $1,282 US in April by by ISM Vuzem d.o.o. supervisors and managers Primo Planovsek, Davorin Hull and Klemen Vuzem.  These were in the nature of "per diem" payments.  The Vuzem entities withheld additional payment that was represented would be paid upon completion of work at the project but only upon return to Slovenia.  Gregor Lesnik was not paid the balance of what was promised to him because defendants after "crediting" themselves for the "advance payments" would not pay him the balance on the basis that Gregor Lesnik was injured on the job.

113.  The other similarly situated "B-1 visa" workers were also paid in part in cash in the nature of per diem payments California when they worked at the Tesla plant in Fremont, California, as well as at all other work sites under the same and all other "employers" in Tennessee, South Carolina, Michigan, Minnesota and Alabama as well as other locations.

114.  The cash payments in the nature of per diem payments were not tied to or based on the number of hours worked, nor were they referenced on any pay stub or statement of wages and hours.

115.  The payments in cash were to conceal the true source of payments and the true amounts of payments to the "B-1" workers.  The money was obtained for issuance to the B-1 workers without the defendants identifying to the United States the cash that came into, and went out of, the United States.

116.  These and related actions were part of the scheme which violated the provisions of, among other things, Title 8 of the United States Code, section 1324a concerning the unlawful activities in hiring, recruiting, referral, and employment of aliens in the United States knowing the aliens are or have become unauthorized aliens with respect to such employment.

116.  Subsection (f) of Subsection 1324a provides that any person or entity that engages in a "pattern or practice" of violations of subsection (a)(1)(A) or (a)(2) shall be

fined not more than $3,000 for each unauthorized alien with respect to whom such a violation occurs, imprisoned for not more than six months for the entire pattern or practice, or both.

117.  The actions by defendants evidence regular, repeated and intentional activities.

118.  The Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) added a new subsection (e) to Title 8 of the United States Code section 1324c which makes it an offense for any person, in connection with any matter within the jurisdiction of the Immigration and Naturalization Service, to knowingly and willfully fail to disclose, conceal or cover up the fact that such person, on behalf of any other person and for a fee or other remuneration, prepared or assisted in the preparation of a falsely made application for immigration benefits.

119.  The actions of defendants, as referenced above, are actions by defendants to affirmatively conceal and cover up their involvement in preparing fraudulent immigration applications.

120.  Title 8 of the United States Code, section 1324, subsection (a)(1)(A)(iv) makes it an offense for any person who encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law.

121.  Each of the actions of the defendants, as referenced above, are actions that induced Gregor Lesnik and similarly situated "B-1 visa" workers to enter the United States to work pursuant to B-1 visas obtained by fraudulent immigration applications.

122.  Title 8 of the United States Code, section1324, subsection (a)(1)(A)(v) expressly makes it an offense to engage in a conspiracy to commit or aid or abet the commission of the foregoing offenses.

123.  Title 18 of the United States Code, section 1546, subsection (a) makes it a crime to give a false statement under oath in any document required by the immigration

1   laws or regulations.

2        124.  Each and every of the actions of the defendants stated above violated the

3   provision of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B), which

4   prohibits not only submitting a claim and generating a false record, but also knowingly

5   causing a prohibited submission or generation.

6        125.  Each and every of the actions of the defendants stated above were material

7   to the issuance of B1 visas, and of the acceptance of lesser visa application fees,

8   avoiding payment of taxes including social security, FICA and medicare, and avoiding

9   payment of prevailing wages, because each of the actions, statements, and omissions

10  caused by defendants had a natural tendency to influence, or be capable of influencing,

11  immigration decisions.

## II.  CAUSES OF ACTION

### First Cause of Action

### Count one

### Federal False Claims Act 31 U.S.C. § 3729(a)(1)(A)-(B) (2009)

### against all named Defendants

17       126.  Relator realleges and incorporates by reference the allegations contained in

18  paragraphs 1 through 125 of this Complaint.

19       126.  This is a claim for treble damages and penalties under the False Claims Act,

20  31 U.S.C. § 3729, et seq., as amended in 1986 and again in 2009.

21       127.  The within False Claims Act action is brought within six years of a violation or

22  within three years of the date by which the United States should have known about a

23  violation and up to ten years after the violation.

24       128.  Through the acts described above in this Second Amended Complaint, for

25  all conduct that occurred on or after May 20, 2009, Defendants and each of them, by and

26  through their officers, agents, and employees, knowingly presented or caused to be

27  presented, false or fraudulent claims to the United States Government for payment or

28

1    approval and/or knowingly concealed, avoided or decreased its obligations to pay or

2    transmit money or property to the Government.  31 U.S.C. § 3729(a)(1)(A) (2009).

3        129.  Through the acts described above, Defendants knowingly made, used, or

4    caused to be made or used, a false record or statement material to a false or fraudulent

5    claim.  31 U.S.C. §§ 3729(a)(1)(B) (2009).

6        130.  Relator and Plaintiffs cannot now identify all of the false claims and

7    statements under which Defendants failed to make payments to the United States and/or

8    knowingly concealed, avoided or decreased their obligations to pay or transmit money or

9    property to the Government.  Relator and Plaintiffs have no control over such entities and

10   no access to records they possess.

11       131.  The United States Government, unaware of the falsity of the records,

12   statements, and claims that Defendants made or caused to be made, has to date not

13   received the payments due to it by defendants and for which it should have been paid but

14   for Defendants' illegal conduct to knowingly conceal, avoid or decrease their obligations

15   to pay or transmit money or property to the Government.

16       132.  Defendants, and each of them, authorized and ratified all the violations of

17   the False Claims Act committed by their various officers, agents, and employees.

18       133.  Defendants and each of them knowingly presented, or caused to be

19   presented, false or fraudulent claims for payment or approval to the United States,

20   including the avoidance of payment of fee, costs and obligations to transmit money or

21   property to the government.

22       134.  Said claims and false information in avoidance of payments were presented

23   with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of

24   whether or not they were false.

25       135.  Defendants have damaged, and continue to damage, the United States in a

26   substantial amount to be determined at trial as a direct, legal and proximate result of the

27   violations of the False Claims Act by defendants, and each of them.

28

136.  By virtue of the false or fraudulent claims that Defendants made or caused to be made, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

WHEREFORE Plaintiff and Relator Gregor Lesnik requests relief as described below.

**Count Two**

**Restitution Ancilliary to Federal False Claims Act Claim**

**against all named Defendants**

137.  Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 136 of this Second Amended Complaint.

138.  This is a claim for the recovery of monies due to be paid to the United States to Defendants (directly or indirectly) as a result of mistaken understandings of fact.  The United States under the mistaken belief that Defendants were entitled to receive immigration benefits did not receive payment when it should have.  The United States' mistaken belief was material to its immigration decisions and its decisions on what payment if any was due by Defendants.  Accordingly, Defendants are liable to make restitution to the United States of the amounts of the payments that should have been paid by defendants to the United States, an amount to be determined at trial.

WHEREFORE Plaintiff and Relator Gregor Lesnik requests relief as described below.

**Count Three**

**Unjust Enrichment Ancilliary to Federal False Claims Act Claim**

**against all named Defendants**

139.  Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 138 of this First Amended Complaint.

140.  This is a claim for the recovery of monies by which Defendants have been

1 unjustly enriched.

2    141.  By directly or indirectly obtaining government funds to which they were not

3 entitled, and by directly or indirectly avoiding payments to the government which were

4 due by defendants to the government, Defendants were unjustly enriched at the expense

5 of the United States, and Defendants are liable to account for and pay such amounts, or

6 the proceeds therefrom, which are to be determined at trial, to the United States.

7    WHEREFORE Plaintiff and Relator Gregor Lesnik requests relief as described

8 below.

9                            **SECOND CAUSE OF ACTION**

10                                 **Count 1**

11                         **Class action wages claims**

12    142.  Plaintiffs reallege the allegations contained in paragraphs 1 through 136 of

13 this Second Amended Complaint.

14    143.  Plaintiffs bring this cause of action as Class representatives on behalf of

15 similarly situated individuals subject to the unlawful, unfair, and fraudulent business

16 practice acts and practice of defendants and each of them, doing so pursuant to Federal

17 Rules of Civil Procedure, Rule 23.

18    144. The Wages Class Members consist of those non-management / non-exempt

19 individuals employed at the construction sites at Volkswagen, Mercedes Benz, BMW,

20 Tesla, Dicastal, Volvo, John Deere, Lax Fabricating Ltd, Keystone Automotive, Phoenix

21 Mechanical, and REHAU Incorporated from within four years prior to the filing of the

22 Complaint in this action through the date of trial of this action.

23    145.  This is a numerous class of about 3,000 individuals from multiple different

24 countries, covering work sites in multiple states for multiple years.  The class is so

25 numerous, the class is so geographically diverse, and the class members are without

26 substantial financial resources, such that joinder of individual members is impractical.

27    146.  Questions of law and fact are common to this Wages Class.  These include

28

the right to be paid prevailing wages, to be paid overtime and to be compensated under proper visa applications and visas, and the joint responsibility of defendants including the Eisenmann entities.

147.  Each of these individuals is entitled to be paid prevailing wages.  Prevailing wages is the average wage paid to similarly employed workers in a specific occupation in the area of intended employment.  The requirement to pay prevailing wages as a minimum is true of most employment based visa programs involving the Department of Labor.

148.  The prevailing wages due to the class of injured workers is capable of clear and definite identification.

149.  The Immigration and Nationality Act (INA) requires that the hiring of a foreign worker will not adversely affect the wages and working conditions of U.S. workers comparably employed. To comply with the statute, the Department's regulations require that the wages offered to a foreign worker must be the prevailing wage rate for the occupational classification in the area of employment.

150.  The prevailing wage rate is defined as the average wage paid to similarly employed workers in a specific occupation in the area of intended employment. Effective January 4, 2010, employers can obtain this wage rate by submitting a request to the National Prevailing Wage Center (NPWC), or by accessing other legitimate sources of information such as the Online Wage Library, available for use in some programs.  The requirement to pay prevailing wages as a minimum is true of most employment based visa programs involving the Department of Labor. In addition, the H-1B, H-1B1, and E-3 programs require the employer to pay the prevailing wage or the actual wage paid by the employer to workers with similar skills and qualifications, whichever is higher.

151.  The Department of Labor, Bureau of Labor Statistics (BLS) has provided wage data collected under the Occupational Employment Statistics (OES) program for use in the Foreign Labor Certification process since 1998. The wage data is available on

the Foreign Labor Certification Data Center Online Wage Library (OWL), found at the

following website: http://www.flcdatacenter.com/.  For example, simply entering

Tuscaloosa, Alabama, the time period of July 2017 to June 2018, and Supervisors of

Construction and Extraction Workers generates the following:

You selected the All Industries database for 7/2017 - 6/2018. Your search returned the
following:
Area Code:
46220
Area Title:
Tuscaloosa, AL MSA
GeoLevel:
1
OES/SOC Code:
47-1011
OES/SOC Title:
Supervisors of Construction and Extraction Workers
Level 1 Wage:
$19.66 hour - $40,893 year
Level 2 Wage:
$24.24 hour - $50,419 year
Level 3 Wage:
$28.82 hour - $59,946 year
Level 4 Wage:
$33.40 hour - $69,472 year
Mean Wage (H-2B):
$28.82 hour - $59,946 year
This wage applies to the following O*Net occupations:
47-1011.00 First-Line Supervisors of Construction Trades and Extraction Workers
Directly supervise and coordinate activities of construction or extraction workers.
O*Net™ JobZone: 3 -- Education & Training Code: No Level Set
47-1011.03 Solar Energy Installation Managers
Direct work crews installing residential or commercial solar photovoltaic or thermal
systems.
O*Net™ JobZone: 3 -- Education & Training Code: No Level Set

     152.  Since September 1999, the Standard Occupational Classification (SOC) has

1  been used by the OES program to classify occupational wage information. The SOC

2  provides a common language for categorizing occupations. It also serves as the

3  framework for information being gathered through the Department of Labor's

4  Occupational Information Network (O*NET). The O*NET provides the general public

5  information on skills, abilities, knowledge, tasks, work activities, and the specific

6  vocational preparation levels associated with occupations. O*NET information can be

7  found at http://online.onetcenter.org/.

8      153.  Wage data from the OES survey and occupational information in O*NET are

9  both classified by the SOC, reducing the need to use crosswalks to connect wages to

10  occupational requirements.

11      154.  These determinations have been well known and easy to access since the

12  publication of H2B regulation in December 2008 and the adoption of the regulations on

13  January 19, 2009.

14      155.  The numbers of hours worked at each site by all workers is subject to clear

15  and common identification.  All of the aggrieved workers were transported - from

16  company rented and controlled temporary housing - to and from job sites by vans or

17  buses provided by the defendant entities.  They thus all arrived and all departed at the

18  same time each day.  The entry logs for each site, maintained by the security personnel

19  at each site, identify the dates and times of entry and departure to the job site.

20      156.  The claims of Gregor Lesnik and of Stjepan Papes are typical of the claims

21  of the class.

22      157.  Each and every of these non-management employees were promised work

23  in the same manner as was promised to Gregor Lesnik and Stjepan Papes and as

24  represented on the "introduction letter" submitted for obtaining the B-1 visas.  The proper

25  basis for issuance of visas is to require payment of prevailing wages to each and every of

26  the aggrieved individuals.  Instead, they were paid in flat fee monthly contract rates under

27  minimum contracts of € 800 per month.

28

158.  Each and every of these non-management employees was not paid compensation, and was not provided work, under the terms and conditions promised and represented in the visa applications in the same way as Gregor Lesnik and Stjepan Papes were denied compensation and work.

159.  Further, each and every of these non-management employees was not paid prevailing wages in the same way as Gregor Lesnik and Stjepan Papes were denied prevailing wages.

160.  Further, each and every of these non-management employees was not paid minimum wages in the same way as Gregor Lesnik and Stjepan Papes were denied minimum wages.

161.  Further, each and every of these non-management / non-exempt employees was not paid overtime wages in the same way as Gregor Lesnik and Stjepan Papes were denied overtime wages.

162.  Each and every of these non-management employees were deprived of premium wages for failure to provide mandated meal breaks in the same way as Gregor Lesnik and Stjepan Papes were denied premium wages.

163.  Defendants have failed to keep records of hours worked by employees in violation of both state law, such as California Labor Code sections 1174 and 1175, and federal law, even though each of the defendants are and were aware of the hours worked by the employees.

164.  At Defendants' requests, Plaintiffs and the other similarly situated employees provided services in the form of work for Defendants.  These services had a reasonable value which should have been compensated at the prevailing wages hourly rate.

165.  Plaintiffs and other similarly situated employees were not paid on a prevailing wage basis, or provided overtime, or provided premium pay.

166.  Each of defendants are persons who, directly or indirectly, or through an

1  agent or any other person, engaged, suffered, or permitted the Class members to work,

2  or exercised control over the wages, hours, and working conditions of the Class

3  members.  Each of the defendants were employers, dual employers, special employers,

4  or statutory employers of the Class members, and each of them.

5       167.  Defendants and each of them failed to compensate the Plaintiffs and the

6  other similarly situated employees the reasonable value of these services performed on

7  Defendant's behalf.

8       168.  Defendants and each of them have been and are being unjustly

9  enriched at the expense of Plaintiffs and the other similarly situated  employees because

10  Plaintiffs and the others were not properly compensated for their work.

11       169.  Each of defendants participated in the wrongs or authorized or directed that

12  the wrongs be done.  Each is a significant defendant in that significant relief is sought

13  against each and the conduct of each forms a significant basis for the claims asserted by

14  the Class.

15       170.  Plaintiffs will fairly and adequately protect the interests of the class.

16       171.  Questions  of law or fact common to the members of the class predominate

17  over any questions affecting individual members.  A class action is superior to other

18  available methods for the fair and efficient adjudication of the controversy.

19       172.  Class certification is appropriate for this cause of action on behalf of this

20  Class.

21       173.  Plaintiffs therefore request an accounting against these defendants on

22  behalf of the Class.

23       174.  Plaintiffs therefore further request that defendants and each of them be

24  ordered to disgorge the money due to the Class, and that these defendants be ordered to

25  make restitution included ordering these employers to pay to the Class members the

26  prevailing wages and other compensation due to the Class members.

27       175. Plaintiffs further requests that the time and expenses that Plaintiffs incurred

28

1  and will incur on behalf of the Class be paid to them as an inducement to lend their

2  names and services to the Class.

3      176.  Plaintiffs further request an award of reasonable attorneys fees for pursuit of

4  this recovery on behalf of the Class members.

5      WHEREFORE Plaintiffs Gregor Lesnik and Stjepan Papes, on behalf of

6  themselves as Class representative and on behalf of the Wages Class members

7  requests relief as described below.

8                              **Count 2**

9                     **FLSA Collective Action**

10     177.  Plaintiffs reallege the allegations contained in paragraphs 1 through 176 of

11  this Second Amended Complaint.

12     178.  Plaintiffs bring this cause of action as an opt-in collective action on behalf of

13  themselves and all similarly situated individuals

14     179.  Plaintiffs bring this action on behalf of themselves and all other similarly

15  situated individuals ("FLSA Collective") for violations of the federal Fair Labor Standards

16  Act, 29 U.S.C. § 201 et seq. ("FLSA")  pursuant to the FLSA, 29 U.S.C. § 216(b).

17  Plaintiffs and the FLSA Collective were, or are, employed by Defendants as Full Time

18  Employees across the United States during the applicable statutory period.

19     180.  Plaintiffs and the FLSA Collective are current and former employees of

20  Defendants within the meaning of the FLSA and were employed by Defendants within

21  three years of the date this Complaint was filed. See 29 U.S.C. § 255(a).

22     181.  At all relevant times, the gross annual sales made or business done by

23  defendants and each of them has been in excess of $500,000.

24     182.  At all relevant times, Defendants and each of them are, and have been, an

25  "employer" engaged in interstate commerce and/or the production of goods for

26  commerce, within the meaning of the FLSA, 29 U.S.C. § 203(d).

27     183.  Plaintiffs and the FLSA Collective were not paid minimum wages, and were

28

1   not paid overtime.

2   184.  Plaintiff Gregor Lesnik, for example, worked a 13 days on, one day off

3   schedule, with shifts that were at least ten and typically twelve hours in length.

4   Accordingly, Plaintiff Gregor Lesnik worked 50 out of 54 days, and typically worked at

5   least eighty(80) hours per week.  Plaintiff Gregor Lesnik was paid 800 Euros (at all times

6   mentioned herein for all claims by the FLSA Collective being less than $950) - or less -

7   per month.  All plaintiffs working for all defendants when in the United States worked 250

8   - or more - hours per month.

9   185.  Plaintiffs thus bring this cause of action on behalf of themselves and all

10  similarly-situated individuals. The proposed FLSA Collective class is defined as follows:

11           All persons who worked under B-1 visas in the United States at the construction

12           sites at Volkswagen, Mercedes Benz, BMW, Tesla, Dicastal, Volvo, John Deere,

13           Lax Fabricating Ltd, Keystone Automotive, Phoenix Mechanical, and REHAU

14           Incorporated in the three years prior to the filing of this complaint working for the

15           defendants as employers, joint employers, or statutory employers.

16  186.  Plaintiffs by this Complaint consent to be a part of this action pursuant to 29

17  U.S.C. § 216(b).

18  187.  As this case proceeds, it is likely that other individuals will file consent forms

19  and join as "opt-in" plaintiffs.

20  188.  As described in the preceding paragraphs, during the applicable statutory

21  period, Plaintiffs and members of the proposed FLSA Collective routinely worked in

22  excess of forty (40) hours in a workweek without receiving either minimum wages or

23  overtime compensation.

24  189.  Defendants and each of them willfully engaged in a pattern of violating the

25  FLSA by knowingly failing to pay its Full Time Employees minimum wages or overtime

26  compensation.  Defendant's conduct constitutes a willful violation of the FLSA within the

27  meaning of 29 U.S.C. § 255.

28

190.  Defendants and each of them are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective for minimum wages and for overtime. Accordingly, notice of this action should be sent to the FLSA Collective. There are numerous similarly-situated current and former employees of Defendants who have suffered from Defendants' practices and who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

191.  The FLSA, 29 U.S.C. § 206 requires each employer to pay minimum wages of $7.25 per hour.

192.  The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

193.  As described in the preceding paragraphs, Defendant suffered and permitted Plaintiffs and the FLSA Collective to routinely work more than forty (40) hours a workweek while paying them less than minimum wages and without overtime compensation.

194.  Plaintiffs and the FLSA Collective are not exempt from the minimum wages or overtime requirements of the FLSA. See 29 U.S.C. § 213.

195.  Defendants' actions, policies, and practices as described throughout this Complaint violate the FLSA's minimum wages and overtime requirements by regularly and repeatedly failing to compensate Plaintiffs and the FLSA Collective at the required minimum wage rate and without payment of the required overtime rate.

196.  As the direct, legal and proximate result of Defendants' unlawful conduct, Plaintiffs and the FLSA Collective have suffered and will continue to suffer a loss of income and other damages. Plaintiffs and the FLSA Collective are entitled to liquidated damages and attorney's fees and costs incurred in connection with this claim.  19 U.S.C.

1   § 216.

2       197.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

3   within the meaning of 29 U.S.C. § 255(a).  Each of the defendant employers had actual

4   or constructive knowledge of that work and of these practices.  Defendants knew or

5   showed reckless disregard for the fact that its compensation practices were in violation of

6   the FLSA.

7       WHEREFORE Plaintiffs, on behalf of themselves and those similarly situated,

8   pray for judgment against Defendants as hereinafter set forth.

9                           **THIRD CAUSE OF ACTION**

10                              **Count 1**

11                              **Trafficking**

12      198.  Plaintiffs reallege the allegations contained in paragraphs 1 through 197 of

13  this Second Amended Complaint.

14      199.  Federal law proscribes labor trafficking, and provides for a civil cause of

15  action against perpetrators, or persons who have knowingly benefitted, financially or by

16  receiving things of value from participation in a venture which defendant s knew or should

17  have know has engaged in an act in violation of the federal trafficking statutes.

18      200.  Federal trafficking statutes define human trafficking as "the recruitment,

19  harboring, transportation, provision, or obtaining of a person for labor or services through

20  the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude,

21  peonage, debt bondage, or slavery."  22 U.S.C. § 7102(9) (2012).

22      201.  The use of force, fraud or coercion included in the case of Gregor Lesnik the

23  refusal to pay promised benefits, the attempt to place him on a plane while he had a risk

24  of death from a pulmonary embolism, the subsequent withholding of return

25  transportation, the threat made verbally by Vuzem manager Davorin Hull that "this will not

26  go well for you", the statements made in person by Ivan Vuzem and Robert Vuzem that

27  he would be subject to civil action, and the taking of civil action by, on behalf of, or for the

28

1   intended benefit of the Vuzem entities to obtain judgments for monetary damages while

2   Gregor Lesnik was in a California hospital and unavailable to respond.  In the case of all

3   Vuzem direct employees it included the threat to withhold pay and to charge against pay

4   if the workers were sick and did not work whenever asked even if sick.

5       202.  This use of force, fraud and coercion also included in the case of both

6   Vuzem direct workers and other workers at the various manufacturing sites it included

7   the withholding of medical benefits and the threat of loss of compensation if they became

8   injured on the job and reported that injury.

9       203.  The coercion and threats included at all times against Plaintiffs and against

10   other B1 visa workers the implied threat of withholding visa and immigration status, entry

11   and departure from the United States

12       204.  These threats were not specific to the Vuzem workers, but to all of the

13   workers under the Eisenmann driven labor trafficking scheme.  Eisenmann Corporation

14   and the German based Eisenmann entities directly employed field managers and project

15   managers for the work sites, and thus in turn controlled contracting and hiring for the

16   other entities.  Safety supervisors working directly for Eisenmann Corporation who stated

17   concerns about safety and work conditions were fired or had their contracts terminated.

18   Workers who expressed concern about safety and work conditions were either

19   transferred or not provided further work.

20       205.  These and similar actions and threats by defendants were and are also in

21   violation of proscriptions against human trafficking under Alabama law.  Alabama

22   prohibits knowingly subjecting a class to labor servitude through the use of coercion or

23   deception, including by one or more of:

24       destroying, concealing, removing, confiscating, or withholding from the person or

25   another person, or threatening to destroy, conceal, remove, confiscate, or withhold from

26   the person or another person, the person's or any person's actual or purported

27   government records, immigration documents, identifying information, or personal or real

28

1  property;

2          exposing or threatening to expose any fact or information that if revealed would

3  tend to subject a person to criminal prosecution, criminal or immigration proceedings,

4  hatred, contempt, or ridicule; and

5          threatening to report the person or another person to immigration officials or to

6  other law enforcement officials or otherwise blackmailing or extorting the person or

7  another person.

8          206.  Alabama law provides for civil action against any person who knowingly

9  benefits, financially or by receiving anything of value, from participation in a venture or

10  engagement for the purpose of labor servitude.

11          207.  California law similarly prohibits coercion or duress to obtain forced labor,

12  including by the same means and methods prohibited under federal and Alabama law,

13  including by the abuse or threatened abuse of the legal process.

14          208.  Congress has found that "[t]rafficking in persons substantially affects

15  interstate and foreign commerce." 22 U.S.C. § 7101(b)(12).  In this instance it affected

16  the rights of the B1 visa workers to be paid prevailing wages, and affected the reduced

17  expenses and thus increased profits to the defendants herein.

18          209.  Defendants and each of them have knowingly recruited, enticed, solicited,

19  induced, harbored, transported, held, restrained, provided, maintained, subjected, or

20  obtained by the above and other means Plaintiffs for the purpose of labor servitude, or

21  have aided and abetted in these actions, or have knowingly benefitted, financially or by

22  receiving value from participation in the scheme which defendants knew or should have

23  known engaged in acts of trafficking, or have knowingly obtained financial benefits from

24  the labor servitude.

25          210.  Plaintiffs are entitled under federal law to actual damages, punitive

26  damages, and reasonable attorney's fees.  18 USC § 1595.

27          211.  Plaintiffs are entitled under Alabama Code section 13A-6-155 (a) (4) to

28

recovery of the greater of the value of the human trafficking victim's labor as guaranteed under the minimum wage and overtime provisions of the Fair Labor Standards Act or the gross income or value to the defendant of the victim's labor servitude engaged in by the victim while in the human trafficking situation.

212.  Plaintiffs are entitled under California law to actual damages, compensatory damages, punitive damages, injunctive relief, or any other appropriate relief, as well as attorney's fees and costs.

213.  Plaintiffs Gregor Lesnik and Stjepan Papes seek recovery of the reasonable value of their work under prevailing wages standards, as well as recovery of such other damages as may be proved at trial.

214.  Plaintiffs also request recovery of attorneys fees and costs.

WHEREFORE Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### Count 2

### Rule 23 Class Action Trafficking

215.  Plaintiffs reallege the allegations contained in paragraphs 1 through 214 of this Second Amended Complaint.

216.  Plaintiffs Gregor Lesnik and Stjepan Papes bring this private civil cause of action on behalf of Plaintiffs bring this cause of action as Class representatives on behalf of similarly situated individuals subject to the unlawful, unfair, and fraudulent labor trafficking of defendants and each of them, doing so pursuant to Federal Rules of Civil Procedure, Rule 23.

217.  The Class Members consist of those non-management / non-exempt individuals employed at the construction sites at Volkswagen, Mercedes Benz, BMW, Tesla, Dicastal, Volvo, John Deere, Lax Fabricating Ltd, Keystone Automotive, Phoenix Mechanical, and REHAU Incorporated from within seven years prior to the filing of the Complaint for all Class Members who worked in California and from within four years

1  prior to the filing of the Complaint for all other Class Members.

2      218.  This is a numerous class of about 3,000 individuals from multiple different

3  countries, covering work sites in multiple states for multiple years.  The class is so

4  numerous, the class is so geographically diverse, and the class members are without

5  substantial financial resources, such that joinder of individual members is impractical.

6      219.  Questions of law and fact are common to this class.  These include the right

7  to be paid prevailing wages, to be free from direct and implied coercion based on their

8  entry to the United States under B1 visas and the threat of denied entry or process to

9  cause them to have to leave the United States, to be free from coercion and duress in

10  being forced to work in unsafe conditions and for long hours for days on end, to be free

11  from direct and implied coercion and duress of losing compensation if they did not work

12  long hours for days at a time under unsafe working conditions at the manufacturing sites

13  for Volkswagen, Mercedes Benz, BMW, Dicastal, Tesla, LAX Fabricating, Phoenix

14  Mechanical, REHAU Incorporated and other companies.

15      220.  Each of defendants participated in the wrongs or authorized or directed that

16  the wrongs be done.  Each is a significant defendant in that significant relief is sought

17  against each and the conduct of each forms a significant basis for the claims asserted by

18  the Class.

19      221.  Plaintiffs will fairly and adequately protect the interests of the class.

20      222.  A class action is superior to other available methods for the fair and efficient

21  adjudication of the controversy.

22      223.  Class certification is appropriate for this cause of action on behalf of this

23  Class.

24      224.  Plaintiffs therefore request that defendants and each of them be ordered to

25  pay to Plaintiffs and each of them the gross income or value to the defendant of the

26  Class members' servitude engaged in by the victim while in the human trafficking

27  situation as measured by prevailing wages standards.

28

225.  Plaintiffs further requests that the time and expenses that Plaintiffs incurred and will incur on behalf of the Class be paid to them as an inducement to lend their names and services to the Class.

226.  Plaintiffs further request an award of reasonable attorneys fees for pursuit of this recovery on behalf of the Class members.

WHEREFORE Plaintiffs Gregor Lesnik and Stjepan Papes, on behalf of themselves as Class representative and on behalf of Class members requests relief as described below.

**FOURTH CAUSE OF ACTION**

**Rule 23 RICO Cause of Action**

227.  Plaintiffs reallege the allegations contained in paragraphs 1 through 226 of this Second Amended Complaint.

228.  Plaintiffs Gregor Lesnik and Stjepan Papes bring this private civil cause of action pursuant to the provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), alleging a violation of Title 18 U.S.C. § 1962(a), (b), (c) and (d).  This is brought both individually and on behalf of all other RICO Class members who were injured by the same pattern of racketeering activity as Plaintiffs.  This is brought against an enterprise consisting of all named defendants.

229.  It is unlawful under RICO for anyone associated with an enterprise to conduct, or to participate in conducting, the affairs of the enterprise through a pattern of racketeering activity.

230.  Defendants, and each of them, by the above-described conduct, participated in a criminal enterprise through a pattern of racketeering activity that affected interstate and foreign commerce.  Defendants, and each of them, were associated in fact in, and engaged in, the activities which affect interstate commerce.

231.  Defendants and each of them were employed or associated with the activity and defendants and each of them conducted or participated, directly or indirectly, in the

1 | conduct of the enterprise's affairs.  Each of defendants knowingly agreed to facilitate a

2 | scheme that includes the operation or management of a RICO enterprise

3 | 232.  The defendants in conducting the affairs of the enterprise utilized interstate

4 | communications facilities by engaging in long distance telephone conversations; by

5 | traveling in interstate commerce from one state to another; and by causing the

6 | transmission of funds and/or other communications by mail and/or by wire in interstate

7 | commerce from one state to another

8 | 233.  The conduct of defendants constitute and constituted racketeering activity in

9 | that their actions were in violation of Title 18, United States Code:

10 | a.  relating to mail fraud (§ 1341) and wire fraud (§ 1343) by making false and

11 | fraudulent representations and carrying the scheme out through the use of the mails and

12 | interstate wire communications.  This includes the invitation letters, and the support for

13 | the invitation letters, referenced in paragraphs 5 through 10 of this Second Amended

14 | Complaint;

15 | b.  relating to fraud in foreign labor contracting (§ 1351) by knowingly and with

16 | intent to defraud recruited, solicited, or hired a person outside the United States and/or

17 | caused another person to recruit, solicit, or hire a person outside the United States, or

18 | attempted to do so, for purposes of employment in the United States by means of

19 | materially false or fraudulent pretenses, representations or promises regarding that

20 | employment.  This includes representations of applicability of B1 visas and of prevailing

21 | wages as due under more appropriate H2 visas, work hours, and accommodations;

22 | c.  relating to fraud and misuse of visas, permits, and other documents (§ 1546) by

23 | obtaining visas knowing them to have been procured by means of false claims or

24 | statement, or to have been otherwise procured by fraud or unlawfully obtained.  This

25 | includes the obtaining and assisting in obtaining thousands of B1 visas based on false

26 | representation;

27 | d.  relating to forced labor (§ 1589) by obtaining labor or services by one or more

28 |

1   of the following means: force or threat of force; harm or serious threats of harm; abuse

2   and threatened abuse of the law and legal process; and a scheme, plan, or pattern

3   intended to cause the workers to believe that, if the worker(s) did not perform such labor

4   or services, that person or another person would suffer serious harm or physical restraint;

5       e.  relating to the laundering of monetary instruments (§ 1956) by concealing the

6   transfer of money used to pay workers; and

7       f.  constituting acts which are indictable under the Immigration and Nationality Act,

8   section 274 and 277 (relating to bringing in and harboring certain aliens and aiding or

9   assisting in the same) including by encouraging and/or inducing aliens to come to and

10  enter the United States, knowing or in reckless disregard of the fact that such coming to

11  or entry is or will be in violation of law.

12      234.  Each of the defendants knowingly, voluntarily and intentionally committed at

13  least two acts of racketeering activity alleged herein with ten years after the commission

14  of a prior act of racketeering activity.

15      235.  The actions of defendants alleged herein were related to the scheme of visa

16  fraud and continues to date to form a pattern of racketeering.  The acts have the same or

17  similar purposes, results, participants, victims, and methods of commission.  The actions

18  by the defendants are not isolated events.  The predicate acts have extended over a

19  substantial period of time and are continuing.  The predicate acts involve and affect

20  interstate commerce.

21      236.  Plaintiffs Stjepan Papes and Gregor Lesnik, and each of the individuals

22  similarly situated to them who worked under fraudulently obtained B-1 visas, have been

23  injured in their work and property by the conduct constituting the violations.

24      237.  The Class Members consist of those non-management / non-exempt

25  individuals employed at the construction sites at Volkswagen, Mercedes Benz, BMW,

26  Tesla, Dicastal, Volvo, John Deere, Lax Fabricating Ltd, Keystone Automotive, Phoenix

27  Mechanical, and REHAU Incorporated from within four years prior to the filing of the

28

1  Complaint in this action through the date of trial of this action who entered the United

2  States under B1 visas obtained by false and fraudulent invitation letters, certificates of

3  employment, and other representations of defendants .

4      238. This is a numerous class of about 3,000 individuals from multiple different

5  countries, covering work sites in multiple states for multiple years.  The class is so

6  numerous, the class is so geographically diverse, and the class members are without

7  substantial financial resources, such that joinder of individual members is impractical.

8      239.  Questions of law and fact are common to this class.  These include violation

9  of each of the predicate acts alleged in paragraph 233 and the right to be paid proper

10 wages including the right to be paid prevailing wages, and overtime wages.

11     240.  Defendants, and each of them, were and employed by or associated with the

12 enterprise.

13     241.  Defendants agreed to and did conduct and participate in the conduct of the

14 enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose

15 of intentionally defrauding Plaintiffs and the RICO Class Members.

16     242.  The actions of the defendants individually and collectively constitute a

17 pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

18     243.  Defendants and each of them have directly and indirectly conducted and

19 participated in the conduct of the enterprise's affairs through the pattern of racketeering

20 and activity described above, in violation of 18 U.S.C. § 1962(c).

21     244.  As a direct and proximate result of the Defendants' racketeering activities

22 and violations of 18 U.S.C. § 1962(c), Plaintiffs and the Class Members have been

23 injured in their business and property in that they were not paid prevailing their proper

24 income.

25     WHEREFORE Plaintiffs on behalf of themselves and the RICO Class Members

26 request that this Court enter judgment against the Defendants and each of them for

27 actual damages, treble damages and attorneys' fees.

28

### III. PRAYER AND CLAIMS FOR RELIEF

WHEREFORE Relator Lesnik, on behalf of himself and the United States Government, and Plaintiff Stjepan Papes individually, and Plaintiffs Stjepan Papes and Gregor Lesnik on behalf of the Wages Class, the FLSA Collective, the Trafficking Class, and the RICO Class pray:

1. That Defendants cease and desist from violating the provisions of the United States Code and the regulations of the United States concerning visa applications and employment of alien workers enumerated in this Second Complaint;

2. That this Court enter judgment against Defendants for the amount of the United States' damages, trebled as required by law, and such civil penalties as are authorized by law, together with all such further relief as may be just and proper;

3. That in the event the United States Government proceeds with the qui tam claims that Relator Lesnik be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

4. That in the event the United States Government does not proceed with the qui tam claims that Relator Lesnik be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

5. That Relator be awarded all fees, costs, and expenses incurred in connection with this action, including attorneys' fees, costs, and expenses;

6. That Plaintiffs be awarded unpaid and underpaid wages;

7. That Plaintiffs be awarded for wages due for work in California for waiting time penalties pursuant to Labor Code section 200 et seq.;

8. That Plaintiffs be awarded for wages due for work in California, trebling of damages for the clear failure to pay pursuant to Labor Code section 206;

9. For wages due to Plaintiffs, and to the for work in California, doubling of wages damages pursuant to the provisions of Labor Code section 972;

10. For damages measured as the difference between the employment as

1  represented by defendants and the compensation actually received by Plaintiffs and the

2  Wages Class members

3      11.  For damages measured as the difference between the wages due under the

4  FLSA to the Plaintiffs and the FLSA Collective and the compensation actually received

5  by Plaintiffs and the FLSA Collective;

6      12.  For damages sustained by Plaintiffs due to labor trafficking;

7      13.  For damages commonly sustained by the Trafficking Class members;

8      14.  For damages and trebling of damages sustained by the RICO Class

9  members;

10     15.  For reasonable attorneys' fees;

11     16. For costs of suit;

12     17.  For injunctive relief to prevent harassment and intimidation; and

13     18. For such other relief as the Court may deem just and proper.

14

15  Dated:  July 18, 2017

16                              William C. Dresser
                                Attorneys for Plaintiff and Relator Gregor
17                              Lesnik and Plaintiff Stjepan Papes

18                          **DEMAND FOR JURY TRIAL**

19     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator and Plaintiffs

20  hereby demand a trial by jury of all of the claims asserted in this Second Amended

21  Complaint so triable.

22

23  Dated:  July 18, 2017

24                              William C. Dresser
                                Attorneys for Plaintiff and Relator Gregor
25                              Lesnik and Plaintiff Stjepan Papes

26  Lesnik\USexrelLesnik\Federal\SAC.718

27

28