1  **McGuireWoods LLP**
   Sylvia J. Kim (SBN 258363)
2  Two Embarcadero Center, Suite 1300
   San Francisco, CA 94111-3821
3  Tel:  (415) 844-9944
   Fax:  (415) 844-9922
4  skim@mcguirewoods.com

5
   Jeremy S. Byrum (*Pro Hac Vice*)
6  Nicholas J. Giles (*Pro Hac Vice*)
   800 E. Canal Street, Gateway Plaza
7  Richmond, VA  23219
   Tel:  (804) 775-1000
8  Fax:  (804) 775-1061
   jbyrum@mcguirewoods.com

9
   Attorneys for Defendants MERCEDES-BENZ
10 U.S. INTERNATIONAL, INC. and REHAU, INC.

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                         SAN JOSE DIVISION

14

15 UNITED STATES OF AMERICA, ex rel.          Case No. 16-CV-01120-LHK
   GREGOR LESNIK; STJEPAN PAPES,
16                                            **REPLY IN SUPPORT OF MOTION TO**
                   Plaintiffs,                **DISMISS PURSUANT TO RULE 12(b)(6)**
17                                            **ON BEHALF OF DEFENDANTS**
                   vs.                        **MERCEDEZ-BENZ U.S.**
18                                            **INTERNATIONAL, INC. AND REHAU**
   EISENMANN SE, et al.                       **INC.**
19
                   Defendants.
20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

    I.    RELATORS' OPPOSITION MISREPRESENTS THE "FACTS" OF
        THIS CASE BY RECASTING CONCLUSORY AND GENERALIZED
        ALLEGATIONS AS SPECIFIC ONES. .............................................................. 2

    II.    THE SECOND AMENDED COMPLAINT DOES NOT PLAUSIBLY
        ALLEGE A VIOLATION OF THE FALSE CLAIMS ACT BY MBUSI
        OR REHAU. ....................................................................................................... 3

        A.    Relators' Allegations as to MBUSI and REHAU Fall Well Short
             of Rule 9(b)'s Heightened Pleading Threshold ........................................ 4

        B.    Relators' Attempt to Invoke New Provisions of the FCA Is
             Improper and Unavailing in Any Event ..................................................... 4

    III.    THE SECOND AMENDED COMPLAINT DOES NOT PLAUSIBLY
        ALLEGE A VIOLATION OF FORCED LABOR LAWS BY MBUSI
        OR REHAU. ....................................................................................................... 7

    IV.    THE SECOND AMENDED COMPLAINT DOES NOT PLAUSIBLY
        ALLEGE A RICO VIOLATION BY MBUSI OR REHAU. .............................. 9

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ................ 5, 6

*Dang v. CitiMortgage, Inc.*, No. 11-05036, 2012 WL 762329 (N.D. Cal. Mar. 7, 2012) .............. 10

*Headley v. Church of Scientology Int'l*, 687 F.3d 1173 (9th Cir. 2012) .......................................... 7

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ................................................................ 8

*Minor v. Fedex Office & Print Servs., Inc.*, 182 F. Supp. 3d 966 (N.D. Cal. 2016) ........................ 5

*Muchira v. Al-Rawaf*, 850 F.3d 605 (4th Cir. 2017) ....................................................................... 9

*United Centrifugal Pumps v. Schotz*, No. 89-2291, 1991 WL 274232 (N.D. Cal. June 12, 1991). 10

*United States ex rel. Friedland v. Envt'l Chem. Corp.*, No. 00-3075, 2003 WL 23315783 (N.D. Cal. Dec. 30, 2003) ...................................................................................................................... 6

*United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ............................ 4

*United States v. Harrison*, 942 F.2d 751 (10th Cir. 1991) .............................................................. 7

*United States ex rel. Marion v. Heald Coll., LLC*, No. 12-02067, 2015 WL 4512843 (N.D. Cal. July 24, 2015) ............................................................................................................................... 7

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016) ................ 6

## Statutes

18 U.S.C. § 1546 ................................................................................................................................ 6

31 U.S.C. § 3729 ........................................................................................................................ 4, 5, 6

8 U.S.C. § 1182 ................................................................................................................................. 6

Reply of Mercedes-Benz U.S. Int'l, Inc. and REHAU INC.
                                            Case No. 16-CV-01120-LHK

# REPLY

Defendants Mercedes-Benz U.S. International, Inc. ("MBUSI") and REHAU, Inc. ("REHAU") submit the following reply in support of their previously filed Motion to Dismiss (D.E. 119) (hereinafter, "opening brief") and in rebuttal to Relators' response in opposition thereto (D.E. 135) (hereinafter, "opposition" or "opp.").

## INTRODUCTION

In their opposition to MBUSI and REHAU's opening brief, Relators broadly reimagine and recast their Second Amended Complaint ("SAC"). Indeed, the pleading that Relators purport to defend here bears little resemblance to the one that they actually filed, and which actually governs in this case. Refocusing the inquiry—as this Court must—on the SAC itself confirms that each of Relators' claims fails as to MBUSI and REHAU. Relators' assurance, for instance, that they have supplied the particularity required by Rule 9(b) is undercut by the very allegations they cite (though generally avoid quoting), allegations that do nothing more than ascribe vague and conclusory actions to all "defendants." Relators' defense of their claim under the False Claims Act, moreover, is equally self-defeating, as they devote much of their opposition to defending their cause of action under provisions that they *did not even plead*. And while they maintain that their allegations are sufficient to sustain claims for both human trafficking and racketeering, Relators point to no factual allegations in the SAC that would render such liability even remotely plausible. At base, Relators' facts simply cannot support the breadth of the case they have pled.

The sources to which Relators turn for support only underscore these legal and factual deficiencies. In an attempt to support their deficient theory of liability under the FCA, for instance, they cite only to a *complaint* filed in another unrelated case that was never even adjudicated. And Relators' sources of factual support are no more convincing. They invoke, for instance, a newspaper profile of one of the relators himself. Quite apart from being an improper source of factual allegations at this stage, the article predictably rehashes many of the same allegations made in this case regarding that relator's work at a Tesla factory in California.

In an attempt to distract from this reality, Relators retreat to the law of conspiracy. But the law of conspiracy is not a talisman that can be invoked to avoid the requirements of Rules 8 and

9(b).  As Relators would have it, MBUSI and REHAU may be held liable as *co-conspirators* for all the alleged wrongdoing by others, because Relators baldly allege that they "knew" about it.  But this evinces a misunderstanding of both federal pleading standards and the elements of conspiracy liability.  Not only do such conclusory assertions of knowledge fail to make that fact *plausible* under Rule 8, but a conspiracy is not formed by mere knowledge alone.  Indeed, were Relators correct, a plaintiff could reach discovery on a potentially limitless conspiracy claim simply by alleging one act of wrongdoing by one defendant, and then baldly asserting that every other entity that contracted with that business "knew" about it.  That is of course not the law.  To sufficiently allege a conspiracy, Relators must supply facts to establish an actual *agreement* between the parties to pursue some unlawful end.  Nothing in the SAC—nor even in Relators' opposition—comes close to doing so.

As MBUSI and REHAU established in their opening brief, Relators' claims against those two defendants fail to state a claim upon which relief may be granted.  For this reason, the SAC should be dismissed with prejudice.

<strong>ARGUMENT</strong>

**I.  RELATORS' OPPOSITION MISREPRESENTS THE "FACTS" OF THIS CASE BY RECASTING CONCLUSORY AND GENERALIZED ALLEGATIONS AS SPECIFIC ONES.**

Relators maintain in their opposition that the SAC supplies "particular details of the involvement" in the alleged scheme by both MBUSI and REHAU.  Opp. at 4-5.  Yet probing Relators' citations to their own pleading reveals that they have vastly overstated both its specificity and particularity.  Indeed, what Relators now represent as specific allegations as to actions taken by MBUSI or REHAU are most often simply sweeping conclusions as to multiple defendants, rote boilerplate, or both.  This Court need not accept such allegations when considering the instant Motion.

For instance, Relators assert that MBUSI "tracked the workers" at issue "by copying visa documents and preparing I-9 forms," Opp. at 2, yet cite only an allegation that "*defendants* prepared, signed and submitted false Form I-9 [*sic.*]," including at multiple other facilities of multiple other co-defendants, SAC ¶ 105(h) (emphasis added).  They assert that MBUSI "kept entry logs" of all workers that came and went, Opp. at 2, yet again cite only an allegation of such behavior "at each

1    site" operated by the multiple manufacturer defendants in this case, SAC ¶ 155.  And they assert

2    that MBUSI "acted to conceal" the nature of the employment, Opp. at 3-4, while citing to allegations

3    made against Tesla, Vuzem USA, Eisenmann, and others, SAC ¶¶ 65, 105(d), 106.

4           Relators go on to make a series of bald assertions that both MBUSI and REHAU "knew of"

5    the underlying scheme.  *See* Opp. at 4-5.  Here too, however, Relators overplay their hand.  They

6    once again rely on several allegations made against all, or multiple "defendants."  *See, e.g.*, SAC

7    ¶¶ 11, 14, 155.  And those allegations that do make reference to MBUSI or REHAU *at best* recite

8    pro forma conclusions as to knowledge.  *See, e.g.*, *id.* ¶ 69 (alleging that MBUSI "knew" that visas

9    "were fraudulently obtained"); *id.* ¶ 87 (alleging only that REHAU "contracted with Eisenmann

10   Corporation which in turn contracted with other entities such as ISM Vuzem").

11          For purposes of this Motion, the actual facts alleged are far more limited and considerably

12   less remarkable.  As MBUSI and REHAU made clear in their opening brief, Relators have alleged

13   only that MBUSI and REHAU each contracted with Eisenmann to perform certain work at their

14   facilities in Alabama, and that Eisenmann in turn contracted with other companies to supply the

15   labor.  That is the factual backdrop against which Relators' claims for relief must be evaluated.

16   **II.     THE SECOND AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE A
           VIOLATION OF THE FALSE CLAIMS ACT BY MBUSI OR REHAU.**

17          In their opening brief, MBUSI and REHAU demonstrated that Relators' SAC does not state

18
19   a plausible claim for relief under the False Claims Act for two reasons.  *See* Opening Br. at 7-16.

20   First, Relators have supplied virtually no factual allegations at all with respect to MBUSI or

21   REHAU, let alone the specific and particularized allegations required by Rule 9(b).  *See id.* at 7-11.

22   And second, Relators fail to identify even a single "claim for payment" as the FCA requires.  *See*

23   *id.* at 12-16.[1]

24          In response, Relators do not dispute that Rule 9(b) applies to their claims under the FCA, or

25   _____

26          [1] MBUSI and REHAU also demonstrated that Relators' attempt to recover under common
27   law doctrines "ancillary to" liability under the FCA is conclusively barred by the great weight of
     precedent.  *See* Opening Br. at 15-16.  Relators make no attempt to rehabilitate these claims,
28   however, and appear to have conceded their deficiency.

1   that they must supply particularized allegations as to *each defendant* as a result.  Nor do they dispute

2   that the FCA expressly precludes any recovery of allegedly unpaid taxes and does not apply to

3   contingent fines and penalties.  Even so, Relators maintain that their FCA claims survive for two

4   reasons.  First, Relators insist that they *have* supplied sufficient facts as to MBUSI and REHAU to

5   satisfy Rule 9(b).  And second, Relators pivot to *new* provisions of the FCA that appear nowhere in

6   the SAC itself, but which purportedly create liability here.  Both of these arguments fail, however,

7   and Relators' FCA claims remain subject to dismissal.

8         A.      **Relators' Allegations as to MBUSI and REHAU Fall Well Short of Rule 9(b)'s Heightened Pleading Threshold.**

9

10        First, nothing in Relators' opposition alters the conclusion that the scarce and conclusory

11  allegations as to MBUSI and REHAU fail to satisfy Rule 9(b)'s requirement of particularity.  As set

12  forth above, Relators' insistence that their pleading "alleges the particular details of the

13  involvement" by MBUSI and REHAU, Opp. at 4, is fatally undercut by even a cursory examination

14  of the provisions of the SAC to which they cite.  Simply put, Relators cannot satisfy their obligation

15  "to differentiate their allegations . . . and inform each defendant separately of the allegations

16  surrounding his alleged participation in the fraud," *United States ex rel. Lee v. Corinthian Colleges*,

17  655 F.3d 984, 997–98 (9th Cir. 2011), by pointing to vague and overbroad conclusions as to all 30-

18  plus defendants.

19        B.      **Relators' Attempt to Invoke New Provisions of the FCA Is Improper and Unavailing in Any Event.**

20        In their opposition, Relators make no effort to defend their claim for relief under either

21  § 3729(a)(1)(A) or § 3729 (a)(1)(B), which are the only two provisions that they actually pled.

22  Relators instead invoke two *different* provisions of the FCA—provisions that appear *nowhere* in the

23  SAC itself.  *Compare* SAC ¶¶ 126-141 (invoking only § 3729(a)(1)(A) and (a)(1)(B) of the FCA),

24  *with* Opp. at 6 (arguing liability under § 3729(a)(1)(G) and (a)(1)(C) of the FCA).  This distinction

25  is more than mere semantics.  As Relators' own opposition makes clear, § 3729(a)(1)(G) in

26  particular targets an entirely different breed of behavior than the provisions Relators actually pled—

27  imposing "liability where one acts improperly[,] not to get money from the government, but to avoid

28  having to pay money to the government."  Opp. at 6.  As this Court recently recognized, a "Plaintiff

                                   Reply of Mercedes-Benz U.S. Int'l, Inc. and REHAU Inc.

may not use his opposition" to a motion to dismiss "to raise and argue new allegations or claims not in the complaint." *Minor v. Fedex Office & Print Servs., Inc.*, 182 F. Supp. 3d 966, 977 (N.D. Cal. 2016) (Koh, J.); *see also id.* (faulting plaintiff for invoking a statute that he "never cite[d]" in his complaint"). Relators' efforts to add new claims to the SAC—claims never mentioned in the SAC itself and in fact different from the claims that are alleged—should likewise be rejected.[2]

In the alternative—and only in the event the Court determines Relators have somehow pled this claim—even Relators' reimagined FCA claim fails to state a valid cause of action. Most critically, the pleading requirements of Rule 9(b) apply equally to allegations of "reverse false claims." *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). And as MBUSI and REHAU have demonstrated, the handful of vague and conclusory allegations concerning actions specifically taken by those two companies simply do not supply any particularized details of their involvement in any fraudulent scheme. The reverse FCA provisions assign liability to one who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729 (a)(1)(G). Yet neither the SAC, nor even Relators' opposition, contains any indication as to precisely *how* either MBUSI or REHAU actually participated in a scheme to conceal such obligations, *who* at either MBUSI or REHAU carried out that role, or *when* MBUSI or REHAU became involved. In fact, the SAC actually seems to *exclude* the possibility of such involvement as it alleges that other defendants were the ones who both submitted the necessary visa applications, and hired and paid the workers at issue. *See* Opening Br. at 9 (citing SAC ¶¶ 14, 40, 66, 69, 70, 87, 107, 109, 112-115). Thus, even had Relators pled a violation of § 3729(a)(1)(G), that claim would still be subject to dismissal as Relators' allegations fall well shy of the high bar established by Rule 9(b).

---

[2] In a remarkable attempt to hedge their bets, Relators actually attempt to add a factual allegation at this late stage that money did in fact pass *from* the Government *to* the defendants. "Relators are informed and believe," they suggest "that some defendants received money from the federal government while certifying that they complied with immigration and labor laws." Opp. at 6 n.2. This effort falls short on multiple fronts. Not only is it far too late to supply factual allegations of claims made, but the assertion that "some defendants received money from the federal government" is simply too vague to survive dismissal.

Reply of Mercedes-Benz U.S. Int'l, Inc. and REHAU Inc.
                                              Case No. 16-CV-01120-LHK

1    Moreover, the "visa fraud" that Relators have alleged fails as a theory of "reverse FCA"

2    liability in any event.  Liability for "a 'reverse' FCA claim" requires "a present, existing legal duty

3    to pay the government a . . . sum of money at the time an alleged false statement is made." *United*

4    *States ex rel. Friedland v. Envt'l Chem. Corp.*, No. 00-3075, 2003 WL 23315783, at *9 (N.D. Cal.

5    Dec. 30, 2003).  Relators point only to "higher fees due" for certain types of visa applications that

6    were *not* submitted, Opp. at 5, but fail to explain how those fees establish a present and existing

7    legal duty.  Simply put, there can be no "present, existing legal duty to pay the government" an

8    application fee for an application that was never submitted.  *Friedland*, 2003 WL 23315783, at *9.

9    The only purported support for this proposition Relators can muster is the *complaint* in another

10   unrelated case that resulted in a settlement.  *See* Opp. at 5.  To say a different, unadjudicated

11   complaint supports this complaint is pure bootstrapping.  To be sure, Relators have alleged that

12   those visa applications that *were* submitted contained falsities.  And complex criminal, civil, and

13   regulatory schemes exist to police such violations.  *See, e.g.*, 18 U.S.C. § 1546(a); 8 U.S.C.

14   § 1182(a)(6)(C).  But as courts have long noted, "[t]he False Claims Act is not an all-purpose

15   antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory

16   violations." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003

17   (2016).  Mere "unsavory conduct is not, without more, actionable under the FCA." *Cafasso*, 637

18   F.3d at 1058.  By failing to identify any fixed or certain "obligation" or "duty," Relators have not

19   alleged the "more" that is required for liability under the FCA.

20   In a final attempt to salvage their claim, Relators insist that they have plausibly alleged

21   liability for "*conspiracy* to violate . . . the FCA," because MBUSI and REHAU "knew of the visa

22   fraud, supported the fraud, and . . . accepted the benefits of the fraud."  Opp. at 6, 8 (emphasis

23   added).  Here again, however, Relators rely on a provision of the FCA—§ 3729(a)(1)(C)—that

24   appears nowhere in the SAC, and their attempt to smuggle in this claim now fails for this

25   straightforward reason.

26   Moreover, Relators' attempt to invoke conspiracy liability suffers additional fatal flaws as

27   well.  As this Court has made clear, "[t]o satisfy Rule 9(b), plaintiffs alleging conspiracy claims

28   under Section 3729(a)(1)(C) must allege the existence of an agreement between the defendants to

violate the FCA." *United States ex rel. Marion v. Heald Coll., LLC*, No. 12-02067, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015). This requires "factual allegations about the time, place or specific language used by the defendants to form their agreement." *Id.* Relators supply no such allegations with respect to MBUSI or REHAU, instead relying on conclusory assertions of mere knowledge. Indeed, even Relators' opposition gives short shrift to the critical element of *agreement*, focusing instead on the extent of liability "[o]nce the conspiracy has been formed." Opp. at 7 (quotations omitted). MBUSI and REHAU, Relators insist, each "engaged in the predicate acts of using the services of multiple individuals who entered the United States under B-1 visas that should not have been issued." *Id.* at 7-8. Quite apart from the substantive flaws in this "visa fraud" theory, Relators' claim that this allegation "supports classic conspiracy liability," *id.* at 8, betrays a fundamental misunderstanding of the doctrine. It is not the "predicate acts" that make a conspiracy. Rather, hornbook law provides that "[t]he core of a conspiracy is an agreement to commit an unlawful act." *United States v. Harrison*, 942 F.2d 751, 755 (10th Cir. 1991). Nothing Relators have alleged offers MBUSI or REHAU any clarity as to when, how, where, or by whose actions they formed such an agreement to defraud the United States.

## III. THE SECOND AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE A VIOLATION OF FORCED LABOR LAWS BY MBUSI OR REHAU.

In their opening brief, MBUSI and REHAU also demonstrated that Relators' SAC fails to state a plausible claim for relief under federal or state laws prohibiting human trafficking and forced labor for two reasons. First, the sheer paucity of specific factual allegations concerning MBUSI or REHAU once again dooms Relators' claim against those two defendants. *See* Opening Br. at 17-18. And second, even those facts that are alleged fail to rise to the level of human trafficking. *See id.* at 18-19.

In response, Relators do not dispute their obligation to supply facts that plausibly establish MBUSI and REHAU's actual participation in the alleged trafficking scheme. Nor do they dispute the lofty requirements for trafficking liability that MBUSI and REHAU set forth in their opening brief. *See id.* at 18-19 (citing *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012). Instead, Relators defend their trafficking claims by simply declaring that MBUSI and

1   REHAU are liable because they "were aware" or "became aware" of "the entirety of the forced labor
2   actions" allegedly committed by others.  Opp. at 8.  Yet this naked assertion of mere knowledge—
3   largely untethered from any factual allegations in this SAC itself—is plainly insufficient to state a
4   valid claim.

5          First, Relators' opposition does little more than attempt to recast the SAC's conclusory
6   allegations that multiple defendants knew about the actions of others.  *See* Opp. 8-9.  Relators claim
7   in their opposition, for instance, that MBUSI had "control of ingress through security badges" and
8   supposedly knew that the "foreign language workers" arrived early in vans from housing provided
9   by their employers.  *Id.* at 4.  Yet for support, Relators rely only upon sweeping allegations in the
10  SAC of knowledge as to "hours worked at each site by all workers," as well as of utterly undefined
11  "unsafe working conditions at the manufacturing sites for Volkswagen, Mercedes Benz, BMW,
12  Dicastal, Tesla, LAX Fabricating, Phoenix Mechanical, REHAU Incorporated and other
13  companies."  SAC ¶¶ 155, 219.  Relators further cite the paragraph of the SAC that outlines the
14  "enterprise and pattern" of the alleged scheme and simply appends it with the one-size-fits all charge
15  that "each of the defendants was aware of the actions of the other defendants."  SAC ¶ 14.  Relators
16  even resort to documents *outside* the pleadings—which are ineligible for consideration in
17  connection with this Motion, *see Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)—in
18  an effort to impute knowledge to MBUSI, claiming that they "became aware" of the allegations in
19  2016 when an article on Relator Lesnik's work at a Tesla plant in California was published in a San
20  Jose newspaper.  *See* Opp. at 8.  From this meager premise, Relators once again attempt to conjure
21  "conspiracy liability."  Opp. at 9.  Relators once again miss the mark.  Nothing in the SAC, nor in
22  Relators' opposition, nor in the other materials on which Relators now rely, plausibly establishes
23  that anyone at MBUSI or REHAU formed an actual *agreement* to traffic in forced labor.  Without
24  this lynchpin, Relators' resort to the law of conspiracy is unavailing.

25         Moreover, even if they had plausibly alleged the requisite agreement, the work conditions
26  Relators have alleged still fall well short of human trafficking or forced labor.  Relators point to
27  "unsafe working conditions, long work hours, control of housing and transportation of foreign
28  language workers, and the B-1 visa fraud."  Opp. at 8 (citing SAC ¶¶ 14, 155, 219).  Relators make

no effort to explain how, or why, or based on what authority these conditions constitute forced labor. In fact they do not even cite the statutory text or engage with any of the case law construing it.  As MBUSI and REHAU made clear in their opening brief, "the forced labor [laws] . . . are not intended to redress every bad employment relationship involving immigrants," but rather "to effectuate the constitutional prohibitions against slavery and involuntary servitude, by criminalizing the act of coercing persons into providing labor and services against their will." *Muchira v. Al-Rawaf*, 850 F.3d 605, 625 (4th Cir. 2017).  Nothing in Relators' SAC alters the conclusion that this is not a trafficking case.

## IV.    THE SECOND AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE A RICO VIOLATION BY MBUSI OR REHAU.

Finally, MBUSI and REHAU demonstrated in their opening brief that Relators have failed to allege a plausible RICO violation against either of them for two reasons.  First, nothing alleged in the SAC establishes with any particularity that either MBUSI or REHAU joined or participated in an "enterprise" as required for RICO liability.  *See* Opening Br. at 20-21.  And second, Relators have failed to plausibly allege that *any* defendant committed the requisite "predicate acts"—let alone establish with particularity how liability for such acts could somehow reach MBUSI or REHAU individually.  *See id.* at 21-23.

In response, Relators once again take no issue with the application of Rule 9(b)'s strict requirements—to either the "enterprise" element or the "predicate acts" element of their RICO claim.  And Relators once again do not dispute that this standard requires particularized allegations as to the role played by *each defendant* in the unlawful enterprise.  Relators simply maintain that they can meet these requirements by invoking the law of conspiracy.  Relators are mistaken for a third time.  Nothing in their opposition alters the conclusion that they have not alleged sufficient facts to establish RICO liability as to MBUSI and REHAU, and their claims against those two defendants should be dismissed.

Relators' attempt to craft conspiracy liability fares no better in the RICO context.  Relators claim that MBUSI "had at least a tacit agreement to accept lower paid workers," while "Rehau knew that Eisenmann was supplying B-1 visa workers."  Opp. at 9 (citing SAC ¶¶ 11, 32, 38, 48, 69, 70).

1   Yet the allegations that Relators cite for support do nothing to actually substantiate or support those

2   claims; rather, they simply repeat the same boilerplate in equally—if not more—conclusory fashion.

3   *See, e.g.*, SAC ¶ 32 (alleging that "[e]ach of the defendants knew and know of, and have ratified the

4   actions of their co-defendants"); *id.* ¶ 70 (alleging simply that MBUSI "knew that the workers were

5   working under fraudulently obtained visas").  These bare allegations are plainly insufficient to

6   establish liability under RICO's civil conspiracy provisions.

7         Under Rule 9(b), that standard requires a plaintiff to "allege with particularity . . . an

8   agreement to participate in an unlawful act."  *United Centrifugal Pumps v. Schotz*, No. 89-2291,

9   1991 WL 274232, at *3 (N.D. Cal. June 12, 1991).  A "conclusory" or "boilerplate conspiracy

10  charge" that all defendants "entered into an agreement" will not suffice.  *Id.*  Rather, RICO

11  conspiracy "allegations must be specific enough to give defendants notice of the particular

12  misconduct which is alleged to constitute the fraud charged so that they can defend against the

13  charge and not just deny that they have done anything wrong."  *Dang v. CitiMortgage, Inc.*, No. 11-

14  05036, 2012 WL 762329, at *2 (N.D. Cal. Mar. 7, 2012).

15        In the face of this demanding standard, Relators simply assert—*without citation*—that both

16  MBUSI and REHAU "agreed to use as workers individuals who entered the United States

17  improperly" and "used and employed them to do construction work and skilled and unskilled labor."

18  Opp. at 9.  This entirely unsupported charge does nothing to remedy the *pleading* deficiencies

19  outlined by MBUSI and REHAU.  Relators point to no particularized details in their SAC regarding

20  the formation of an agreement, and offer no more specificity with respect to the commission of any

21  underlying predicate acts.  Once again, Relators' attempt to resuscitate their SAC by relying on bald

22  assertions of conspiracy proves unavailing.  What is more, even on its face, Relators' claim fails to

23  establish an illegal agreement.  Indeed, the only actual *agreement* Relators point to is for MBUSI

24  and REHAU "to use as workers" certain "individuals."  *Id.*  Relators' ambiguous syntax subtly

25  excludes the workers' immigration status from the purported agreement itself—in what appears to

26  be a telling attempt to elide a critical distinction.  Either way, nothing Relators have offered in either

27  their SAC or their opposition is sufficient to establish the vital element of an actual agreement to

28

1   violate the law.[3]

2                                    **CONCLUSION**

3          For the foregoing reasons, as well as those set forth in their opening brief, Defendants

4   Mercedes-Benz U.S. International, Inc. and REHAU, Inc. respectfully request that this Court enter

5   an Order dismissing Relators' Second Amended Complaint with prejudice.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26          [3] In what appears to be a mistaken inclusion, Relators end their opposition with a section
27   devoted to rebutting a waiver argument made by Eisenmann in its Motion to Dismiss.  Because the
     claims that are the subject of that argument are not made against either MBUSI or REHAU,
28   Relators' rebuttal is irrelevant to the present motion.

1    Dated: May 1, 2018                   **MCGUIREWOODS LLP**

2                                    By    ___/s/ *Sylvia J. Kim*_____
                                          Sylvia J. Kim
3

4                                         Sylvia J. Kim (SBN 258363)
                                          MCGUIREWOODS LLP
5                                         Two Embarcadero Center, Suite 1300
                                          San Francisco, CA 94111-3821
6                                         Tel:  (415) 844-9944
                                          Fax:  (415) 844-9922
7                                         skim@mcguirewoods.com

8                                         Jeremy S. Byrum (*Pro Hac Vice*)
                                          Nicholas J. Giles (*Pro Hac Vice*)
9                                         MCGUIREWOODS LLP
                                          800 E. Canal Street, Gateway Plaza
10                                        Richmond, VA  23219
                                          Tel:  (804) 775-1000
11                                        Fax:  (804) 775-1061
                                          jbyrum@mcguirewoods.com
12                                        ngiles@mcguirewoods.com

13                                        Attorneys for Defendants MERCEDES-BENZ
                                          U.S. INTERNATIONAL, INC. and REHAU, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on May 1, 2018, I electronically transmitted the foregoing document to

3 the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of

4 Electronic Filing.

5      I declare under penalty of perjury under the laws of the United States of America that the

6 foregoing is true and correct.

7      Executed on May 1, 2018, at Richmond, Virginia.

8

9                           /s/ *Nicholas J. Giles*
                            Nicholas J. Giles
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply of Mercedes-Benz U.S. Int'l, Inc. and REHAU Inc.
                                    Case No. 16-CV-01120-LHK