HUESTON HENNIGAN LLP
John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Padraic Foran, State Bar No. 268278
pforan@hueston.com
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898

Attorneys for Defendant
Tesla, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. GREGOR LESNIK, STJEPAN PAPES,<br><br>Plaintiffs,<br><br>vs.<br><br>EISENMANN SE, et al.,<br><br>Defendants. | Case No. 5:16-cv-01120-LHK<br><br>**DEFENDANT TESLA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Judge:          Hon. Lucy H. Koh<br>Hearing Date:  October 4, 2018<br>Time:           1:30 PM<br>Courtroom:      8, 4th Floor |

# INTRODUCTION

The Opposition by *qui tam* Relator and Plaintiff Gregor Lesnik ("Relator") and Plaintiff Stjepan Papes (collectively, "Plaintiffs") to Defendant Tesla Inc.'s ("Tesla") Motion to Dismiss (Dkt. No. 134, the "Opposition") continues Plaintiffs' strategy of improper shotgun pleading by responding to arguments with vague allegations that fail to differentiate between any of the more-than-three-dozen defendants. The Opposition also ignores several of the arguments in Tesla's Motion. None of the arguments or allegations in the Opposition can save the causes of action that Plaintiffs assert against Tesla in the Second Amended Complaint ("SAC").

For efficiency, Tesla joins the Reply in Support of the Motion to Dismiss filed by Eisenmann Corporation ("Eisenmann") (Dkt. 153, the "Eisenmann Reply"), and repeats those arguments only to the extent necessary to apply them to Tesla.

# ARGUMENT

## I. The Opposition Does Not Support Relator's FCA Claim

### A. Relator Fails to State a Traditional FCA Claim Against Tesla Under 31 U.S.C. § 3729(a)(1)(A) or (a)(1)(B)

Relator has abandoned the traditional FCA claims he asserted against Tesla in the SAC. He admits that he now brings claims against Tesla under only 31 U.S.C. § 3729(a)(1) subsections (C) (Conspiracy) and (G) (Reverse False Claims). Opp. to Tesla MTD (Dkt. 134) at 3. As set forth in the Eisenmann Reply, Relator's FCA claims under 31 U.S.C. § 3729(a)(1)(A) and (B) should therefore be dismissed. Eisenmann Reply (Dkt 153) at 1-2.

### B. Relator Fails to State a Reverse FCA Claim Against Tesla Under 31 U.S.C. § 3729(a)(1)(G)

The Opposition likewise fails to support any actionable reverse FCA claim for the reasons set forth in the Eisenmann Reply. *Id.* at 2-7.

Relator especially fails to state an actionable reverse FCA claim against Tesla. In the Opposition, he does not dispute that the SAC contains no allegations that Tesla submitted any false information to the United States for the purpose of avoiding an obligation to pay money, as required under 31 U.S.C. § 3729(a)(1)(G). Opp. to Tesla MTD (Dkt. 134) at 3-4. Nor does Relator argue that

he could make any such an allegation. He instead points to allegations about what Tesla "knew" or generically "conceal[ed]." *Id.* at 4. Even if this were true, such facts are legally insufficient to establish liability for any reverse FCA claim. Liability for reverse claims under § 3729(a)(1)(G) extends only to a defendant who makes a false claim or statement. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011) (affirming dismissal of reverse FCA claim where "complaint allege[d] no false claim" because "[t]he "reverse false claims" provision does not eliminate or supplant the FCA's false claim requirement"). Relator does not offer any reason or authority establishing that liability under § 3729(a)(1)(G) can extend to someone who is merely aware of such a false claim or statement. The reverse FCA claim against Tesla necessarily fails.

      **C.**    **Relator Fails to State a False Claims Act Conspiracy Claim Against Tesla Under 31 U.S.C. § 3729(a)(1)(C)**

Relator's sole remaining basis for Tesla's alleged FCA liability is that Tesla can be liable under a conspiracy theory pursuant to 31 U.S.C. § 3729(a)(1)(C). Opp. to Tesla MTD (Dkt. 134) at 4. This claim fails for multiple reasons.

First, the FCA conspiracy claim fails because the SAC does not purport to assert any such claim against Tesla (or any other defendant). SAC ¶¶ 126-136. The SAC does not even cite Section § 3729(a)(1)(C), the code section that establishes liability for conspiring to violate the FCA. (*See id.* (referring only to "Federal False Claims Act 31 U.S.C. § 3729(a)(1)(A)-(B).") (emphasis added)). The conspiracy claim should be rejected on this ground alone.

Second, the FCA conspiracy claim also fails because Relator has not alleged the existence of an agreement to violate the FCA. *See U.S. v. Kiewit Pac. Co.*, No. 12-CV-02698-JST, 2013 WL 5770514, at *11 (N.D. Cal. Oct. 24, 2013) (dismissing FCA conspiracy claim where "[t]he First Amended Complaint does not contain any allegations concerning a conspiracy claim."); *U.S. ex rel. Marion v. Heald Coll., LLC*, No. 5:12-CV-02067-PSG, 2015 WL 4512843, at *5 (N.D. Cal. July 24, 2015) (dismissing FCA conspiracy claim where complaint failed to "allege the existence of an agreement between the defendants to violate the FCA.") Bare allegations that the defendant benefitted from alleged false claims by others do not suffice to establish a conspiracy; rather, the plaintiff must allege the defendant entered an agreement to make such false claims. *See Blusal Meats,*

*Inc. v. U.S.*, 638 F.Supp. 824 (S.D.N.Y. 1986) (government's allegation that corporation knowingly accepted and presented for redemption stolen food stamps did not state a claim for conspiracy under the False Claims Act where no agreement was alleged). Relator's claim thus fails for this reason as well.

Third, the SAC's allegations fail to satisfy Rule 9(b) heightened pleading requirements. To state an FCA conspiracy claim, Relator must allege that Tesla entered such an agreement with sufficient factual particularity to meet the heightened pleading requirements of Rule 9(b). *See U.S. ex rel. Friedland v. Envt'l Chem. Corp., et al.*, Case No. C00-3075PJH, 2003 WL 23315783, at *9 (N.D. Cal. Dec. 30, 2003) ("allegations under the FCA of a conspiracy to defraud, 31 U.S.C. § 3729(c), must satisfy Rule 9(b)").

"While the Ninth Circuit has not addressed this issue directly, other circuits agree that conspiracy claims under the FCA are subject to the heightened pleading requirements of Rule 9(b)." *See U.S. ex rel. Marion*, 2015 WL 4512843, at *4 ((citing *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) (holding FCA conspiracy claims are subject to Rule 9 heightened pleading standards); *U.S. ex rel. Marlar v. BWXT Y–12, L.L.C*, 525 F.3d 439, 445 (6th Cir. 2008) (same); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (same)); *see also U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 282 (4th Cir. 2014) (same)); *see also Alfus v. Pyramid Tech. Corp.*, 745 F.Supp. 1511, 1521 (N.D. Cal. 1990) (requiring civil conspiracy actions concerning fraud to "allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement"). In practical terms, this means that to sustain a conspiracy claim, Relator has to assert "the who, what, when, where, and how of the" alleged agreement to violate the FCA. *See Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted); *Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).

Courts typically apply exacting scrutiny in evaluating FCA conspiracy claims. For example, in *U.S. ex rel. Marion v. Heald Coll., LLC*, No. 5:12-CV-02067-PSG, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015), a court in this District dismissed an FCA conspiracy claim where "[t]here [we]re no factual allegations about the time, place or specific language used by the defendants to form their agreement." Likewise, in *U.S. ex rel. Ahumada v. NISH*, the Fourth Circuit dismissed an FCA

conspiracy claim where the relator alleged that the defendant corporation had entered into an illicit agreement to violate the FCA, but "d[id] not identify *who* at [defendant corporation] entered the [alleged agreements], *when* he or she did so, or *what* [defendant corporation] sought to gain." 756 F.3d at 282 (emphasis in original). The *Ahumada* court found that because the allegations lacked such basic "*who … when …* [and] *what*" information, the allegations "fail[ed] to meet even the basic plausibility standard of Rule 8(a), much less the more stringent particularity requirement of Rule 9(b)." *Id.*; *see also U.S. v. Pub. Warehousing Co. K.S.C.*, 242 F. Supp. 3d 1351, 1360 (N.D. Ga. 2017) (dismissing FCA conspiracy claim where "[t]he Complaints do not present the 'who, what, when, where, and how' of the Defendants' participation in the schemes, and they do not put the Defendants on notice as to their roles in the schemes.").

The SAC does not come close to meeting the Rule 9(b) heightened pleading standard. Like the deficient complaint in *Marion*, the SAC offers "no factual allegations about the time, place or specific language used by [Tesla] to form" any agreement to violate the FCA. *U.S. ex rel. Marion*, 2015 WL 4512843, at *4. Indeed, the SAC ***does not even refer*** to any such agreement, whether tacit or explicit. Contrary to Plaintiffs' argument in the Opposition, the SAC cannot "allege[] the *essence* of Tesla's involvement and concealment to reduce the amount to be paid to the federal government for visas" (Opp. to Tesla MTD (Dkt. 134) at 4 (emphasis added)), because it does not allege the "who, what, when, where, and how" of such involvement. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d at 998.

Plaintiffs assert that "[t]he SAC alleges who from Tesla management was involved in this concealment and conspiracy," and point to two paragraphs in the SAC that purportedly support this statement. Opp. to Tesla MTD (Dkt. 134) at 4. On their face, the cited paragraphs do not allege any concealment or conspiracy by Tesla employees. Paragraph 65 of the SAC merely alleges that a particular "Tesla Senior EHS Engineer" interacted with Plaintiff Lesnik, not that the Tesla employee participated in any agreement to violate the FCA.

Likewise, Paragraph 106 of the SAC merely alleges that certain Tesla employees entered into standard business agreements with Eisenmann, including "General Terms and Conditions," a "Purchase Order," and a "Statement of Work." SAC ¶ 106.b, d, & e. The SAC does not allege how

- 4 -
DEFENDANT TESLA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. 5:16-CV-01120-LHK

such ordinary business agreements constitute an agreement "to get a false or fraudulent claim allowed or paid by the United States." *U.S. ex rel. Carucci*, 785 F. Supp.2d at 310; *see also Blusal Meats*, 638 F.Supp. 824.  And to the extent that paragraph 106 purports to describe any meetings among "co-conspirators," the list of alleged attendees does not include any agent or employee from Tesla. SAC ¶ 106.g.  Plaintiffs' argument that the conspiracy claim against Tesla is supported by allegations regarding "specific contracts [and] confirmed meetings" (Opp. to Tesla MTD (Dkt. 134) at 5) is therefore false.  The SAC makes no connection between Tesla's ordinary business contracts with Eisenmann and any illicit agreement and contains no allegation that Tesla even attended any "confirmed meetings."

Relator's own characterization of the SAC's allegations confirms the deficiency of his conspiracy allegations against Tesla.  He claims that the SAC alleges "(1) that 'an agreement existed …' (2) that each alleged member of the conspiracy 'joined that agreement,' and (3) that 'one or more conspirators knowingly committed one or more overt acts in furtherance of the object of the conspiracy.'"  Opp. to Tesla MTD (Dkt. 134) at 5.  Deceptively, none of the language that Relator quotes in this passage is found anywhere in the SAC.  The language appears to come (without attribution) from the D.C. Circuit's recitation of the elements of an FCA conspiracy claim in *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 899 (D.C. Cir. 2010).  This recitation of the legal elements of conspiracy "merely states a legal conclusion," and provides no factual specificity. *U.S. ex rel. Marion*, 2015 WL 4512843 at *4.  The Opposition does not and cannot point to any paragraph in the SAC that supports any of the recited elements and thus "fails to meet even the basic plausibility standard of Rule 8(a), much less the more stringent particularity requirement of Rule 9(b)." *U.S. ex rel. Ahumada*, 756 F.3d at 282.

**II.     <u>Lesnik's Release Bars His Other Causes of Action.</u>**

For the reasons set forth in the Eisenmann Reply, Plaintiff Lesnik released his non-FCA claims.  Eisenmann Reply (Dkt 153) at 10.  Lesnik does not deny that he entered into a May 30, 2016 settlement agreement with Tesla and other defendants.  Nor does he deny the authenticity and accuracy of the general release language that Eisenmann provided to the Court in support of its Motion to Dismiss.  *See* Declaration of Mark West ("West Decl.") (Dkt. 121-6.) ¶ 4.  Instead—

without quoting any language from the actual agreement itself—Lesnik argues that this settlement agreement does not bar and extinguish his wage and hour, human trafficking, and RICO claims because Lesnik's release in that agreement was limited to "claims arising out of his May 16, 2016 industrial accident." Opp. to Tesla MTD (Dkt. 134) at 9-10. Lesnik's position is wrong and inconsistent with the plain, inambiguous language of the agreement's "General Release." *See* West Decl. ¶ 4 (emphasis added).

Lesnik therefore offers no viable theory to support his wage and hour, human trafficking, and RICO claims against Tesla. These claims should therefore be dismissed. *See* Eisenmann Reply (Dkt. 153) at 10.

### III. The Opposition Confirms That Tesla Is Not An "Employer" Under California Law.

For the reasons set forth in the Eisenmann Reply, Plaintiffs fail to state a wage and hour claim. Eisenmann Reply (Dkt 153) at 9-10.

The Opposition confirms that Plaintiffs' state wage and hour claims against Tesla also fail for an additional reason. As described in Tesla's Motion to Dismiss, the allegations in the SAC are insufficient to establish that Tesla meets any of the three definitions of an "employer" under California's Labor Code. Opp. to Tesla MTD (Dkt. 134) at 5-8; *see Martinez v. Combs*, 49 Cal. 4th 35, 49 (Cal. 2010). Plaintiffs do not contest these arguments (Opp. to Tesla MTD (Dkt. 134) at 6) but instead present an alternate theory to support their claim that Tesla is an employer under California law. Specifically, Plaintiffs argue that because they performed work without contractors' licenses, Tesla is their *de facto* employer under California Labor Code § 2750.6. *Id.* at 6. This argument strains credulity.

Even assuming Plaintiffs are correct that "[a]n unlicensed person performing a licensed activity cannot be an independent contractor," it does not follow that *Tesla* must be the unlicensed person's employer. *Id.* To the contrary, where California courts have interpreted California Labor Code § 2750.6 to create employment relationships, they have done so in the context of a relationship between a **subcontractor and a general contractor**. In *Sanders Const. Co. v. Cerda*, 175 Cal. App. 4th 430, 434 (2009), the California Supreme Court approvingly quoted the statement in *Hunt Bldg. Corp. v. Bernick*, 79 Cal. App. 4th 213, 220 (2000) that, "[p]ursuant to the plain language of Labor

Code section 2750.5, an unlicensed subcontractor may not be an independent contractor but is instead deemed a statutory employee *of the general contractor.*" (emphasis added).  The Supreme Court further observed in *Sanders* that an explicit purpose of Cal. Labor Code § 2750.5 is to enact a public policy that does not "allow[] *a general contractor* to escape liability for the obligations of an unlicensed subcontractor."  *Id.* at 436 (emphasis added).  For these reasons, *Sanders* held that unlicensed subcontractors were the employees of a general contractor.  *Id.*

The rule applied in *Sanders* could potentially lead a Court to determine that Plaintiffs were "employed" by: (a) ISM Vuzem, the subcontractor entity that hired and paid them directly, or (b) Eisenmann USA, the general contractor that retained ISM Vuzem.  SAC ¶¶ 9, 13, 40, 65, 106.a-h.  However, under no circumstances could this rule establish that Plaintiffs are the employees of Tesla, the general contractor's end-client.  Notably, Plaintiffs have not cited (and could not cite) any authority holding that Cal. Labor Code § 2750.5 somehow makes an unlicensed worker the "employee" of a general contractor's client.[1]

Plaintiffs offer no plausible justification as to why Cal. Labor Code § 2750.5 would transform their attenuated connection to Tesla into an employment relationship under California law. Extending the definition of "employer" to include Tesla would make no sense from the perspective of statutory interpretation or public policy, especially where Plaintiffs effectively concede that Tesla does not meet any other definition of the Plaintiffs' "employer" under California law.

**IV.    The Opposition Fails to Support the Trafficking Claim Against Tesla.**

For the reasons set forth in Eisenmann's Reply, Plaintiffs' Opposition fails to support their trafficking claim.  Eisenmann Reply (Dkt 153) at 11-12.

In the Opposition, Plaintiffs do not dispute that Tesla did not make any of the alleged coercive or abusive threats that form the basis for their trafficking claims.  SAC ¶ 219.  Plaintiffs do not even

---

[1] Where Cal. Labor Code § 2750.5 created liability for homeowners in *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.*, 40 Cal. 3d 5, 8 (1985) and *Rosas v. Dishong*, 67 Cal. App. 4th 815 (1998), it did so only because there was no general contractor. The *State Comp. Ins. Fund* homeowner hired the worker directly and negotiated his effective wage. 40 Cal. 3d at 7. The *Rosas* homeowner did the same. 67 Cal. App. 4th 824.  If the homeowners in these cases had not been the workers' employer, no one would have been.  *Id.*  That is not the case here, where Plaintiffs have a direct employer in ISM Vuzem and a general contractor in Eisenmann USA.  If Tesla is not their employer, that does not make them "independent contractors."

allege that Tesla *knew* about the alleged threats; rather, they argue merely that Tesla was "aware" of "unsafe working conditions," "long worker hours," and "lack of workers compensation insurance." Opp. to Tesla MTD (Dkt. 134) at 8. Even if true, such knowledge does not amount to forced labor, threat of serious harm, or abuse of the law, as necessary to sustain a cause of action for trafficking. 15 U.S.C. §§ 1589.

Plaintiffs also assert that a trafficking claim is supported by "[t]he actions of defendants in obtaining visas and then using the workers." Opp. to Tesla MTD (Dkt. 134) at 8. Here too, Plaintiffs allegations are too generic to support the underlying claim. Plaintiffs do not specify which "defendants" this allegation is directed toward, but it is presumably not Tesla, as the SAC does not allege that Tesla directly obtained any visa or "us[ed]" any worker. The trafficking claim against Tesla fails for this independent reason.

## V. The Opposition Fails to Support the RICO Claim Against Tesla.

For the reasons set forth in Eisenmann's Reply, Plaintiffs' Opposition fails to support their RICO claim. Eisenmann Reply (Dkt 153) at 12-13.

Plaintiffs do not contest that the SAC is devoid of any factual allegations showing that Tesla had a role in the alleged RICO enterprise. Nor do Plaintiffs defend the SAC's failure to identify Tesla's role in the alleged enterprise. *See Tapang v. Wells Fargo Bank, N.A.*, 2012 WL 3778965, at *3 (N.D. Cal. Aug. 30, 2012) (dismissing RICO claim for failing to allege role of each defendant in the scheme). Plaintiffs conclusory statement that "Tesla actively participated in a RICO enterprise" is insufficient as a matter of law. *See Shaw*, 220 F. Supp. at 1054; *Tapang*, 2012 WL 3778659, at *3.

Plaintiffs similarly fail to allege that Tesla committed any predicate acts as necessary to state a RICO claim. In their Opposition, Plaintiffs protest, pointing to five allegations in the SAC that they maintain support predicate acts:

1. "five contract documents signed as part of the concealment of the visa fraud."
2. "fraud and underpaying more than 150 Vuzem workers alone."
3. "actions to conceal the enterprise"
4. "Tesla control over the workers"

5. "benefit to Tesla in building out its plant shop at reduced cost."

Opp. to Tesla MTD (Dkt. 134) at 9. Even if true, none of these allegations purports to describes a predicate act by Tesla. Allegation Nos. 1 through 3 are vague and generic to all defendants, which does not satisfy the RICO pleading standard. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011) (dismissing RICO claim for failure "to ascribe any predicate act to a particular [d]efendant"); *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1172 (E.D. Cal. 2017) ("The touchstone of [a RICO claim] is that each individual defendant must be shown to have personally participated in the racketeering activity"). Plaintiffs certainly do not plead predicate acts sufficiently to meet the heightened Rule 9 pleading standards that applies when the alleged racketeering activity is fraud. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).

To the extent that No. 1 refers to the SAC's allegation that Tesla signed contract documents with Eisenmann, the SAC alleges only that Tesla entered into ordinary business contracts, such as a "Purchase Order" and a "Statement of Work." SAC ¶ 106.d & e. "Courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Shaw v. Nissan N.A. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016).

Nos. 4 and 5—even if they were true—are neither criminal nor wrongful. Exercising control over workers and benefitting from their work is not "racketeering activity," as it does not constitute any of the enumerated felonies in 18 U.S.C. § 1961(1)(A) or any other indictable criminal acts in 18 U.S.C. § 1961(1)(B)-(G).

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in Tesla's Motion to Dismiss (Dkt. No. 125); Eisenmann's Motion to Dismiss (Dkt. No. 121); and Eisenmann's Reply in Support

of the Motion to Dismiss (Dkt. No. 153), the SAC should be dismissed with respect to Tesla pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b).

Dated:  May 1, 2018

Respectfully submitted,

HUESTON HENNIGAN LLP

By: */s/  Padraic Foran*
    Padraic Foran
    Attorneys for Defendant Tesla, Inc.

- 10 -
DEFENDANT TESLA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT - CASE NO. 5:16-CV-01120-LHK

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on May 1, 2018, I filed the foregoing **DEFENDANT TESLA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** electronically through the CM/ECF system for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Dated:   May 1, 2018          */s/ Padraic Foran*
                              Padraic Foran