UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREGOR LESNIK, et al., | Case No. 16-CV-01120-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| EISENMANN SE, et al., | Re: Dkt. No. 219 |
| Defendants. | |

Plaintiffs Gregor Lesnik and Stjepan Papes (collectively, "Plaintiffs") have brought a suit stemming from their time working at a facility owned by Tesla, Inc. ("Tesla") in Fremont, California, against approximately 36 different defendants. Before the Court is a motion to dismiss submitted by Defendants Eisenmann Corporation ("Eisenmann"), Tesla, Mercedes-Benz U.S. International, Inc. ("Mercedes-Benz"), Deere & Company ("Deere"), REHAU Inc. ("REHAU"), LaX Fabricating Ltd. ("LaX"), Volkswagen Group of America Chattanooga Operations, LLC ("VW"), Dicastal North America, Inc. ("Dicastal"), and BMW Manufacturing Co., LLC ("BMW") (collectively, "Moving Defendants"). Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Moving Defendants' motion to dismiss.

## I. BACKGROUND

### A. Factual Background

Defendant Eisenmann is a manufacturer of specialized paint shop equipment. *See* ECF No. 37 (Second Amended Complaint, or "SAC") ¶ 70, 106(g); ECF No. 219 at 4. Eisenmann contracted with a number of manufacturing entities, such as Defendants Tesla, Mercedes-Benz, Deere LaX, REAHU, Lax, VW, and BMW, to install Eisenmann's equipment at their facilities. The SAC then alleges that Eisenmann, to fulfill these agreements, would hire an array of subcontractors who would then provide the laborers necessary to complete the equipment installation. SAC ¶ 9, 13. Although the SAC names a number of these subcontractors as Defendants, the ones that matter for present purposes are Defendants "Vuzem"[1] and Gregurec USA, Inc.

Although all of the paint equipment installations described in the SAC occurred in the United States, Vuzem did not use American workers. Instead, the SAC alleges that Vuzem and the other subcontractor Defendants hired workers internationally. For example, to help install a paint shop at a Tesla facility in Fremont, California, Vuzem hired Plaintiff Gregor Lesnik, who resides in Slovenia, and Plaintiff Stjepan Papes, who resides in Croatia. *Id.* ¶¶ 37–38. Lesnik and Papes (like other workers) were brought to the United States on B–1 visas that are reserved for skilled work, even though Vuzem and Eisenmann knew the workers would actually be performing unskilled construction work. *Id.* ¶ 103. Eisenmann eventually submitted letters to the United States Consulate that contained false statements in order to obtain B–1 visas on Lesnik and Papes' behalf. The SAC further alleges that Eisenmann supervisors oversaw their work at the Tesla facility. *Id.* ¶¶ 40, 204.

The SAC alleges that the foreign workers, once in the United States, were paid far below minimum wage and were forced to work extreme hours. The SAC relies on Lesnik's experience

---

[1] To be precise, the SAC names ISM Vuzem d.o.o., ISM Vuzem USA, Inc., Ivan Vuzem, Robert Vuzem, Vuzem USA, Inc. SAC ¶ 13. The Court refers to Vuzem for simplicity, and because the SAC alleges that these entities are the same company under different guises.

working at the Tesla facility in Fremont[2] to illustrate this. Lesnik typically worked 12 hours a day (and never less than 10), over 80 hours a week, over 250 hours a month, and received only 1 day in 14 off. *Id.* ¶ 184. Vuzem also threatened to withhold pay if Lesnik became too sick to work or reported a job injury, threatened to withhold medical benefits if Lesnik reported a job injury, threatened to withhold visas and immigration benefits, threatened to file a civil suit against Lesnik while he was hospitalized, and even told Lesnik that "this will not go well for you." SAC ¶ 201–03.

### B. Procedural History

Plaintiffs filed the complaint initiating this suit on March 7, 2016. ECF No. 1. On July 15, 2016, Plaintiffs filed the First Amended Complaint. ECF No. 20. On November 11, 2017, Plaintiffs filed the Second Amended Complaint ("SAC"). ECF No. 37. On January 8, 2018, the Court unsealed the SAC. ECF No. 40.

On May 30, 2018, the Court set a hearing on September 13, 2018, for a consolidated motion to dismiss the SAC. ECF No. 192. The Court therefore denied as moot 8 then-outstanding motions to dismiss the SAC filed by individual Defendants.

On July 12, 2018, Moving Defendants file the instant consolidated motion to dismiss. ECF No. 219 ("Mot."). On August 9, 2018, Plaintiffs filed their opposition. ECF No. 238 ("Opp."). On August 23, 2018, Moving Defendants filed their reply. ECF No. 243 ("Reply").[3]

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint

---

[2] Although Papes also worked at the Fremont facility, the SAC's allegations center overwhelmingly on Lesnik.

[3] Plaintiffs subsequently filed a request that the Court take judicial notice "that payments for visa applications are fees based on costs to the government" and that "fees for non-petition-based visa applications – such as B visas – are less than fees for petition-based visa applications – such as H visas." ECF No. 234 at 1. Moving Defendants oppose this request. ECF No. 247. The Court DENIES this request.

that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done

United States District Court
Northern District of California

anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must also plead facts explaining why the statement was false when it was made. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F. Supp. 1297 (C.D. Cal. 1996).

"When an entire complaint … is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint … ." *Vess*, 317 F.3d at 1107 (9th Cir. 2003). The Ninth Circuit has recognized that "it is established law in this and other circuits that such dismissals are appropriate," even though "there is no explicit basis in the text of the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

**C. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal

United States District Court
Northern District of California

quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.    DISCUSSION

Plaintiffs' 62-page Second Amended Complaint ("SAC") alleges five main causes of action. First, Plaintiffs allege that all Defendants violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq.* Second, Plaintiffs allege that Vuzem, Gregurec, and Eisenmann violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Third, Plaintiffs allege that Vuzem, Gregurec, Eisenmann, and Tesla violated California wage and hour law. Fourth, Plaintiffs allege that all Defendants violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589, *et seq.* Fifth, Plaintiffs allege that all Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Plaintiffs bring all but their FCA cause of action on behalf of a class. Plaintiffs also include a less developed California law claim alongside their FLSA cause of action, and claims under Alabama and California law alongside their TVPRA claim.

The Court considers each of the main causes of action in turn. In brief, the Court finds that Plaintiffs' claims must be dismissed, with the exception of Plaintiffs' forced labor claims under the TVPRA and California law against Tesla and Eisenmann.[4] The Court notes at the outset that Vuzem has not joined the instant motion to dismiss, and thus that the Court's analysis does not extend to Plaintiffs' claims against Vuzem. The Court notes too that much of the following analysis is based on a generous reading of the at times incomprehensible SAC in order to give the claims alleged a full hearing. The Court encourages Plaintiffs' counsel to be concise and clear if they opt to amend the SAC.

### A.  False Claims Act

---

[4] Because the Court dismisses all claims against LaX, the Court need not reach Defendant LaX's personal jurisdiction arguments.

Plaintiffs allege that all Defendants have violated the FCA. SAC ¶ 126. Since its enactment in 1863, the FCA has been focused on "those who present or directly induce the submission of false or fraudulent claims" to the government. *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016). As its emphasis on fraud suggests, FCA claims are subject to the heightened pleading requirements of Rule 9(b). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011).

Although the FCA lists seven types of actionable conduct, Plaintiffs (specifically, Lesnik as the SAC names him as the relator) proceed under the "reverse false claims" provision, 31 U.S.C. § 3729(a)(1)(G); *see Cafasso*, 637 F.3d at 1056 (noting § 3729(a)(1)(G) "attempts to provide that fraudulently reducing the amount owed to the government constitutes a false claim." (citation omitted)). Section 3729(a)(1)(G) makes liable any person who "knowingly" uses "a false record or statement material to an obligation to pay … the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay … the Government." *Id.* The FCA defines knowingly to mean that a "defendant knew a claim for payment was false, or that it acted with reckless disregard or deliberate indifference as to the truth or falsity of the claim." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 2018 WL 4403407, at *9 (9th Cir. Sept. 11, 2018).

Moving Defendants challenge Plaintiffs' FCA claim on five grounds. First, Moving Defendants argue that Plaintiffs are barred by law from resting an FCA claim on tax avoidance and failure to pay wages. Second, Moving Defendants argue that Plaintiffs' attempt to plead unjust enrichment and restitution claims under the aegis of an FCA claim are also barred by law. Third, Moving Defendants argue that Plaintiffs do not allege any false or fraudulent statements. Fourth, Moving Defendants argue that Plaintiffs have not pleaded their FCA claim with the particularity required by Rule 9(b). Fifth, Moving Defendants argue that Plaintiffs have not adequately alleged a reverse false claim because they do not allege any Defendants avoided paying fees to the government.

For the reasons set forth below, the Court agrees with Moving Defendants' two threshold

arguments, and dismisses Plaintiffs' FCA claim with prejudice to the extent that it rests on tax avoidance, failure to pay wages, restitution, or unjust enrichment. *See Leadsinger*, 512 F.3d at 532 (noting dismissal with prejudice is appropriate where amendment would be futile). The Court rejects Moving Defendants' third argument that Plaintiffs have failed to allege any false statements. Nevertheless, the Court dismisses Plaintiffs' FCA claim without prejudice because the Court agrees that Plaintiffs have not satisfied Rule 9(b), and agrees that Plaintiffs have not alleged any Defendant avoided paying fees to the government.

### 1. Basis of the Cause of Action

Moving Defendants argue that Plaintiffs' FCA claim is barred to the extent that it rests on failure to pay wages or tax avoidance. The SAC alleges that Defendants are liable under the FCA because they did not pay "prevailing wages," "taxes including social security, FICA and medicare," and "visa application fees." SAC ¶ 125. The Court evaluates each basis for liability in turn.

First, Plaintiffs cite no authority which states or implies that an employer's failure to pay "prevailing wages" to employees can support liability under the FCA. Such an interpretation is completely at odds with a statute whose avowed purpose is to prevent fraud on the government, and which requires a false claim to the government as an essential element. *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) ("[Plaintiff] must show *an actual false claim* for payment being made to the Government. Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation." (internal quotations marks and citations omitted)); *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2003 (2016) ("The False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." (internal quotation marks and citation omitted)). Underscoring the point, Plaintiffs' opposition fails to respond to Moving Defendants' arguments on this point.

Thus, the Court grants Moving Defendants' motion to dismiss with prejudice to the extent that Plaintiffs' FCA claim rests on non-payment of wages, both because amendment would be futile and because Plaintiffs' silence on this issue shows they have abandoned this theory. *See*

8

*Leadsinger*, 512 F.3d at 532 (noting dismissal with prejudice is appropriate where amendment would be futile); *Lee v. Retail Store Employee Bldg. Corp.*, 2017 WL 346021, at *20 (N.D. Cal. Jan. 24, 2017) (denying leave to amend because plaintiffs' "failure to even argue the issue in their opposition indicates a waiver of this claim"); *Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at *6 n. 2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims"); *see also Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (finding that failure to respond as to certain claims constituted a waiver of those claims).

Second, Plaintiffs' suggestion that FCA liability can rest on an attempt to minimize "taxes including social security, FICA and medicare" is at odds with the FCA's "Tax Bar." Specifically, the Tax Bar provides that the FCA "does not apply to claims, records, or statements made under the Internal Revenue Code of 1986." 31 U.S.C § 3729(d). Thus, Plaintiffs' FCA claim is barred by law to the extent that it relies on tax claims, because the "plain language" of § 3729(d) expressly removes those claims from the FCA's reach. *U.S. ex rel. Barber v. Paychex, Inc.*, 2010 WL 2836333, at *5 (S.D. Fla. July 15, 2010), *aff'd sub nom. Barber v. Paychex Inc.*, 439 F. App'x 841 (11th Cir. 2011) ("Under 'the plain language of the Tax Bar,' any and all 'causes of action involving fraudulent claims, records, or statements made to the government under the Tax Code are expressly excluded from the scope of the FCA.' " (citation omitted)); *U.S. ex rel. Lissack v. Sakura Glob. Capital Markets, Inc.*, 377 F.3d 145, 153 (2d Cir. 2004) (noting purpose of the Tax Bar is to "reserve[] discretion to prosecute tax violations to the IRS and bar[] FCA actions based on tax violations."); *Patriot Tax Int'l, LLC v. Diaz*, 2008 WL 2705450, at *3 (E.D. Ky. July 3, 2008) ("Congress could not have expressed its intent more clearly than it did in § 3729(e) that causes of action involving fraudulent claims, records, or statements made to the government under the Tax Code are expressly excluded from the scope of the FCA." (internal quotation marks and citation omitted)). As before, Plaintiffs' opposition does not respond to Moving Defendants' arguments.

Thus, the Court grants Moving Defendants' motion to dismiss with prejudice to the extent

United States District Court
Northern District of California

that Plaintiffs' FCA claim rests on tax minimization because tax claims are barred by statute, and because Plaintiffs' silence indicates they have abandoned this theory. *See Leadsinger*, 512 F.3d at 532 (noting dismissal with prejudice is appropriate where amendment would be futile); *Lee*, 2017 WL 346021, at *20 (denying leave to amend because plaintiffs' "failure to even argue the issue in their opposition indicates a waiver of this claim"); *Qureshi*, 2010 WL 841669, at *6 n. 2 (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims"); *see also Ramirez*, 941 F. Supp. 2d at 1210 (finding failure to respond as to certain claims constituted a waiver of those claims).

Third, Plaintiffs' final basis for FCA liability is Defendants' alleged non-payment or under-payment of visa fees. In brief, Plaintiffs' theory is that Defendants knowingly lied on visa applications so laborers like Lesnik would qualify for B–1 visas, when in fact the laborers should only have been eligible for more costly H1–B visas. SAC ¶¶ 5–7, 106. Section 3729(a)(1)(G) imposes liability if a defendant submitted a "a false record or statement material to an obligation to pay" the government. The FCA defines "obligation" broadly to include "an established duty, whether or not fixed, arising from … a fee-based or similar relationship, [or] from statute or regulation … ." 31 U.S.C. § 3729(b)(3). Moving Defendants do not dispute that visa fees satisfy this definition or, more broadly, that a visa-fee based FCA claim can be viable as a general matter. Thus, the Court finds that Plaintiffs' FCA claim is permissible to the extent that it relies on the non-payment or under-payment of visa fees. Accordingly, subsequent discussion of Plaintiffs' FCA claim presumes it is based on this theory.

### 2. Restitution and Unjust Enrichment

The SAC briefly refers to FCA-based restitution and unjust enrichment "counts" within the broader FCA cause of action. SAC ¶¶ 137–41. Moving Defendants move to dismiss both counts on the grounds that Plaintiffs lack standing to bring common law claims on behalf of the United States. *U.S. ex rel. King v. Jackson Cty. Hosp. Corp. of Mariana, Fla.*, 2001 WL 34104925, at *11 (N.D. Fla. Aug. 17, 2001) (dismissing restitution and unjust enrichment claims because a relator had "no right to bring the claim[s] on behalf of the United States."). Once again, Plaintiffs'

opposition neither responds to this argument nor refers, even in passing, to these allegations. Consequently, the Court dismisses Plaintiffs' FCA claim with prejudice to the extent that it relies on a restitution or unjust enrichment theory, both because amendment would be futile and because Plaintiffs have abandoned those claims. *See Leadsinger*, 512 F.3d at 532 (noting dismissal with prejudice is appropriate where amendment would be futile); *Lee*, 2017 WL 346021, at *20 (denying leave to amend because plaintiffs' "failure to even argue the issue in their opposition indicates a waiver of this claim"); *Qureshi*, 2010 WL 841669, at *6 n. 2 (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims"); *see also Ramirez*, 941 F. Supp. 2d at 1210 (finding that failure to respond as to certain claims constituted a waiver of those claims).

### 3. False or Fraudulent Statements

Moving Defendants next move to dismiss the FCA claim in its entirety on the grounds that the SAC alleges no false or fraudulent course of conduct, which is an essential element of any FCA claim. *University of Phoenix*, 461 F.3d at 1174 (noting that "the essential elements of False Claims Act liability" include "a false statement or fraudulent course of conduct").

Plaintiffs' FCA claim relies on two letters that Eisenmann sent to the U.S. Consulate on April 29, 2013, and November 5, 2014. SAC ¶¶ 6–7. Per the SAC, the November 5, 2014 letter requested a visa for Lesnik on the grounds that he possessed specialized technical knowledge, had a long history of working with Eisenmann, had experience installing Eisenmann's equipment, and that Eisenmann therefore wanted to hire him "to work in the United States at an automotive plant at which Eisenmann Corporation was managing construction activities." *Id.* ¶ 7. The SAC alleges further that these statements were false because Lesnik did not have "specialized knowledge or a long history of installing Eisenmann equipment and process systems" and had "not worked on any Eisenmann" project. *Id.* The SAC and both sides' briefs agree that the facts surrounding Papes's April 29, 2013 letter are "essentially the same." *Id.*; Mot. at 9 ("The allegations related to Papes' April 29 Letter fail for the same reasons."). Thus, the Court will follow the parties' lead and assume that Papes' letter stands or falls with that of Lesnik. Finally, the SAC alleges that

Eisenmann used these false statements to obtain B-1 visas for Lesnik and Papes, when in fact the two men should have been eligible only for costlier H1–B visas. *Id.* ¶¶ 5–7, 106.

Moving Defendants' motion to dismiss—which attaches the letters[5]—denies that they are false and argues that Plaintiffs' allegations are contradicted by the letters' contents. ECF No. 219-3 at 5, 7 (the letters). In particular, Moving Defendants argue Lesnik's letter is not false because it states that Lesnik worked for "Co. Gregurec Ltd" and the letter states that Gregurec, not Lesnik, has technical knowledge, a long history of working with Eisenmann, and experience installing Eisenman's equipment. Opp. at 8–9. In other words, Moving Defendants argue the letter did not lie about Lesnik because the allegedly false statements actually referred to Gregurec, Lesnik's employer.

This is unpersuasive. To start, the SAC expressly alleges that Lesnik "did not work for Gregrc [*sic*] Ltd," so the effect of Moving Defendants' argument is to trade one allegedly false statement (that Lesnik was skilled) for another (that Lesnik worked for Gregurec). SAC ¶ 7. More broadly, the Court is required to "construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. The letter states that Eisenmann has a long history of working with Gregurec, describes Gregurec's knowledge and skill in glowing terms, says Eisenmann has a "turnkey contract"[6] with Gregurec to install equipment on Eisenmann's behalf, and seeks to bring Lesnik to the United States to fulfill that agreement. ECF No. 219-3 at 5. The obvious inference is that Lesnik, as a Gregurec employee, is knowledgeable and skilled and he is being brought to the United States to apply that skillset to a technically complex equipment installation. It follows that the SAC has alleged a false statement because the SAC alleges Lesnik

---

[5] "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Defendants have included the letters with their motion to dismiss, and request that this Court consider them in evaluating the motion to dismiss. Plaintiffs do not object to this request. In turn, given that the letters are the basis for Plaintiffs' FCA claim and repeatedly referenced in the SAC, the Court finds the letters are incorporated by reference and will therefore consider them.

[6] "Turnkey" is defined as "built, supplied, or installed complete and ready to operate." Turnkey Definition, Merriam-Webster, http://www.merriam-webster.com/dictionary/turnkey (last visited September 28, 2018).

Case No. 16-CV-01120-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

lacked any specialized skills, did not work for Gregurec, and was brought to the United States to perform unskilled construction work. Thus, the Court rejects Moving Defendants' argument that the SAC does not allege falsity.

### 4. Rule 9(b)

Moving Defendants next argue the FCA claim fails to satisfy Rule 9(b) as to any Defendant except Eisenmann. Of the dozens of Defendants named in the SAC, Eisenmann is the only Defendant who is alleged to have actually made a false statement (*i.e.* by writing the letters). Plaintiffs do not dispute this point. However, Plaintiffs argue that they can rely on Eisenmann's statements to state a claim against the remaining Defendants because the FCA allows for conspiracy liability, and the SAC has alleged that all Defendants were part of a conspiracy to violate the FCA. *See* 31 U.S.C. § 3729(a)(1)(C) (imposing liability on any person who "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)").

The Court disagrees. The SAC refers solely to violations of § 3729(a)(1)(A) and (B), which concern the direct submissions of false claims for payment to the government. SAC ¶¶ 126–36. The Court has nevertheless construed the SAC to allege a reverse false claims cause of action under § 3729(a)(1)(G) because the SAC's substantive allegations most closely resemble such a claim. Section 3729(a)(1)(G) makes liable those who, by false statements, reduce their liability to the government. *Cafasso*, 637 F.3d at 1056. It is therefore termed a "reverse false claim" because the false statement is made to avoid payment, rather than to seek payment. *See id.* Here, that describes Plaintiffs' FCA cause of action because their theory is that Eisenmann's false statements on letters submitted in connection with visa applications reduced fees owed to the government for the visas.

Nevertheless, there are limits to the Court's generous interpretation of the SAC. Nothing in the FCA cause of action indicates that the SAC seeks to plead a conspiracy under § 3729(a)(1)(C), and Plaintiffs' suggestion to the contrary in their opposition amounts to an attempt to amend the SAC via the opposition. That is not permissible. *Heineke v. Santa Clara Univ.*, 2017 WL 6026248, at *16 (N.D. Cal. Dec. 5, 2017) ("[T]he complaint may not be amended by briefs in opposition to

13

a motion to dismiss." (quoting *Tietsworth v. Sears*, 720 F.Supp.2d 1123, 1145 (N.D. Cal. 2010));

*Merritt v. Metro. Life Ins. Co.*, , 2010 WL 725073, at *1 (N.D. Cal. Mar. 1, 2010) ("It is axiomatic

that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Here,

the SAC fails to allege the existence of a conspiracy to violate the FCA with the specificity Rule

9(b) requires because the SAC does not even inform Defendants that a conspiracy is alleged to

exist. *Semegen*, 780 F.2d at 731 (noting allegations must be "specific enough to give defendants

notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

defend against the charge and not just deny that they have done anything wrong"). Thus, the Court

must dismiss Plaintiffs' cause of action against the non-Eisenmann Moving Defendants.

There is another reason that Plaintiffs' putative § 3729(a)(1)(C) conspiracy claim has not

satisfied Rule 9(b). *See WellPoint*, 2018 WL 4403407, at *7 (9th Cir. Sept. 11, 2018) (discussing

Rule 9(b)'s requirement in the context of an alleged FCA conspiracy). Rule 9(b) requires that

plaintiffs "alleging conspiracy claims under Section 3729(a)(1)(C) must allege the existence of an

agreement between the defendants to violate the FCA." *United States ex rel. Marion v. Heald

Coll., LLC*, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015) (collecting cases); *U.S. ex rel.

Kelly v. Serco, Inc.*, 2014 WL 4988462, at *11 (S.D. Cal. Oct. 6, 2014), *aff'd sub nom. United

States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017) (granting defendants summary

judgment on relator's § 3729(a)(1)(C) conspiracy claim because "there is no evidence of an

agreement between John Mitchell and Serco personnel to submit a false claim"). Yet here the SAC

does not actually allege that any agreement existed, which likewise compels dismissal of the FCA

claim as to the non-Eisenmann Moving Defendants.

In brief, Plaintiffs have failed to state an § 3729(a)(1)(G) reverse false claims cause of

action—which is the only theory of FCA liability supported by the SAC's allegations—as to any

Defendant other than Eisenmann, and have failed to state a § 3729(a)(1)(C) conspiracy cause of

action against any Defendant. Thus, the Court will evaluate Moving Defendants' final argument

only as it relates to Plaintiffs' § 3729(a)(1)(G) claim against Eisenmann.

### 5. Failure to Identify a False Claim

United States District Court
Northern District of California

Moving Defendants' final argument is that Plaintiffs' § 3729(a)(1)(G) claim fails because it does not identify who was actually responsible for payment of the visa fees. The Court agrees.

The Ninth Circuit has made it clear that a plaintiff "must show *an actual false claim* for payment being made to the Government. Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation." *Kitsap*, 314 F.3d at 1002 (internal quotations marks and citations omitted); *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (noting that Rule 9(b) requires a plaintiff to "supply reasonable indicia that false claims were actually submitted"). This requirement remains applicable even if a plaintiff proceeds under a reverse false claims theory. *See Cafasso*, 637 F.3d at 1056 ("The 'reverse false claims' provision does not eliminate or supplant the FCA's false claim requirement; it rather expands the meaning of a false claim to include statements to avoid paying a debt or returning property to the United States."). Here, the SAC does not actually allege which Defendant, if any, paid the fees associated with the visas of Lesnik, Papes, or any other laborer. Thus, Plaintiffs have failed to state a reverse false claims cause of action.

### 6. Summary

In sum, the Court GRANTS Moving Defendants' motion to dismiss Plaintiffs' FCA cause of action. The Court's dismissal is with prejudice to the extent that the FCA cause of action rests on Defendants' failure to pay prevailing wages, violation of the Internal Revenue Code, restitution, or unjust enrichment. *Leadsinger*, 512 F.3d at 532 (noting dismissal with prejudice is appropriate where amendment would be futile); *Lee*, 2017 WL 346021, at *20 (denying leave to amend because plaintiffs' "failure to even argue the issue in their opposition indicates a waiver of this claim"). However, the Court affords Plaintiffs leave to amend in order to plead claims under § 3729(a)(1)(C) or § 3729(a)(1)(G) because Plaintiffs may be able to allege sufficient facts to state a claim. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### B. Wage and Hour Claims

Plaintiffs bring claims under FLSA and California's labor laws. SAC ¶¶ 142–197. Specifically, Lesnik and Papes bring a claim against Vuzem, Gregurec, and Eisenmann under 29 U.S.C. § 2255(a) on behalf of themselves and a putative class, and Papes alone brings a claim against Vuzem, Gregurec, Eisenmann, and Tesla under the California Labor Code. The Court first considers Moving Defendants' argument that Lesnik's claims against Eisenmann and Tesla are barred by a previous settlement. The Court then addresses Plaintiffs' claims in turn. The Court rejects the settlement based defense, but finds that Plaintiffs have not stated claims under their federal or state wage and hour claims.

### 1. Settlement Agreement

As a threshold matter, Moving Defendants assert Lesnik cannot bring any non-FCA claims against Tesla or Eisenmann as Lesnik previously signed a settlement agreement ("Settlement") that released Tesla and Eisenmann from all of Lesnik's claims against them. Consequently, Moving Defendants request that the Court take judicial notice of the settlement, and deny Lesnik's non-FCA claims on the grounds that they are barred by the Settlement.

The Court declines to take judicial notice of the Settlement. Unlike the letters, the Settlement is not incorporated by reference in the SAC. The SAC does not refer to the Settlement, and the SAC's claims do not derive from the Settlement. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Moving Defendants respond that the Court should still take judicial notice of the Settlement because its absence from the SAC was a strategic decision, and the Settlement is tightly bound to the underlying allegations in the SAC, in the sense that they have already been resolved by the Settlement. *See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 979 (N.D. Cal. 2005) (suggesting it is appropriate to consider documents that are "integral to the plaintiff's complaint and dispositive in the dispute, raising the spectre that plaintiff failed to incorporate them by reference in the complaint as a means of avoiding Rule 12(b)(6) dismissal.").

Assuming *arguendo* that Moving Defendants are correct, the Court still cannot consider the Settlement. Unlike the cases on which Moving Defendants rely, Moving Defendants here have chosen not to provide the Court with a full copy of the Settlement. *See, e.g., Grillo v. State of Cal.*, 2006 WL 335340, at *3 n.3 (N.D. Cal. Feb. 14, 2006), *aff'd sub nom. Grillo v. California Dep't of Corr.*, 308 F. App'x 63 (9th Cir. 2009) ("The November 24, 2004 Stipulated Settlement and Disciplinary Order … was filed as an attachment to the CMB's September 6, 2005 reply brief"). All Moving Defendants have provided are two declarations which, between them, contain three paragraphs of the overall Settlement. ECF No. 219-4 (two paragraphs); ECF No. 242-6 (one paragraph). Moving Defendants then use this selectively excerpted language to make arguments about the overall Settlement's legal effect. Plaintiffs, as one might expect, disagree with Moving Defendants' reading of the excerpted language. Given that Moving Defendants have not provided the Court with a full copy of the Settlement, given that the legal effect of the available portions is disputed, and given that the SAC does not refer to the Settlement, the Court declines to take judicial notice of the three paragraphs that Moving Defendants have provided. It follows that Plaintiffs' claims against Eisenmann and Tesla are not, at least at this stage, barred by the Settlement.

### 2. Federal Labor Standards Act

Plaintiffs bring a claim against Vuzem, Gregurec, and Eisenmann under 29 U.S.C. § 2255(a), on behalf of themselves and the putative class. Moving Defendants do not dispute the substance of Plaintiffs' claims. Moving Defendants do not, for instance, argue that the workers at Tesla's Fremont facility were actually paid minimum wage. Instead, Moving Defendants argue that Eisenmann was not Plaintiffs' joint employer. The Court must agree.

The joint employer doctrine recognizes that "even where business entities are separate, if they share control of the terms of [*sic*] conditions of an individual's employment, both companies can qualify as employers." *Johnson v. Serenity Transportation, Inc.*, 2016 WL 270952, at *10 (N.D. Cal. Jan. 22, 2016) (quoting *Gutierrez v. Carter Bros. Sec. Servs., LLC*, 2014 WL 5487793, at *3 (E.D. Cal. Oct. 29, 2014)). At the pleading stage, although the "plaintiff is not required to

17

conclusively establish that defendants were her joint employers … [she] must at least allege some facts in support of this legal conclusion." *Id.* (quoting *Hibbs-Rines v. Seagate Techs., LLC, 2009 WL 513496*, at \*5 (N.D. Cal. Mar. 2, 2009)).

A defendant must be an "employer" of the plaintiff to be liable under the FLSA. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). "Two or more employers may be 'joint employers' for the purposes of the FLSA." *Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1232 (C.D. Cal. 2007). "All joint employers are individually responsible for compliance with the FLSA." *Id.*; *see also* 29 C.F.R. § 791.2(a). Whether an entity is a "joint employer" under the FLSA is a question of law. *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997).

The Ninth Circuit has adopted a four-part "economic reality" test to determine when the employer-employee relationship exists. *See Bonnette*, 704 F.2d at 1470. These factors include whether the employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*; *see also Moreau v. Air France*, 356 F.3d 942, 946–47 (9th Cir. 2004) (confirming applicability of the *Bonnette* factors for the economic reality test); *Johnson*, 2016 WL 270952, at \*10 (applying *Bonnette* factors). The Court addresses each factor in turn.

The first *Bonnette* factor is whether the alleged joint employer has the power to hire and fire the purported employees. The SAC does not allege that Eisenmann had the power to hire and fire Papes, Lesnik, or anyone else. Thus, this *Bonnette* factor weighs against a finding of a joint employer status for Eisenmann.

The second *Bonnette* factor is whether the alleged joint employer had control over the employees' work schedules or conditions. The SAC alleges that Eisenmann "directly employed field managers and project managers for the work sites," SAC ¶ 204, and in particular that Eisenmann supervisors "came from time to time to take a look to see how the work performed by

18

Gregor Lesnik, Stjepan Papes and the other similarly situated alien 'B–1' workers was progressing." *Id.* ¶ 40. The Court, as it must, construes the SAC in Plaintiffs' favor. *See Manzarek*, 519 F.3d at 1031 (noting courts accept "factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party"). So construed, the picture that emerges is of Eisenmann using subcontractors like Vuzem to supply laborers which Eisenmann directly supervised at job sites like the Tesla facility in Fremont. Consequently, this *Bonnette* factor weighs in favor of finding that Eisenmann was a joint employer.

The third *Bonnette* factor is whether the alleged joint employer determined the rate and method of the employees' payment. The SAC's allegations indicate that Vuzem was solely responsible for payment. The SAC alleges that Vuzem paid laborers small cash per diems[7] while they were in the United States. SAC ¶¶ 14(l)–(m), 112 ("ISM Vuzem d.o.o. asserts in writing that it paid Gregor Lesnik $505 US (cash) in March … and $1,282 US in April"). The SAC also suggests, though it is not entirely clear, that Vuzem deposited remaining wages in bank accounts in the laborers' home countries. *Id.* ¶ 14(k) ("[T]he workers received a monthly salary, in most instances of 800 euros that was deposited directly in their bank account in their home country (expressly stated in the Potrdilo O Zaposlitvi (Certificate of Employment) dated 13.02.2013 signed by Direktor Ivan Vuzem as being E 783,66 gross pay)"). Thus, Eisenmann did not determine the rate and method of payment. The third *Bonnette* factor weighs against finding a joint employer status for Eisenmann.

The fourth *Bonnette* factor is whether the alleged joint employer maintained employment records for the employees. As before, the SAC contains no allegations that Eisenmann maintained employment records. Thus, the Court finds that this *Bonnette* factor too weighs against finding a joint employer status for Eisenmann.

The bottom line here is that three of four *Bonnette* factors weigh against finding that Eisenmann was the joint employer of Lesnik and Papes. Underscoring the point, the only

---

[7] The SAC also alleges that those amounts were then deducted from workers' wages. SAC ¶ 112.

19

allegations Plaintiffs identify in their opposition in support of joint employer status relate to Eisenmann's control over working conditions. Opp. at 21–22. The Court therefore must find that Plaintiffs have not alleged that Eisenmann was a joint employer, and thus that Plaintiffs have not stated a claim under § 2255(a).

Accordingly, the Court GRANTS Moving Defendants' motion to dismiss Plaintiffs' claim under § 2255(a). The Court affords Plaintiffs leave to amend because Plaintiffs may be able to allege sufficient facts to state a claim under § 2255(a). *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### 3. California Labor Code

Plaintiffs (specifically, Papes) bring "[c]lass action wages claims" against Vuzem, Gregurec, Eisenmann, and Tesla on his own behalf and on behalf of a class. SAC ¶¶ 142–76. The SAC seems to allege that Vuzem, Gregurec, Eisenmann, and Tesla violated California labor law by failing to provide minimum wage and overtime pay, as applicable. However, the SAC then links its allegations to the Immigration and Nationality Act ("INA"), and muddies matters even more through a detailed description of prevailing wages in Tuscaloosa, Alabama. *Id.* ¶¶ 149, 151. The SAC does not tie these allegations to the only statutory provisions actually listed for this cause of action, California Labor Code §§ 1174 and 1175. Section 1174 describes an employer's recordkeeping duties. Section 1175 makes it a misdemeanor to violate § 1174. Plaintiffs' opposition then complicates things even further by completely ignoring §§ 1174 and 1175, and alleging that cause of action SAC has stated a claim under the Private Attorneys General Act, ("PAGA"), Cal. Labor Code §§ 2698, *et seq.*, which is not mentioned in the SAC. Opp. at 21. The references to Alabama wages are never explained.

Plaintiffs are not proceeding *pro se*. It is incumbent on Plaintiffs to identify the statutes and theories under which they proceed, so that the Court can evaluate the legal sufficiency of Plaintiffs' claims. Plaintiffs have failed to do so, and Plaintiffs may not rewrite the SAC in their opposition by inserting a string of new statutes absent from the SAC. *Heineke*, 2017 WL 6026248,

20

at *16 ("[T]he complaint may not be amended by briefs in opposition to a motion to dismiss." (quoting *Tietsworth*, 720 F.Supp.2d at 1145)); *Merritt*, 2010 WL 725073, at *1 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

Thus, the Court GRANTS Moving Defendants' motion to dismiss Plaintiffs' cause of action for violation of the California Labor Code. The Court affords Plaintiffs leave to amend because Plaintiffs may be able to state a claim for violation of the California statutes requiring payment of minimum wage and overtime, and recordkeeping by employers. *See Lopez*, 203 F.3d at 1127 (holding "a district court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)). The Court now turns to Plaintiffs' forced labor causes of action.

## C. Forced Labor Causes of Action

Plaintiffs (specifically, Papes and Lesnik) also bring forced labor claims under the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589, *et seq.*, Alabama law, and California law, both on their own behalf and on behalf of a putative class. The Court finds that Plaintiffs have stated a claim under the TVPRA. The Court then finds that Plaintiffs have not stated a claim under Alabama law, but have stated a claim under California law.[8]

### 1. Trafficking Victims Protection Reauthorization Act

The TVPRA includes a civil cause of action under 18 U.S.C. § 1595 that allows victims to seek damages and attorneys' fees from the "perpetrator" of a violation, *inter alia*, laws prohibiting trafficking and forced labor. Section 1595(a) also extends liability beyond perpetrators to anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known" committed a violation of applicable

---

[8] The Court dismisses all three forced labor claims without prejudice to the extent they are based on Papes because the SAC has almost no allegations concerning Papes and forced labor. The subsequent analysis is based on Lesnik's claims.

Case No. 16-CV-01120-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

trafficking and forced labor laws. *See Shuvalova v. Cunningham*, 2010 WL 5387770, at *3 & n.3 (N.D. Cal. Dec. 22, 2010) (noting same). At the outset, the Court notes that Rule 9(b) does not apply to Plaintiffs' § 1595 claim because it does not sound in fraud. *See Aragon v. Che Ku*, 277 F. Supp. 3d 1055, 1061 n.2 (D. Minn. 2017) (rejecting this argument in case concerning § 1595).

The SAC alleges that Defendants violated 18 U.S.C. § 1589, and that this is the basis for Plaintiffs' TVPRA claim. *See* SAC ¶ 223(d) (referring to forced labor violations under "§ 1589"). Section § 1589 prohibits obtaining labor or services in four ways:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a)(1)–(4).

Moving Defendants move to dismiss Plaintiffs' TVPRA claim on three grounds. First, Moving Defendants argue that the SAC contains no allegations sufficient to support liability under § 1589(a)(1) or (4). Mot. at 17–18. Plaintiffs do not dispute this point, so the remaining analysis focuses on § 1589(a)(2) and (3). Second, Moving Defendants argue that Plaintiffs fail to state a claim under § 1589(a)(2) and (3). Third, Moving Defendants assert that, even assuming *arguendo* that Plaintiffs have stated a TVPRA claim, Plaintiffs have only stated a claim against Vuzem. The Court takes the latter two arguments in turn, and finds that Plaintiffs have stated a claim against Tesla and Eisenmann.

Section 1589(c) defines the "serious harm" referenced in § 1589(a)(2) as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm," that is serious enough to compel a reasonable person to perform labor to avoid the harm. *See United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011) (noting statutory amendments in 2000 sought to broaden § 1589 to nonviolent conduct by, *inter alia*, defining serious harm broadly). The SAC meets this bar. The SAC alleges that Vuzem threatened to withhold pay if Lesnik became too sick

Case No. 16-CV-01120-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

to work or reported a job injury, threatened to withhold medical benefits if Lesnik reported a job injury, threatened to withhold visas and immigration status, threatened to file a civil suit against Lesnik while he was hospitalized, and even told Lesnik that "this will not go well for you." SAC ¶ 201–03; *see Manzarek*, 519 F.3d at 1031 (noting courts accept "factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party").

"[M]ultiple jurisdictions have found that the threat of deportation may itself constitute a threat sufficient to satisfy the second and/or third element of [§ 1589] forced labor." *Echon v. Sackett*, 2017 WL 4181417, at *14 (D. Colo. Sept. 20, 2017), report and recommendation adopted, 2017 WL 5013116 (D. Colo. Nov. 1, 2017); *Nuñag–Tanedo v. E. Baton Rouge*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011) (holding threat of deportation constitutes "abuse of legal process" within the meaning of § 1589 in case concerning H1–B visa holders); *Aguirre v. Best Care Agency*, 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013) (stating "[t]he threat of deportation alone may support a claim for forced labor" under § 1589). Here, Plaintiffs can point not only to immigration threats, but also to financial threats, threats of litigation, and threats to withhold medical care. Taken together, these allegations are sufficient to state a claim under § 1589. *See Aragon v. Che Ku*, 277 F. Supp. 3d 1055, 1070 (D. Minn. 2017) (denying motion to dismiss where some undocumented defendants were locked in freezers and others were simply threatened with deportation); *United States v. Dann*, 652 F.3d 1160, 1172 (9th Cir. 2011) (affirming § 1589 conviction where defendant threatened undocumented nanny with withholding back pay, false accusations of theft, immigration consequences, and the defendant's potential loss of child custody).

Moving Defendants' second argument is that even if Plaintiffs have stated a claim under TVPRA, Plaintiffs have only stated a claim as to Vuzem. Moving Defendants note all of the actions that gave rise to Plaintiffs' TVPRA claim were committed by Vuzem, and thus, the remaining Defendants are not liable. Plaintiffs do not deny that Vuzem is the only Defendant that directly harmed Lesnik. Plaintiffs argue instead that the other Defendants are nevertheless liable because § 1595(a) imposes liability not only on the "perpetrator" (here, Vuzem), but also on

anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has" violated federal trafficking and forced labor laws.

Plaintiffs are correct in part. Plaintiffs are correct to note that Vuzem's conduct can render other Defendants liable pursuant to § 1595(a). The Court also agrees that Plaintiffs have stated a TVPRA claim against Eisenmann and Tesla under this theory. Indeed, the SAC's allegations on this matter are uncharacteristically specific. On June 4, 2014, Tesla and Eisenmann entered into an agreement under which Eisenmann would establish a paint shop at Tesla's facility in Fremont, California. SAC ¶ 106(b). On September 29, 2014, senior representatives for Vuzem, Eisenmann, and Tesla met and signed a subsequent agreement under which Eisenmann would employ Vuzem as a subcontractor to assist the construction of the paint shop. *Id.* 106(g). Construed in Plaintiffs' favor, these allegations are sufficient to show that Eisenmann and Tesla benefitted "financially" or by "receiving anything of value" from participating in a venture that violated § 1589, because Vuzem's actions were committed to fulfill a contract signed with Tesla and Eisenmann.

The SAC also adequately alleges that Eisenmann "knew or should have known" about Vuzem's treatment of its workers. The SAC alleges, in detail, that Eisenmann submitted false letters to secure B–1 visas for Lesnik, Papes, and other workers. *Id.* ¶ 6; *see* ECF No. 219-3 at 5, 7 (copies of the letters). The SAC further alleges that Vuzem was a subcontractor for Eisenmann, *id.* ¶ 106(g), that Eisenmann, "directly employed field managers and project managers for the work sites," *id.* ¶ 204, and that Eisenmann supervisors "came from time to time to take a look to see how the work performed by Gregor Lesnik, Stjepan Papes and the other similarly situated alien 'B-1' workers was progressing." *Id.* ¶ 40; *see also id.* ("Eisenmann Corporation had all 'subcontractor' defendants come to its headquarters in Illinois for directions."). Given Eisenmann's direct involvement in every aspect of the events at issue, the Court finds that Eisenmann knew or should have known of Vuzem's treatment of its employees.

The case is closer for Tesla. Per the SAC, Tesla knew Vuzem's workers were performing construction work prohibited by their B–1 visas and knew the workers lacked state licenses that

24

are necessary to perform construction work. *Id.* ¶ 65, 105(d). Tesla also knew the workers' shifts were extreme because Tesla kept records of their entries and exits into its facility. *Id.* ¶ 155. For example, the SAC alleges Lesnik typically worked 12 hours a day (and never less than 10), over 80 hours a week, over 250 hours a month, and received only 1 day in 14 off. *Id.* ¶ 184. At the end of shifts, Vuzem's workers were put in company vans and driven to company accommodations. *Id.* ¶ 155. Tesla was also involved to at least some degree in the work performed, as Senior EHS Engineer Bobby Gonzales provided instructions to Lesnik, and Tesla maintained all job hazard forms at the Fremont facility. *Id.* ¶ 65. As it must, the Court construes the SAC's allegations in Plaintiffs' favor. *Manzarek*, 519 F.3d at 1031. So construed, the Court finds that Tesla knew or should have know of Vuzem's mistreatment of the workers who spent every day at Tesla's facility.

Nevertheless, the Court finds that Plaintiffs have failed to state a claim under the TVPRA against the remaining Moving Defendants. The only allegations in support of Plaintiffs' TVPRA claim are Lesnik's experiences at the Tesla facility in Fremont. Plaintiffs fail to connect those events to any moving Defendant beyond Eisenmann and Tesla, and thus the claim must be dismissed as to the remaining Moving Defendants. In particular, Plaintiffs fail to explain why any other Moving Defendants derived benefits from Vuzem's treatment of Lesnik, and Plaintiffs do not explain why any other Moving Defendants would have known of Vuzem's treatment of Lesnik.

In sum, the Court DENIES Moving Defendants' motion to dismiss Plaintiffs' claim under § 1595 as it relates to Eisenmann and Tesla. However, the Court GRANTS Moving Defendants' motion to dismiss as it relates to the remaining Moving Defendants. The Court affords Plaintiffs leave to amend as to those Defendants because Plaintiffs may be able to allege sufficient facts to state a claim under § 1595 based on alleged violation of § 1589. *See Lopez*, 203 F.3d at 1127 (holding "a district court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)). The Court now turns to Plaintiffs' state law trafficking claim.

### 2. State Law Forced Labor Claims

The same allegations described above also form the basis for Plaintiffs' forced labor claims under the laws of California and Alabama. SAC ¶¶ 206–07. Moving Defendants' motion to dismiss accurately points out that Plaintiffs nowhere explain "why Alabama law would apply to the California based Vuzem conduct that is the subject of the human trafficking claim." Mot. at 20 n.13. Plaintiffs' 36-page opposition does not respond to this point or mention the Alabama claim's existence. The Court must therefore dismiss the Alabama claim.

Nevertheless, Plaintiffs' California forced labor claim survives. Plaintiffs once again do not specify the statutory basis for their California forced labor claim. However, Moving Defendants suggest that the claim is based on California Civil Code § 52.5, which allows victims to seek damages based on violations of California Penal Code § 236.1, which defines trafficking and forced labor crimes. Opp. at 20. Plaintiffs do not dispute this point, and Moving Defendants' suggestion is reasonable given that the California statutes at issue mirror the TVPRA. Thus, the Court will construe Plaintiffs' claim to be based on California Civil Code § 52.5. In turn, the California Civil Code § 52.5 claim survives as to Eisenmann and Tesla because Moving Defendants argue—and Plaintiffs do not dispute—that it does not provide a separate basis for liability from the TVPRA. Opp. at 20. Thus, because Plaintiffs' TVPRA claim survives as to Eisenmann and Tesla, Plaintiffs' California Civil Code § 52.5 claim does as well.

In sum, the Court DENIES Moving Defendants' motion to dismiss Plaintiffs' claim under California Civil Code § 52.5 as to Eisenmann and Tesla. However, the Court GRANTS the motion to dismiss the California Civil Code § 52.5 as to the remaining Moving Defendants. The Court also GRANTS the motion to dismiss as to Plaintiffs' claim under Alabama law. The Court affords Plaintiffs leave to amend because Plaintiffs may be able to allege facts sufficient to state a claim under California Civil Code § 52.5 as to the remaining Moving Defendants, or under Alabama law. *See Lopez*, 203 F.3d at 1127 (holding "a district court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)). The Court now turns to Plaintiffs' final cause of action.

### D. RICO Cause of Action

Plaintiffs also bring class action claims under 18 U.S.C. § 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO").[9] To successfully plead a RICO claim under § 1962(c), "Plaintiffs must plausibly allege that Defendants participated, directly or indirectly, in (1) the conduct (2) of an enterprise that affects interstate commerce, (3) through a pattern (4) of racketeering activity." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 957 (N.D. Cal. 2018). Plaintiffs also must satisfy "RICO's statutory standing requirements, which require Plaintiffs to plausibly allege (1) an injury to 'business or property,' that is (2) 'by reason of a violation of section 1962.' " *Id.* (quoting § 1964(c)).

Plaintiffs also proceed under § 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." In considering Plaintiffs' RICO claims, the Court is mindful that "RICO is to be read broadly" and should "be liberally construed to effectuate its remedial purposes." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497–98 (1985)).

Moving Defendants move to dismiss Plaintiffs' § 1962(c) claim on two grounds. First, Moving Defendants argue that Plaintiffs have not alleged the existence of an enterprise. Second, Moving Defendants argue that Plaintiffs have failed to allege any predicate acts of racketeering. The Court agrees with Moving Defendants' first argument, and dismisses Plaintiffs' § 1962(c) and (d) claims on that basis. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[T]he district court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy. We agree."). The Court therefore does not evaluate Moving Defendants'

---

[9] The SAC also refers to § 1962(a) and (b). Section 1962(a) renders a defendant liable if she uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce. Section 1962(b) renders a defendant liable if she acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity." Plaintiffs offer no explanation as to why these RICO provisions would apply here, and the Court therefore dismisses Plaintiffs' RICO claim to the extent that it rests on § 1962(a) and (b).

Case No. 16-CV-01120-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

challenges to the seven different predicate acts alleged in the SAC.[10]

A RICO "enterprise" consists of "any individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact although not as a legal entity." 18 U.S.C. § 1961(4). Plaintiffs here allege that all Defendants named in the SAC are an associated-in-fact enterprise, which is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (quoting *Odom*, 486 F.3d at 548). This sort of enterprise has "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Chrysler*, 295 F. Supp. 3d at 957. The Ninth Circuit has clarified that "an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Odom*, 486 F.3d at 551

The Court finds that Plaintiffs have not adequately alleged the existence of an enterprise. Plaintiffs allege dozens of Defendants scattered across the United States and Europe constitute an enterprise. However, Plaintiffs provide no allegations indicating that Defendants were engaged in anything more than routine business transactions, and courts have "overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Shaw v. Nissan N.A. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016). Plaintiffs' argument to the contrary relies heavily on the Eleventh Circuit's decision *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277 (11th Cir. 2006), but the case's relevance here is undermined by the Eleventh Circuit's subsequent recognition that it applied a defunct standard of review. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714 (11th Cir. 2014) ("This 'no set of facts' language in *Mohawk II* was pulled verbatim from *Conley v. Gibson*, 355 U.S. 41, 45–46 … (1957), which the Supreme Court categorically retired in *Twombly*.").

---

[10] The Court notes, however, that forced labor is a valid predicate act under RICO. *Nuñag–Tanedo*, 790 F.Supp.2d at 1148 (C.D. Cal. 2011) ("Plaintiffs have stated valid claims for forced labor [and] human trafficking ... and these claims may also serve as underlying predicate acts for Plaintiffs' RICO claim."); *Magnifico v. Villanueva*, 783 F.Supp.2d 1217, 1229 (S.D. Fla. 2011) (identifying human trafficking and forced labor as predicate acts under RICO); *Ross v. Jenkins*, 2018 WL 2335853, at *16 (D. Kan. May 23, 2018) (same).

Case No. 16-CV-01120-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

The structure of the enterprise in *Mohawk* was significantly different from the enterprise alleged in the SAC. In *Mohawk*, a class of current and former employees brought a RICO action against a carpet manufacturer, Mohawk, for hiring undocumented immigrants in order to depress wages. *Mohawk*, 465 F.3d at 1280–81. Thus, the enterprise there was straightforward in that it consisted solely of Mohawk and the third-party labor recruiters. By contrast, the international enterprise alleged in the SAC radiates outwards from Eisenmann and its customers (*e.g.* Tesla, BMW) and dozens of subcontractors (*e.g.* Vuzem). Indeed, Plaintiffs cite no case that has found a RICO enterprise adequately alleged based on a structure as ramshackle as the one Plaintiff here alleges. *Cf. Cunningham v. Offshore Specialty Fabrications, Inc.*, 543 F. Supp. 2d 614, 633–34 (E.D. Tex. 2008), *aff'd sub nom. Brown v. Offshore Specialty Fabricators*, Inc., 663 F.3d 759 (5th Cir. 2011) (finding RICO enterprise adequately alleged where complaint alleged separate RICO enterprises based on each customer defendant's relationship with contractor defendants).

Moreover, despite the aforementioned complexity, the SAC makes no attempt to describe Defendants' roles in the enterprise's structure, or to in any way differentiate among Defendants. *See* SAC ¶¶ 227–244; *see also Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1102 (C.D. Cal. 2011) (dismissing because "plaintiffs use collective pleading to allege RICO 'conduct' or 'participation,' making repeated references to an unspecified 'defendant' or 'defendants' who committed the various acts in question."). Instead, the SAC baldly states an enterprise exists and that it consisted of every single Defendant. SAC ¶ 230 ("Defendants, and each of them, by the above-described conduct, participated in a criminal enterprise through a pattern of racketeering activity that affected interstate and foreign commerce. Defendants, and each of them, were associated in fact in, and engaged in, the activities which affect interstate commerce."). Courts have dismissed RICO claims based on such conclusory boilerplate allegations, and this Court does so as well. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 2010 WL 384736, at *3 (N.D. Cal. Jan. 29, 2010) (dismissing complaint which relied on "conclusory boilerplate RICO allegations, with little factual specificity to establish the RICO enterprise, or each defendant's conduct in relation to the enterprise"); *see Kennedy v. Full Tilt Poker*, 2010 WL 1710006, at *6–8 (C.D. Cal. Apr. 26,

29

2010) (dismissing for failure to plead RICO enterprise with specificity).

The failure to adequately allege a common purpose is another basis for dismissal. Although the SAC spans 62 pages, the only reference to a common purpose is the statement "Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and the RICO Class Members." SAC ¶ 241. Again, Courts have dismissed RICO claims where they rested on conclusory boilerplate statements. *See Eclectic*, 2010 WL 384736, at *3; *Kennedy*, 2010 WL 1710006, at *6–8. Here, some additional explanation is needed to state a claim, and at the very least Plaintiffs must specify of what the enterprise sought to defraud Plaintiffs. More broadly, given the divergent interests between Eisenmann, a seller of paint equipment, customers like Tesla who purchase paint equipment, and subcontractors like Vuzem who provide labor to install it, some allegations explaining why they share a purpose are also necessary. *See Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004) ("[I]t is not altogether clear how this 'association in fact' has a common purpose, an essential ingredient. IBP wants to pay lower wages; the recruiters want to be paid more for services rendered (though IBP would like to pay them less); the Chinese Mutual Aid Association wants to assist members of its ethnic group. These are divergent goals." (citation omitted)).

The bottom line is that although Plaintiffs may be able to allege a RICO enterprise or enterprises based on, *inter alia*, violations of the TVPRA, the threadbare allegations in the SAC fail to do so. Thus, the Court must dismiss Plaintiffs' § 1962(c) cause of action because the existence of an enterprise is an essential element of the claim. *Chrysler*, 295 F. Supp. 3d at 9547. It follows that Plaintiffs' § 1962(d) must also be dismissed because the Ninth Circuit has held that "the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy" under § 1962(d). *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Stitt v. Citibank, N.A.*, 2015 WL 75237, at *6 (N.D. Cal. Jan. 6, 2015), *aff'd*, 2018 WL 4090104 (9th Cir. Aug. 28, 2018) ("Accordingly, because plaintiffs have again failed to allege the requisite substantive elements of RICO under Section 1962(c), their claim for conspiracy under Section 1962(d) also

30

fails.").

In sum, the Court GRANTS Moving Defendants' motion to dismiss Plaintiffs' claim under § 1962(c) and (d). However, the Court affords Plaintiffs leave to amend because Plaintiffs may be able to allege facts sufficient to state a claim under § 1962(c) and (d). *See Lopez*, 203 F.3d at 1127 (holding "a district court should grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

## IV.    CONCLUSION

For the foregoing reasons, Moving Defendants' motion to dismiss is GRANTED in part and DENIED in part. In particular:

1. Moving Defendants' motion to dismiss Plaintiff's first claim, for violation of the False Claims Act, is GRANTED without prejudice. However, the dismissal is with prejudice to the extent that the cause of action is based on Defendants' failure to pay prevailing wages, violation of the Internal Revenue Code, restitution, or unjust enrichment.

2. Moving Defendants' motion to dismiss Plaintiff's second claim, for violation of the minimum wage, overtime, and recordkeeping provisions of California labor law, is GRANTED without prejudice as to the Moving Defendants.

3. Moving Defendants' motion to dismiss Plaintiff's third claim, for violation of the Fair Labor Standards Act, is GRANTED without prejudice as to the Moving Defendants.

4. Moving Defendants' motion to dismiss Plaintiffs' fourth claim, for violation of the Trafficking Victims Protection Reauthorization Act, is GRANTED in part and DENIED in part. The motion is DENIED as to Eisenmann and Tesla. The motion is GRANTED without prejudice as to the remaining Moving Defendants.

5. Defendants' motion to dismiss Plaintiff's fifth claim, for violation of Alabama laws prohibiting forced labor, is GRANTED without prejudice as to the Moving Defendants.

6. Defendants' motion to dismiss Plaintiffs' sixth claim, for violation of California Civil Code § 52.5, is GRANTED in part and DENIED in part. The motion is DENIED as to Eisenmann and Tesla. The motion is GRANTED without prejudice as to the remaining

31

United States District Court
Northern District of California

Moving Defendants.

7. Defendants' motion to dismiss Plaintiffs' seventh claim, for violation of the Racketeer Influenced and Corrupt Organizations Act, is GRANTED without prejudice as to the Moving Defendants.

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty days of this Order. Failure to meet this thirty-day deadline or failure to cure the deficiencies identified herein will result in a dismissal with prejudice of the deficient claims or theories. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rules of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: October 1, 2018

_____
LUCY H. KOH
United States District Judge