1   William C. Dresser, 104375
    Law Offices of William C. Dresser
2   4 North Second Street, Suite 1230
    San Jose, California 95113
3   Tel:   408/279-7529
    Fax:   408/298-3306
4
    Attorneys for Qui Tam Relators and Plaintiffs
5   Gregor Lesnik and Stjepan Papes
    individually and on behalf of all others similarly situated
6

7                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
8                         SAN JOSE DIVISION
9

10  United States of America, ex rel. Gregor      No:  5:16-cv-01120 LHK
    Lesnik, and ex rel Stjepan Papes, and
11  Gregor Lesnik and Stjepan Papes, on behalf
    of themselves and all others similarly        **THIRD AMENDED COMPLAINT**
12  situated,                                     **FOR DAMAGES AND OTHER**
                                                  **RELIEF UNDER THE FALSE**
13                Plaintiffs,                     **CLAIMS ACT AND OTHER CLAIMS**
                                                  **INCLUDING INDIVIDUAL,**
14          vs.                                   **COLLECTIVE AND CLASS WAGES**
                                                  **CLAIMS, INDIVIDUAL AND CLASS**
15  Eisenmann SE, Eisenmann Anlagenbau            **LABOR TRAFFICKING CLAIMS,**
    GmbH & Co. KG, Eisenmann Anlagenbau           **AND RICO CLAIMS**
16  Verwaltung GmbH, Eisenmann Corporation,
    ISM Vuzem d.o.o., ISM Vuzem USA, Inc.,
17  Vuzem USA, Inc., Robert Vuzem, Ivan           **CLASS ACTION**
    Vuzem, Tesla, Inc. fka Tesla Motors, Inc.,
18  Gregurec Ltd, Daimler AG, Mercedes-Benz
    U.S. International, Inc., BMW Manufacturing
19  Co., LLC, Dicastal North America, Inc.,       Hon. Lucy H. Koh
    Volkswagen Group of America Chattanooga
20  Operations, LLC, Volkswagen, LB metal         Jury trial demanded
    d.o.o., Mos Servis, d.o.o., D2N Tehnologije
21  d.o.o. aka D2N d.o.o., Primiko, d.o.o., Volvo
    Car Corporation, Volvo Car Operations,
22  Inc., Deere & Company, Lax Fabricating Ltd,
    Keystone Automotive, Phoenix Mechanical,
23  REHAU Incorporated, HRID-MONT d.o.o.,
    VV Mont, d.o.o., Magna International, Inc.,
24  Magna Automotive Services GmbH, Magna,
    d.o.o., We-Kr d.o.o., RIMSA PLUS Sp. z.o.o.,
25  Enterprise MDM Poland Sp. z.o.o. (parent),
    MDM Polska sp. z.o.o., and Does 18 through
26  50,

27                Defendants.
    _____/
28

COMES NOW Plaintiff Gregor Lesnik on behalf of the United States of America, Plaintiff Stjepan Papes on behalf of the United States of America, Plaintiffs Gregor Lesnik and Stjepan Papes each individually, and Plaintiffs Gregor Lesnik and Stjepan Papes on behalf of individuals similarly situated to them, and allege against Defendants, and each of them, as follows:

## I. GENERAL ALLEGATIONS

### A. Parties

1.  Plaintiff and Relator (sometimes hereinafter referred to as Plaintiff) Gregor Lesnik is, and at all times mentioned herein has been, an individual residing in Slovenia. He worked at the Tesla manufacturing plant in Fremont, California in 2015

2.  Plaintiff and Relator (sometimes hereinafter referred to as Plaintiff) Stjepan Papes is, and at all times mentioned herein has been, an individual residing in Croatia. He worked at, among other places:

Mercedes Benz U.S. plant in Tuscaloosa, Alabama in 2013, and as special employee at Rehau, which makes bumper assemblies for Mercedes in Cullman, Alabama;

BMW plant in Spartanburg, South Carolina in 2013 and 2014 and again in 2015;

Phoenix Mechanical in Greer, South Carolina as a joint employer in 2014;

LaX Fabricating Ltd as a joint employer with temporary services employer Eisenmann which had assigned Mr. Lesnik to perform services for client or customer LaX Fabricating in Spring Grove, Minnesota in 2013;

REHAU Incorporated as a joint employer;

Tesla Motors in Fremont, California in 2015; and

Dicastal in Greenville, Michigan in 2015.

3.  Defendant Eisenmann Corporation, also known as Eisenmann Corporation USA, holds itself out to be a Delaware corporation with its principal place of business at 150 E Dartmoor Dr., Crystal Lake, IL 60014.  The parent corporation of Defendant

1    Eisenmann Corporation is Eisenmann Böblingen Verwaltung GmbH. Eisenmann

2    Böblingen Verwaltung GmbH is wholly owned by Eisenmann Beteiligungen GmbH, which

3    itself is wholly owned by named defendant Eisenmann SE.

4         4.  Defendant Eisenmann SE is a German entity with its principal place of

5    business at Tübinger Str. 81, 71032 Böblingen, Germany.  Defendant Eisenmann SE

6    represents that it is a holding company of the Eisenmann Group and that it holds one

7    hundred percent of the shares of Eisenmann Anlagenbau GmbH & Co. KG.  Eisenmann

8    SE is wholly owned by Grubenhaus AG.

9         5.  Plaintiffs are informed and believe and thereon allege that Defendant

10   Eisenmann SE acted through its subsidiary Eisenmann Corporation in the matters

11   alleged herein.

12        6.  Plaintiffs are informed and believe and thereon allege that defendant

13   Eisenmann Anlagenbau GmbH & Co. KG is a German entity in the form of a limited

14   partnership.  Among other things, GmbH or "Gesellschaft mit beschrankter Haftung" and

15   KG or "Kommanditgesellschaft" means that it is a limited partnership with its sole general

16   partner being a limited liability company.  The parent corporation of defendant

17   Eisenmann Anlagenbau GmbH & Co. KG is named defendant Eisenmann SE.

18   Defendant Eisenmann Anlagenbau GmbH & Co. KG is wholly owned by Eisenmann SE.

19        7.  Plaintiffs are informed and believe and thereon allege that defendant

20   Eisenmann Anlagenbau Verwaltung GmbH is a German entity which is the general

21   partner of  Defendant Eisenmann Anlagenbau GmbH & Co. KG and is identified under

22   German law as having unlimited liability for the actionable wrongs and breaches of

23   contract of the limited partnership Eisenmann Anlagenbau GmbH & Co. KG.  Defendant

24   Eisenmann Anlagenbau Verwaltung GmbH is the general partner of Defendant

25   Eisenmann Anlagenbau GmbH & Co. KG and as general partner is legally responsible in

26   that capacity for the liabilities of that limited partnership.

27        8.  Plaintiffs are informed and believe and thereon allege that Defendant

28

1   Eisenmann Anlagenbau Verwaltung GmbH acted through its wholly owned subsidiary

2   and affiliated entity Eisenmann Corporation in the matters alleged herein.

3        9.  Plaintiffs are informed and believe and thereon allege that defendant ISM

4   Vuzem d.o.o., aka ISM VUZEM inženiring, storitve, montaža d.o.o., is a Slovenian

5   business entity with its principal place of business at Goricak 4, 2283 Zavrc, Slovenija.

6        10.  Plaintiffs are informed and believe and thereon allege that Robert Vuzem is a

7   resident of Slovenia.  Plaintiffs are informed and believe and thereon allege that all

8   actions taken by ISM Vuzem, d.o.o. were made under the direction of or consent of

9   Robert Vuzem as a former Direktor, and currently Head of Installation, of ISM Vuzem,

10  d.o.o.

11       Robert Vuzem also acted in an individual capacity with respect to his direct

12  actions, and in his directions to others to act, as alleged in this Complaint.

13       11.  Plaintiffs are informed and believe and thereon allege that Ivan Vuzem is a

14  resident of Slovenia.  Plaintiffs are informed and believe and thereon allege that all

15  actions taken by ISM Vuzem, d.o.o. were made under the direction of or consent of Ivan

16  Vuzem as a Direktor of ISM Vuzem, d.o.o.

17       Ivan Vuzem also acted in an individual capacity with respect to his direct actions,

18  and in his directions to others to act, as alleged in this Complaint.

19       12.  Plaintiffs are informed and believe and thereon allege that defendant ISM

20  Vuzem USA, Inc. is a business entity holding itself out to be a South Carolina

21  corporation with its principal place of business at 1600 Azalea Hill Drive, Unit 304

22  Greenville, SC 29607.  Plaintiffs are informed and believe and thereon allege that

23  defendant ISM Vuzem USA Inc. was at all relevant times on or before June of 2015 a

24  wholly owned domestic subsidiary of ISM Vuzem, d.o.o.  Plaintiffs are informed and

25  believe and thereon allege that ISM Vuzem USA Inc. was at various times during the

26  actions alleged herein dissolved involuntarily for failure to comply with requirements for

27  corporations under South Carolina law.

28

13.  Plaintiffs are informed and believe and thereon allege that defendant Vuzem USA Inc. is a business entity of unknown type holding itself out to be a California corporation with its principal place of business at 965 West 11th St. #2, San Pedro, CA 90731.  Plaintiffs are informed and believe and thereon allege that defendant Vuzem USA Inc. is and at all relevant times mentioned herein has held itself out to be a wholly owned domestic subsidiary of ISM Vuzem, d.o.o.

Plaintiffs are informed and believe and thereon allege that Defendant Vuzem USA, Inc. was set up to be represented to be an exclusive service and materials supplier in South Carolina and other states for ISM Vuzem, d.o.o.  This is and was a fiction.

Plaintiffs are informed and believe and thereon allege that Defendant Vuzem USA, Inc. was also set up to be represented to be the exclusive service and materials supplier in California for ISM Vuzem, d.o.o., performing the following activities in connection with construction projects which ISM Vuzem, d.o.o. contracts to perform: HVAC mechanical, welding, pipe fitting, assembly, marketing, processing invoices, and receiving of all customer complaints and accident reports for California.  This, too, is and was a fiction.

Plaintiffs are informed and believe and thereon allege that Vuzem USA, Inc. is or was the general manager in California of ISM Vuzem d.o.o.

Defendant Vuzem USA, Inc. has dissolved, while ISM Vuzem, d.o.o. continues to act in violation of visa regulations, wages obligations, anti-trafficking laws, and other laws as hereinafter set forth.

14.  Defendant HRID-MONT d.o.o., initially sued herein as Doe 7 HRD/ MONT d.o.o., is a Slovenian corporation, formed in September of 2016 to be owned in the name of Helena Ogrizek, the wife of Robert Vuzem, with the same principal place of business as ISM Vuzem, d.o.o., to wit, Goricak 4, 2283 Zavrc, Slovenija.  The same companies are continuing to hire the same workers, under the same visas, today, even though many are working under the name of other companies.

15. ISM Vuzem d.o.o. transferred remaining workers - those who had not yet quit working for Vuzem entities - to work under other company names, including HRID-Mont, d.o.o. Many of the workers who received B-1 visas to originally work under ISM Vuzem, d.o.o. were re-assigned to now work under HRID-MONT d.o.o. The sole intent in changing the name of the purported hiring entity was to conceal the visa fraud and to assist in hiding the assets and income received from the scheme. Among other things, Plaintiffs are informed and believe and thereon allege that HRID-MONT d.o.o. contracted with Eisenmann Corporation which in turn contracted with other entities to bring in construction workers under improperly applied for B1 visas. This includes at, among other places, the BMW and Mercedes Benz plants. This was after the visa fraud, coerced labor, and fraud in foreign contracts was publicly revealed in a July 2016 San Jose Mercury News article, and subsequent national and international re-publication of that article and the facts within that articles.

16. Plaintiffs are informed and believe and thereon allege that Ivan Vuzem and Robert Vuzem are the owners of Defendant ISM Vuzem d.o.o. and in turn of each of ISM Vuzem USA, Inc. and of Vuzem USA, Inc. and indirectly of HRID-Mont, d.o.o. with ownership purportedly in the name of Helena Ogrizek, who is the wife of Robert Vuzem.

17. Plaintiffs are informed and believe and thereon allege that between Ivan Vuzem and Robert Vuzem and each of ISM Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc., and HRID-MONT d.o.o. there is such a unity of interest and ownership between the entities and their equitable owners that the separate personalities of the entities and the owners do not in reality exist. Further, an inequitable result will be reached for the wrongful acts alleged herein if they are treated as those of the entities alone. Plaintiffs are informed and believe and thereon allege that each of Ivan Vuzem, Robert Vuzem, ISM Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc., and HRID-Mont, d.o.o. have commingled funds and other assets, each of the entities has held itself out to be liable for the debts of the others, there is identical equitable ownership in all of

the entities, the entities use the same offices and employees, and the individuals and entities each use each other as mere shells or conduits for the affairs of each other. Further, ISM Vuzem USA, Inc. has been inadequately capitalized, each entity has been without necessary insurance to cover liabilities of each, there has been a disregard of corporate formalities, there has been a lack of segregation of corporate records, there has been a lack of segregation of corporate contracts and agreements, and they have identical directors and officers. Adherence to the fiction of the separate existence of Defendants ISM Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc., and HRID-Mont, d.o.o. as entities distinct from Defendants Robert Vuzem and Ivan Vuzem and other entities they control would permit an abuse of the corporate privilege, sanction fraud, and promote injustice.

18. Defendant Gregurec Ltd is an English business entity, with its principal place of business at 226 St. Leonards Road, Horsham, RH13 6AU. Plaintiffs are informed and believe and thereon allege that Gregurec Ltd and ISM Vuzem d.o.o. have related or affiliated ownership and a profit sharing relationship. Defendant Gregurec Ltd acted as "subcontractor" to broker or supply B1 visa workers at virtually all, if not all, construction and manufacturing sites or for all defendant manufacturing companies mentioned herein.

19. Defendant Tesla, Inc., formerly known as Tesla Motors, Inc., is and at all times mentioned herein was a Delaware corporation with its principal place of business at 3500 Deer Creek Road, Palo, Alto, California.

20. Defendant Daimler AG is a German Aktiengesellschaft (joint-stock company) business entity, doing business as Mercedes-Benz, Mercedes-Benz USA, and Mercedes-Benz U.S. International, Inc., with its corporate headquarters and principal place of business at Mercedesstr. 137, 70327 Stuttgart, Baden-Württemberg, Germany.

21. Defendant Mercedes-Benz U.S. International, Inc. is an Alabama corporation and affiliate of Daimler AG, of Stuttgart, Germany, with its principal office and place of business at 1 Mercedes Drive, Vance, Alabama 35490.

1    22.  BMW Manufacturing Co., LLC, formerly known as BMW Manufacturing Corp.,

2    is a limited liability company organized and existing under the laws of the State of

3    Delaware.  It was incorporated on December 21, 1976.  It owns and operates the a

4    vehicle assembly plant in Spartanburg County and near Greer, South Carolina and that

5    also entered into contracts with Eisenmann entities.

6        BMW Manufacturing Co, LLC is a wholly owned subsidiary of BMW (US) Holding

7    Corporation. BMW (US) Holding Corporation is an indirect wholly-owned subsidiary of

8    Bayerische Motoren Werke Aktiengesellschaft, a publicly held German

9    Aktiengesellschaft.

10       Plaintiffs are informed and believe that Defendant Bayerische Motoren Werke is a

11   German Aktiengesellschaft business entity, doing business as BMW, with its principal

12   place of business at Petuelring 130; Munich, Germany.

13       23.  Defendant Dicastal North America, Inc. is a Michigan corporation,

14   incorporated August 28, 2014, with its principal place of business at 1100 N. Opdyke

15   Road, Suite 100, Auburn Hills, Michigan 48326.

16       CITIC Dicastal Co., Ltd., is the parent corporation of Dicastal North America, Inc.

17   Plaintiffs are informed and believe that CiTic Dicastal Co., Ltd. is a (mainland) Chinese

18   business entity, doing business as CiTic Dicastal Wheel Manufacturing Co., Ltd. and

19   CITIC Dicastal North America, Inc., with its principal place of business at No. 185,

20   Longhai Road, Funing, Qinhuangdao, He Bei Province, China, and with its principal

21   place of business in the United States at 1 Dicastal Drive Greenville, Michigan.

22       24.  Defendant Volkswagen Group of America Chattanooga Operations, LLC is a

23   Tennessee domestic limited liability company incorporated December 29, 2018 with its

24   principal place of business 2200 Ferdinand Porsche Dr, Herndon, VA 20171-5884.

25       Volkswagen Group of America, Inc., is the parent corporation of Volkswagen

26   Group of America Chattanooga Operations, LLC.  Volkswagen Group of America, Inc. is

27   also the sole and managing member of Defendant Volkswagen Group of America

28

1   Chattanooga Operations, LLC.  Plaintiffs are informed and believe and thereon allege

2   that Volkswagen Group of America, Inc. is a wholly owned subsidiary of the German

3   entity Volkswagen Aktiengesellschaft, which has its headquarters at Volkswagen

4   Aktiengesellschaft VHH, 2nd Floor, PO Box 1849, D-38436 Wolfsburg, Germany.

5        25.  Defendant Volvo Car US Operations, Inc. is a Delaware corporation,

6   incorporated in May of 2015 and registered to do business in South Carolina in August

7   of 2015.   Plaintiffs are informed and believe that Volvo Car US Operations, Inc.

8   operates, and since September of 2015 had operated, the Volvo manufacturing plant at

9   1801 Volvo Car Drive, Ridgeville, South Carolina 2947.  Volvo Car US Operations, Inc.

10  has its principal business office at 315 Sigma Drive, Summerville, SC 29486.

11       26.  Defendant Volvo Car Corporation d.b.a. Volvo Cars, sued herein as Doe 1, is

12  a the common name that Volvo Cars entities use to refer to their corporate entities in the

13  United States, which common name is used, among other things, in their web sites.

14       27.  Plaintiffs are informed and believe that the Volvo corporate entities in the

15  United States are wholly owned by Volvo Car AB with its registered office is in

16  Gothenburg, Sweden, which is in turn wholly owned by Shanghai Geely Zhaoyuan

17  International Investment Co., Ltd., registered in Shanghai, China, which is itself wholly

18  owned by Zhejiang Geely Holding Group Ltd., registered in Hangzhou, China.

19       28.  Defendant Deere & Company, d.b.a. John Deere, sued herein as Doe 2 John

20  Deere, is a Delaware corporation with its principal place of business at One John Deere

21  Place, Moline, IL 61265.

22       29.  Defendant Lax Fabricating Ltd sued as Doe 3, is a limited company with its

23  principal place of business at 700 East Main Spring Grove, MN 55974, Tel:

24  507\498-6000.

25       30.  Defendant Keystone Automotive Operations Inc. sued as Doe 4, is a

26  corporation with its principal place of business at 44 Tunkhannock Avenue, Exeter, PA

27  18643.  Plaintiffs are informed and believe and thereon alleged that Defendant Keystone

28

1    Automotive Operations Inc. is a wholly owned subsidiary of LKQ Corporation and that

2    Defendant Keystone Automotive Operations Inc. does business as Keystone Automotive

3    Operations (India) PVT LTD.

4         31.  Defendant Phoenix Mechanical Contractors sued as Doe 5, is the common

5    name used by Phoenix Mechanical, LLC.  Phoenix Mechanical, LLC is a South Carolina

6    domestic limited liability company with its principal place of business at 510 Burns Road,

7    Greer, South Carolina 29651.

8         32.   Defendant LB metal d.o.o., is a Slovenian corporation with its principal place

9    of business at Zagrebška cesta 22, 2000 Maribor, Slovenia.  It is a Labor Contractor

10   Defendant which supplied workers under false B-1 visas at multiple locations including at

11   the Tesla facility in Fremont, California.

12        33.  Defendant D2N Tehnologije d.o.o. aka D2N d.o.o.. is a Slovenian corporation

13   with its principal place of business at Trstenjakova ulica 1, 2250 Ptuj, Slovenia.  It is a

14   Labor Contractor Defendant which supplied workers under false B-1 visas at multiple

15   locations including at the Tesla facility in Fremont, California.

16        34.  Defendant Primiko, d.o.o. is a Croatian corporation with its principal place of

17   business at Frankopanska 66 40315 Mursko Središče with Krešo Korbelj as the

18   production director manager.  Among other things, it was the entity used to pay hospital

19   bills for Gregor Lesnik.  It assisted the Vuzem entities and individual defendants to

20   supply workers under false B-1 visas at multiple locations including at the Tesla facility

21   in Fremont, California.

22        35.  Defendant REHAU Incorporated, sued as Doe 6, is a Delaware corporation

23   with its principal place of business at 1501 Edwards Ferry Road NE, Leesburg, VA

24   20176.  Defendant REHAU Incorporated is a Labor Contractor Defendant which

25   contracted with Eisenmann Corporation which in turn contracted with other entities such

26   as ISM Vuzem, d.o.o. to hire construction workers including Stjepan Papes under false

27   B1 visas who were paid less than prevailing wages.

28

36.  Defendant VV Mont, its common name, aka VV Mont, d.o.o. sued as Doe 8 is a Croatian corporation with its principal place of business at Živković Kosa 27/B 47220 Vojnić Croatia, EU.  It was founded in 2017 as an alternative business for workers under false B-1 visas.  This was to conceal the B-1 visas.  VV Mont, d.o.o. is a Labor Contractor Defendant.  Plaintiffs are informed and believe and thereon allege that VV Mont d.o.o. contracted with Eisenmann Corporation which in turn contracted with other entities to bring in construction workers under false B1 visas who are paid less than prevailing wages.  This includes at for the workers to provide constructions services at, among other places, the BMW and Mercedes Benz plants.

37.  Defendant Magna International, Inc., initially erroneously sued herein as Doe 9 Magma, Intl, is a Canadian entity with its principal place of business at 337 Magna Drive, Aurora, Ontario ON L4G 7K1, Canada.

Magna International, Inc. is a Labor Contractor Defendant.  Plaintiffs are informed and believe and thereon allege that Magna International, Inc. contracted with Eisenmann Corporation which in turn contracted with other entities to bring in construction workers under false B1 visas who are paid less than prevailing wages.  This includes at, among other places, the Volvo plant.

38.  Defendant Magna Automotive Services GmbH, initially erroneously sued herein as Doe 10 Magma Services GmbH, is German entity, with its principal place of business in Sailauf, Germany.  It is a wholly owned subsidiary of Magna International, Inc.  Magna Automotive Services GmbH is a Labor Contractor Defendant.

Plaintiffs are informed and believe and thereon allege that Magna Automotive Services GmbH contracted with Eisenmann Corporation which in turn contracted with other entities to bring in construction workers under false B1 visas who are paid less than prevailing wages.  This includes at, among other places, the Volvo manufacturing plant in South Carolina.

39.  Defendant Magna, d.o.o., aka "Magna, podjetje za trgovino in storitve, d.o.o.",

1    initially erroneously sued herein as Doe 11 Magma, d.o.o., is a Slovenian corporation,

2    with its principal place of business in Ljubljana, Slovenia.  Magna, d.o.o. is a Labor

3    Contractor Defendant.  Plaintiffs are informed and believe and thereon allege that

4    Magna d.o.o. contracted with Eisenmann Corporation to bring in construction workers

5    under false B1 visas who are paid less than prevailing wages.  This includes at, among

6    other places, the Volvo manufacturing plant in South Carolina.

7        40.  Defendant We-Kr d.o.o. sued as Doe 12 is a Croatian limited liability

8    company with its principal place of business at Donja Visnjica, Croatia.  We-Kr d.o.o. is a

9    Labor Contractor Defendant.  Plaintiffs are informed and believe and thereon allege that

10   We-Kr d.o.o. contracted with Eisenmann Corporation which in turn contracted with other

11   entities to bring in construction workers under false B1 visas who are paid less than

12   prevailing wages including at Tesla, at BMW, and at Minghua US in South Carolina.

13       41.  Defendant RIMSA PLUS Sp. z o.o. sued herein as Doe 13 is a Polish

14   corporation with its principal place of business at ul. Podmiejska 10, Piekary Slaskie,

15   41-940, Polen. Rimsa Plus Sp. z.o.o.  RIMSA PLUS Sp. z o.o. is a Labor Contractor

16   Defendant.  Plaintiffs are informed and believe and thereon allege that Rimsa Plus Sp.

17   Z.o.o. contracted with Eisenmann Corporation which in turn contracted with other entities

18   to bring in construction workers under false B1 visas who are paid less than prevailing

19   wages.  This includes at, among other places, the BMW, Mercedes Benz and Tesla

20   manufacturing plants.  Rimsa Plus has advertised that it is looking to hire employees to

21   work outside of the country, meaning individuals without a history of working for Rimsa,

22   let alone Eisenmann or with Eisenmann products or technology, to work at the

23   manufacturing sites in the US under B1 visas.

24       42.  Defendant Enterprise MDM Poland Sp. z.o.o. sued herein as Doe 14 is a

25   Polish corporation with its principal place of location is MDM Polska sp. z.o.o. 37-500

26   Jarosław ul. Lubelska 1 /4.  It is also the parent of subsidiary Poland Sp, z.o.o.

27   Enterprise MDM Poland Sp. z.o.o. is a Labor Contractor Defendant.  Plaintiffs are

28

informed and believe and thereon allege that MDM Poland Sp. z.o.o. contracted with

Eisenmann Corporation which in turn contracted with other entities to bring in

construction workers under false B1 visas who are paid less than prevailing wages.  This

includes at, among other places, the BMW, Mercedes Benz and Tesla manufacturing

plants.

43.  Defendant MDM Polska sp. z.o.o. sued herein as Doe 15, is a Polish

corporation with its principal place of business at Bobrówka 104A, 37-543 Laszki,

Poland.  MDM Polska sp. z.o.o. is a Labor Contractor Defendant.  Plaintiffs are informed

and believe and thereon allege that MDM Polska Sp. z.o.o. contracted with Eisenmann

Corporation which in turn contracted with other entities to bring in construction workers

under false B1 visas who are paid less than prevailing wages - the same or at an even

lesser rate of pay than the workers from the Croatian and Slovenian based companies.

This includes at, among other places, the BMW and Mercedes Benz manufacturing

plants.

44.  Defendant Mos Servis d.o.o., initially erroneously named herein as Doe 16

Moss, d.o.o., is a Slovenian corporation with its principal place of business at Mestinje

2b, 3241 Podplat, Slovenia.  Mos Servis d.o.o. is a Labor Contractor Defendant.

Plaintiffs are informed and believe and thereon allege that Mos Servis, d.o.o. contracted

with Eisenmann Corporation which in turn contracted with other entities to bring in

construction workers under false B1 visas who are paid less than prevailing wages.  This

includes at, among other places the Tesla manufacturing plant in Fremont, California.

Mos Servis d.o.o. has attempted to conceal its foreign country origin and foreign

workers by creating the shell entity of Mos Service, LLC, a South Carolina domestic

limited liability company.  The shell entity of Mos Service, LLC had an identified principal

place of business of 1201 Main Street, Suite 1450, Columbia, South Carolina, 29201,

which is merely a postal mail drop through a law firm (Albertelli Law).  The shell entity of

Mos Service, LLC later had an identified place of business of 1200 Woodruff Road, Suite

A3, Greenville, South Carolina 29607 which is a mere mail drop for several businesses.

45.  Plaintiffs and Relators do not presently know the complete involvement in the matters alleged herein by other entities, including that Plaintiffs and Relators do not know the identities of all Labor Contractors.  Given that the work by workers at job sites extended to Michigan, South Carolina, Tennessee, Alabama, New York, Washington, Illinois and California, and that the visa applications were stated by the defendants to be for work under different entities than the workers ended up working under, and that the workers including Stjepan Papes were hired out as special employees to other entities, and that Plaintiffs and Relators do not know all of the companies hired by the Eisenmann entities, Plaintiffs and Relators do not yet know all of the owners, operators, and persons responsible, or all of the potential holding companies and affiliated entities answerable for the conduct and their involvement in the matters alleged herein.

46.  Plaintiffs are informed and believe and thereon allege that other labor contractors who Eisenmann Corporation used to obtain B-1 workers for construction work in the United States pursuant to the fraudulent B-1 visa scheme include:

AVK Avtomatizacja, d.o.o. of Celje, Slovenia;

Cain Group s.r.o., a subsidiary of Cain Group AG, of Bratislava, Slovakia;

Dato d.o.o., aka Data Avtomatizacja, d.o.o. of Ptuj, Slovenia;

Delmont d.o.o. of Maribor, Slovenia;

DTP Montage d.o.o., aka DTP Montage.com, of Zavrc, Slovenia;

Felnar Center, d.o.o. of Hajdina, Slovenia;

GNS, d.o.o., of Ptuj, Slovenia - operated by Krunoslav Premusic, a former Vuzem supervisor who has a prior conviction in Croatia for trafficking;

International Workers Group d.o.o., aka IWG, of Zagreb-Slobostina, Croatia;

JB Tech d.o.o., of Škofja vas, Slovenia;

Klaus Reschka GmbH, aka Klaus Reschka Anlagenbau GmbH, of Harthausen, Germany;

1      LIB Industriemontage, of Rhineland-Palatinate, Germany and Grasz, Germany,

2 which opened a shell entity in Tennessee of LIB, LLC;

3      MP Ptuj, d.o.o., which has worked at Volkswagen in Chattanooga, Tennessee and

4 at Tesla in Fremont, California and is owned by Klaus Reschka, individually;

5      SAR Avtomatizacja, d.o.o. of Markovci, Slovenia; and

6      UMI-industrial solutions d.o.o.

7      47.  Plaintiffs are informed and believe that the fraudulent B-1 visa fraud scheme

8 was used by defendant entities to obtain B-1 visa workers to provide construction

9 services for and at:

10      a Harleigh Davidson parts manufacturer in Wisconsin, believed to be MasterMold,

11 of Mauston, Wisconsin and Johnson Creek, Wisconsin.  This includes workers provided

12 by or through ISM Vuzem, d.o.o.;

13      Cardinal FG Company d.b.a. Cardinal Glass; and

14      the manufacturing plant of Minghua USA Inc located at 1000 Robinson Rd, Greer,

15 SC 29651.  This includes workers provided by or through We-Kr, d.o.o.

16      48.  Further information on the details and extent of the fraud and wrongful acts

17 that the defendants, including the Doe Defendants, committed and of the defendants,

18 including the Doe Defendants, involvement are contained within Defendants' records.

19      49.  Plaintiffs are informed and believe, and so alleges, that Defendants, and each

20 of them, were at all times herein mentioned, and now are, the agents, servants,

21 employees, and representatives of their co-defendants, were acting within the scope,

22 purpose, and authority of such agency, service, employment, and representation, made

23 such actions - and withheld from actions - with the permission, knowledge, and consent

24 of their co-defendants.

25 **B.  Jurisdiction**

26      50.  The Court has subject matter jurisdiction to entertain this action under 18

27 U.S.C. §§ 1595(a) (civil trafficking), 1964 (RICO cause of action), 28 U.S.C. §§ 1331

28

1   (original jurisdiction over federal question), 1367 (over "all other claims that are so

2   related . . . that they form part of the same case or controversy"), 31 U.S.C. § 3732 (FCA

3   actions brought pursuant to 31 U.S.C. §§ 3729 and 3730).

4       51.  The Court may exercise personal jurisdiction over Defendants pursuant to 31

5   U.S.C. § 3732(a), which authorizes nationwide service of process, and because

6   Defendants have minimum contacts with the United States.  Moreover, Defendants can

7   be found in, reside, and/or transact or have transacted business in this District.

8                                   **C.  Venue**

9       52.  Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965, 28

10  U.S.C. §§ 1391(b) and 1395(a), and 31 U.S.C. § 3732(a) because Defendants can be

11  found in and/or transact or have transacted business in this District.  At all times relevant

12  to this Complaint, Defendants regularly conducted substantial business, maintained

13  employees, and/or made significant sales in this District.  In addition, statutory violations,

14  as alleged in this Complaint, occurred in this District.

15                      **D.  Summary of Claims in Complaint**

16      53.  This is an action to recover damages and civil penalties on behalf of the

17  United States of America for false and/or fraudulent statements, records, and claims

18  made or caused to be made by Defendants, as well as their affiliates, departments,

19  subsidiaries, agents, employees, and co-conspirators, including in knowingly concealing

20  or knowingly and improperly avoiding or decreasing an obligation to pay the

21  Government, in violation of the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et

22  seq.

23      54.  Defendants and each of them made and used, or knowingly ratified and

24  assisted the making and using of, false records and statements to avoid or reduce

25  obligations to pay money to the United States, and/or conspired with other defendants to

26  support and conceal the avoidance and reduction of obligations to pay money, including

27  but not limited to:

28

1      delivering false and fraudulent documents to the United States to secure illegal

2 and improper visas for their direct and indirect employees to come to the United States;

3      transporting alien employees to work in the United States on B-1 visas when such

4 employees did not in fact qualify for B-1 visas;

5      obtaining B-1 visas instead of the more restrictively issued petition based visas,

6 such as H-B1 visas and L-1B visas, to avoid paying the higher fees required to obtain

7 H-1B and L-1B visas; and

8      falsely attesting that employees were authorized to work in the United States.

9      55.  Defendants knowingly lied on and in connection with visa applications so

10 laborers like Gregor Lesnik and Stjepan Papes would qualify for non-petition based B–1

11 visas, when in fact the laborers should only have been eligible for more costly petition

12 based visas, such as H2–B visas.

13      56.  This is also an action to recover damages and obtain injunctive relief on

14 behalf of Plaintiffs, and people similarly situated to Plaintiffs, who individually and as a

15 class or classes have been wrongfully denied wages and other benefits, and have been

16 underpaid wages, due to them for working for defendants.  For example, records of

17 defendant ISM Vuzem d.o.o. identify Gregor Lesnik as having worked 50 days out of 54

18 for a total of 483 hours and no overtime pay at compensation rate of substantially less

19 than minimum wages, let alone of prevailing wages, with no overtime wages.  For

20 example, records of defendant ISM Vuzem d.o.o. identify Stjepan Papes, and all other

21 workers at BMW in 2013 as having worked 10 hours per day, each and every day, and

22 identify Stjepan Papes working 10 hours per day except 8 hours on two Sundays and

23 only two days off, for a total of 256 hours in February of 2016, with no overtime pay and

24 at a compensation rate of substantially less than minimum wages, let alone of prevailing

25 wages, with no overtime wages.

26      57.  This is also an action to obtain recovery for Plaintiffs, and for people similarly

27 situated to Plaintiffs, who were victims of coerced labor and trafficking acts, of damages

28

and attorneys' fees from the "perpetrator" of the violation of laws prohibiting trafficking and forced labor.  Recovery is also sought against those defendants who "knowingly benefitted], financially or by receiving anything of value from participation in a venture which that person knew or should have known" committed a violation of applicable federal and state trafficking and forced labor laws.  This case challenges the human trafficking scheme directed by Eisenmann Corporation. The scheme involves the trafficking of low-skilled European laborers brought to the United States under false pretenses to perform construction work on behalf of American manufacturers, primarily American automobile companies.

58.  This is also an action to obtain recovery for Plaintiffs, and for people similarly situated to Plaintiffs, from Eisenmann Corporation for its role in an association in fact enterprise of the Eisenmann entity Defendants, the Labor Contractor defendants, and other labor contractors which derived and derives income from a pattern of racketeering activities.

The racketeering committed by these defendants in this Enterprise includes actions constituting coerced labor, fraud and misuse of visas, and fraud in foreign labor contracting, which actions also constitute fraud in connection with identification documents, mail fraud, wire fraud, forgery and false use of passports, permits and other documents, laundering of money, actions indictable under the Currency and Foreign Transactions Reporting Act, acts indictable under the Immigration and Nationality Act, and aiding or assisting aliens to enter the United States.

### E.  Charging Allegations Common to Causes of Action

59.  Plaintiff and Relator Gregor Lesnik is a former employee of defendant ISM Vuzem d.o.o.  Plaintiff Gregor Lesnik worked at the Tesla plant in Fremont California, and had been contemplated by defendants to be assigned to work at other locations in Michigan and South Carolina before May 16, 2015, when he was injured.

60.  Plaintiff and subsequent Relator[1] Stjepan Papes is a former employee of defendant ISM Vuzem, d.o.o.  Plaintiff Stjepan Papes worked at, among other places:

the Mercedes Benz U.S. plant in Tuscaloosa, Alabama in 2013, and as special employee at Rehau, which makes bumper assemblies for Mercedes in Cullman, Alabama;

the BMW plant in Spartanburg, South Carolina in 2013 and 2014 and again in 2015;

Phoenix Mechanical in Greer, SC as a joint employer in 2014;

LaX Fabricating Ltd as a joint employer in Spring Grove, Minnesota in 2013;

REHAU Incorporated as a joint employer;

Tesla Motors in Fremont, California in 2015; and

Dicastal in Greenville, Michigan in 2015.

61.  Plaintiff Gregor Lesnik was issued by the United States a non-petition based B-1 visa based on:

written representations by Robert Keller of Eisenmann Corporation which was made to obtain from the United States a B-1 visa to obtain entry to work in the United States;

the documents in support of a B-1 visa application prepared by Eisenmann Corporation and ISM Vuzem, d.o.o.; and

directions by ISM Vuzem d.o.o. to Gregor Lesnik to state to the consular officials at the time of submission of the visa application that Gregor Lesnik would work as a supervisor of electrical and mechanical installation.

62.  The November 5, 2014 dated letter by Robert Keller of Eisenmann Corporation about Gregor Lesnik was addressed to the United States Consulate.  This

---

[1]Stjepan Papes is a "subsequent Relator" to the extent that the false claims act claim initially brought by Gregor Lesnik may be asserted to not include all matters encompassed by the initial false claims act.  Cf., United States ex rel. Hyatt v. Northrop Corp., No. CV 87-6892-KN, 1989 U.S. Dist. LEXIS 18941 (C.D. Cal. Dec. 27, 1989)

letter represented that Gregor Lesnik would be hired because of his specialized knowledge and long history of working with Eisenmann equipment and process systems to work in the United States at an automotive plant at which Eisenmann Corporation was managing construction activities.

The November 5, 2014 letter states that Eisenmann has a long history of working with Gregurec, describes Gregurec's knowledge and skill in glowing terms, says Eisenmann has a "turnkey contract" with Gregurec to install equipment on Eisenmann's behalf, and seeks to bring Lesnik to the United States to fulfill that agreement. The inference is that Lesnik, as a Gregurec employee, is knowledgeable and skilled and he is being brought to the United States to apply that skill set to a technically complex equipment installation.

Gregor Lesnik in fact had never worked on any Eisenmann project, material or equipment.  Gregor Lesnik did not have essential and specialized knowledge.  Mr. Keller, Eisenmann Corporation and the Eisenmann entities, and the Vuzem entities and individuals, knew that Gregor Lesnik did not have either specialized knowledge or a long history of installing Eisenmann equipment and process systems.  Gregor Lesnik at that time had just been hired by ISM Vuzem d.o.o. and had not worked on any Eisenmann project.

Lesnik lacked any specialized skills, did not work for Gregurec, and was brought to the United States to perform unskilled construction work.  The work he performed did not require specialized knowledge essential to the Eisenmann entities' obligations.  The work performed was to build out manufacturing plants, and did not entail robotics or other specialized tasks.  Gregor Lesnik, like many if not most workers who had any prior work experience in construction, did not have work experience in the trade for which he provided services.

Gregor Lesnik in fact was assigned to work in Fremont, California.  He did not work on the project, or at the time, or under the company, or at the residence location,

1   stated in the defendants' written representations to the United States.

2         The letter was false.

3         So, too, were the Vuzem directions to state that Gregor Lesnik would work as a

4   supervisor.  He did not.  The directions were also false.

5         63.  The false statements in the November 5, 2014 Keller letter was essentially

6   the same false statements in an April 29, 2013 dated letter concerning Stjepan Papes

7   written for the purpose of applying for and obtaining a B-1 visa, which was signed by

8   Friedburga Betsch, Golbal Procurement Engineer, on letterhead of Eisenmann

9   Corporation.  This letter by Ms. Betsch concerning Stjepan Papes stated, among other

10  things, "Because of their specialized knowledge of the EISENMANN equipment and

11  process systems and their long experience in installing them, the services of Co.

12  Gregurec and their employees will be required for our projects and their presence will be

13  necessary on our jobsite in Vance, Alabama for around 12 months."

14        The April 29, 2013 letter by Eisenmann Corporation's Global Procurement

15  Manager Friedburga Betsch was false as to each of the stated and implied material facts

16  in that letter.

17        Stjepan Papes had not worked for Eisenmann, or on Eisenmann projects or

18  Eisenmann equipment, in 2013 when the Betsch letter was prepared, or in May of 2013

19  when a B-1 visa was issued to him.

20        Stjepan Papes never worked for Gregurec Ltd.  Gregurec was not his direct

21  employer.  Eisenmann and Mercedes - the first plant in the United States that Mr. Papes

22  worked at - issued to Mr. Papes a security pass or tag as a Contractor with Eisenmann,

23  and not with Gregurec.

24        Stjepan Papes did not work on any Eisenmann equipment prior to April 29, 2013.

25  Mr. Papes had not even been hired by ISM Vuzem, d.o.o. until February 13, 2013.  Mr.

26  Papes did not have a history of installing Eisenmann equipment and process systems.

27        Stjepan Papes performed work as a laborer and for construction, not as a

28

1   supervisor, and although he did so competently, he did not do so with professional

2   training or an issued contractors license.  Mr. Papes was brought to the United States to

3   perform construction work.

4           The April 29, 2013 letter by Friedburga Betsch was false.

5           64.  The actions by Purchasing Manager Robert Keller in making the written

6   representations in the letter dated November 5, 2014 and the actions of Global

7   Procurement Engineer Friedburga Betsch in making the written representations in the

8   April 29, 2013 dated letter were authorized actions of the management of Defendant

9   Eisenmann Corporation.

10          65.  The April 29, 2013 letter by Friedburga Betsch which contained false

11  statements was one of several documents prepared by Eisenmann Corporation in Illinois

12  in the United States and by ISM Vuzem, d.o.o. by as yet unknown management

13  personnel working out of offices in Zavrc, Slovenia that were given to Stjepan Papes to

14  give to the US Consulate.

15          66.  Gregor Lesnik was told by Vuzem staff employees when he went to the US

16  Consulate, that he should tell them that he was working as a supervisor.  Stjepan Papes

17  was similarly told when he went to the US Consulate, that he should tell them that he

18  was working as a supervisor.  Other workers who went to the consulate to obtain a visa

19  were also told to say to the embassy official that they were supervisors.

20          67.  The documents that were prepared by Eisenmann Corporation and by ISM

21  Vuzem, d.o.o., along with cash, were in an envelope given to Plaintiff Stjepan Papes,

22  and later in an envelope given to Plaintiff Gregor Lesnik, only when they each separately

23  arrived at the US Consulate after being driven there by a driver working for ISM Vuzem,

24  d.o.o.

25          68.  Plaintiff Stjepan Papes was issued by the United States a non-petition based

26  B-1 visa based on:

27          written representations by Friedburga Betsch of Eisenmann Corporation, on

28  _____

1  behalf of each of the defendants, which was made to obtain from the United States a B-1

2  visa to obtain entry to work in the United States;

3      the documents in support of a B-1 visa application prepared by Eisenmann

4  Corporation and ISM Vuzem, d.o.o.; and

5      directions by ISM Vuzem d.o.o. to Stjepan Papes to state at the time of

6  submission of visa application documents that Stjepan Papes would work as a supervisor

7  of electrical and mechanical installation.

8      69.  The process in the submission of this false information to obtain non-petition

9  based B-1 visas, instead of more expensive petition based visas such as H1B, H2B or

10  L1B visas, was the same for Gregor Lesnik and for Stjepan Papes, and was the same in

11  all relevant aspects for not less than three thousand other foreign workers who were

12  issued B-1 visas yet came to the United States to perform construction work under this

13  same visa fraud scheme.

14      70.  The process commenced with each and every of the manufacturing

15  defendants, including Tesla, Inc., Daimler AG, Mercedes-Benz U.S. International, Inc.,

16  BMW Manufacturing Co., LLC, Dicastal North America, Inc., Volkswagen Group of

17  America Chattanooga Operations, LLC, Volkswagen, Volvo Car Corporation, Volvo Car

18  US Operations, Inc., and Deere & Company (hereinafter collectively "Manufacturing

19  Defendants"), separately contracting with Eisenmann Corporation, and with Eisenmann

20  SE, Eisenmann Anlagenbau GmbH & Co. KG, and Eisenmann Anlagenbau Verwaltung

21  GmbH (hereinafter collectively "Eisenmann entities") for construction of large scale

22  projects.

23      71.  Each of the Manufacturing Defendants knew that they were contracting with

24  the Eisenmann entities at the prices of each of their separate contracts because the

25  Eisenmann entities were going to use, did use, and continued to use, cheap foreign

26  laborers for construction work.

27      72.  Defendants Daimler AG and Mercedes-Benz U.S. International, Inc. did

28

1   support and assist and continue to support and assist the hiring and employment by

2   Eisenmann entities of Vuzem employees, and employees of other foreign business

3   entities, including Stjepan Papes, who obtained entry to the United States under B-1

4   visas they knew were fraudulently obtained, for expanding its production facility in

5   Tuscaloosa, Alabama.

6          73.  Defendant Daimler AG, and its subsidiary Mercedes-Benz U.S. International,

7   Inc., knew that the workers were working under fraudulently obtained visas at the new

8   paint shop and body shop at 8501 Palmetto Commerce Parkway, North Charleston,

9   South Carolina, operated under the business name Mercedes-Benz Vans, LLC, yet

10  continued to have them, and a thousand other B-1 workers, construct its manufacturing

11  facility, while accepting the financial benefits from this arrangement.

12         74.  Plaintiffs are informed and believe and thereon allege that Defendant BMW

13  Manufacturing Co., LLC did support and assist and continued to support and assist the

14  hiring and employment by Eisenmann entities of Stjepan Papes and other workers who

15  obtained entry to the United States under false B-1 visas at the vehicle assembly facility

16  of BMW in Greer and Spartanburg South Carolina, yet continued to have them, and a

17  thousand other B-1 workers, construct its manufacturing facility, while accepting the

18  financial benefits from this arrangement.  Among other things, BMW issued an

19  expansion site pass - no, 18540 - to Stjepan Papes.

20         75.  Plaintiffs are informed and believe and thereon allege that Defendant Dicastal

21  North America, Inc. did support and assist and continue to support and assist the hiring

22  and employment by Eisenmann entities of Stjepan Papes and other workers who

23  obtained entry to the United States under false B-1 visas at the vehicle wheel production

24  facility at the site of the former United Solar Ovonic LLC (Uni-Solar) campus in

25  Greenville, Michigan, yet continued to have them, and a thousand other B-1 workers,

26  construct its manufacturing facility, while accepting the financial benefits from this

27  arrangement.

28

76.  Plaintiffs are informed and believe and thereon allege that Defendant Volkswagen Group of America Chattanooga Operations, LLC did support and assist and continue to support and assist the hiring and employment by Eisenmann entities of Stjepan Papes and other workers who obtained entry to the United States under false B-1 visas at the vehicle production facility in Chattanooga, Tennessee, yet continued to have them, and a thousand other B-1 workers, construct its manufacturing facility, while accepting the financial benefits from this arrangement.  This work at the Enterprise South Industrial Park, Chattanooga, TN from late 2008 through 2010 was designated by Eisenmann to hire 20% of its construction workers locally, meaning 80% were not local. These non-local workers included Klemen Vuzem, ISM Vuzem d.o.o. employees, and employees working under the name Gregurec, Ltd.  Other foreign workers under B1 visas were working under Defendants Rimsa, MDM, and Mos Servis, d.o.o.

77.  Defendant Volvo Car US Operations, Inc. is and since 2015 has been building a car manufacturing plant in Charleston, Berkeley County, South Carolina.  The construction was substantially funded by more than $200 million in incentives from the South Carolina, Berkeley County and the state-owned Santee Cooper electric utility. Defendants Volvo Car Corporation and Volvo Car US Operations, Inc., contracted with Eisenmann Corporation which in turn contracted with other entities such as Magna Automotive Services GmbH; Magna, d.o.o; ISM Vuzem, d.o.o., and Gregurec, Ltd. to bring in construction workers under false B1 visas who are paid less than prevailing wages, yet continued and continues to have them, and a thousand other B-1 workers, construct its manufacturing facility, while accepting the financial benefits from this arrangement.

78.  Plaintiffs are informed and believe and thereon allege that Deere & Company contracted with Eisenmann Corporation which in turn contracted with other entities to bring in construction workers under false B1 visas who are paid less than prevailing wages including under visas issued to workers as purported employees of Eisenmann

1   and of Gregurec, Ltd., yet continued to have them, and hundreds of other B-1 workers,

2   construct its manufacturing facility, while accepting the financial benefits from this

3   arrangement.

4       79.  Defendant Lax Fabricating Ltd  contracted with Eisenmann Corporation which

5   in turn contracted with other entities such as ISM Vuzem, d.o.o. to hire construction

6   workers including Stjepan Papes under false B1 visas who were paid less than prevailing

7   wages.  It also manufactured parts and assemblies for the construction at other

8   manufacturing sites under the direct supervision of management of Eisenmann.

9   LaX Fabricating Ltd hired through Eisenmann and as directed by Darko Ceglic of

10  Gregurec Ltd., Stjepan Papes and other B-1 visa workers including Primoz Uplaznik,

11  Matevz Uplaznik, and Dean Sipek as joint employer in Spring Grove, Minnesota in 2013,

12  when the Eisenmann entities needed materials, parts or assemblies for construction at

13  other manufacturing plants.

14      80.  Stjepan Papes was told by Ben Reburn and Eric Wilder of LaX Fabrication

15  that they were aware that Stjepan Papes was working under a B-1 visa, that Mr. Papes

16  needed a green card, and that they thought that if Stjepan Papes wanted to work directly

17  for LaX that one option was for Mr. Papes to go to the office to apply for a green card to

18  work directly for LaX

19      81.  Stjepan Papes was at that time working under the direction of supervisors of

20  LaX and according to the directions of supervisors of Eisenmann Corporation.

21  Defendant Keystone Automotive Operations Inc. contracted with Eisenmann Corporation

22  which in turn contracted with other entities such as ISM Vuzem, d.o.o. to hire

23  construction workers such as Stjepan Papes under false B1 visas who were paid less

24  than prevailing wages.

25      82.  Defendant Phoenix Mechanical Contractors contracted with Eisenmann

26  Corporation which in turn contracted with other entities such as ISM Vuzem, d.o.o. to hire

27  construction workers including Stjepan Papes under false B1 visas who were paid less

28

1    than prevailing wages. It also manufactured parts and assemblies for construction at

2    other manufacturing sites under the direct supervision of management of Eisenmann.

3    Mr. Harrison, owner of Phoenix Mechanical, said to Mr. Papes that he would arrange for

4    a green card for Mr. Papes to work directly for Phoenix, thus confirming that Mr. Harrison

5    was aware of Stjepan Papes' improperly working under a B-1 visa.

6        83.  Defendants LAX Fabricating and Phoenix Mechanical were assigned by

7    Eisenmann Corporation and by the German based Eisenmann entities to manufacture

8    parts and assemblies for the construction at other construction sites.  LAX and Phoenix

9    Mechanical in turn contracted as special employer - as directed by the Eisenmann

10   entities - with other entities such as ISM Vuzem, d.o.o. to hire as manufacturing workers

11   individuals who heretofore had been construction workers including Stjepan Papes, all

12   under false B1 visas, all who were paid less than prevailing wages.

13       84.  The Eisenmann entities used a series of labor contractor entities, including

14   ISM Vuzem d.o.o. and related entities, Gregurec Ltd, LB metal d.o.o.,  D2N Tehnologije

15   d.o.o. aka D2N d.o.o.. Primiko, d.o.o., Lax Fabricating Ltd, Keystone Automotive,

16   Phoenix Mechanical, REHAU Incorporated, , HRID-MONT d.o.o., VV Mont, Magna

17   International, Inc., Magna Automotive Services GmbH, Magna, d.o.o, We-Kr d.o.o.,

18   RIMSA PLUS Sp. z o.o., Enterprise MDM Poland Sp. z o. o., MDM Polska sp. z.o.o., and

19   Mos Servis d.o.o. (hereinafter collectively "Labor Contractor Defendants") to act as

20   subcontractors and to hire enough foreign workers to do the construction work for the

21   purpose of providing foreign nationals to fulfill labor leasing contracts.  The workforce for

22   each and every of the Labor Contractor Defendants was predominately comprised of

23   foreign nationals possessing B1/B2 visas.

24       85.  The Eisenmann entities told the Labor Contractor Defendants how many

25   workers that the Eisenmann entities needed.  The Labor Contractor Defendants both

26   directly hired and actively marketed, and in most instances gave bonuses for referrals,

27   for workers, for the purpose of fulfilling what were effectively labor leasing contracts.

28

86.  The Labor Contractor Defendants gave to the Eisenmann entities by e-mail or other written communications the names, and in most instances the addresses and foreign passport information, for the individuals that the Labor Contractor Defendants had hired to do the construction work for the Eisenmann entities.

87.  Eisenmann Corporation on behalf of the Eisenmann entities then prepared a letter, similar to those referenced in paragraphs 59 and 60, supra, and some basic visa application package documents, for each individual that the Labor Contractor Defendants had identified to Eisenmann.  The letters referenced in paragraphs 59 and 60 were part of a such a package of documents prepared by Eisenmann Corporation and delivered by e-mail, mail or other delivery method to Labor Contractor Defendant ISM Vuzem, d.o.o., the same as had been prepared and delivered to other Labor Contractor Defendants.  Eisenmann Corporation by these and related actions and directions directly prepared for submission, and actively assisted or encouraged the Labor Contractor Defendants, to submit false information to the United States in the B-1 visa mis-application scheme.

88.  ISM Vuzem received this package of documents, filled in information, and added other documents.  ISM Vuzem d.o.o. put the Eisenmann documents and the Vuzem documents in an envelope, put cash into the same envelope, and then drove Stjepan Papes and a few other workers in 2013, and drove Gregor Lesnik and a few other workers in 2014, to the United States consulate in Ljubljana, Slovenia.

89.  The workers were given the envelope with the documents and cash and were given instructions of what to say when and only when they had been driven to the consulate.

90.  Defendant ISM Vuzem told Stjepan Papes and told Gregor Lesnik, and told all other workers who were given the envelopes to give to the consular officials, that they were to tell the consular officials that they would be working as a supervisor.

91.  The other Labor Contractor Defendants followed the same actions in having

other workers who they had recruited and hired to work on Eisenmann projects in the United States improperly submit the Eisenmann / Labor Contract Defendant generated applications with false statements by Eisenmann Corporation and the Labor Contractor Defendants, with cash supplied by the Labor Contractor Defendants, with Eisenmann directions to the Labor Contractor Defendants of what to tell the workers to say, all in order to improperly apply for and obtain non-petition based B-1 visas.

92.  Defendant Eisenmann entities, defendant Vuzem entities, and the Labor Contractor Defendants knew of this scheme and intended course of conduct when each of the workers were hired to work by the labor contractor defendants.

93.  The workers did not know of this scheme.  Rather, they were never given the envelopes, and were not told what to say, until they were driven to the consulate. Further, the documents were written in English, while few of the workers understood English, with almost none of them being fluent in written English.  This was one way that the information about the B-1 visa mis-application was concealed by the defendants.

94.  The defendant manufacturing entities that contemplated using Eisenmann knew of this scheme to obtain foreign laborers for construction work at their job sites when the manufacturing defendants entered into contracts with the Eisenmann entities. Those manufacturing defendants which had in 2014 and in 2015 signed formal contracts with Eisenmann for projects knew that Eisenmann was using the labor contractors.  This included that Tesla, Inc. and BMW Manufacturing Company were aware of this scheme, and each separately intended to support and benefit this scheme, when in October of 2014 a Potrdilo O Zaposlitvi (Certificate of Employment) was signed by Gregor Lesnik and was signed by Direktor Ivan Vuzem over an ISM Vuzem d.o.o. stamp.

95.  Defendants and each of them were aware of the visa fraud.  Further, Defendants and each of them agreed between themselves to violate the visa application laws of the United States in the submission of false information to improperly obtain the less expensive non-petition based B-1 visas for the workers who performed the

1   construction services and labor to build out large scale manufacturing facilities.

2       96.  Each successive manufacturing defendant was aware when they contracted

3   with Eisenmann that Eisenmann had for prior projects used foreign laborers under B-1

4   visas to build out the prior projects.  Each successive manufacturing defendant entered

5   into their contracts with the Eisenmann entities knowing that the Eisenmann entities

6   would follow this same scheme for work at their site.  The most recent example for those

7   manufacturing entities named as defendants in this complaint is Volvo Car US

8   Operations, Inc.

9       97.  Those manufacturing defendants who contracted with Eisenmann on more

10  than one project - such as BMW Manufacturing Company and for the successive

11  Mercedes Benz entities - knew that when they contracted with Eisenmann for a

12  subsequent project that Eisenmann would follow this same scheme for the subsequent

13  project.

14      98.  Each of the manufacturing defendants also knew of this scheme by what

15  occurred during the work at their site, and ratified this scheme by knowingly accepting

16  the continued operation of this scheme.

17      99.  Each of the manufacturing defendants limited entry to their project.  The

18  limited entry for each site was controlled by security personnel employed by each

19  individual manufacturing defendant.  Each individual entering the site had to first obtain

20  an identification card or badge, and had to thereafter show to the security personnel for

21  each manufacturing defendant identification to be allowed to enter the site.

22      100.  Identification was given to each of the B-1 visa workers by each of the

23  manufacturing defendants when each of the workers first arrived at the respective

24  construction sites.  The workers showed to the manufacturing defendants their visas and

25  their foreign nation passports.  This information was received, and listed, by each of the

26  manufacturing defendants at that time and then an identification card was concurrently

27  given to each new worker at that manufacturing facility's construction site.

28

101.  8 U.S.C. Section 1324, the Immigration Reform and Control Act of 1986 (IRCA) Pub.L. 99–603, 100 Stat. 3445, and regulations pursuant to these statutes, required employers to attest to their employees' immigration status.  All defendants, from the Labor Contractor Defendants, to the Manufacturer Defendants, to the Eisenmann entities, knew from even superficial compliance with these statutes and regulations - including for I-9 forms - the name, countries of origin, direct employer, visa status for all of the B-1 workers.  This information was obtained when the defendants for their own purposes issued security entry badges for all of the B-1 workers, thus providing direct knowledge to Eisenmann Corporation and each of the Manufacturing Defendants from the first day for each worker who came to their respective site their name, the labor contractor defendant who they were direct employees of, and their visa status and foreign nation passport.

102.  Each of the individual Manufacturing Defendants and the Eisenmann entities discussed with each other actions that could be taken, and were in fact taken, to conceal the visa fraud, conceal unlawful proceeds, and to conceal impermissible employment and movement and travel of foreign nationals once the workers were in the United States.  Each of the individual Manufacturing Defendants separately agreed with the Eisenmann entities to participate in and to assist in and financially benefit from this scheme.

103.  Each and every Manufacturing Defendants entered into contracts with Eisenmann Corporation, and the other Eisenmann entities, and in most instances also directly with the labor contractors - both the Labor Contractor Defendants named herein and other labor contractors -by written agreements which were different from all other large scale construction contracts by intentionally omitting requirements that the hired labor contractors would be licensed to perform construction work.  This intentional decision to not follow sound risk management practice of requiring the labor contractors to comply with licenses, business permits, and certificates required to carry out the

1  services to be performed under the contracts was intended to conceal the very existence

2  of the labor contractor defendants.

3        104.  These written agreements were also different from all other large scale

4  construction contracts by intentionally omitting requirements that the labor contractors -

5  both those named herein as Labor Contractor Defendants and other labor contractors -

6  carry workers compensation insurance.  This intentional decision to not follow sound risk

7  management practice of requiring that contractors carry statutorily mandated workers'

8  compensation coverage anytime a subcontractor is hired was intended to conceal the

9  very existence of the labor contractors and their foreign labor B-1 visa workers.

10       105.  The lack of workers compensation for injuries was not told to the employees.

11  Stjepan Papes found this out in its entirety when he was in California and learned about

12  Gregor Lesnik's problems with Eisenmann Corporation, Tesla, Inc. and the Vuzem

13  entities and affiliated persons.

14       106.  The Manufacturing Defendants discussed with the Eisenmann entities, and

15  the Labor Contractor Defendants discussed with the Eisenmann entities, other additional

16  actions that could be taken, and were in fact taken pursuant to these discussions, to

17  conceal the visa fraud.

18        Among other things, each of the Manufacturing Defendants entered into pretextual

19  discussions with American companies about potentially contracting with the American

20  companies to provide construction services, with the Manufacturing Defendants knowing

21  that they had no intention of contracting with the American companies.  Eisenmann

22  Corporation and the Manufacturing Defendants required the American companies that

23  they had communications with enter into confidentiality agreements in order to prevent

24  the disclosure of these pretextual discussions.  The intent was to create a false paper

25  trail in the event that the government inquired into the visa status of the workers, and the

26  basis for issuance of the visas - including whether American companies and workers

27  were available to perform the work.  This is because the practices of the Defendants as

28

set forth herein of employing aliens to work on clients sites under improper visas was in contravention of federal laws which had been designed to ensure that such workers would not cost American citizens jobs.  Defendants were peremptorily creating a paper trail in the event that they would want or need to fraudulently inflate the need for these workers.

Among other things, the Labor Contractor Defendants, with the knowledge of and pursuant to directions from the Eisenmann entities, and with the knowledge and consent of the Manufacturing Defendants, fraudulently failed to report that they had employee wages in, among other states, Michigan, Alabama, Tennessee, South Carolina and California, even though some of the workers wages were paid in cash in each of these states.  The intent was to conceal the existence of the foreign workers.

Among other things, some of the Labor Contractor Defendants created limited liability companies and corporations in the United States with names similar to that of the Labor Contractor Defendants to conceal that they were not American entities.

Each of the Labor Contractor Defendants and the Eisenmann entities agreed with each other to both participate in the visa fraud scheme and to take actions to conceal the visa fraud scheme.

107.  Plaintiff and Relator Gregor Lesnik has intimate knowledge of the essentials of the above details.  Gregor Lesnik became aware based on his work in Fremont, California that Eisenmann Corporation and ISM Vuzem d.o.o. made the same false representations to the United States on behalf of every one of more than 150 individuals who worked under the Vuzem entities for work at the Tesla site in Fremont, California at the same time in 2015 that Gregor Lesnik worked there.  The same false representations were made for the far more than 200 individuals who worked under the Vuzem entities at the Tesla site.  This included other Vuzem workers who been shipped in, worked for a period of time, and then shipped out.

108.  Plaintiff Gregor Lesnik also became aware while he worked at the Tesla site

1   that there were other B-1 visa workers at the Tesla site.  This also included hundreds, if

2   not more than a thousand, foreign workers employed by Gregurec, Ltd., an English

3   business entity, Slovenian based companies LB metal d.o.o., Mos Servis d.o.o., D2N

4   Tehnologije d.o.o. aka D2N d.o.o., German based entity Durr AG, and other foreign labor

5   contractors at the Tesla site alone.  Plaintiffs are informed and believe and thereon

6   allege that this also includes individuals to work under Primiko, d.o.o., a Croatia based

7   entity, and other entities not named as defendants in this action.

8       109.  Plaintiff Gregor Lesnik also became aware based on conversations with his

9   co-workers of the involvement of the other Manufacturing Defendants beside Tesla, Inc.,

10  and of the involvement of other Labor Contractor Defendants, in hiring B-1 visa workers

11  for basic construction work at sites throughout the United States, including in South

12  Carolina, Alabama, Tennessee and Michigan.

13      110.  Stjepan Papes was admitted to the United States under two B-1 visas, each

14  issued on the basis of the same mis-representations in "welcome letters" issued by and

15  signed on behalf of Eisenmann Corporation.  Each visa was issued based on

16  representations of what work Mr. Papes would perform, when the fact is that the work

17  that he performed was inconsistent with the representations in the welcome letters and

18  other documents prepared by the Eisenmann entity defendants including by Freidburga

19  Betsch and Robert Keller, and with the representations by ISM Vuzem d.o.o. including by

20  defendants Robert Vuzem and Ivan Vuzem and persons they directed, and by Gregurec

21  Ltd.  Each was for work and under terms of employment inconsistent with the provisions

22  of the statutes and regulations concerning the permissible bases and conditions for

23  issuance of a B-1 visa.

24      111.  Plaintiff and Relator Stjepan Papes had intimate personal knowledge of, and

25  became aware of, the same visa application fraud scheme being used to have B-1 visas

26  issued for foreign laborers to perform construction work at, among other places:

27      Mercedes Benz U.S. plant in Tuscaloosa, Alabama;

28

Rehau, which makes bumper assemblies for Mercedes in Cullman, Alabama;

the BMW plant in Spartanburg, South Carolina for many years;

Phoenix Mechanical in Greer, SC;

LaX Fabricating Ltd as a joint employer in Spring Grove, Minnesota;

Tesla Motors (now Tesla, Inc.) in Fremont, California; and

Dicastal in Greenville, Michigan.

112.  Plaintiff Stjepan Papes also became aware through conversations with his co-workers of the same visa application fraud scheme being used to have B-1 visas issued for foreign laborers to perform construction work at, among other places, Deere and Company (including workers Primoz Uplaznik and Luka Ribicic), and Volkswagen Group of America Chattanooga Operations, LLC (including worker Ante Baricic) and the intended and subsequent use of B-1 workers to provide construction services at the South Carolina construction site for the manufacturing plant for Volvo Car US Operations, Inc.

113.  All of the workers, other than a handful of actual supervisors for the Labor Contractor Defendants, did not qualify for B-1 visas.  Yet Eisenmann Corporation and the Labor Contractor Defendants represented to the United States that at least three thousand (3,000) of such workers each had specialized skill with Eisenmann products and systems, and that each of them would be providing work for which a B-1 visa should be issued.  The truth is that none of the B-1 visa workers, save and except for a few managers, actually qualified for issuance of B-1 visas if all of the true facts had been told.

114.  Each of defendants Tesla, Inc., Daimler AG, Mercedes-Benz U.S. International, Inc., BMW Manufacturing Co., LLC, Dicastal North America, Inc., Volkswagen Group of America Chattanooga Operations, LLC, Volvo Car Corporation, Volvo Car US Operations, Inc., Deere & Company, Lax Fabricating Ltd, Keystone Automotive, Phoenix Mechanical, and REHAU Incorporated hired for work at their job

1  sites and manufacturing and production facilities either Gregor Lesnik or Stjepan Papes

2  or other workers similarly situated to Mr. Lesnik and Mr. Papes who had entered the

3  United States under B-1 visas and who performed construction services at the

4  Manufacturing Defendants' facilities.

5       115.  Each individual Manufacturing Defendant Tesla, Inc., Daimler AG,

6  Mercedes-Benz U.S. International, Inc., BMW Manufacturing Co., LLC, Dicastal North

7  America, Inc., Volkswagen Group of America Chattanooga Operations, LLC, Volvo Car

8  Corporation,  Volvo Car US Operations, Inc., Deere & Company, Lax Fabricating Ltd,

9  Keystone Automotive, Phoenix Mechanical, and REHAU Incorporated separately agreed

10  with Eisenmann entities to violate the visa laws, and to conspire to conceal the violation

11  of the visa laws.

12       116.  Each of the Labor Contractor Defendants and the Eisenmann entities did so

13  as through the operation of an association in fact Enterprise orchestrated by and though

14  the leaders of the Enterprise, being defendants Eisenmann SE, Eisenmann Anlagenbau

15  GmbH & Co. KG, Eisenmann Anlagenbau Verwaltung GmbH, and Eisenmann

16  Corporation working out of Illinois (the Eisenmann entities).  The Enterprise composed

17  an ongoing organization whose members functioned as a continuing unit for the common

18  purpose of achieving the objective of the Enterprise to reduce wages expenses, and thus

19  reduce expenses, and thus increase profits.  This Enterprise was engaged in, and its

20  activities affected, interstate commerce.

21       117. The pattern of conduct of the Enterprise of Eisenmann Corporation and the

22  Labor Contractors included:

23       a.  workers were admitted on the basis of the Eisenmann assurances - and the

24  labor contractor defendants' assurances - in the welcome letter presented to the

25  embassy/consulate;

26       b.  the letter claimed that they were employees of a subcontractor and were being

27  admitted to oversee the installation of specialized equipment manufactured by

28

1 Eisenmann;

2        c.  the letter identified a specific geographic location where the installation was to

3 be performed;

4        d.  the letter includes assurances that the subcontractor, such as Gregurec Ltd.,

5 would be responsible for payroll, as well as all expenses, including airfare to and from

6 the US, hotel accommodations, per diem, and would continue to be covered by social

7 security and health insurance;

8        e.  the workers traveled on the B1 business visa but not necessarily to the location

9 listed in the Eisenmann letter;

10        f.  the Eisenmann entities directed and provided preliminary assistance to each of

11 the labor contractor defendants to locate housing for the workers and vehicles for

12 transporting the workers to and from job site locations;

13        g.  the workers were not engaged in supervisory tasks but rather as laborer,

14 HVAC, plumbing and other trades;

15        h.  the workers were not necessarily skilled in the trades that they were assigned

16 by defendants to work at;

17        I.  the workers labored from 7 am until 6 pm, with a lunch period and brief breaks

18 in the morning and afternoon;

19        j.  the workers routinely worked 6 days a week, and often 7;

20        k.  the workers were not paid minimum wages, let alone prevailing wages, and

21 were not paid overtime;

22        l.  the workers received a monthly salary, in most instances of 800 euros that was

23 deposited directly in their bank account in their home country (expressly stated in the

24 Potrdilo O Zaposlitvi (Certificate of Employment) dated 13.02.2013 signed by Direktor

25 Ivan Vuzem as being E 783,66 gross pay);

26        m.  some of the workers also received up to 1200 euros per month, represented to

27 be compensation for work out of the area for expenses, such as referenced in the

28

Eisenmann welcome letter for Mr. Lesnik as a per diem payment of $48 per day, which funds were paid to the workers in the United States, with defendants concealing their receipt of the funds and concealing the payment in the United States of this money;

n.  in most instances a cash payment of $500 per month in the nature of a per diem was paid by the subcontractor - subject to conditions such as never being sick, not reporting any injuries, and staying through the completion of a project - although it was not reflected in any document as a wage payment and was not based on numbers of hours worked.

None of the defendants reported as taxable wages either the payments identified in subparagraph m or those in this subparagraph n;

o.  the workers were not paid for the numbers of hours worked, or based on overtime, or where applicable under state law for breaks;

p.  each worker was owed back wages by defendants and each of them;

q.  the foreign national workers were not paid the prevailing hourly wage as would be certified to the federal Department of Labor if the workers had been admitted on a permissible basis under an H-2b visa or similar permissible petition based visa.  The requirement to pay prevailing wages is set forth in most employment based visa programs.  The H-1B, H-1B1, and E-3 programs, as well as the H2-B visa program, require the employer to pay the prevailing wage or the actual wage paid by the employer to workers with similar skills and qualifications, whichever is higher;

r.  no taxes of any kind, whether for employee income tax, or Medicare or FICA or social security taxes, were paid either on the money paid to each of the workers or the money that should have been paid, this failure to pay taxes being among for the purpose of, among other things, to conceal that the workers were working in and being paid in the United States;

s.  each of the contracts that Gregor Lesnik, Stjepan Papes and similarly situated workers worked under was unlawful in part because of the visa fraud;

t.  each of the written contracts of employment for each and every of Gregor Lesnik, Stjepan Papes and similarly situated workers contained false representations stating, among other things, that the workers would work typically 40 hours per week and a 5 day work week, that the employers would provide a safe working environment, and that the employers would provide all required health and worker insurances;

u.  the Eisenmann entities orchestrated the actions of the Labor Contractor Defendants as subcontractors in the enterprise to commit visa fraud in procuring the B1 visas;

v.  the defendants did not pay for the full visa filing fee, application fee, and issuance fees and charges for petition based H-2B visas (temporary nonagricultural services or labor on a one-time, seasonal, peak-load, or intermittent basis for a specific employer in a specific geographic area) or other petition based visas, or renewal or other associated fees;

w.  the foreign nationals were subject to threat to cancel their immigration status if they refused to work as directed. The visas for the foreign nationals were the workers' only means to remain legally within the United States. Thus, cancellation of their visas would render them illegally within the United States and without the ability to find other legal employment, including in conditions - including economic conditions - that would make payment for return flights to their home countries difficult or impossible;

x.  the work conditions and occupational environment provided by these entities was unsafe and contrary to federal, state and local law;

y.  the defendants intimidated affected workers by, among other things, trying to coerce them to sign a waiver of wages claims.  Among other things, in September of 2016 ISM Vuzem prepared a document that it sent to workers and former workers in which ISM Vuzem states "An allegation was made that Employee did not receive adequate compensation under California and/or United States law," with implication of negative work and references if the waiver was not signed;

z.  the workers were subject to lawsuits and legal process, both civil and criminal, if and when any of them complained; and

aa.  Defendants have frequently communicated and consulted via mail, facsimile, e-mail, and/or telephone for the purpose of coordinating and directing the recruitment of workers.

118.  The submission by Labor Contractor Defendants directly, and by the Eisenmann entities directly, and by Eisenmann Corporation as orchestrator of the actions of the Labor Contractor Defendants, of false and fraudulent claims for avoiding or decreasing their obligations to pay or transmit money or property to the Government has caused, and continues to cause, the United States to sustain a direct loss of funds and damage to its interests in violation of the FCA.

119.  The Manufacturing Defendants were aware of the conduct and scheme of the Eisenmann entities and of the Labor Contractor Defendants when each of them knowingly ratified and accepted economic benefits from the scheme and conduct that was run by the Eisenmann entities, by lead entity Eisenmann Corporation.

120.  Each of the Manufacturing Defendants individually agreed with the Eisenmann entities - when it came their turn to build out a manufacturing facility - to accept the benefits of the scheme and conduct.  All defendants agreed to violate, and conspired to violate, the visa laws of the United States and to violate the FCA.

121.  Defendants, and each of them, engaged in and knowingly accepted the benefits of, and are continuing to engage in and accept the benefits of, this illegal conduct to obtain contracts and thus profit, and to increase their profits by reducing expenses.

122.  Each of the Labor Contractor Defendants used their financial power and control over the workers' visas, of travel to and from the United States, of housing, of travel within the United States, and of their superior knowledge of law and legal process to coerce and compel the workers to work at the sites for long hours, and for coerced

1  long hours, under unsafe work conditions.

2       123.  Defendants have not completely ceased their misconduct.  The companies

3  are still using foreign workers.  A May 2016 front page full length article in the San Jose

4  Mercury News gained national and international attention - including in other print,

5  television and internet media, and including responses by Eisenmann and Tesla, and by

6  United States Senators - for exposing the work place conditions, hours worked and visa

7  irregularities involving Tesla and Gregor Lesnik.  A July 2017 CBS television broadcast

8  had videos and interviews and records showing the B-1 visa misrepresentations and

9  workers at among other places the BMW facility(ies) in South Carolina  The use of

10  foreign workers under B-1 visas at low pay working at these construction and work sites

11  continues today, even after the San Jose Mercury News article and the CBS broadcast.

12       For example, ISM Vuzem, d.o.o. openly displays on its website that it has

13  provided services, and can provide references, from Hyunday, in Montgomery, Alabama,

14  to Mobis, in Montgomery Alabama, to Corning, in New York, to Cross-Bros, in Rochester,

15  NY, to Master-Mold in the US, to Hayes Lemmrz, Inc. in Gainsville (sic), and to Rital in

16  Urbana.

17       Harassment and intimidation of workers including by threat of legal process also

18  continues to date, both as directed to Plaintiffs and to persons similarly situated to them,

19  and as a pattern of conduct intended to cause other persons similarly situated to them to

20  be coerced by the threat of harm to them.

21       Robert Vuzem and Ivan Vuzem in 2015 and 2016 directly harassed and

22  threatened Gregor Lesnik with adverse civil action in retaliation for Gregor Lesnik

23  pursuing a complaint for damages.  Further, Ivan Vuzem in June of 2018 directly

24  harassed and threatened Gregor Lesnik with an unsupportable criminal prosecution.

25       124.  To the extent the misconduct continues, Plaintiffs and Relators Gregor

26  Lesnik and Stjepan Papes intend that this Complaint address and remedy it.

27

28

1

### F.  Facts and Bases of the False Claims Act Claims

2       125.  The federal False Claims Act, 31 U.S.C. §§ 3729 et seq., was originally

3   enacted during the Civil War.  Congress substantially amended the Act in 1986 to

4   enhance the ability of the United States Government to recover losses sustained due to

5   fraud against it.  Congress amended the Act after it found that fraud in federal programs

6   was pervasive and that the Act, which Congress characterized as the primary tool for

7   combating government fraud, was in need of modernization.  Congress intended the

8   amendments to create incentives for individuals with knowledge of fraud against the

9   Government to disclose the information without fear of reprisals or Government inaction

10  and to encourage the private bar to commit legal resources to prosecuting fraud on the

11  Government's behalf.  The FCA establishes liability to the United States for "any person,"

12  whether an individual or an entity, who makes a false claim as defined by the Act.

13      126.  Effective May 20, 2009, Congress amended and renumbered the False

14  Claims Act pursuant to Public Law 111-21, the Fraud Enforcement and Recovery Act of

15  2009 ("FERA"). Among other things, knowledge under section 3729, subsection (b)(1) is

16  now defined as being (1) actual knowledge, (2) deliberate ignorance of the truth or falsity

17  of the information, or (3) reckless disregard of the truth or falsity of the information.

18  Demonstration of specific intent is no longer necessary.  Among other things, the statute

19  now makes it clear that FCA liability extends to any conspiracy to violate any

20  requirement of the FCA. (31 U.S.C. § 3729(a)(1)© ("conspires to commit a violation of

21  subparagraph (A), (B), (D), (E), (F), or (G)").  Among other things, FERA amended the

22  "reverse false claims" provisions to expand liability to "knowingly and improperly

23  avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the

24  Government."

25      127.  Section 3729(a)(1)(G) makes liable those who, by false statements, reduce

26  their liability to the government. It is therefore termed a "reverse false claim" because the

27  false statement is made to avoid payment, rather than to seek payment.

28

128.  Plaintiffs' FCA cause of action against the Labor Contractor Defendants and against Eisenmann Corporation is based on such a reverse false claim because Eisenmann Corporation's false statements on letters submitted in connection with visa applications, because the other documents prepared by Eisenmann entities, ISM Vuzem, d.o.o., and the other Labor Contractor Defendants, and because the directions given by the Vuzem entities and the other Labor Contractor Defendants to the workers at the time of applying for the non-petition based B-1 visas, reduced the fees owed to the government for visas.

129.  Further, other Labor Contractors, in a manner like ISM Vuzem, d.o.o., used Eisenmann false statements, used other documents prepared by Eisenmann and the individual Labor Contractors, and directions given by the Labor Contractors to the workers at the time of the applications for the non-petition based B-1 visas, to reduce fees owed to the government for issuance of visas.

These other Labor Contractors include both those identified in this complaint as Labor Contractor Defendants (Gregurec Ltd, LB metal d.o.o.,  D2N Tehnologije d.o.o. aka D2N d.o.o.. Primiko, d.o.o., Lax Fabricating Ltd, Keystone Automotive, Phoenix Mechanical, REHAU Incorporated, HRID-MONT d.o.o., VV Mont, Magna International, Inc., Magna Automotive Services GmbH, Magna, d.o.o, We-Kr d.o.o., RIMSA PLUS Sp. z o.o., Enterprise MDM Poland Sp. z o. o., MDM Polska sp. z.o.o., and Mos Servis d.o.o.) and others labor contractors, including Durr AG of Germany with a US division address of 40600 Plymouth Road, Plymouth, MI 48170-4297; AVK Avtomatizacja, d.o.o. of Celje, Slovenia; Cain Group AG s.r.o. of Bratislava, Slovakia; Dato d.o.o., aka Data Avtomatizacja, d.o.o. of Ptuj, Slovenia; Delmont d.o.o. of Maribor, Slovenia; DTP Montage d.o.o., aka DTP Montage.com, of Zavrc, Slovenia; Felnar Center, d.o.o. of Hajdina, Slovenia; GNS, d.o.o., of Ptuj, Slovenia - operated by Krunoslav Premusic, a former Vuzem supervisor who has a prior conviction in Croatia for trafficking; International Workers Group d.o.o., aka IWG, of Zagreb-Slobostina, Croatia; JB Tech

d.o.o., of Škofja vas, Slovenia; Klaus Reschka GmbH, aka Klaus Reschka Anlagenbau GmbH, of Harthausen, Germany; LIB Industriemontage, of Rhineland-Palatinate, Germany and Grasz, Germany, which opened a shell entity in Tennessee of LIB, LLC; MP Ptuj, d.o.o., which has worked at VW in Chattanooga, Tennessee and Tesla in Fremont, California and is owned by Klaus Reschka, individually; SAR Avtomatizacja, d.o.o. of Markovci, Slovenia; and UMI-industrial solutions d.o.o.

130.  The FCA under section 3729(a)(1)© also holds all persons who participated in a conspiracy to violate the FCA legally responsible for the violation of the FCA.

131.  Plaintiffs' FCA cause of action against the Manufacturing Defendants, and against Eisenmann Corporation, is based on such conspiracy.  Each of the Manufacturing Defendants individually agreed with the Eisenmann entities to knowingly participate in the visa fraud, and each of the Manufacturing Defendants with knowledge of the visa fraud took actions, and agreed with the Eisenmann entities to take those actions, in furtherance of this agreement for the purpose of obtaining financial benefits in connection with the submission of the false claims that avoided or decreased an obligation to pay or transmit money or property to the Government.

132.  The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States and to share in any recovery.

133.  Any person who violates the FCA is liable for a civil penalty of up to $11,000 (adjusted for inflation) for each violation, plus three times the amount of the damages the United States sustains.  31 U.S.C. § 3729(a)(1).

134.  The FCA also awards reasonable attorneys' fees and costs to the prevailing qui tam plaintiff as a matter of right.  31 U.S.C. § 3730(d).

### G.  Facts and Bases of Wages claims

135.  ISM Vuzem, d.o.o. was the direct employer of Plaintiffs Gregor Lesnik and Stjepan Papes.

136.  Defendant ISM Vuzem d.o.o. was at all times mentioned herein a direct

1   employer of Gregor Lesnik pursuant to a November 13, 2014 dated Pogodbo O

2   Zaposlitvi (employment agreement), and of Stjepan Papes under an identical 2013

3   written employment agreement.

4       Defendant ISM Vuzem d.o.o. was also an employer of Plaintiff Gregor Lesnik and

5   of Stjepan Papes because it had the right to control their work and related activities and

6   did control their work and related activities

7       Defendant ISM Vuzem d.o.o. was also an employer of Plaintiff Gregor Lesnik and

8   of Stjepan Papes because Gregor Lesnik was between March of 2015 and May 16, 2015

9   and Stjepan Papes was between 2013 and 2016 performing services for defendant

10  which required a license under Chapter 9 (commencing with Section 7000) of Division 3

11  of the California Business and Professions Code.

12      137.  Defendant ISM Vuzem USA, Inc. was during the time period of March

13  through May of 2015 an employer of Plaintiff Gregor Lesnik both because it had the right

14  to control his work and related activities, because it provided some of the compensation

15  for Gregor Lesnik, and because Gregor Lesnik was between March of 2015 and May 16,

16  2015 performing services for defendant which required a license under Chapter 9

17  (commencing with Section 7000) of Division 3 of the California Business and Professions

18  Code.

19      138.  Defendant ISM Vuzem USA, Inc. was during the time period of 2013 through

20  2016 an employer of Plaintiff Stjepan Papes both because it had the right to control his

21  work and related activities, because it provided some of the compensation for Stjepan

22  Papes, and because Stjepan Papes was between 2013 and 2016 performing services for

23  defendant which required a license under Chapter 9 (commencing with Section 7000) of

24  Division 3 of the California Business and Professions Code.

25      139.  Defendant Vuzem USA, Inc. is an employer of Plaintiff Gregor Lesnik and of

26  Stjepan Papes because Gregor Lesnik was between March of 2015 and May 16, 2015

27  and Stjepan Papes was in 2015 performing services for defendant including on behalf of

28

1   ISM Vuzem d.o.o. and ISM Vuzem USA, Inc. at the Tesla plant in Fremont, California

2   which required a license under Chapter 9 (commencing with Section 7000) of Division 3

3   of the California Business and Professions Code.

4       140.  Defendant Eisenmann Corporation is an employer of Plaintiffs Gregor

5   Lesnik and Stjepan Papes - and all similarly situated B1 workers.

6       Defendant Eisenmann Corporation had supervisors that came from time to time to

7   take a look to see how the work performed by Gregor Lesnik, Stjepan Papes and the

8   other similarly situated alien "B-1" workers was progressing and to assess it.  Further,

9   Eisenmann Corporation through multiple employees and agents provided instructions to

10  Gregor Lesnik and Stjepan Papes.  Eisenmann Corporation had the right to control their

11  work and related activities, because it gave some instructions to Gregor Lesnik and to

12  Stjepan Papes in their work activities and reserved the right to give instructions.

13  Eisenmann Corporation employees and management supervised the work and

14  sometimes directly issued the order to an individual worker of the subcontractor of ISM

15  Vuzem.  Further, if the manager of Eisenmann Corporation was not satisfied with the

16  work of an individual employee of ISM Vuzem, d.o.o. he orally informed the supervisor of

17  the ISM Vuzem that he want the concerned employee or workers to withdraw from this

18  work.

19      Eisenmann Corporation had all "subcontractor" defendants come to its

20  headquarters in Illinois for directions.

21      Eisenmann Corporation had its employees present at each of the construction

22  sites to oversee and supervise the work performed by "subcontractor" defendants.

23      Eisenmann Corporation determined how many workers would be needed, and

24  Eisenmann Corporation prepared and signed the "welcome letter" for the visa application

25  that allowed the workers to come to the United States and to the job sites.

26      Eisenmann Corporation and the German based Eisenmann entities directly

27  employed field managers and project managers for the work sites, and thus in turn

28

1   controlled contracting and hiring for the other entities.  Eisenmann Corporation had the

2   power to, and did exercise the power, to assign workers to work at individual job sites

3   and companies as fit the purposes of and needs of Eisenmann Corporation.

4          Eisenmann Corporation determined and directed and provided initial assistance

5   for the Labor Contractor Defendants in where to house the workers, and what

6   transportation to provide the workers from the housing units to the work sites.

7          Eisenmann by its control of the job sites maintained records of the entry to the job

8   sites and to the hours worked by each employee, which constituted the time records for

9   the employed workers.

10          Eisenmann by its contracts with the Labor Contractor Defendants determined the

11   rate of compensation by directing and ensuring that all workers were hired under a

12   standard European Union contract that provided payment of 800 Euros per month for a

13   duration of one year.

14          Eisenmann issued to Stjepan Papes an Contractor security tag - ID no. s29127 -

15   which identified Stjepan Papes as an Eisenmann Contractor - not a Vuzem contractor -

16   working at Mercedes-Benz U.S. in Tuscaloosa, Alabama.

17          141.  Eisenmann Corporation is also deemed to be an "employer" under California

18   Labor Code section 2750.5, and as interpreted by the courts in Sanders Construction

19   Co. Inc. v. Cerda (2009) 175 Cal.App.4th 430 and State Compensation Ins. Fund v.

20   Workers' Comp. Appeals Bd. (1985) 40 Cal.3d 5, in that neither the workers, nor any of

21   the Labor Contractor Defendants, held any contractors license and the work performed

22   required a contractors license under Chapter 9 (commencing with Section 7000) of

23   Division 3 of the California Business and Professions Code.

24          142.  Plaintiffs are informed and believe and thereon allege that Defendant

25   Eisenmann SE is an employer of Gregor Lesnik and of Stjepan Papes because it acted

26   through its owned subsidiaries Eisenmann Anlagenbau GmbH & Co. KG, Eisenmann

27   Anlagenbau Verwaltung GmbH and Eisenmann Corporation had the right to control their

28

1  work, terms and conditions of employment, housing, transportation, and related activities

2  and because Gregor Lesnik was between March of 2015 and May 16, 2015 and Stjepan

3  Papes was between 2013 and 2016 performing services which required a license under

4  Chapter 9 (commencing with Section 7000) of Division 3 of the California Business and

5  Professions Code.

6      143.  Plaintiffs are informed and believe and thereon allege that Defendant

7  Eisenmann Anlagenbau GmbH & Co. KG acted directly and also acted indirectly through

8  its subsidiary Eisenmann Corporation in the matters alleged herein.

9      Among other things, its employee Torsen Moelgg:

10      a. acted as field manager at the BMW plant in South Carolina;

11      b. directed various B1 workers including Stjepan Papes to perform manufacturing

12  related services at and for defendants LAX Fabricating, Phoenix Mechanical, and

13  REHAU Incorporated when the Eisenmann entities needed materials, parts or

14  assemblies for construction at the manufacturing plants; and

15      c.  had the plans and directions for the construction of several of the

16  manufacturing plants at which work was provided by the B1 visa workers.

17      Among other things, when Stjepan Papes worked at Phoenix Mechanical, Alan

18  Harrison, former owner told Mr. Papes and others that the workers had to stop working

19  because Eisenmann would not pay Phoenix Mechanical for some work.  Mr. Papes and

20  the others then returned to work for Phoenix Mechanical and were told that Eisenmann

21  would pay Phoenix Mechanical for that disputed work.  Mr. Papes had conversations

22  about this and about visas and green cards with Mr. Harrison with Torsen Moelgg of

23  Eisenmann also present.

24      Among other things, written contracts with Tesla, Inc. were signed by, among

25  others, Tesla, Inc., by Peter Carlson, and Eisenmann Anlagenbau GmbH & Co KG by

26  Bruno Casorati, Gabriele DiFuria, Sales Manager, on behalf of Eisenmann Anlagenbau

27  GmbH & Co KG, and Dr. Link (? Sp) Lebman, Chairman, on behalf of Eisenmann

28

1   Corporation, and Anton Borovac, Frank Ziegler, Matthias Heydlauff, and Bernd

2   Strumberger for Eisenmann Corporation.

3       144.  Plaintiffs are informed and believe and thereon allege that Defendant

4   Eisenmann Anlagenbau GmbH & Co. KG is an employer of Gregor Lesnik and of Stjepan

5   Papes because Gregor Lesnik was between March of 2015 and May 16, 2015 and

6   Stjepan Papes was between 2013 and 2016 performing services for defendant which

7   required a license under Chapter 9 (commencing with Section 7000) of Division 3 of the

8   Business and Professions Code, and because some of the on site supervisors who

9   represented themselves to be from "Eisenmann" were German foreign nationals.

10      145.  Defendant Tesla, Inc. is an employer of Plaintiff Gregor Lesnik and Stjepan

11  Papes because it had the right to control their work and related activities.  Among other

12  things, Tesla Senior EHS Engineer Bobby Gonzales provided instructions to Gregor

13  Lesnik and Tesla prepared, and maintained, all job hazard forms for work at the Tesla

14  site.

15      Defendant Tesla, Inc. is an employer of Plaintiff Gregor Lesnik and Stjepan Papes

16  also because Gregor Lesnik was between March of 2015 and May 16, 2015 and Stjepan

17  Papes was in 2015 performing services for defendant which was required to obtain a

18  license required under Chapter 9 (commencing with Section 7000) of Division 3 of the

19  California Business and Professions Code.  None of defendants ISM Vuzem, d.o.o., ISM

20  Vuzem USA, Inc., Vuzem USA, Inc., Gregurec Ltd., Eisenmann SE, Eisenmann

21  Corporation, Eisenmann Anlagenbau GmbH & Co. KG, Eisenmann Anlagenbau

22  Verwaltung GmbH or Tesla, Inc. held at any time relevant herein a contractors license

23  provided during that time period by Gregor Lesnik, Stjepan Papes, and the other workers

24  who obtained entry to the United States under false B-1 visas.  Among other things,

25  Tesla, Inc. Motors, Inc. cancelled prior to the time of the events at issue herein its license

26  previously issued by the California Contractors State Licensing Board, and Tesla

27  obtained hundreds of construction permits from the City of Fremont, meaning that it knew

28

the work being done by Gregor Lesnik, Stjepan Papes, and the other workers who obtained entry to the United States under false B-1 visas were of construction work by unlicensed workers.  Further, Defendant Tesla, Inc. copied the passport and visa cards for Gregor Lesnik, Stjepan Papes, and the other workers who obtained entry to the United States under false B-1 visas at the time that it took photographs for and issued a two sided 'Contractor Safety Card' and a one sided 'Tesla Motors Subcontractor' identification card for Gregor Lesnik, Stjepan Papes, and the other workers who obtained entry to the United States under false B-1 visas.

146.  The Federal Labor Standards Act ("FLSA") sets forth minimum wage obligations, including minimum wages, and payments for overtime hours.  The FLSA is a remedial statute that was enacted to eliminate "the existence . . . of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).   Generally under the FLSA, employers must pay employees the applicable minimum wage for each hour worked, and must pay 1½ times the regular rate for all hours worked in excess of forty in one week.  *Id.* §§  206, 207.

147.  ISM Vuzem, d.o.o., and its affiliated defendants, failed to pay to Gregor Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes, minimum wages under federal law.  Neither Eisenmann Corporation nor Tesla, Inc. paid or caused others to pay to Gregor Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes, minimum wages under federal law.

148.  ISM Vuzem, d.o.o., and its affiliated defendants, failed to pay to Gregor Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes, overtime wages under federal law.  Neither Eisenmann Corporation nor Tesla, Inc. paid or caused others to pay to Gregor Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes, overtime wages under federal law.

149.  Plaintiffs Lesnik and Papes bring a claim against ISM Vuzem, d.o.o. and its

1   affiliated persons - Ivan Vuzem, Robert Vuzem, ISM Vuzem d.o.o., ISM Vuzem USA,

2   Inc., Vuzem USA, Inc., and HRID-MONT d.o.o. - including on an alter ego basis,

3   Gregurec, Ltd, Eisenmann Corporation and Tesla, Inc. as direct employer, as joint

4   employers, and as employers pursuant to California statute under 29 U.S.C. § 2255(a)

5   on behalf of themselves and a putative class.

6       150.   The proposed FLSA class is defined as:

7       All non-management individuals employed by ISM Vuzem, d.o.o., or for ISM

8       Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc., and HRID-MONT d.o.o.,

        who worked in the United States, at any time from three years prior to the filing of

9       the Second Amended Complaint[2] in this action through the date that notice is sent

10      to the class members.

11      151.   Plaintiff Papes alone brings a claim against ISM Vuzem, d.o.o. and its

12   affiliated persons including on an alter ego basis, Gregurec, Ltd, Eisenmann

13   Corporation, and Tesla, Inc. as direct employer, as joint employers, and as employers

14   pursuant to California statute under the California Labor Code, on behalf of himself and

15   a putative class, for failing to provide minimum wage and overtime pay, as applicable,

16   under California law for those time periods when they worked in California.

17      152.   ISM Vuzem, d.o.o., and its affiliated defendants, failed to pay to Gregor

18   Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes,

19   minimum wages under California law for work performed in California.  Neither

20   Eisenmann Corporation nor Tesla, Inc. paid or caused others to pay to Gregor Lesnik

21   and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes, minimum

22   wages under California law.

23      153.   ISM Vuzem, d.o.o., and its affiliated defendants, failed to pay to Gregor

24

25   _____

26      [2]Should the Court determine that the complaint by Gregor Lesnik filed in Alameda
    Superior Court included an FLSA claim that was dismissed, which is not Plaintiffs'
27   understanding, then the statute of limitations for the FLSA claim was tolled during the
    pendency of Superior Court actionHG15773484 entitled "Gregor Lesnik v ISM Vuzem
28   USA, Inc., et al" (from not less than September 25, 2015 through July 18, 2016).

1   Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes,

2   overtime wages under California law for work performed in California.  Neither

3   Eisenmann Corporation nor Tesla, Inc. paid or caused others to pay to Gregor Lesnik

4   and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes, overtime

5   wages under California law.

6          154.  ISM Vuzem, d.o.o., and its affiliated defendants, failed to provide to Gregor

7   Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes,

8   required rest periods under California law for work performed in California.  Neither

9   Eisenmann Corporation nor Tesla, Inc. provided or caused others to provide to Gregor

10  Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes,

11  required rest periods under California law.

12         155.  ISM Vuzem, d.o.o., and its affiliated defendants, failed to provide to Gregor

13  Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes,

14  required accurate wage statements under California law for work performed in California.

15  Neither Eisenmann Corporation nor Tesla, Inc. provided or caused others to provide to

16  Gregor Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr.

17  Papes, required accurate wage statements under California law.

18         156.  ISM Vuzem, d.o.o., and its affiliated defendants, failed to pay to Gregor

19  Lesnik and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes,

20  waiting time penalties under California law for work performed in California.  Neither

21  Eisenmann Corporation nor Tesla, Inc. paid or caused others to pay to Gregor Lesnik

22  and Stjepan Papes, and people similarly situated to Mr. Lesnik and Mr. Papes, waiting

23  time penalties under California law.

24         157.  The proposed California Wages class is defined as:

25  All non-management individuals employed by ISM Vuzem, d.o.o., or for ISM
    Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc., and HRID-MONT d.o.o.,
26
    who worked in California, at any time from three years prior to the filing of the
27  Second Amended Complaint, as tolled during the pendency of Superior Court

28

actionHG15773484 entitled "Gregor Lesnik v ISM Vuzem USA, Inc., et al" (from not less than September 25, 2015 through July 18, 2016) in this action through the date that notice is sent to the class members.

### H. Facts and Bases of Anti-trafficking Claims

158.  The Trafficking Victims Protection Reauthorization Act includes a civil cause of action under 18 U.S.C. § 1595 that allows victims to seek damages and attorneys' fees from the "perpetrator" of a violation, inter alia, laws prohibiting trafficking and forced labor.  Section 1595(a) also extends liability beyond perpetrators to anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known" committed a violation of applicable trafficking and forced labor laws.  Statutory amendments in 2000 broadened section 1589 liability to nonviolent conduct by, inter alia, defining broadly "abuse or threatened abuts of law or legal process", "serious harm", and coerced labor.

159.  Defendants knowingly provided and obtained the labor and services of persons - Plaintiffs and each of the similarly situated workers - by means of serious harm and threats of serious harm to that person or another person, by means of the abuse and threatened abuse of law and legal process, and by means of a scheme, plan, and pattern intended to cause the workers to believe that, if the workers did not perform such labor and services, that the worker or another person would suffer serious harm.  Plaintiffs and class members could not stop working without facing what they reasonably believed was the specter of serious financial, reputational, and/or psychological harm.

160.  Each defendant herein knowingly benefitted, financially and by receiving things of value, from participation in a venture which each Defendant knew or should have known committed a violation of applicable trafficking and forced labor laws.

161.  The Eisenmann entities and the Labor Contractor Defendants were aware of and accepted the financial benefits from the forced labor scheme.  The same safety supervisors for Eisenmann worked at most if not all of the job sites.  Eisenmann assisted in the issuance of security and identification cards and passes at all job sites.

1    Eisenmann tracked the hours worked by the workers at all job sites.  Eisenmann in some

2    instances directed which workers would work at what location.  The labor contractors had

3    the same workers at multiple job sites controlled by the Eisenmann entities.  The long

4    hours worked were tracked by both the Labor Contractor Defendants and the Eisenmann

5    entities.  The Labor Contractor Defendants were compensated in part based on the

6    numbers of hours worked that Eisenmann tracked.  The Eisenmann entities' on site staff

7    had direct personal knowledge of the unsafe working conditions.  The Eisenmann

8    entities directed the principal reasons for and provided initial assistance to the Labor

9    Contractor Defendants in arranging housing and transportation.

10        162.  Plaintiffs Gregor Lesnik and Stjepan Papes for themselves individually and

11   for a class of similarly situated workers bring a claim against  ISM Vuzem, d.o.o. and its

12   affiliated persons including on an alter ego basis, Eisenmann Corporation, Tesla, Inc.,

13   Labor Contractor Defendants who acted similarly to the Vuzem entities, and

14   Manufacturing Defendants who after becoming aware of the anti-trafficking and coerced

15   labor actions continued to participate in the venture which they knew or should have

16   known included actions in violation of the TVPRA and of state anti-trafficking statutes.

17        163.  Plaintiffs bring this action as to certain Counts as a class action pursuant to

18   Federal Rules of Civil Procedure Rule 23 on behalf of themselves and specified classes.

19        164.  Common questions of law and fact exist as to all members of each trafficking

20   and coerced labor class including whether the actions by the defendants would cause a

21   person in his employ to believe that if he or she does not continue to work, he or she will

22   suffer the type of serious harm-physical or nonphysical, including psychological,

23   financial, reputation harm that would compel someone in his or her circumstances to

24   continue working to avoid that harm.  These common questions predominate over any

25   questions solely affecting individual members of the Class.  Further the coercion and

26   fraud are similar for all class members.

27        165.  The proposed TVPRA class is defined as:

28

All non-management individuals employed by ISM Vuzem, d.o.o., or for ISM Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc., and HRID-MONT d.o.o., ISM Vuzem d.o.o. and related entities, Gregurec Ltd, LB metal d.o.o.,  D2N Tehnologije d.o.o. aka D2N d.o.o.. Primiko, d.o.o., Lax Fabricating Ltd, Keystone Automotive, Phoenix Mechanical, REHAU Incorporated, , HRID-MONT d.o.o., VV Mont, Magna International, Inc., Magna Automotive Services GmbH, Magna, d.o.o, We-Kr d.o.o., RIMSA PLUS Sp. z o.o., Enterprise MDM Poland Sp. z o. o., MDM Polska sp. z.o.o., and Mos Servis d.o.o. who worked in the United States under a B-1 visa at any time from ten years prior to the filing of the Second Amended Complaint in this action through the date that notice is sent to the class members.

166.  Plaintiffs Gregor Lesnik and Stjepan Papes for themselves individually and for a class of similarly situated workers also bring a claim under California Civil Code section 52.5, which allows victims to seek damages based on violations of California Penal Code section 236.1 which defines trafficking and forced labor crimes.  Recovery is sought for actual damages, compensatory damages, punitive damages, injunctive relief and attorneys fees.

167.  The proposed California Trafficking class is defined as:

All non-management individuals employed by ISM Vuzem, d.o.o., or for ISM Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc., and HRID-MONT d.o.o., ISM Vuzem d.o.o. and related entities, Gregurec Ltd, LB metal d.o.o.,  D2N Tehnologije d.o.o. aka D2N d.o.o.. Primiko, d.o.o., REHAU Incorporated, HRID-MONT d.o.o., VV Mont, Magna International, Inc., Magna Automotive Services GmbH, Magna, d.o.o, We-Kr d.o.o., RIMSA PLUS Sp. z o.o., Enterprise MDM Poland Sp. z o. o., MDM Polska sp. z.o.o., and Mos Servis d.o.o. who worked in California under a B-1 visa at any time from seven years prior to the filing of the Second Amended Complaint in this action through the date that notice is sent to the class members.

168.  Stjepan Papes himself sustained injuries and damages as a legal result of the coercion exercised by defendants.

169.  Gregor Lesnik himself sustained injuries and damages as a legal result of the coercion exercised by defendants.

1    170.  Defendants took actions - and to this date continue to take actions - in a

2    scheme, plan and pattern to coerce continued work by the plaintiffs and by the similarly

3    situated workers at all sites of all manufacturing defendants.

4                          **I.  Facts and Bases of RICO Claims**

5    171.  Plaintiffs Lesnik and Papes also bring individual claims and class action

6    claims under 18 U.S.C. § 1962 (c) and (d) of the Racketeer Influenced and Corrupt

7    Organizations Act ("RICO") against Eisenmann Corporation.  The Eisenmann entities

8    Defendants, the Labor Contractor Defendants and other labor contractors as an

9    association in fact enterprise under 18 U.S.C. § 1961(4) associated, and participated

10   directly or indirectly, in the conduct of an Enterprise that affects interstate commerce,

11   through a pattern of racketeering activity.  The RICO cause of action seeks recovery

12   against Defendant Eisenmann Corporation, as all entities acted under Eisenmann's

13   directions, as carried out through the structure of this association in fact enterprise.

14   172.  The parties who associated in the B-1 visa mis-application scheme included

15   Eisenmann Corporation and Eisenmann SE, Eisenmann Anlagenbau GmbH & Co. KG,

16   Eisenmann Anlagenbau Verwaltung GmbH (collectively Eisenmann entities), and ISM

17   Vuzem d.o.o. and related entities, Gregurec Ltd, LB metal d.o.o.,  D2N Tehnologije d.o.o.

18   aka D2N d.o.o.. Primiko, d.o.o., Lax Fabricating Ltd, Keystone Automotive, Phoenix

19   Mechanical, REHAU Incorporated, HRID-MONT d.o.o., VV Mont, Magna International,

20   Inc., Magna Automotive Services GmbH, Magna, d.o.o, We-Kr d.o.o., RIMSA PLUS Sp. z

21   o.o., Enterprise MDM Poland Sp. z o. o., MDM Polska sp. z.o.o., and Mos Servis d.o.o.

22   (collectively "Labor Contractor Defendants").

23   173.  Defendant Eisenmann Corporation has and had a separate business

24   purpose from the Enterprise in providing consulting and construction services under

25   legitimate contracts with outside entities.

26   174.  Each of Defendants Eisenmann SE, Eisenmann Anlagenbau GmbH & Co.

27   KG, and Eisenmann Anlagenbau Verwaltung GmbH have and had separate business

28

1  purposes of developing technology, owning technology, and providing consulting and

2  construction services under legitimate contracts with outside entities.

3       175.  Each of the Labor Contractor Defendants have and had a separate business

4  purpose to provide consulting and construction services for work outside of the United

5  States, and to fulfill legitimate contracts with outside entities.

6       176.  The racketeering activity included the B-1 visa mis-application scheme

7  including section 1546 false statements in visa applications and section 1324 directing

8  false statements to obtain B-1 visas which were not proper for entry to the United States

9  to perform construction work.

10      177.  The racketeering activity included a forced labor scheme to compel the

11  workers to provide labor by threats of serious harm and abuse and threatened abuse of

12  law and legal process, and by pattern intended to cause the workers to believe that they

13  or others would suffer serious harm, including as alleged in paragraphs _ through _

14  herein.

15      178.  The racketeering predicate acts include fraud in foreign labor contracts.

16  Among other things, the written employment agreements (Pogodbo O Zaposlitvi)

17  between Gregor Lesnik and ISM Vuzem, d.o.o., between Stjepan Papes and ISM Vuzem,

18  d.o.o., and between ISM Vuzem d.o.o. and each and every direct employees of ISM

19  Vuzem, d.o.o., stated that the employees:

20            would work 40 hours per week ("Delovni cas delavca traja 40 ur tedensko,

21  v 5- dnevnem delovnem tedniku, sobote se delajo obcasno, delovni cas je fleksibilno

22  razporejen do 10 ur na dan. Delovni cas je razporejen v casu od 6. ure do 19. ure, vmes

23  je ena ura prosta in v soboto od 6. ure do 16", meaning the working time of the worker is

24  40 hours per week, in a 5-day working week, Saturdays are worked out Occasionally, the

25  working time is flexibly arranged up to 10 hours per day. The working time is deployed in

26  from 6 am to 7 pm, between one hour is free and on Saturday from 6 am to 4 pm.);

27            the workers would receive and could take time off as required ("Delavec je

28

upravicen do odsotnosti z dela, ob praznikih in dela prostih dnevih", meaning the worker is entitled to absence from work, on holidays and on working days);

the workers would be provided insurance ("Delavcu delodajalec zagotovi in zagotavlja za cas trajanja te pogodbe naslednje ukrepe v zvezi z vamos jo in zdravjem pri delu, in sicer: ... zdravstvene preglede v skladu s predpisi", meaning The employer shall ensure and provide for the duration of this contract the following measures in the employer relating to health and health at work, namely: ... medical examinations in accordance with regulations").  Even the Keller letter concerning Gregor Lesnik stated "Mr. Gregor Lesnik will also continue to be covered by his social security and health insurance, as he will remain a full time permanent employee of Co. Gregurec."; and

the workers would be provided a safe work place ("skrbi za varno delo monterjev, pravilno uporabo orodij, pravocasno opozarja na nepravilnosti in eventualno tudi ukrepa, da ne pride do hujsih poskodb ljudi in objektov", meaning ensuring safe work of installers, proper use of tools, timely warns of irregularities and possibly also measures to prevent serious human and property damage; "uporablja vsa predpisana zascitna sredstva in uposteva navodila in predpise za varno delo ter" meaning use all prescribed protection means and comply with instructions and regulations for safe operation; and "Delavcu delodajalec zagotovi in zagotavlja za cas trajanja te pogodbe naslednje ukrepe v zvezi z vamos~jo in zdravjem pri delu, in sicer: ... zascitna sredstva (obleka, obuvalo, rokavice itd.), v skladu z izjavo o varnosti z oceno tveganja, sprejeto pri delodajalcu", meaning The employer shall ensure and provide for the duration of this contract the following measures in the employer relating to health and health at work, namely: .. protective means (clothing, footwear, gloves, etc.), in accordance with the safety assessment report the risks adopted by the employer).

179.  These express written representations, material to the workers agreeing to work for Vuzem, were false.

180.  All of the similarly situated workers who were direct employees of other

1   Labor Contractor defendants other than Vuzem also had written contracts that materially

2   mis-stated components of remuneration, length of the normal working day or working

3   week, and promised insurance.

4       181.  The fraud in foreign labor contracts was known by and subject to the

5   direction of Eisenmann Corporation.  Among other things, the legally sophisticated

6   Eisenmann Corporation knew that most of the labor contractors came from European

7   Union countries and that these labor contractors would be required to state expressly in

8   writing to the workers the terms of employment.  Further, Eisenmann Corporation had

9   direct knowledge that the workers were not going to be working merely a normal work

10   day, that the workers were going to work more than five days per week, that the workers

11   were going to be working under adverse working conditions, and knew - including

12   because of the directions of Eisenmann corporation - that the workers would not be

13   covered by workers compensation insurance for work in the United States.

14       182.  The fraud in foreign labor contracts scheme had as its common purpose to

15   cause workers to agree to employment by Labor Contractor Defendants and to travel to

16   the United States while concealing to the workers the numbers of hours they would be

17   forced to work, concealing to the workers the unsafe work conditions, and concealing to

18   the workers the absence of workers compensation insurance.  The fraud in foreign labor

19   contracts scheme caused thousands of workers come to the United States to perform

20   construction services at low wages, in unsafe conditions, and without proper benefits

21   when such workers should have had the hours they work regulated, should have been

22   entitled to time off when necessary, should have been covered by workers compensation

23   insurance, and should have been compensated at prevailing wage rates.

24       183.  The Labor Contractor parties associating in this Enterprise and the

25   Eisenmann entities agreed to perform the predicate acts to obtain B-1 visas.  The Labor

26   Contractor parties agreed to perform, and the Eisenmann entities directed the Labor

27   Contractors and conspired to accept the benefits of, the actions to obtain coerced labor.

28

The Labor Contractor parties agreed to perform, and the Eisenmann entities directed the Labor Contractor parties and conspired to accept the benefits of, the fraud in foreign labor contracts.  Each and every of the Labor Contractor defendants and the Eisenmann entities knowingly agreed to participate in this Enterprise and to knowingly accept the benefits of this Enterprise.

184.  The common purpose of the persons associating in this Enterprise was to obtain cheap labor to provide services in construction contracts, thus reducing the costs and expenses of these parties, thus increasing their profits.  The B-1 visa mis-application scheme caused the issuance of B-1 visas to have thousands of workers come to the United States to perform construction services at low wages, when such workers under a proper visa scheme would be entitled to prevailing wages.  This was accomplished in part by having the workers agree to employment under materially false representations, and in part by coercing the workers to continue to provide services by means of serious harm and threats of serious harm to that person or another person, by means of the abuse and threatened abuse of law and legal process, and by means of a scheme, plan, and pattern intended to cause the person to believe that, if the person did not perform such labor and services, that person or another person would suffer serious harm.

185.  The Enterprise was the vehicle used to have improperly issued to foreign nationals B1/B2 visas and arranged for them to enter the United States.  The Enterprise, as orchestrated by Eisenmann Corporation, discussed, directed and performed the actions to apply for improper B-1 visas based on false representations, as alleged herein.  The Enterprise did not have legal authorization to employ these alien workers for the work that they did in the United States.

186.  The Enterprise was the vehicle used to obtain labor by foreign nationals for unreasonable long hours in unsafe work conditions by coercing their continued working by abuse and threatened abuse of law and legal process, and by means of a scheme, plan, and pattern intended to cause the B-1/B-2 workers to believe that if they did not

1   perform such labor and services, that the worker or another person would suffer serious

2   harm.  The Enterprise, as orchestrated by Eisenmann Corporation, discussed, directed

3   and performed the actions to coerce long work hours, in unsafe conditions, in forced

4   housing and transportation circumstances, by individuals who were in the United States

5   under B-1 visas and without financial ability to return to their home country, as alleged

6   herein.

7        187.  The Enterprise was the vehicle used to obtain the employment and work of

8   the B1/B2 visa workers by means of materially false or fraudulent pretenses,

9   representations or promises regarding that employment, including false statements or

10  concealment about the actual conditions of employment, compensation, and lack of

11  insurance.  The Enterprise, as orchestrated by Eisenmann Corporation, discussed,

12  directed and performed the actions to sign workers to contracts while concealing the long

13  hours and work place conditions, and while concealing the intentional lack of workers

14  compensation insurance, as alleged herein.

15       188.  These schemes were orchestrated in the United States, directed by

16  Eisenmann Corporation in Illinois.  This included communications of Eisenmann

17  Corporation with the co-conspirators and directions by Eisenmann Corporation to the co-

18  conspirators in this association in fact enterprise about what contract terms to use for its

19  workers, what workers would come to the United States, what documents to supply for

20  applications for visas, what to tell the workers when they appeared before the

21  consulates, how and where to transport the workers to the United States, and acts to

22  conceal the existence of the workers in the United States performing construction work.

23       189.  Each and every one of Eisenmann Corporation, the other Eisenmann entity

24  defendants, and the Labor Contractor Defendants agreed on the overall scheme and

25  purpose of the B-1 visa mis-application scheme, the fraud in labor contracts, and the acts

26  to coerce continued labor.

27       190.  The B-1 visas used for workers providing labor in South Carolina, in

28

1  Alabama, in Tennessee, in Michigan, and in California, they are all the same.  The

2  workers were and in many instances still are the same.  It is the same Eisenmann

3  entities, by lead entity Eisenmann Corporation, that arranged for or created the visa

4  application paper work.

5       191.  The fraud in foreign labor contracts, and the forced labor, had in common

6  with the B-1 visa misapplication the intent and end result of saving money on wages by

7  have workers provide services while not paying wages properly due to workers, which

8  wages should have been prevailing wages.

9       192.  The predicate acts of the B-1 visa mis-application scheme (as fraud and

10  misuse of visas, permits and other documents [knowingly submitting as though true false

11  statements with respect to a material fact in applications required by immigration laws or

12  regulations prescribed thereunder Title 18, U.S.C. § 1546(a) and (b) (Visa Fraud)]), and

13  of the coerced labor acts (as peonage, slavery and trafficking in persons [Title 18, U.S.C.

14  § 1589(a) and (b)]) and the fraud in foreign labor contracting ([Title 18, U.S.C. § 1351

15  (a)]), included actions which are also defined as predicate acts in that they also

16  constituted:

17            mail fraud [creation of fictitious entities for the purposes of securing

18  documents and legal status to secure labor leasing contracts, in violation of Title 18,

19  U.S.C. § 1341 (Mail Fraud), sending and receiving the invitation letters, and the support

20  for the invitation letters, to the consulate, and placing in the mail checks for the funds

21  obtained by the scheme in violation of 18 U.S.C. § 1341],

22            wire fraud [sending and receiving writings, e-mails, signals and sounds for

23  the purpose of both directing and executing the scheme in violation of Title 18, U.S.C. §

24  1343 (Wire Fraud)],

25            laundering of money used to pay the workers in the United States

26  [knowingly conduct and attempt to conduct financial transactions affecting interstate

27  commerce and foreign commerce, which transactions involved the proceeds of specified

28

1   unlawful activity, that is, mail fraud, as part of the aforementioned scheme to obtain labor

2   leasing contracts, as described in this Complaint, knowing that the transactions were

3   designed in whole or in part to conceal and disguise the nature, location, source,

4   ownership, and control of the proceeds of specified unlawful activity, and that while

5   conducting and attempting to conduct such financial transactions, knew that the property

6   involved in the financial transactions represented the proceeds of some form of unlawful

7   activity [Title 18, U.S.C. §§ 1956(a)(1)(A)(I) and (b); 1956(a)(1)(B)(I) and (b); and 1957(a)

8   (Money Laundering)],

9          actions indictable under the Currency and Foreign Transactions Reporting

10  Act, including to bring money into the United States to pay bills and expenses in cash

11  without reporting that the money was brought into the United States;

12         acts indictable under the Immigration and Nationality Act including in false

13  statements in connection with applications for visas, and directing statements to be made

14  which were false;

15         aiding or assisting aliens to enter the United States including knowingly and

16  in reckless disregard of the fact that an alien, namely, one or more of the B-1 visa

17  workers, had come to, entered and remained in the United States in violation of law,

18  concealed, harbored, and shielded from detection such alien in buildings and other

19  places for the purpose of commercial advantage and private financial gain [8 U.S.C. §

20  1324(a)(1)(A)(iii) and 18 U.S.C. § 2 and 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II)];

21         transporting the B-1 workers from job site to job site, including across state

22  lines, and thus defendants herein, aiding and abetting each other and others, knowingly

23  and in reckless disregard of the fact that an alien has come to, entered and remained in

24  the United States in violation of law, moved and transported such aliens within the United

25  States - such as from California to South Carolina, from Alabama to Michigan, and the

26  like - by means of transportation or otherwise in violation of 8 U.S.C. § 1324(a)(1)(A)(ii)

27  and (v)(II); and

28

1        aiding and abetting each other and others, encouraged and induced one or

2  more aliens, being the B-1 visa workers similarly situated to Gregor Lesnik and Stjepan

3  Papes, to come to, and enter, the United States, knowing and in reckless disregard of the

4  fact that such coming to, and entry into, the United States was in violation of law, for the

5  purposes of commercial advantage and private financial gain in violation of [8 U.S.C. §

6  1324(a)(1)(A)(iv) and 18 U.S.C. § 2].

7        193.  This association in fact enterprise had a longevity sufficient to permit the

8  associated persons to pursue the enterprises purpose.

9        194.  The laws and regulations of the United States for issuance of visas for entry

10  to the United States require persons applying for visas to meet certain criteria for

11  issuance of visas.  Certain of those visas, being the only types of visas that Gregor

12  Lesnik, Stjepan Papes and the workers similarly situated to them would have been

13  issued if properly and accurately applied for, provide for payment to the workers of

14  prevailing wages.

15        195.  The parties which associated in the Enterprises knowingly ratified and gain

16  financial benefit from the B-1 visa mis-application scheme, the coerced labor scheme,

17  and the fraud in labor contracts scheme.  Each of the Eisenmann entities and the labor

18  contractors defendants benefitted, and the Enterprise itself benefitted, from the reduced

19  costs and saving of money from the obtained labor contracts.  The Eisenmann entities

20  and Labor Contractor Defendants benefitted from the Enterprise by, among other things,

21  not paying the prevailing wages that should have been paid to persons performing the

22  same work as Gregor Lesnik, Stjepan Papes, and workers similarly situated to Messrs.

23  Lesnik and Papes.

24        196.  The Eisenmann entities and the Labor Contractor Defendant associating in

25  fact in an Enterprise fraudulently failed to provide the employees with workers'

26  compensation and other benefits, jeopardized the workers immigration status by

27  employing them in a manner contrary to the provisions of immigration law, took coercive

28

1  and other actions, and threats of action, and conspired to benefit from the coercive and

2  other actions, which caused damages and injuries to the Plaintiffs and each of the

3  similarly situated class members who were aware of and threatened and affected by

4  these actions and threats of action.  Gregor Lesnik, Stjepan Papes, and workers similarly

5  situated to Messrs. Lesnik and Papes suffered damages and injuries, including, among

6  other things, in not being paid prevailing wages.

7      197.  Each of the Eisenmann entities and the Labor Contractors agreed with each

8  other to participate in the  Enterprise of the B-1 visa mis-application, coerced labor, and

9  fraud in labor contracts scheme.

10     198. It was a further part of the conspiracy that each defendant agreed that a

11  conspirator would commit at least two acts of racketeering activity in the conduct of the

12  affairs of each of the Enterprises, thus being a conspiracy to commit a pattern of

13  racketeering activity in violation of 18 U.S.C. § 1961(5).

14     199.  Each of the Eisenmann entities and each of the Labor Contractor

15  Defendants conspired to commit the acts of racketeering in violation of Title 18, of the

16  United States Code, section 1962(d) which provides liability for racketeering conspiracy.

17     200.  The Enterprise that is the subject of the RICO cause of action was engaged

18  in commerce or the production of goods for commerce that had annual gross sales of at

19  least $500,000.

20                           **II.  CAUSES OF ACTION**
                             **FIRST CAUSE OF ACTION**
21  **Federal False Claims Act 31 U.S.C. § 3729(a)(1)(A)-(B) (2009)**
22                        **against all named Defendants**

23     201.  Plaintiffs and Relators reallege and incorporate by reference the allegations

24  contained in paragraphs 1 through 200 of this Complaint.

25     202.  This is a claim for treble damages and penalties under the False Claims Act,

26  31 U.S.C. § 3729, et seq., as amended in 1986 and again in 2009.

27     203.  The within False Claims Act action is brought within six years of a violation

28

1  or within three years of the date by which the United States should have known about a

2  violation and up to ten years after the violation.

3      204.  The B-1 visa is a non-immigrant visa that allows a foreign national to

4  temporarily enter the United States for limited business purposes.  B-1 visa holders may

5  not be hired to provide construction work, whether on-site or in-plant.  B-1 visa holders

6  may not be paid by United States entities or in the United States.  B-1 visas are valid for

7  ten years.  B-1 visas are obtained by an application, without petition, and without fees for

8  investigations.  The application fee for a B-1 visa is in most instances $160.

9      205.  The construction work done by Gregor Lesnik and Stjepan Papes and by the

10  similarly situated "B-1" workers did not qualify for issuance of B-1 visas.  Materials and

11  supplies for installation on the project that Gregor Lesnik worked on in California and the

12  several projects that Stjepan Papes worked on came in part from the United States, and

13  in part from other countries.  They did not come solely from Eisenmann Corporation.

14  Some payments to Gregor Lesnik, Stjepan Papes and by the similarly situated "B-1"

15  workers was in the United States and from United States entities.

16      206.  The Eisenmann Corporation and the Labor Contractor Defendants submitted

17  false information and false statements - including as alleged in paragraphs 59 to 91

18  hereinabove - and paid cash, in connection with the applications for the B-1 visas.  The

19  Labor Contractors told the workers to make statements, which statements the Labor

20  Contractors knew would be false.

21      207.  An individual is obligated to pay for his or her fees when applying for a

22  personal, non-petitioned based visa such as a B-1 visa.  The fee can be paid by a third

23  person on behalf of the individual.  Here, the fees were paid by the Labor Contractors,

24  and in cash to conceal the source of the payments.

25      208.  Non-petition based B-1 visas are less expensive to apply for than petition

26  based visas, such as for H-1B, H2-B, and L-1B  visas.  Petition based visas have a larger

27  cost, and also require fees for investigations, evaluations, and renewals.

28

209.  An employer is obligated to  pay fees when applying for petition based visas. The fees can be paid by a third person on behalf of the employer.

210.  The obligation to pay fees is stated both in statute, (31 U.S.C. 9701(b)(2) (user charges based on costs to the ..), and regulations.  Fees for applications for "non-petition-based nonimmigrant visas" such as B-1 visas and for other visas including "petition based visas" along with additional review and renewal fees are set forth in the Code of Federal Regulations.  (See 8 C.F.R. §§ 22.1, 103.7).  The fees are based on the costs to the government to process the applications.

211.  Defendants Eisenmann SE, Eisenmann Anlagenbau GmbH & Co. KG, Eisenmann Anlagenbau Verwaltung GmbH, and Eisenmann Corporation, and Defendants ISM Vuzem d.o.o. and related entities, Gregurec Ltd, LB metal d.o.o.,  D2N Tehnologije d.o.o. aka D2N d.o.o.. Primiko, d.o.o., Lax Fabricating Ltd, Keystone Automotive, Phoenix Mechanical, REHAU Incorporated, , HRID-MONT d.o.o., VV Mont, Magna International, Inc., Magna Automotive Services GmbH, Magna, d.o.o, We-Kr d.o.o., RIMSA PLUS Sp. z o.o., Enterprise MDM Poland Sp. z o. o., MDM Polska sp. z.o.o., and Mos Servis d.o.o., took, and knowingly assisted the taking, among other things, the actions alleged in paragraphs 58 to 91, as well as the following unlawful actions to apply for and have issued - and to conceal the issuance of and entry into the United States of workers under - the less expensive B-1 visas:

a.  defendants prepared, accepted from other defendants, and/or submitted "invitation letters" to U.S. Consular Officials that contained materially false representations regarding the true purpose of a B-1 visa holder's travel in order to deceive U.S. Consular Officials and/or Customs and Border Protection Officers and secure entry of the visa holder into the United States.  These "invitation letters" stated that the purpose of travel was for a long term employee with "specialized experience" to provide services that could not be provided by United States citizens, when the true purpose was to engage in activities not authorized under a B-1 visa.  The November 5,

1    2014 letter from Robert Keller submitted to U.S. Consular Officials concerning Gregor

2    Lesnik was one instance of submission of an invitation letter written and submitted in

3    order to mislead the officials;

4        b.  defendants gave directions to the workers regarding the avoidance of certain

5    terminology, the avoidance of contract terms, and the use of misleading job titles, in

6    order to secure entry of the visa holder into the United States.  Among other things,

7    defendants directed foreign nationals to inform U.S. Consular Officials and/or Customs

8    and Border Protection Officers that their destination in the United States was the same

9    as that provided in an introduction letter; however, defendants knew that the foreign

10   nationals had been hired to be assigned to other destinations in the United States.

11   Among other things, defendants directed foreign nationals to inform U.S. Consular

12   Officials and/or Customs and Border Protection Officers that they would work as

13   supervisors - even though the foreign nationals did not work in the United States as

14   supervisors.  Defendants in so doing "caused" submission of false claims and false

15   information by instructing employees what false information to tell the consular officials;

16       c.  defendants stated in "invitation letters" different named entities so as to

17   conceal the number of "supervisors" hired.  The reference to "Gregurec Ltd" on the

18   November 5, 2014 letter by Robert Keller to the United States Consulate for Gregor

19   Lesnik is one example of this;

20       d.  defendants intentionally chose to not obtain licenses issued by the State of

21   California or other states or local governments so as to conceal the fact that the workers

22   were employed to provide construction services.  Among other things, none of

23   Eisenmann SE, Eisenmann Anlagenbau GmbH & Co. KG, Eisenmann Anlagenbau

24   Verwaltung GmbH, Eisenmann Corporation, ISM Vuzem d.o.o., ISM Vuzem USA, Inc., or

25   Vuzem USA, Inc. hold or held contractors licenses issued by the State of California,

26   required for work at the Tesla plant in Fremont, California;

27       e.  defendants made false representations about license status and employees so

28

as to conceal the fact that the workers were employed to provide construction services. For example, the California State Licensing Board did issue Contractor License # 566486 to "VUZEM USA COMPANY."  Licensed principal "BRONCO TOMASOVIC" represented to the CSLB that this was a sole proprietorship.  Licensed principal "Bronco Tomasovic" also represented that this company did not need workers compensation insurance because it had no employees.  "Bronco Tomasovic" is believed to also be known as "BRANKO TOMAS."  Branko Tomas is the agent for service of process of "ISM Vuzem USA, Inc." with an address of 1600 Azalea Hill Drive, Unit 304, Greenville, SC 29607. Branko Tomas is also the agent for service of process of "Vuzem USA, Inc." with an address of 965 West 11th St. #2, San Pedro, CA 90731.  Significant is that this licensee is not a corporation, is not the same legal entity as any of the named defendants herein, and - regardless of the correct name or legal designation - it knowingly and intentionally stated that it had no employees;

f.  defendants provided assistance in locating and providing worker housing, the manufacturers provided site trailers for management and supervisors, and the defendants worked together to create contracts for construction, employment and hiring which were intended to conceal the scheme of hiring B-1 visa workers - and of any foreign worker at less than prevailing wages as would be required under employment related petition based visas;

g.  defendants provided and supported security pass access to each work site using information from hundreds of workers visa and passport information, which, among other things, limited public viewing and access to each work site;

h.  defendants prepared, signed and submitted I-9 Forms - which Plaintiffs are informed contained false information - for those "general contractor's employees", or "subcontractor's employees", or otherwise characterized site construction workers whose employment lasted more than three days.  This includes the failure of defendants, and of their authorized agents, to list in their prepared, signed and submitted Form I-9s the fact

1   of employment at many work sites of literally hundreds of workers who defendants knew

2   could not all have legitimately issued B1 visas.  This includes at the Tesla facility in

3   Fremont, California, the Mercedes Benz plant in Tuscaloosa, Alabama, the BMW plant in

4   South Carolina, and the Dicastal facility in Greenville, Michigan.  This includes the failure

5   to document verification on I-9 forms of the identity and employment authorization of

6   each such employee similarly situated to Gregor Lesnik, including proper Alien

7   Registration Number(s).  Plaintiffs are informed and believe and thereon allege that

8   some or all of the defendants herein failed for at least a great number of persons

9   similarly situated to Gregor Lesnik and Stjepan Papes to retain with Form I-9s the

10  originals or copies of Acceptable Documents of all or many of such workers, thus making

11  photocopies of Acceptable Documents unavailable for inspection by DHS or other federal

12  government agency; and

13       I.  Once public notification of the fraudulent visa scheme and underpayment of

14  wages became highly publicized, entities changed their names and new entities were

15  created to conceal the fraudulent scheme and the defendants' role in the scheme.

16       212.  Defendants Defendants Eisenmann SE, Eisenmann Anlagenbau GmbH &

17  Co. KG, Eisenmann Anlagenbau Verwaltung GmbH, and Eisenmann Corporation, and

18  Defendants ISM Vuzem d.o.o. and related entities, Gregurec Ltd, LB metal d.o.o.,  D2N

19  Tehnologije d.o.o. aka D2N d.o.o.. Primiko, d.o.o., Lax Fabricating Ltd, Keystone

20  Automotive, Phoenix Mechanical, REHAU Incorporated, , HRID-MONT d.o.o., VV Mont,

21  Magna International, Inc., Magna Automotive Services GmbH, Magna, d.o.o, We-Kr

22  d.o.o., RIMSA PLUS Sp. z o.o., Enterprise MDM Poland Sp. z o. o., MDM Polska sp.

23  z.o.o., and Mos Servis d.o.o., and Defendants Tesla, Inc., Daimler AG, Mercedes-Benz

24  U.S. International, Inc., BMW Manufacturing Co., LLC, Dicastal North America, Inc.,

25  Volkswagen Group of America Chattanooga Operations, LLC, Volkswagen, Volvo Car

26  Corporation, Volvo Car US Operations, Inc., and Deere & Company in conspiracy to

27  violate the FCA and in furtherance of this scheme agreed to take actions in violation of

28

1  the FCA, and also took actions to conceal the visa fraud in violation of the FCA.

2      213.  Among other things, defendants wrote and revised contracts with each other,

3  and with their clients, in order to conceal the fact that the defendants were providing B-1

4  visa holders to perform jobs that involved skilled or unskilled labor that were otherwise

5  required to be performed by United States citizens or require legitimate H-1B visa

6  holders.  One example was the series of contracts for work at the Tesla plant in Fremont,

7  California.  These included:

8      a.  Eisenmann Corporation prepared on or about April 1, 2002 a version of its

9  Eisenmann Subcontractor General Terms and Conditions which it represents applies to

10  its relationship with ISM Vuzem USA, Inc., and with other subcontractors who provided

11  services and materials at the Tesla site in Fremont, California;

12      b.  On or about June 6, 2014 Tesla, Inc., by Peter Carlson, and Eisenmann

13  Anlagenbau GmbH & Co KG by Bruno Casorati entered into an agreement titled

14  "General Terms and Conditions" for work at the Tesla site.  Robert Keller, Purchasing

15  Manager for Eisenmann Corporation, has stated that the agreement generally described

16  Tesla, Inc.'s agreement to purchase, and Eisenmann Anlagenbau GmbH & Co KG's

17  agreement to sell, goods and services related to the design, engineering, and

18  manufacturing of equipment for the application of automotive paint in the manufacturing

19  process at the Tesla Motors facility located in Fremont, California.  This agreement

20  provided, among other things, that Eisenmann Corporation - a United States entity - was

21  to provide safety supervisors to assist in providing a safe working environment for

22  workers at the Tesla site;

23      c.  On or about June 9, 2014 a "Purchase Order" was submitted by ISM Vuzem

24  USA, Inc. - a United States entity - to Eisenmann Corporation - another United States

25  entity;

26      d.  On or about July 24, 2014 a Purchase Order was agreed to between

27  Eisenmann Anlagenbau GmbH & Co KG and Tesla, Inc. for Body Paint Shop - Phase 1;

28

e.  On or about July 25, 2014 a Statement of Work was executed by Deepak Ahuja, CFO on behalf of Tesla, Inc., by Gabriele DiFuria, Sales Manager, and Bruno Casorati, Senior Vice President on behalf of Eisenmann Anlagenbau GmbH & Co KG and by Dr. Link (? Sp) Lebman, Chairman, on behalf of Eisenmann Corporation;

f.  On or about July 25, 2014 a Purchase Order was executed between Eisenmann Corporation and Tesla, Inc.;

g.  On or about September 29, 2014 a Minutes of Meeting was prepared for an agreement between Tesla, Inc., ISM Vuzem USA, and Eisenmann Corporation for Mechanical Installation.  These minutes were initialed on each page by a representative of Subcontractor ISM Vuzem USA and by a representative of Eisenmann.  This asserts an agreement reached for mechanical installation.  The MOM identified multiple other Contract Documents which were incorporated in to the MOM and each Purchase Order. The MOM states it is for the intention of Eisenmann to engage Subcontractor to provide labor, equipment, consumables and services for paint shop projects (the "'Work") for Owner Tesla, Inc.  Robert Keller has identified it as generally describing Eisenmann's intention to engage ISM Vuzem USA to provide labor for the installation of a paint shop at the Tesla, Inc. facility located in Fremont, California.  The identified attendees for the Minutes of Meeting were Klemen Vuzem for Subcontractor ISM Vuzem USA, and Anton Borovac, Frank Ziegler, Matthias Heydlauff, and Bernd Strumberger for Eisenmann, said minutes having been prepared by Frank Ziegler of Eisenmann.  The MOM was executed by Frank Ziegler and Robert Keller on behalf of Eisenmann Corporation and by Branko Tomas as "Direktor" on behalf of Subcontractor.  Klemen Vuzem is the nephew of Robert Vuzem and was the on site manager for ISM Vuzem d.o.o. at the Tesla site during construction activities by ISM Vuzem d.o.o. at that site.  Branko Tomas is the agent for service of process for both ISM Vuzem USA, Inc. and Vuzem USA, Inc. and is the owner as sole proprietor doing business as Vuzem USA Company which has held a license issued by the California Contractors Licensing Board, a license which has a various

1  times been suspended; and

2      h.  Contract 04-2015, dated on or about January 3, 2015, was entered into

3  between ISM Vuzem d.o.o. and ISM Vuzem USA, Inc. for ISM Vuzem d.o.o. to provide

4  fully qualified engineers for installation of a paint shop at Tesla's Fremont plant.

5      214.  Plaintiffs are informed and believe and thereon allege that Eisenmann

6  Corporation and the other Eisenmann entities have conducted the same visa application

7  procedures and actions to conceal in the contracting process for work sites in the

8  Greater Detroit area, for the Greenville, South Carolina area, for the Chattanooga,

9  Tennessee area, for the Mobile, Alabama area, and for work sites in among other places

10  Illinois, Washington and New York.

11      215.  Plaintiffs are informed and believe and thereon allege that each of the other

12  defendants knew and participated in similar contracts and contractual relationships which

13  provided knowledge to each of the defendants of the illegal and impermissible visa

14  application procedures followed by Eisenmann Corporation and the other Eisenmann

15  entities, both directly and in association with the Labor Contractor Defendants.

16      216.  Plaintiffs are informed and believe and thereon allege that Eisenmann

17  Corporation has conducted the same visa application procedures through other entities

18  which at the Tesla plant in Fremont included workers who Gregor Lesnik met from:

19      Durr AG of Germany with a US division address of 40600 Plymouth Road,

20  Plymouth, MI 48170-4297;

21      LB metal d.o.o.;

22      Mos Servis d.o.o.;

23      D2N Tehnologije d.o.o. aka D2N d.o.o. of Slovenia, and

24      Gregurec Ltd.

25      217.  Defendant Gregurec Ltd is mentioned on the November 5, 2014 letter from

26  Robert Keller to the Consulate General of the United States in connection with the B-1

27  visa application for Gregor Lesnik as the employer of Gregor Lesnik.  Defendant

28

1   Gregurec Ltd is mentioned on many other letters written between 2009 and 2017 by

2   Robert Keller or other Eisenmann Corporation representatives to the Consulate General

3   of the United States in connection with the B-1 visa application for other applicants, each

4   of which falsely stated that Gregurec Ltd would be the employer of all of these other

5   applicants, with all of these applicants being told to represent to the consular officials

6   that they would be supervisors.

7        218.  Plaintiffs are informed and believe and thereon allege that Eisenmann

8   Corporation acted on behalf of all defendants to supply workers to work on projects in the

9   United States for among others defendants BMW, Daimler AG, Mercedes-Benz, Dicastal,

10  Volvo, Deere & Company, Tesla, Inc. and REHAU Incorporated.  Other similarly situated

11  Vuzem "B-1" visa workers who worked with Gregor Lesnik and Stjepan Papes told them

12  that they worked at or been stated to next be assigned to work at those projects.  Further,

13  the November 5, 2014 letter from Robert Keller to the Consulate General of the United

14  States represented that Gregor Lesnik would be working on an Eisenmann project for

15  BMW in South Carolina.

16       219.  Plaintiffs and similarly situated B-1 visa workers were paid in part in cash in

17  the United States.  The payments in cash were to conceal the true source of payments

18  and the true amounts of payments to the "B-1" workers.  The money was obtained for

19  issuance to the B-1 workers without the defendants identifying to the United States the

20  cash that came into, and went out of, the United States.  This was done by the

21  defendants to conceal the visa fraud and the existence of the foreign workers.

22       220. The actions of defendants, as referenced above, are actions by defendants

23  to affirmatively conceal and cover up their involvement in preparing fraudulent

24  immigration applications, in violation of Title 8 of the United States Code section 1324c,

25  and Title 18 of the United States Code section 1546, as part of the actions by

26  defendants, both directly and in conspiracy with each other, to avoid or reduce payment

27  obligations to the government.

28

221.  Each and every of the actions of the defendants stated above were material to the issuance of B1 visas, and of the acceptance of lesser visa application fees, because each of the actions, statements, and omissions by defendants and caused by defendants had a natural tendency to influence, or be capable of influencing, immigration decisions.

222.  Through the acts described herein above, Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.  Said claims and false information in avoidance of payments were presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.  Through the acts described above in this Third Amended Complaint, for all conduct that occurred on or after May 20, 2009, Defendants and each of them, by and through their officers, agents, and employees, knowingly presented or caused to be presented, false or fraudulent claims to the United States Government to knowingly conceal, avoid or decrease their obligations to pay or transmit money or property to the Government.  31 U.S.C. § 3729 (a)(1)(G).

223. The United States Government, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, has to date not received the payments, and full amount of payments, due to it by defendants and for which it should have been paid but for Defendants' illegal conduct to knowingly conceal, avoid or decrease their obligations to pay or transmit money or property to the Government.

224.  Defendants took actions to conceal the visa applications, the true facts of the work to be performed after entry to the United States, and the existence of the workers in the United States to perform construction work.  Among other things, defendants took the actions to conceal the false claims acts.  Among other things, defendants created false records of "efforts" to contract with United States companies to support or justify a pretextual defense to a potential criminal or administrative

1  investigation into applicability of petition based visas.

2      225.  Defendants, and each of them, authorized and ratified all the violations of
3  the False Claims Act committed by their various officers, agents, and employees.

4      226.  Defendants agreed with each other to take these actions, and agreed with
5  each other to support and benefit from the actions taken by the other defendants, to
6  present, or caused to be presented, false or fraudulent claims to the United States, to
7  reduce or avoid payment obligations, and to conceal the visa fraud, thus conspiring in
8  the reverse false claims action in violation of 31 U.S.C. § 3729 (a)(1)©.

9      227.  Defendants have damaged, and continue to damage, the United States in a
10  substantial amount to be determined at trial as a direct, legal and proximate result of the
11  violations of the False Claims Act by defendants, and each of them.

12      228.  By virtue of the false or fraudulent claims that Defendants made or caused to
13  be made, the United States suffered damages and therefore is entitled to treble damages
14  under the False Claims Act, to be determined at trial, plus civil penalties of not less than
15  $11,000, adjusted by inflation, for each violation.

16      229.  Plaintiffs are entitled to recovery of their attorneys fees and costs.

17      WHEREFORE Plaintiffs and Relators Gregor Lesnik and Stjepan Papes request
18  relief as described below.

19                    **SECOND CAUSE OF ACTION**
20                **FLSA Class action minimum wages claims**

21      230.  Plaintiffs reallege the allegations contained in paragraphs 1 through 229 of
22  this Third Amended Complaint.

23      231.  Plaintiffs bring this cause of action both individually and as Class
24  representatives on behalf of similarly situated individuals subject to the unlawful, unfair,
25  and fraudulent business practice acts and practice of the Labor Contractor Defendants
26  ISM Vuzem, d.o.o. and affiliated entities, Gregurec, Ltd., and of Eisenmann Corporation,
27  and for those workers in California also of the acts and practice of Tesla, Inc., as an
28  opt-in collective action under 29 U.S.C. § 2255(a), on behalf of themselves and the FLSA

class putative class as defined in paragraph 144.

232.  This is a numerous class of hundreds of individuals from multiple different countries, covering work sites in multiple states for multiple years.  The class is so numerous, the class is so geographically diverse, and the class members are without substantial financial resources, such that joinder of individual members is impractical.

233.  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)  whether Defendants properly paid all Class members minimum wage under the FLSA

(b)  whether Defendant has a policy or practice of failing to pay for all hours worked;

(c) whether Defendants properly paid all Class members for the hours that were worked in excess of eight (8) hours a day or forty (40) hours a week; and

(d) whether Defendants properly provided to all Class members for sufficient breaks based on the numbers of hours worked.

234.  The numbers of hours worked at each site by all workers is subject to clear and common identification.  All of the aggrieved workers were transported - from company rented and controlled temporary housing - to and from job sites by vans or buses provided by the defendant entities.  They thus all arrived and all departed at the same time each day.  The entry logs for each site, maintained by the security personnel at each site, identify the dates and times of entry and departure to the job site.

235.  The claims of Gregor Lesnik and of Stjepan Papes are typical of the claims of the class.

236.  Plaintiffs and members of the proposed FLSA Collective routinely worked in excess of forty (40) hours in a workweek without receiving either minimum wages or overtime compensation.

237.  Plaintiff Gregor Lesnik, for example, worked a 13 days on, one day off schedule, with shifts that were at least ten and typically twelve hours in length. Accordingly, Plaintiff Gregor Lesnik worked 50 out of 54 days, and typically worked at least eighty (80) hours per week.  Plaintiff Gregor Lesnik was paid 800 Euros (at all times mentioned herein for all claims by the FLSA Collective being less than $950) - or less - per month.  Stjepan Papes was directed and required to work the same numbers of hours for his work at all of the major manufacturing construction sites throughout his time working in the United States.  All member of the FLSA class when in the United States worked 250 - or more - hours per month.

238.  The FLSA, 29 U.S.C. § 206 requires each employer to pay minimum wages of $7.25 per hour.

239.  Labor Contractor Defendants Vuzem and affiliated entities, Gregurec, Ltd., Tesla, Inc. in California, and Eisenmann Corporation suffered and permitted Plaintiffs and the FLSA Collective to routinely work more than forty (40) hours a workweek while paying them less than minimum wages and without overtime compensation.

240.  At all relevant times, the gross annual sales made or business done by defendants Vuzem entities, Eisenmann, and Tesla and each of them has been in excess of $500,000.

241.  At all relevant times, Defendants Vuzem entities, Eisenmann, and Tesla and each of them are, and have been, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203(d).

242.  Plaintiffs and the FLSA Collective are not exempt from the minimum wages requirements of the FLSA. See 29 U.S.C. § 213.

243.  The actions, policies, and practices of the Eisenmann entity Defendants, the Vuzem entities and affiliates, Gregurec Ltd, and as to Tesla, Inc. in California, as described throughout this Complaint violate the FLSA's minimum wages requirements by

1   regularly and repeatedly failing to compensate Plaintiffs and the FLSA Collective at the

2   required minimum wage rate.  Defendants and each of them willfully engaged in a pattern

3   of violating the FLSA by knowingly failing to pay its Full Time Employees minimum

4   wages.  Each of the defendant employers had actual or constructive knowledge of that

5   work and of these practices.  Defendants knew or showed reckless disregard for the fact

6   that its compensation practices were in violation of the FLSA.  Defendant's conduct

7   constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

8       244.  Defendants and each of them are liable under the FLSA for failing to

9   properly compensate Plaintiffs and the FLSA Collective for minimum wages.

10      245.  Plaintiffs thus bring this cause of action on behalf of themselves and all

11  similarly-situated individuals.

12      246.  Plaintiffs by this Complaint consent to be a part of this action pursuant to 29

13  U.S.C. § 216(b).

14      247.  As this case proceeds, it is likely that other individuals will file consent forms

15  and join as "opt-in" plaintiffs.

16      248.  Accordingly, notice of this action should be sent to the FLSA Collective.

17  There are numerous similarly-situated current and former employees of Defendants who

18  have suffered from Defendants' practices and who would benefit from the issuance of

19  court-supervised notice of this lawsuit and the opportunity to join. Those similarly

20  situated employees are known to Defendants and are readily identifiable through

21  Defendants' records.

22      249.  Plaintiffs will fairly and adequately protect the interests of the class.

23      250.  Plaintiffs further requests that the time and expenses that Plaintiffs incurred

24  and will incur on behalf of the Class be paid to them as an inducement to lend their

25  names and services to the Class.

26      251.  Plaintiffs further request an award of reasonable attorneys fees for pursuit of

27  this recovery on behalf of the Class members.

28

1      WHEREFORE Plaintiffs Gregor Lesnik and Stjepan Papes, on behalf of

2    themselves individually, as Class representatives and on behalf of the members of the

3    FLSA Class request relief as described below.

4                              **THIRD CAUSE OF ACTION**

5                        **FLSA Class action overtime wages claims**

6      252.  Plaintiffs reallege the allegations contained in paragraphs 1 through 251 of

7    this Third Amended Complaint.

8      253.  The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt

9    employees one and one-half times the regular rate of pay for all hours worked over forty

10   (40) hours per workweek.

11     254.  Labor Contractor Defendants Vuzem and affiliated entities, Gregurec, Ltd.,

12   Tesla, Inc. in California, and Eisenmann Corporation suffered and permitted Plaintiffs

13   and the FLSA Collective to routinely work more than forty (40) hours a workweek while

14   paying them less than minimum wages and without overtime compensation.

15     255.  Plaintiffs and the FLSA Collective are not exempt from the overtime

16   requirements of the FLSA. See 29 U.S.C. § 213.

17     256.  Defendants Vuzem and affiliated entities, Gregurec, Ltd., Tesla, Inc. in

18   California, and Eisenmann Corporation and each of them are liable under the FLSA for

19   failing to properly compensate Plaintiffs and the FLSA Collective for overtime

20   compensation.  These Defendants are also liable for liquidated damages.

21     257.  Plaintiffs thus bring this cause of action on behalf of themselves and all

22   similarly-situated individuals.

23     258.  Plaintiffs by this Complaint consent to be a part of this action pursuant to 29

24   U.S.C. § 216(b).

25     259.  As this case proceeds, it is likely that other individuals will file consent forms

26   and join as "opt-in" plaintiffs.

27     260.  Accordingly, notice of this action should be sent to the FLSA Collective.

28

1     261.  Plaintiffs will fairly and adequately protect the interests of the class.

2     262. Plaintiffs further requests that the time and expenses that Plaintiffs incurred

3  and will incur on behalf of the Class be paid to them as an inducement to lend their

4  names and services to the Class.

5     263.  Plaintiffs further request an award of reasonable attorneys fees for pursuit of

6  this recovery on behalf of the Class members.

7     WHEREFORE Plaintiffs Gregor Lesnik and Stjepan Papes, on behalf of

8  themselves individually, as Class representatives and on behalf of the members of the

9  FLSA Class request relief as described below.

10                          **FOURTH CAUSE OF ACTION**

11        **California Wages Class Action - Failure to Pay Minimum Wage**

12     264.  Plaintiffs reallege the allegations contained in paragraphs 1 through 263 of

13  this Third Amended Complaint.

14     265.  Plaintiff Stjepan Papes brings this cause of action both individually and as

15  Class representatives on behalf of similarly situated individuals subject to the unlawful,

16  unfair, and fraudulent business practice acts and practice of the Labor Contractor

17  Defendants ISM Vuzem, d.o.o. and affiliated entities, Gregurec, Ltd., and of Eisenmann

18  Corporation, and of Tesla, Inc., pursuant to Federal Rules of Civil Procedure, Rule 23, on

19  behalf of himself and the California Wages putative class as defined in paragraph 151.

20     266.  This is a numerous class of hundreds of individuals from multiple different

21  countries, for multiple years.  The class is so numerous, the class is so geographically

22  diverse, and the class members are without substantial financial resources, such that

23  joinder of individual members is impractical.

24     267. Common questions of law and fact exist as to all members of the Class and

25  predominate over any questions solely affecting individual members of the Class.

26  Among the questions of law and fact common to the Class are:

27     (a)  whether Defendants ISM Vuzem, d.o.o., Gregurec, Ltd. Eisenmann

28

Corporation or Tesla, Inc. properly paid, or caused to be paid, minimum wages as required by California law;

(b)  whether Defendants ISM Vuzem, d.o.o., Gregurec, Ltd. Eisenmann Corporation or Tesla, Inc. properly paid, or caused to be paid, all Class members for the hours that were worked in excess of eight (8) hours a day or forty (40) hours a week as required by California law;

(c)  whether Defendants have a policy or practice of failing to pay for all hours worked;

(d)  whether Defendants have a policy or practice of failing to provide accurate wage statements;

(e)  whether Defendants have a policy or practice of failing to provide meal periods;

(f)  whether Defendants have a policy or practice of failing to provide rest breaks;

(g)  whether Defendants' payroll practices are unlawful in violation of California law;

(h)  whether Defendants' pay policies violate California's minimum wage requirements; and

(i)  whether Defendants wilfully and unreasonably failed to pay compensation when due thus subjecting Defendants to obligations to pay waiting time penalties under Labor Code sections 201, 202 and 203.

268.  The numbers of hours worked at the Tesla site by all workers is subject to clear and common identification.  All of the aggrieved workers were transported - from company rented and controlled temporary housing - to and from the Tesla site by vans or buses driven by Vuzem supervisors (in vans as directed by Eisenmann Corporation) which provided workers for the Tesla site.  They thus all arrived and all departed at the same time each day.  The entry logs for the Tesla site were maintained by the security personnel of Tesla and shared with Eisenmann entities identify the dates and times of

1  entry and departure to the job site.

2      269.  The workers were picked up at 6:30 a.m. every day Monday through

3  Saturday, left by van for return to their assigned housing units at 6:15 or 7:15 pm

4  Monday through Friday - and sometimes later - and at 4:15 or 5:15 on Saturdays.  The

5  workers were picked up on every other Sunday at 6:30 a.m. and returned by van to their

6  assigned housing units at 4:15 pm.

7      270.  Plaintiffs and members of the Class are non-exempt employees entitled to

8  the protections of California Labor Code sections 1182.12, 1194, and 1194.2.

9      271.  Starting on July 1, 2014, the minimum wage in California was $9.00 per

10  hour.  Starting January 1, 2016 the minimum wage in California was $10.00 per hour.

11  Starting January 1, 2017, the minimum wage in California was $11.00 per hour.

12      272.  The claims of Stjepan Papes are typical of the claims of the class.

13      273.   Each and every of the non-management employee class members was not

14  paid minimum wages under the California Labor Code and applicable wage order in the

15  same way as Stjepan Papes was denied minimum wages.

16      274.  Plaintiff Stjepan Papes will fairly and adequately protect the interests of the

17  class.

18      275.  A class action is superior to other available methods for the fair and efficient

19  adjudication of the controversy.

20      276.  Class certification is appropriate for this cause of action on behalf of this

21  Class.

22      277.  Plaintiffs and members of the Class therefore are entitled to recover their

23  underpaid wages at minimum wage, plus interest, penalties, attorneys' fees, expenses,

24  and costs of suit.  Further, Plaintiffs and members of the Class are entitled to liquidated

25  damages pursuant to Labor Code section 1194.2.

26      278.  Plaintiff Stjepan Papes further requests that the time and expenses that he

27  as Plaintiff incurred and will incur on behalf of the Class be paid to him as an inducement

28

1  to lend his name and services to the Class.

2  279.  Plaintiff Stjepan Papes further requests an award of reasonable attorneys

3  fees for pursuit of this recovery on behalf of the Class members.

4  WHEREFORE Plaintiff Stjepan Papes, on behalf of himself and those similarly

5  situated, pray for judgment against Defendants as hereinafter set forth.

6  **FIFTH CAUSE OF ACTION**

7  **California Wages Class Action - Failure to Pay Overtime Wages**

8  280.  Plaintiffs reallege the allegations contained in paragraphs 1 through 279 of

9  this Third Amended Complaint.

10  281.  Each and every of the non-management / non-exempt employees of the

11  California Wages class was not paid overtime wages in the same way as Stjepan Papes

12  was denied overtime wages.

13  282.  Class certification is appropriate for this cause of action on behalf of this

14  Class.

15  283.  Plaintiffs and members of the Class therefore are entitled to recover their

16  overtime wages, plus interest, penalties, attorneys' fees, expenses, and costs of suit.

17  Further, Plaintiffs and members of the Class are entitled to liquidated damages pursuant

18  to Labor Code section 1194.2.

19  284.  Plaintiff Stjepan Papes further requests that the time and expenses that he

20  as Plaintiff incurred and will incur on behalf of the Class be paid to him as an inducement

21  to lend his name and services to the Class.

22  285.  Plaintiff Stjepan Papes further requests an award of reasonable attorneys

23  fees for pursuit of this recovery on behalf of the Class members.

24  WHEREFORE Plaintiff Stjepan Papes, on behalf of himself and those similarly

25  situated, pray for judgment against Defendants as hereinafter set forth.

26  / / /

27  / / /

28

**SIXTH CAUSE OF ACTION**

**California Wages Class Action - Failure to Provide Required Rest Periods**

286.  Plaintiffs reallege the allegations contained in paragraphs 1 through 285 of this Third Amended Complaint.

287.   As part of defendant ISM Vuzem, d.o.o.'s illegal payroll policies and practices to deprive their non-exempt employees all wages earned and due, neither Defendants ISM Vuzem, d.o.o., Gregurec, Ltd. Eisenmann Corporation or Tesla, Inc. provided or caused to be provided rest periods to Plaintiffs and members of the Class as required under California Labor Code sections 226.7 and 512, and applicable wage orders.

288.  Each and every of the non-management / non-exempt employees of the California Wages class was not provided sufficient mandatory breaks in the same way as Stjepan Papes was not provided sufficient mandatory breaks.

289.  Class certification is appropriate for this cause of action on behalf of this Class.

290.  Plaintiffs and members of the Class therefore are entitled to recover one additional hour of compensation at each employee's regular rate of pay for each work day that a rest period was not provided, plus interest, penalties, attorneys' fees, expenses, and costs of suit.  Further, Plaintiffs and members of the Class are entitled to liquidated damages pursuant to Labor Code section 1194.2.

291.  Plaintiff Stjepan Papes further requests that the time and expenses that he as Plaintiff incurred and will incur on behalf of the Class be paid to him as an inducement to lend his name and services to the Class.

292.  Plaintiff Stjepan Papes further requests an award of reasonable attorneys fees for pursuit of this recovery on behalf of the Class members.

WHEREFORE Plaintiff Stjepan Papes, on behalf of himself and those similarly situated, pray for judgment against Defendants as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**

**California Wages Class Action - Failure to Provide Accurate Wage Statements**

293.  Plaintiffs reallege the allegations contained in paragraphs 1 through 292 of this Third Amended Complaint.

294.  Pursuant to California Labor Code sections 226 and 1174, all employers are required to maintain accurate records of each employee's hours of work and meal breaks each workday for a period of at least three (3) years, and provide to each employee accurate, periodic wage payments in writing setting forth, among other things:  (a) the dates of labor for which payment of wages is made; (b) the total hours of work for the pay period; (c) the applicable rates of pay for all hours worked; (d) gross and net wages paid, as well as all authorized deductions from those wages; and (e) the name and address of the employer.

295.  Defendant ISM Vuzem, d.o.o. knowingly failed to comply with these provisions by, among other things, failing to provide any wage statements.  Further, neither Eisenmann Corporation nor Tesla, Inc. provided or caused to be provided any wage statements.

296.  Each and every of the non-management / non-exempt employees of the California wages class was not provided wage and hour statements in the same way that Stjepan Papes was not provided wage and hour statements.

297.  California Labor Code section 226(e) provides that any employee suffering injury due to a willful violation of the aforementioned obligations may collect the greater of either actual damages or $50 for the first inadequate pay statement and $100 for each inadequate statement thereafter up to $4,000 per employee.  During the course of Plaintiffs' employment, Defendant consistently failed to provide Plaintiffs and Class members with adequate pay statements as required by California Labor Code section 226.

298.  Defendants failed to provide such adequate statements willingly and with full

1   knowledge of its obligations under California Labor Code section 226.

2          299.  Defendant's failure to provide such adequate statements has caused injury

3   to the Plaintiffs and the Class.

4          300.  Plaintiff Stjepan Papes and Class members may therefore recover the

5   greater of actual damages or penalties as a result of Defendants' failure to provide

6   proper records, in an amount to be determined at trial.

7          301.  Plaintiff Stjepan Papes further requests that the time and expenses that he

8   as Plaintiff incurred and will incur on behalf of the Class be paid to him as an inducement

9   to lend his name and services to the Class.

10          302.  Plaintiffs also seeks costs and attorneys' fees under Labor Code section 226

11   for pursuit of this recovery on behalf of the Class members.

12          WHEREFORE Plaintiff Stjepan Papes, on behalf of himself and those similarly

13   situated, pray for judgment against Defendants as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### California Wages Class Action - Failure to Pay Waiting Time Penalties

16          303.  Plaintiffs reallege the allegations contained in paragraphs 1 through 302 of

17   this Third Amended Complaint.

18          304.  California Labor Code section 201 requires an employer who discharges an

19   employee to pay all compensation due and owing to that employee immediately upon

20   discharge.

21          305.  California Labor Code section 202 requires an employer to pay all

22   compensation due and owing to an employee who quits within 72 hours of that employee

23   quitting, unless the employee provides at least 72 hours' notice of quitting, in which case

24   all compensation is due at the end of the employee's final day of work.

25          306.  California Labor Code section 203 provides that if an employer willfully fails

26   to pay compensation promptly upon discharge, as required by section 201 or section

27   202, then the employer is liable for waiting time penalties in the form of continued

28

1  compensation of up to thirty work days.

2      307.  Defendant has willfully failed and refused to timely pay compensation and

3  wages, including unpaid overtime pay and unpaid regular wage pay, to Plaintiffs and

4  members of the Class whose employment terminated.

5      308.  Each and every of the non-management / non-exempt employees of the

6  California Wages class was not paid waiting time penalties in the same way that Stjepan

7  Papes was not provided waiting time penalties.

8      309.  Plaintiffs and members of the Class therefore are entitled to recover their

9  waiting time penalties, together with interest thereon under Labor Code section 203.

10     310.  Plaintiff Stjepan Papes further requests that the time and expenses that he

11 as Plaintiff incurred and will incur on behalf of the Class be paid to him as an inducement

12 to lend his name and services to the Class.

13     311.  Plaintiff Stjepan Papes further requests an award of reasonable attorneys

14 fees for pursuit of this recovery on behalf of the Class members.

15     WHEREFORE Plaintiffs, on behalf of themselves and those similarly situated,

16 pray for judgment against Defendants as hereinafter set forth.

17                     **NINTH CAUSE OF ACTION**

18     **Trafficking and Coerced Labor under TVPRA (18 U.S.C. § 1595)**

19     312.  Plaintiffs reallege the allegations contained in paragraphs 1 through 313 of

20 this Third Amended Complaint.

21     313.  Federal law proscribes labor trafficking, and provides for a civil cause of

22 action against perpetrators, or persons who have knowingly benefitted, financially or by

23 receiving things of value from participation in a venture which defendants knew or should

24 have know has engaged in an act in violation of the federal trafficking statutes.

25     314.  Federal trafficking statutes define coercion as "(A) threats of serious harm to

26 or physical restraint against any person; (B) any scheme, plan, or pattern intended to

27 cause a person to believe that failure to perform an act would result in serious harm to or

28

1   physical restraint against any person; or © the abuse or threatened abuse of the legal

2   process."  22 U.S.C. § 7102(3).

3   315.  The use of force, fraud or coercion included in the case of Gregor Lesnik the

4   refusal to pay promised benefits, the attempt to place him on a plane while he had a risk

5   of death from a pulmonary embolism, the subsequent withholding of return

6   transportation, the threat made verbally by Vuzem manager Davorin Hull that "this will

7   not go well for you", the statements made in person by Ivan Vuzem and Robert Vuzem

8   that he would be subject to civil action, and the taking of civil action by, on behalf of, or

9   for the intended benefit of the Vuzem entities to obtain judgments for monetary damages

10  while Gregor Lesnik was in a California hospital and unavailable to respond.  This also

11  includes in 2018 the abuse of process and threat of criminal prosecution made by Ivan

12  Vuzem.

13  316.  Stjepan Papes, and all employees of labor contractors, was similarly

14  required to work very long hours at the construction sites, of more than 250 hours per

15  month, every month, typically 10 hours per day at least six days per week, in unsafe

16  working conditions.

17  317.  The work conditions at all job sites of the Manufacturing Defendants,

18  including those which Stjepan Papes worked at, for all of the workers for all of the Labor

19  Contractor Defendants, were not very safe.  Workers, even for the Eisenmann entities as

20  employees, for the Eisenmann entities as independent contractors, and even for the

21  manufacturing defendants, who brought to the attention of any of the defendants

22  workplace safety issues were fired or transferred or transferred and then fired.  Plaintiffs

23  are informed and believe that there were 30 or more serious work injuries at the BMW

24  plant in South Carolina every year.  Plaintiffs are informed and believe that Tesla, Inc.

25  has terminated safety managers who complained about the numbers of serious work

26  injuries and complained about Tesla concealing or destroying records of such injuries.

27  318.  The housing conditions for all site assignments, including those which

28

1  Stjepan Papes was assigned to, were substandard and forced on the workers.

2      The Vuzem workers were at best put in housing units, of multiple workers to a

3  single bedroom, when the workers had not known each other prior to the housing

4  assignment.  All workers in the units shared community bathrooms, often and typically 6

5  to 10 workers for a single bathroom.  In the case of workers for We-Kr, d.o.o., they were

6  assigned to apartment units for extended periods of months at a time without a separate

7  kitchen facility.  In the case of workers for ISM Vuzem in 2013 in Cullman, Alabama, they

8  were placed in a one bedroom apartment with a bathroom, but without a kitchen.  In the

9  case of HRID-MONT d.o.o. workers in 2016, they were housed in an apartment without a

10 kitchen, leading to cooking food in the bathroom.  In the case of ISM Vuzem d.o.o.

11 workers at Dicastal in Michigan, the workers were housed in units without sufficient beds,

12 with some people sleeping in a bathroom or basement.

13     Each of the Labor Contractors, and the Eisenmann entities, forbid the workers

14 from living anywhere except the assigned apartments including so they could control the

15 workers and coerce long work hours every day.

16     Every time the workers went shopping, did they travel to store in vans while

17 supervised by company supervisors, in the case of the Plaintiffs hereby as supervised by

18 ISM Vuzem d.o.o. representatives.

19     319.  The supervisors were aggressive when the workers were at work.  These did

20 not get better despite objections by Stjepan Papes and other B-1 visa workers.

21     320.  Several workers were very badly injured while working in the United States

22 under B-1 visas, both for ISM Vuzem d.o.o. - including Gregor Lesnik, and for other

23 companies working under or through Eisenmann, such as Petar P. for We-Kr, d.o.o. in

24 2017 at Minghua USA's facility.

25     321.  One foreign worker - admitted to the US under a B-1 visa and working for a

26 Labor Contractor - other than Vuzem - under contract with the Eisenmann entities - died

27 in 2018 at the BMW plant in South Carolina.  Bojan Sprah was working under a labor

28

1    contractor on March 28, 2018 when he suffered head trauma in the plant's paint shop

2    and died.

3         322.  Workers had to pay for anything that was damaged or broken.  This includes

4    for something damaged in an apartment - even though there was insurance for Vuzem,

5    or tools, or damage to a van - again even though there was insurance for Vuzem.  The

6    workers pay was docked for these expenses.

7         323.  None of the workers received a food stipend for having to get food outside of

8    their homes.  The workers paid for the food themselves, and either cooked the food -

9    including in limited function apartments - or had to pay for food in restaurants at

10   increased expense over normal home cooking for months at a time.

11        324.  Workers who were ill were prevented from seeking medical care.  Sandi K.

12   was working for ISM Vuzem d.o.o. at BMW in 2014 and was very sick, to the point of

13   coughing up blood.  He was prevented from seeing a doctor.  He was forced to stay in an

14   apartment for more than seven days, being treated solely with painkillers.

15        325.  When the workers have a problem with injuries at work, or sickness, or pain,

16   the workers in most instances went to work to not lose money.  ISM Vuzem d.o.o. had a

17   stated and well known policy that it did not pay for sick days when the workers stayed in

18   an apartment or other housing in the United States.

19        326.  Workers were told by the Labor Contractor Defendants, both by Vuzem and

20   by other companies, that they would fly the worker home if they did not work each and

21   every day for the hours and under the conditions the workers were subjected to.

22        327.  Any worker who wanted to fly home earlier, had to pay for the entire ticket,

23   and not just for the change in fare.

24        328.  The actions by the Labor Contractor defendants to compel continued labor

25   included having the workers know that the Labor Contractor defendants would take legal

26   action against the workers, even when such legal action was factually and legally without

27   merit.  A recent example was that on June 6, 2018, Ivan Vuzem went to the Velenje

28

1  police station to swear out a statement that Gregor Lesnik committed a criminal offense

2  of fraud on the third in relation to the first paragraph of Article 211 of the Penal Code

3  (KZ-1) of Slovenia.  Ivan Vuzem on behalf of the Vuzem entities and affiliates had

4  asserted that Gregor Lesnik had made false representations against the Vuzem entities.

5  It was not until October 1, 2018 that Gregor Lesnik was advised that this criminal charge

6  was dismissed.

7      329.  Conditions of work for the Vuzem workers was such that most quit Vuzem

8  after the expiration of a one year written contract required under EU laws or after return

9  to Europe.

10      330.  The workers have said that they quit because of poor work conditions

11  including aggressive supervisors causing them to work in unsafe conditions, work

12  conditions violation of safety rules, living in irregular and bad housing, long hours, under

13  payment including not paying taxes on wages - neither in the United States nor in

14  European countries, and bad treatment by supervisors.

15      331.  Plaintiffs are informed and believe that about 70% of the workers with

16  construction qualifications quit working for Vuzem as soon as they reasonably could.

17      332.  There were two former Vuzem workers who after return to Europe killed

18  themselves.

19      333.  Stjepan Papes complained to Vuzem supervisors about construction safety.

20  He was then transferred from the Tesla job site.  Mr. Papes was then returned by Vuzem

21  to Europe, and his employment terminated.

22      334.  Vuzem has not paid taxes for Stjepan Papes in the United States, and has

23  not paid taxes for Croatia.  Vuzem for years refused to pay taxes for any of the workers in

24  the United States or in Slovenia and Croatia.  Vuzem has threatened to pursue legal

25  action against any worker who complained.

26      335.  All of the B-1 workers were subjected to similar coercion to work long hours

27  and in unsafe conditions by the implied threat of withdrawal of visa status, the threat of

28

1   reduced pay and docking of pay, and the ostracization and blackballing of anyone who

2   complained.

3       336.  Plaintiffs are informed and believe based on conversations with workers

4   from other companies, including from workers from defendants Rimsa, MDM, Mos

5   Service and other subcontractors of Eisenmann from Europe, that these workers for

6   these other labor contractor defendants had and have the same problems as did the

7   workers for ISM Vuzem, d.o.o.  These other workers worked long hours, stayed in limited

8   functionality and cramped quarters apartments, were transported by vans for control of

9   work hours and activities, received low payments, worked under pressure, and worked in

10  unsafe work conditions in the same manner as did the workers for ISM Vuzem, d.o.o.

11      337.  The actions taken to Gregor Lesnik, and to Stjepan Papes, and to other

12  workers who complained, were known to all other workers.  The plan, scheme and

13  actions of the defendants caused the other workers to believe that, if they did not perform

14  such labor or services, these other workers, or their families, would suffer serious harm.

15      338.  This use of force, fraud and coercion also included in the case of both

16  Vuzem direct workers and other workers at the various manufacturing sites the

17  withholding of medical benefits and the threat of loss of compensation if they became

18  injured on the job and reported that injury.

19      339.  The coercion and threats included at all times against Plaintiffs and against

20  other B1 visa workers working on temporary visas in an unfamiliar land the implied threat

21  of withholding visa and immigration status, entry and departure from the United States,

22  while defendants with financial resources controlled the purchase of airline flights

23  necessary to travel to the workers home countries in Europe.

24      340.  These threats were not specific to the Vuzem workers, but to all of the

25  workers under the Eisenmann driven labor trafficking scheme.  Eisenmann Corporation

26  and the German based Eisenmann entities directly employed field managers and project

27  managers for the work sites, and thus in turn controlled contracting and hiring for the

28

1    other entities.  Safety supervisors working directly for Eisenmann Corporation who stated

2    concerns about safety and work conditions were fired or had their contracts terminated.

3    Workers who expressed concern about safety and work conditions were either

4    transferred or not provided further work.

5         341.  Moreover, all Defendants knowingly recruited, transported, harbored,

6    provided, and/or obtained Plaintiffs for the purpose of subjecting them to forced labor in

7    violation of 18 U.S.C. § 1589. This is a violation of 18 U.S.C. § 1590.

8         342.  All of the companies which used the B-1 workers knew that the foreign

9    laborers were working extremely long hours - including knowing the exact hours worked

10   including because they had security check them off when we arrived or left a job site.

11        343.  All of the companies which used the B-1 workers knew that the foreign

12   laborers were working in unsafe conditions, because these conditions were at the

13   manufacturing defendants' own site and these conditions were observed first hand by the

14   manufacturing defendants' management.

15        344.  All of the companies which used the B-1 workers at any time after July of

16   2016 - including Mercedes-Benz, BMW, Volvo and Tesla - were aware from the San

17   Jose Mercury News article of the abusive and coercive tactics of the labor contractor

18   defendants.

19        345.  The trafficking in persons in this case substantially affected interstate and

20   foreign commerce including the right of the B1 visa workers to be paid appropriate

21   compensation, properly measured in prevailing wages, and affected the defendants'

22   expenses and thus in turn the defendants' profits.

23        346.  Defendants herein, and each of them, aiding and abetting each other and

24   others, knowingly provided and obtained the labor and services of Plaintiffs and of

25   persons similarly situated to them by means of serious harm and threats of serious harm

26   to that person or another person, and by means of the abuse and threatened abuse of

27   law and legal process, and by means of a scheme, plan, and pattern intended to cause

28

1   the person to believe that, if the person did not perform such labor and services, that
2   person or another person would suffer serious harm, in violation of 18 U.S.C. §
3   1589(a)(4).

4   347.  Defendants and each of them have knowingly recruited, enticed, solicited,
5   induced, harbored, transported, held, restrained, provided, maintained, subjected, or
6   obtained by the above and other means Plaintiffs for the purpose of labor servitude, or
7   have aided and abetted in these actions.

8   348.  Defendants and each of them have knowingly benefitted, financially or by
9   receiving value from participation in the scheme which defendants knew or should have
10  known engaged in acts of trafficking, or have knowingly obtained financial benefits from
11  the coerced labor, in violation of 18 U.S.C. § 1589(b).

12  349.  Plaintiffs are entitled under federal law to actual damages, punitive
13  damages, and reasonable attorney's fees.  18 U.S.C. § 1595.

14  350.  The value of the human trafficking victim's labor to defendants was and is
15  the gross income or value to the defendant of the victim's labor servitude engaged in by
16  the victim while in the human trafficking situation.  In this case, the value of the labor is
17  properly measured by prevailing wages.  Prevailing wages is the average wage paid to
18  similarly employed workers in a specific occupation in the area of intended employment.

19  351.  Plaintiffs Gregor Lesnik and Stjepan Papes seek recovery of their damages
20  and injuries, including but not limited to recovery for the reasonable value of their work
21  under prevailing wages standards, as well as recovery of such other damages as may be
22  proved at trial.

23  352.  Stjepan Papes has also suffered great stress because of the conditions of
24  work when he was in the United States.  This has affected his heart, and he is now under
25  doctors orders to not work because of the stress that has affected his heart.

26  353.  Plaintiffs also request recovery of attorneys fees and costs.

27  WHEREFORE Plaintiffs pray for judgment against Defendants as hereinafter set

28

forth.

## TENTH CAUSE OF ACTION

## Trafficking and Coerced Labor in Violation of the California Trafficking Victims Protection Act (Civil Code § 52.5)

354.  Plaintiffs reallege the allegations contained in paragraphs 1 through 353 of this Third Amended Complaint.

355.  California law prohibits coercion or duress to obtain forced labor, including as defined by statute "equivalent to the federal definition."  Cal. Penal Code § 236.1.

356.  The California Trafficking Victims Protection Act, codified at Cal. Civ. Code § 52.5, provides, inter alia, that:

(a) "A victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. A prevailing plaintiff may also be awarded attorney's fees and costs."

(b) "In addition to the remedies specified herein, in any action under subdivision (a), the plaintiff may be awarded up to three times his or her actual damages or ten thousand dollars ($10,000), whichever is greater. In addition, punitive damages may also be awarded upon proof of the defendant's malice, oppression, fraud, or duress in committing the act of human trafficking."

357.  Plaintiffs Stjepan Papes and Gregor Lesnik were coerced to perform labor and services for Defendants by means of:

a. serious financial harm and threats of serious harm; and/or

b. the abuse and threatened abuse of law or legal process to Plaintiffs and similar persons that they were aware of being subject to such abuse; and

c. a scheme, plan, pattern, and uniform policy intended to cause Plaintiff and Class Members to believe that, if they did not perform such labor, that they would suffer serious harm.

358.  As a direct, legal and proximate result of Defendants' actions, Plaintiffs suffered actual and compensatory damages in an amount to be determined at trial.

1   WHEREFORE Plaintiffs pray for judgment against Defendants as hereinafter set
2   forth.

### ELEVENTH CAUSE OF ACTION
### Rule 23 Class Action Trafficking under TVPRA

359.  Plaintiffs reallege the allegations contained in paragraphs 1 through 358 of
this Third Amended Complaint.

360.  Plaintiffs Gregor Lesnik and Stjepan Papes bring this private civil cause as
Class representatives on behalf of similarly situated individuals subject to the unlawful,
unfair, and fraudulent labor trafficking and coerced labor actions of defendants and each
of them, doing so pursuant to Federal Rules of Civil Procedure, Rule 23.

361.  Plaintiffs Gregor Lesnik and Stjepan Papes seek recovery for the TVPRA
Class as defined in paragraph 165 of this Complaint actual damages and punitive
damages.

362.  This is a numerous class of about 3,000 or more individuals from multiple
different countries, covering work sites in multiple states for multiple years.  The class is
so numerous, the class is so geographically diverse, and the class members are without
substantial financial resources, such that joinder of individual members is impractical.

363.  Questions of law and fact are common to this class.  These include:

the right to be free from direct and implied coercion based on their entry to the
United States under B1 visas and the threat of process to cause them to have to leave
the United States;

the right to be free from coercion and duress forcing them to work in unsafe
conditions and for long hours for days on end,;

the right to be free from direct and implied coercion and duress of losing
compensation if they did not work long hours for days at a time under unsafe working
conditions at the manufacturing sites for Volkswagen Group of America Chattanooga
Operations, LLC, Mercedes Benz, BMW, Dicastal, Tesla, and Volvo;

the common scheme, plan, pattern, and uniform policy intended to cause Plaintiffs

1  and Class Members to believe that, if they did not perform such labor, that they would

2  suffer serious harm; and

3      the right to a common damage of prevailing wages.

4      364.  Plaintiff and Class Members suffered injury as a proximate result of these

5  actions.  This includes the gross income or value to the defendants of the Class

6  members' services and labor engaged in by the victim(s) while in the human trafficking

7  situation as measured by prevailing wages standards.

8      365.  Plaintiffs will fairly and adequately protect the interests of the class.

9      366.  A class action is superior to other available methods for the fair and efficient

10  adjudication of the controversy.  Among other things, the Class Members lack the means

11  and/or resources to secure individual legal assistance and/or and are likely to be

12  unaware of their rights to prosecute these claims.  Among other things, a class action

13  can be managed with efficiency and without undue difficulty because Defendants have

14  systematically and regularly committed the violations complained of herein.

15      367.  Class certification is appropriate for this cause of action on behalf of this

16  Class.

17      368.  Plaintiffs and Class Members are entitled to punitive damages because of

18  Defendants' malice, oppression, fraud, or duress in committing the act of human

19  trafficking.

20      369.  Plaintiffs and Class Members are entitled to reasonable attorneys' fees and

21  costs.

22      WHEREFORE Plaintiffs pray for judgment against Defendants as hereinafter set

23  forth.

24  **TWELFTH CAUSE OF ACTION**

25  **Class Action under California Trafficking**

26      370.  Plaintiffs reallege the allegations contained in paragraphs 1 through 369 of

27  this Third Amended Complaint.

28      371.  Plaintiffs Gregor Lesnik and Stjepan Papes also seek recovery for the

1  California Trafficking Class as defined in paragraph 167 of this Complaint actual

2  damages and punitive damages.

3  372.  This is a numerous class of about 1,000 individuals from multiple different

4  countries, working over a time period of two to three years.  The class is so numerous,

5  the class is so geographically diverse, and the class members are without substantial

6  financial resources, such that joinder of individual members is impractical.

7  373.  Questions of law and fact are common to this class.  These include whether

8  defendants subjected the class members to "a scheme, plan, or pattern intended to

9  cause a person to believe that failure to perform an act would result in serious harm to or

10  physical restraint against any person; the abuse or threatened abuse of the legal

11  process" as defined in California Penal Code section 236.1(h)(1), whether the workers

12  were subjected to harm or the threat of "any harm, whether physical or nonphysical,

13  including psychological, financial, or reputational harm, that is sufficiently serious, under

14  all the surrounding circumstances, to compel a reasonable person of the same

15  background and in the same circumstances to perform or to continue performing labor,

16  services ... to avoid incurring that harm" as defined in California Penal Code section

17  236.1(h)(8), the right to be free from direct and implied coercion while working at Tesla,

18  and the right to a common damage of prevailing wages.

19  374.  Each of the Labor Contractor Defendants participated in the wrongs and

20  each of the Labor Contractor Defendants, the Eisenmann entities, and Tesla, Inc.

21  authorized or directed that the wrongs be done.  Each is a significant defendant in that

22  significant relief is sought against each and the conduct of each forms a significant basis

23  for the claims asserted by the Class.

24  375.  Defendants reduced their labor costs and expenses, and increased their

25  profits, through their scheme to coerce Plaintiff and Class Members to labor on their

26  behalf.  Defendants therefore knowingly and financially benefitted from participation in a

27  venture, plan, scheme, pattern of conduct, and practice they knew, or should have

28

1  known, were unlawful and in violation California forced labor laws. Cal. Civ. Code § 52.5.

2  376.  Plaintiffs and Class Members suffered injury as a proximate result of these

3  actions.

4  377.  Plaintiffs will fairly and adequately protect the interests of the class.

5  378.  Plaintiffs therefore request that  Labor Contractor Defendants, the

6  Eisenmann entities, and Tesla, Inc. be ordered to pay to the Class members and each of

7  them their actual damages of gross income or value to the defendant of the Class

8  members' services and labor engaged in by the victim(s) while in the human trafficking

9  situation as measured by prevailing wages standards, up to three times their actual

10  damages, Cal. Civ. Code § 52.5(b), and punitive damages. Cal. Civ. Code § 52.5(a).

11  379.  Plaintiffs further requests that the time and expenses that Plaintiffs incurred

12  and will incur on behalf of the Class be paid to them as an inducement to lend their

13  names and services to the Class. Cal. Civ. Code § 52.5(a).

14  380.  Plaintiffs further request an award of reasonable attorneys fees for pursuit of

15  this recovery on behalf of the Class members.

16  WHEREFORE Plaintiffs Gregor Lesnik and Stjepan Papes, on behalf of

17  themselves as Class representative and on behalf of Class members requests relief as

18  described below.

19  ## THIRTEENTH CAUSE OF ACTION

20  ### RICO Cause of Action

21  381.  Plaintiffs reallege the allegations contained in paragraphs 1 through 380 of

22  this Third Amended Complaint.

23  382.  Plaintiffs Gregor Lesnik and Stjepan Papes bring this private civil cause of

24  action pursuant to the provisions of the Racketeer Influenced and Corrupt Organizations

25  Act (RICO), alleging a violation of Title 18 U.S.C. § 1962 (c) and (d).  This is brought

26  both individually and on behalf of all other RICO Class members who were injured by the

27  same pattern of racketeering activity as Plaintiffs.  This is brought against Eisenmann

28

1  Corporation.

2      383.  The proposed Visa Misapplication Scheme RICO class is defined as:

3      All non-management individuals employed by ISM Vuzem, d.o.o., or for ISM
4      Vuzem d.o.o., ISM Vuzem USA, Inc., Vuzem USA, Inc., and HRID-MONT d.o.o.,
       ISM Vuzem d.o.o. and related entities, Gregurec Ltd, LB metal d.o.o.,  D2N
5      Tehnologije d.o.o. aka D2N d.o.o.. Primiko, d.o.o., Lax Fabricating Ltd, Keystone
6      Automotive, Phoenix Mechanical, REHAU Incorporated, , HRID-MONT d.o.o., VV
7      Mont, Magna International, Inc., Magna Automotive Services GmbH, Magna,
       d.o.o, We-Kr d.o.o., RIMSA PLUS Sp. z o.o., Enterprise MDM Poland Sp. z o. o.,
8      MDM Polska sp. z.o.o., and/or Mos Servis d.o.o., or by any other entity which
9      associated in fact with Eisenmann Corporation for those individuals who traveled
10     or were transported to the United States under the auspices of working under a
       B-1 visa at any time from ten years prior to the filing of the Second Amended
11     Complaint in this action through the date that notice is sent to the class members.

12     384.  This is a numerous class of 3,000 or more individuals from multiple different
13  countries, covering work sites in multiple states for multiple years.  The class is so
14  numerous, the class is so geographically diverse, and the class members are without
15  substantial financial resources, such that joinder of individual members is impractical.

16     385.  Questions of law and fact are common to this class.  Each member of the
17  class is a person injured in his business or property by reason of a violation - and
18  violations - of section 1962.  Other questions of law and fact common to this class
19  include misrepresentations in employment agreements - as to most direct employers
20  identical language in all agreements, violation of visa laws, the direct and indirect threat
21  of the loss of status to remain in the United States, the costs for travel to return to their
22  country of residence from the United States, the lack of workers compensation for any
23  workers and the failure of the defendants to tell the workers about this, and the unsafe
24  work conditions and long hours that each of the class members were subjected to.

25     386.  Common damages include the right to be paid proper wages available to the
26  workers if they had been admitted to the United States under a proper employment
27  related petition based visa.  This includes the right to be paid prevailing wages had the

28

1  defendant and the association in fact enterprise not engaged in fraud and misuse of

2  visas.

3          387.  Plaintiffs' claims arise out of the same policies, practices and course of

4  conduct that form the basis of the proposed class.  Plaintiffs' claims are based on the

5  same legal and remedial theories as those of the proposed class and involve similar

6  factual circumstances.  Plaintiffs were injured by the same pattern of racketeering activity

7  as the other class members.  There are no conflicts between the interests of the named

8  Plaintiffs and the class members.  The injuries suffered by the named Plaintiffs are

9  similar to and reasonably coextensive with the injuries suffered by the proposed class

10  members.

11          388.  This RICO cause of action is based on an association in fact Enterprise

12  consisting of the Eisenmann entities and the Labor Contractor defendants and other

13  labor contractors not named in this complaint.

14          389.  Each of the Eisenmann entities, the Labor Contractor defendants and other

15  labor contractor entities (collectively "entities which participated in the enterprise") were

16  and are persons employed by or associated with an enterprise operated or managed

17  through a pattern of racketeering activity which caused injury to Plaintiffs' business or

18  property, and injury to the business and property of individuals similarly situated to

19  Plaintiffs, by reason of the pattern of racketeering activity.

20          390.  The Eisenmann Defendants, the Labor Contractor Defendants and other

21  labor contractor entities participated in a criminal Enterprise, through patterns of

22  racketeering activity that affected interstate and foreign commerce as alleged in

23  paragraphs 171 through 200 of this Third Amended Complaint.

24          391.  These entities were employed or associated with the activity of the

25  enterprise and each of these entities conducted or participated, directly or indirectly, in

26  the conduct of the enterprise's affairs.  Each of these entities knowingly agreed with each

27  other to facilitate a scheme that includes the operation or management of a RICO

28

1    enterprise.

2         392.  These entities in conducting the affairs of the Enterprise utilized interstate

3    communications facilities by engaging in long distance telephone conversations; by

4    traveling in interstate commerce from one state to another; and by causing the

5    transmission of funds and/or other communications by mail and/or by wire in interstate

6    commerce from one state to another.  The persons which associated in and participated

7    in the Enterprise frequently communicated and consulted via mail, facsimile, e-mail,

8    and/or telephone for the purpose of coordinating and directing the recruitment of

9    workers, applications for visas, transportation of workers, and actions intended to

10   conceal the scheme.

11        393.  The conduct of Eisenmann Corporation and labor contractors constitute and

12   constituted racketeering activity in that their actions as alleged in paragraphs 171

13   through 200 were in violation of Title 18, United States Code based on two or more

14   predicate acts:

15        of fraud in visa applications (§ 1546)

16        relating to forced labor (§ 1589)

17        of fraud in foreign labor contracting (§ 1351).  Defendants Eisenmann and ,

18   knowingly and with the intent to defraud, recruited, solicited, and hired the Gregor

19   Lesnik, Stjepan Papes, and similarly situated "B-1 workers" from outside of the United

20   States for purposes of employment in the United States by means of materially false and

21   fraudulent pretenses, representations and promises regarding that employment including

22   in written agreements with the workers in violation of 18 U.S.C. §§ 1351 (a);

23        relating to the laundering of monetary instruments (§ 1956); and

24        constituting acts which are indictable under the Immigration and Nationality Act,

25   section 274 and 277 (relating to bringing in and harboring certain aliens and aiding or

26   assisting in the same) including by encouraging and/or inducing aliens to come to and

27   enter the United States, knowing or in reckless disregard of the fact that such coming to

28

1  or entry is or will be in violation of law.

2      394.  Each of the entities which participated in the enterprise knowingly,

3  voluntarily and intentionally agreed to commit, and committed, at least two acts of

4  racketeering activity alleged herein with ten years after the commission of a prior act of

5  racketeering activity.

6      395.  The actions by the entities which participated in the enterprise are not

7  isolated events.  The predicate acts have extended over a substantial period of time and

8  are continuing.  The predicate acts involve and affect interstate commerce.

9      396.  Plaintiffs Stjepan Papes and Gregor Lesnik, and each of the individuals

10 similarly situated to them who worked under fraudulently obtained B-1 visas, have been

11 injured in their work and property by the predicate acts in violation of RICO.

12     397.   As a direct and proximate result of the Defendant Eisenmann Corporation's

13 racketeering activities and violations of 18 U.S.C. § 1962 (c), Plaintiffs and the Class

14 Members have been injured in their business and property.  Among other things, the

15 workers were not paid for the reasonable value of their services for working under these

16 conditions, properly measured as prevailing wages, nor were they paid for the value to

17 the defendants of their services, also properly measured as prevailing wages, nor were

18 they paid for work that they would have provided under petition based employment

19 related visas- if they were not working under the defendants' scheme or enterprise, also

20 properly measured as prevailing wages.

21     398.  The Eisenmann entities, the Labor Contractor Defendants and the other

22 labor contractors agreed to and did conduct and participate in the Enterprise.

23     399.  The actions of the entities which participated in the association in fact

24 enterprise constitute a pattern of racketeering activity of the Enterprise pursuant to 18

25 U.S.C. § 1961(5).

26     400.  The Eisenmann entities, the Labor Contractor Defendants and other labor

27 contractors have directly and indirectly conducted and participated in the conduct of the

28

1  enterprise's affairs through the pattern of racketeering and activity described above, in

2  violation of 18 U.S.C. § 1962©, and conspired to violate the provisions of subsection ©,

3  in violation of 18 U.S.C. § 1962(d).

4      401.  Plaintiffs, and each of them, and the members of the Visa Misapplication

5  Scheme RICO, and each of them, have sustained damages as a direct, proximate and

6  legal result of the predicate acts of the Enterprise.  This includes damages of failures to

7  be paid prevailing wages as a result of the acts in violation of Title 18 of the United

8  States Code, sections 1351 (fraud in foreign labor contracts), 1546 (visa fraud), and

9  1589(a) (coerced labor and trafficking).

10     WHEREFORE Plaintiffs on behalf of themselves and the RICO Class Members

11  request that this Court enter judgment against Defendant Eisenmann Corporation for

12  actual damages, treble damages and attorneys' fees.

13                  **III. PRAYER AND CLAIMS FOR RELIEF**

14     WHEREFORE Plaintiffs and Relators Gregor Lesnik and Stjepan Papes, on behalf

15  of the United States of America, for themselves, and on behalf of the Classes of

16  individuals similarly situated to them pray:

17     1. That Defendants cease and desist from violating the provisions of the United

18  States Code and the regulations of the United States concerning visa applications and

19  employment of alien workers enumerated in this Third Amended Complaint;

20     2.  That this Court enter judgment against Defendants for the amount of the United

21  States' damages, trebled as required by law, and such civil penalties as are authorized

22  by law, together with all such further relief as may be just and proper;

23     3.  That because the United States Government does not proceed with the qui tam

24  claims that Relators Lesnik and Papes be awarded the maximum amount allowed

25  pursuant to § 3730(d) of the False Claims Act;

26     4. That Relators be awarded all fees, costs, and expenses incurred in connection

27  with this action, including attorneys' fees, costs, and expenses;

28

5.   Certification of the FLSA cause of action as a class action and appointment of Plaintiffs and Plaintiffs' counsel - and such counsel as may associate with current Plaintiffs' counsel - to represent the FLSA Class;

6.   Provision of class notice to members of the FLSA Class as defined above;

7.   That Plaintiffs individually and on behalf of the Class(es) of workers be awarded unpaid and underpaid wages under the FLSA, with double damages for unpaid overtime compensation, and liquidated damages;

8.   Certification of the California wages causes of action as a class action and appointment of Plaintiffs and Plaintiffs' counsel - and such counsel as may associate with current Plaintiffs' counsel - to represent the California Wages Class;

9.   Provision of class notice to members of the California Wages Class;

10.   That Plaintiff Papes individually and on behalf of the Class(es) of workers be awarded for wages due for work in California for unpaid and underpaid wages including for minimum wages (Labor Code §§ 1182.12, 1194, 1194.2), overtime wages (Labor Code §§ 510, 1194), and rest periods (Labor Code §§ 226.7, 512);

11.   That Plaintiff Papes individually and on behalf of the Class(es) of workers be awarded waiting time penalties pursuant to Labor Code section 200 et seq., and trebling of damages for the clear failure to pay pursuant to Labor Code section 206 or alternatively doubling of wages damages pursuant to the provisions of Labor Code section 972, for wages due for work in California;

12.   An award of reasonable attorneys' fees and costs pursuant to California Labor Code, and/or other applicable law;

13.   For damages sustained by Plaintiffs due to labor trafficking and coerced labor;

14.   Certification of the federal anti-trafficking and coerced labor cause of action as a class action and appointment of Plaintiffs and Plaintiffs' counsel - and such counsel as may associate with current Plaintiffs' counsel - to represent the TVPRA Class;

15.  Provision of class notice to members of the TVPRA Class as defined above;

16.  For damages sustained by the TVPRA Class members;

17.  Certification of the California anti-trafficking and coerced labor cause of action as a class action and appointment of Plaintiffs and Plaintiffs' counsel - and such counsel as may associate with current Plaintiffs' counsel - to represent the California Trafficking Class;

18.  Provision of class notice to members of the California Personal Class as defined above;

19.  For damages sustained by the California Trafficking Class members;

20.  For damage and injury to Plaintiffs' Business and Property rights as caused by the RICO Enterprise;

21.  Certification of the RICO action as a class action and appointment of Plaintiffs and Plaintiffs' counsel - and such counsel as may associate with current Plaintiffs' counsel - to represent the Visa Misapplication Scheme RICO class;

22.  Provision of class notice to members of the Visa Misapplication Scheme RICO class as defined above;

23.  For damages and trebling of damages sustained by the Plaintiffs, and by the Visa Misapplication Scheme RICO class members;

24.  For reasonable attorneys' fees;

25. For costs of suit;

26.  For injunctive relief to prevent harassment and intimidation; and

27. For such other relief as the Court may deem just and proper.

Dated: October 31, 2018

_/s/_____
William C. Dresser
Attorneys for Plaintiffs and Relators Gregor
Lesnik and Stjepan Papes

UsexrelLesnik\Pld\3AC.a31

1

**DEMAND FOR JURY TRIAL**

2

3        Plaintiffs hereby demand a trial by jury of each and every cause of action so

4    triable.

5

6    Dated: October 31, 2018

7                                              ___/s/_____
                                               William C. Dresser
8                                              Attorneys for Plaintiffs and Relators Gregor
                                               Lesnik and Stjepan Papes

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28