William C. Dresser, 104375
Law Offices of William C. Dresser
4 North Second Street, Suite 1230
San Jose, California 95113
Tel:    408/279-7529
Fax:    408/298-3306

Attorneys for Plaintiffs and Relators
Gregor Lesnik and Stjepan Papes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. GREGOR LESNIK; STJEPAN PAPES, | No: 16-CV-01120-LHK |
| Plaintiffs and Relators, | Memorandum of Points and Authorities in Opposition to Defendants' Omnibus Motion to Dismiss Plaintiffs' Third Amended Complaint |
| vs. | |
| EISENMANN SE, et al. | Date:  March 14, 2019 |
| Defendants. | Time:  1:30 p.m. Courtroom 8, 4th Floor |
| | Hon. Lucy H. Koh |

1

2

# TABLE OF CONTENTS

I.  CLAIMS NOT AT ISSUE ............................................................................1

II.  SUMMARY OF ARGUMENT ...................................................................1

III.  STATEMENT OF FACTS .......................................................................2

IV.  LEGAL STANDARD ..............................................................................5

  A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) ................5

  B. Motion to Dismiss Under Federal Rule of Civil Procedure 9(b) ......................6

V.  ARGUMENT..............................................................................................6

  A. Defendants are identified by name and role in occurrences forming the basis of each cause of action ...........................................................................6

  B. Elements of FCA Claim are alleged ............................................................8

  C. Elements of FLSA Claim are alleged .........................................................15

  D. Elements of California Labor Code Claims are alleged ..............................17

  E. Basis for Responsibility of Employer Defendants is alleged ......................17

     1. FLSA........................................................................................... 17

     2. California Labor Code Section 2750.5 mandates that Tesla and Eisenmann be considered employers ............................................................ 18

  F. Basis for Trafficking and Coerced Labor Claims is stated............................19

  G. Elements of RICO Claim are stated............................................................27

  H.  Plaintiff Gregor Lesnik's claims are not barred by a settlement agreement...............................31

  J. This Court has Jurisdiction to decide all alleged claims and causes of action ...............................35

VI CONCLUSION.............................................................................................35

## Table of Authorities

**Cases**

Aguirre v. Best Care Agency, 961 F. Supp. 2d 427 (E.D.N.Y. 2013)....................................... 21

Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306 (11th Cir. 2007 ............................. 16

Alvarez Perez v Sanford, 515 F.3d 1150 (11th Cir. 2008).................................................... 16

Amey v Cinemark USA, Inc., No. 13-CV-05669-WHO, 2018 U.S. Dist. LEXIS 140156 (Aug. 17, 2018) ........................................................................................................................... 34

Aragon v. Che Ku, 277 F. Supp. 3d 1055 (D. Minn. 2017)............................................... 20, 22

Ashcroft v. Iqbal, 556 U.S. 662 (2009)............................................................................... 5

Beard v DC Housing Authority, 584 F.Supp.2d 139 (D.C. 2008) ......................................... 34

Bell Atlantic Corp. v. Twombly, U.S. 570 (2007) ................................................................. 5

Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465 (9th Cir. 1983) ......................... 17

Bonnette v. California Health and Welfare Agency, 704 F.2d 1465 (9th Cir. 1983) ............... 18

Braden v. Wal-Mart Stores, Inc., 588 F3d 585 (8th Cir. 2009)....................................... 6, 23

Broam v. Bogan, 320 F3d 1023, (9th Cir. 2003) ............................................................... 35

Brooklyn Savings Bank v. O'Neil, 324 US 697 (1945) ....................................................... 34

Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047 (9th Cir. 2011) ..............6, 8

Chrysler, 295 F. Supp. 3d at 957................................................................................... 28

Claxton v Waters (2004) 34 Cal. 4th 367 ....................................................................... 33

Commercial Cleaning Serv., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 385 (2d Cir. 2001)... 30

Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993 (9th Cir. 2010), cert. denied, 562 U.S. 1102 (2010)............................................................................................................................ 6

Echon v. Sackett, 2017 WL 4181417, at *14 (D. Colo. Sept. 20, 2017 ............................... 21

Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985) ..................................... 17

Hill v. Opus Corp., 841 F. Supp. 2d 1070 (C.D. Cal. 2011)............................................... 28

Hopper v. Solvay Pharmaceuticals, Inc., 588 F3d 1318 (11th Cir. 2009) ........................... 11

In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig., 295 F. Supp. 3d 927 (N.D. Cal. 2018)..................................................................................................... 27

In re Equity Funding Corp. of America Secur. Litig., 416 F.Supp. 161 (C.D. Cal. 1976) ................. 7

Jones v Sorenson, 25 Cal.App.5th 933 (2018)................................................................. 19

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982)........................... 34

Maddock v. KB Homes, Inc., 631 F. Supp. 2d 1226 (C.D. Cal. 2007)................................. 17

Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025 (9th Cir. 2008) ..................6, 12, 21, 25

Matter of Hira, 11 I. & N. Dec. 824 (B.I.A. 1966)....................................................... 9, 12

Mendoza v Zirkle Fruit, 301 F.3d 1163 (9th Cir. 2002) ................................................... 30

Nuñag–Tanedo v. E. Baton Rouge, 790 F. Supp. 2d 1134 (C.D. Cal. 2011) .......................... 21

Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir. 2007)............................................. 27, 28

Oman v Delta Air Lines, Inc., 889 F.3d 1075 (9th Cir. 2018) ............................................. 34

Phoenix Bond & Indem. Co. v. Bridge, 477 F.3d 928, 932 (7th Cir. 2007, aff'd sub nom. Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008) ............................................................. 30

Sanders Construction Co. Inc. v. Cerda (2009) 175 Cal.App.4th 430 ................................. 18

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) ....................................................... 27

Shaw v. Hahn, 56F.3d 1128 (9th Cir. 1995)................................................................... 22

Shuvalova v. Cunningham, 2010 WL 5387770, at *3 & n.3 (N.D. Cal. Dec. 22, 2010)................. 20

State Compensation Ins. Fund v. Workers' Comp. Appeals Bd. (1985) 40 Cal.3d 5 ...................... 19

Sullivan v. Oracle (2011) 51 Cal.4th 1191............................................................................................ 17

Summers v Howard, 374 F.3d 1188 (D.C. Cir 2004).......................................................................... 34

Supermail Cargo, Inc. v. United States, 68 F3d 1204 (9th Cir. 1995)................................................ 16

Tafflin v. Levitt, 493 U.S. 455 (1990)................................................................................................. 30

The International Union of Bricklayers and Allied Craftsmen v. Meese, 616 F. Supp. 1387 (N.D. Cal. 1985).......................................................................................................................................... 9

Torres-Lopez v. May, 111 F.3d 633 (9th Cir. 1997).................................................................... 17, 22

U.S. ex rel. Kelly v. Serco, Inc., 2014 WL 4988462, at *11 (S.D. Cal. Oct. 6, 2014)...................... 14

U.S. v Mackby, 261 F.3d 821 (9th Cir. 2001) ................................................................................... 12

U.S. v. United Healthcare, 848 F.3d 1161 (9th Cir. 2016).................................................................. 8

United States ex rel. Anita Silingo v. WellPoint, Inc., 2018 WL 4403407, at *9 (9th Cir. Sept. 11, 2018)..................................................................................................................................................... 8

United States ex rel. Bledsoe v. Community Health Systems, Inc., 501 F3d 493 (6th Cir. 2007) . 11

United States ex rel. Hendow v. University of Phoenix, 461 F.3d 1166 (9th Cir. 2006)................... 11

United States ex rel. Kozak v. Chabad-Lubavitch, Inc., No. 2:10-cv-01056-MCE, 2015 WL 2235389, at *9 (E.D. Cal. May 11, 2015)......................................................................................... 12

United States ex rel. Marion v. Heald Coll., LLC, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015)................................................................................................................................................... 14

United States v. Christensen, 828 F.3d 763 (9th Cir. 2015)............................................................. 28

United States v. Dann, 652 F.3d 1160 (9th Cir. 2011) ............................................................... 20, 22

United States v. Neifert-White Co., 390 U.S. 228 (1968)................................................................. 11

United States v. University of Phoenix, 461 F.3d 1166 (9th Cir. 2006). .......................................... 8

United States v. Valenzuela, 495 F. App'x 817 (9th Cir. 2012)........................................................ 21

US v Boyle (2009) 556 U.S. 938 (2009) ........................................................................................... 27

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003)...................................................... 12

Winet v Price (1992) 4 Cal.App.4th 1159 ......................................................................................... 34

## Statutes

18 U.S.C. § 1589................................................................................................................... passim

18 U.S.C. § 1595.............................................................................................................. 19, 23

18 U.S.C. § 1961(4) ................................................................................................................... 28

18 U.S.C. § 1962(c) ............................................................................................................ 27, 29

18 U.S.C. § 1962(d) ................................................................................................................... 27

22 U.S.C. § 7102(3)(c) .............................................................................................................. 22

29 U.S.C. § 2255(a) ................................................................................................................... 15

31 U.S.C. § 3729(a)(1)(C) ................................................................................................... 13, 14

31 U.S.C. § 3729(a)(1)(G) ......................................................................................................... 12

31 U.S.C. § 3729(b)(3) ................................................................................................................. 9

31 U.S.C. § 3732(a) ................................................................................................................... 35

31 U.S.C. 3730(b)(1) ................................................................................................................. 34

31 U.S.C.§ 3729(a)(1)(G) ............................................................................................................ 8

8 U.S.C. § 1356(m), (n) .............................................................................................................. 9

Cal. Bus. & Prof. Code § 7048 ................................................................................................. 18

Cal. Civil Code § 1542 .............................................................................................................. 34

Cal. Labor Code § 2750.5 ......................................................................................................... 18

California Civil Code § 52.5 ................................................................................................ 26

Rules

Federal Rules of Civil Procedure Rule 8 ............................................................................. 5
Federal Rule of Civil Procedure Rule 9 ...................................................................6, 14, 20
Federal Rule of Civil Procedure Rule 12 ............................................................................ 5

Regulations

29 C.F.R. § 791.2(a) .......................................................................................................... 17
8 C.F.R. § 214.2(b)(5) ....................................................................................................... 11
9 FAM 402.2-5(E)(1)........................................................................................................... 11
Federal Register / Vol. 75, No. 123 / Monday, June 28, 2010, 36522.................................. 9
Federal Register / Vol. 81, No. 181 / Monday, September 19, 2016, 64088 ...................... 9

MEMORANDUM OF POINTS AND AUTHORITIES

## I.  CLAIMS NOT AT ISSUE

Plaintiffs dismissed without prejudice the False Claims Act claims of the Third Amended Complaint ("3AC") other than against the Eisenmann entities, Tesla, Inc., and Labor Contractor defendants.  (Dkt # 304 (dismissal), and 314 (Govt consent).

Plaintiffs dismissed without prejudice the pre-certification FLSA collective and Gregor Lesnik's individual FLSA claims, under the Second and Third Causes of Action.  (Dkt # 305, 306).  Plaintiffs retained the California wages claims, which are the Fourth through Eighth Causes of Action against Eisenmann, Tesla and Vuzem. (Dkt # 307 through 313).

Plaintiffs dismissed all "Moving Defendants" other than Eisenmann Corporation and Tesla, Inc.  (Dkt # 315 through 322)

## II.  SUMMARY OF ARGUMENT

The 3AC alleges specific acts of fraud by Eisenmann in support of visa applications to improperly reduce or avoid payment obligations to the government. The 3AC alleges specific facts of the Defendants Eisenmann and Tesla's knowledge of, active participation in, and conspiracy in the fraud.

Defendants do not deny failures to pay under California wages laws and the FLSA.  Defendants Eisenmann and Tesla are employers pursuant to California Labor Code section 2750.5 and because of Eisenmann's control and direct involvement in all employment matters.

Arguments in support of evidentiary based affirmative defenses of a bar by a settlement agreement and of a bar of the statutes of limitations are based on mis-

statements of fact and of law.  The settlement agreement prepared by defendants specifically states that it is a release of claims for "injuries and damages as the result of the accident."  Statutes of limitations for wages claims are tolled by the express terms of a settlement agreement and of Plaintiff Papes' employment into 2016.

The 3AC alleges specific threats of immigration, financial, litigation, reputation, and physical harm by Vuzem entities to coerce labor.  The 3AC alleges acts of coerced labor and of harmful workplace conditions with resulting serious injuries and death.  The 3AC alleges specific ways how Tesla and Eisenmann knew of these threats and of the harmful workplace conditions and that they financially benefitted.

The 3AC alleges an Enterprise, predicate acts, an agreement, an ongoing pattern of activity, and damages to support a RICO cause of action.

The allegations of the now streamlined 3AC state sufficient facts to constitute each of the causes of action alleged.  Defendants' motion should be denied.

## III.  STATEMENT OF FACTS

Defendant Eisenmann Corporation acted as a general contractor.  Eisenmann contracted with companies, including Defendant Tesla, and including dismissed parties Mercedes-Benz, Deere, REAHU, VW, DiCastal, BMW, and Volvo, to construct large scale plants.  Tesla and Eisenmann are sued for fraud and for labor abuses.

Eisenmann Corporation contracted with all Vuzem entities and persons, 3AC ¶ 15, with specified Labor Contractor defendants, 3AC ¶ 15, 35 to 44, and with labor contractors not named as defendants, 3AC ¶ 45 and 46, to obtain cheap foreign labor for construction in the United States. 3AC 211, 213.

The workers entered the United State pursuant to improperly issued B-1 visas. 3AC ¶ 211, 32 to 44.  The visas were issued based on false statements, 3AC ¶ 53 to 55, 211, 217, specified by documents, dates, authors, and company relationship, and why they were false.  3AC ¶ 62, 63, 64, 65, 211.  The visas were issued based direction of the labor contractors to the workers that they would be supervisors. 3AC ¶ 61, 63, 66, 68, 90, 117.g.   Neither the direct labor contractors, nor Eisenmann, told the workers about their plan, as the workers only received documents - written in what to them was a foreign language - when they arrived at the consulates.  3AC ¶ 67, 68.

The Third Amended Complaint alleges specific actions to mislead the government into issuing visas, 3AC ¶ 53 to 55, 62 to 68, 211, and alleges specific agreements between defendants and defendants' actions to conceal the visa fraud and the existence of the workers in the United States to do construction work.  3AC ¶ 211 (referring to specific facts alleged in paragraphs 58 to 91), 213, 224.

The workers do not qualify for B-1 visas for several reasons, including that they were performing construction services which are undisputedly not allowed under B-1 visas, 3AC ¶ 54, 204, were not supervisors, 3AC ¶ 61, 63, 66, 68, 211.b., and for certain of their work – such as for LaX, Phoenix Mechanical, and Keystone – they were being compensated from a US employer or business.  3AC ¶ 2, 60, 79-83.  *See* U.S. Customs and Border Protection "Frequently Asked Questions" regarding B-1 Permissible Activities https://www.cbp.gov/document/faqs/b1-permissible-activity-frequently-asked-questions  ("As long as you are not receiving compensation from a U.S. employer or business").

All of the workers who were directly employed by a labor contractor – including but not limited to Lesnik and Papes - were promised in writing that they would work 40 hours per week, would work in a safe workplace, and would be covered by insurance.  3AC ¶ 178.  This included workers for Vuzem, 3AC ¶ 178, and for the other labor contractors.  3AC ¶ 180.  These representations in written employment contracts were all false.  3AC ¶ 57, 179, 180, 181.

The workers provided construction services at specified locations, including at Tesla. 3AC ¶ 70 and 115.  The workers while at Tesla and the other locations were not paid wages due to them.  3AC ¶ 147, 148, 152 to 156.

Eisenmann and Tesla hired labor contractors which did not have any construction licenses.  3AC ¶ 103, 136, 141, 145.

Eisenmann directed where the workers were to work, including for Stjepan Papes which direct employer to work under, such as at LaX, and Phoenix Mechanical.  3AC ¶ 79, 82, 143.  Eisenmann exercised, and reserved the right to exercise, control over the work performed by the workers, including all Vuzem workers.  3Ac ¶ 140, 143.  Eisenmann had its labor contractors pay all of the workers the same, paying them a minimum European Union compensation of 800 EU per month.  3AC ¶ 140, at 47:10-13.  Eisenmann maintained the daily work records for all of the workers.  3AC ¶ 140, at 47:7-9.

The workers were coerced to continue to work long hours, 3AC 316, in unsafe conditions, 3AC 317, 320 (serious injuries), 321 (death), and with living conditions that were irregular at best, 3AC ¶ 318, 322, 323.  The coercion included threats of withholding pay, 3AC 324, 325, of charging for property damage, 3AC ¶ 322,

litigation, 3AC ¶ 315, 334, unmeritorious criminal prosecution, 3AC ¶ 328, harm to reputation, 3AC 159, termination of visas, 3AC, and being stuck in the United States illegally without funds to return to their home countries. 3AC 326, 327.  The threats included by aggressive supervisors. 3AC ¶ 319, 330.  This included supervisors who had already been convicted in foreign countries of human trafficking. 3AC ¶ 46 ("Krunoslav Premusic, a former Vuzem supervisor who has a prior conviction in Croatia for trafficking"), 129.


## IV.  LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Federal Rules of Civil Procedure Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, U.S. 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). For purposes of ruling on a Federal Rule of Civil Procedure 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519

F.3d 1025, 1031 (9th Cir. 2008).All reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim. Braden v. Wal-Mart Stores, Inc., 588 F3d 585, 595 (8th Cir. 2009) ("Twombly and Iqbal did not change this fundamental tenet of Rule 12(b)(6) practice").

### B. Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

FCA claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054–55 (9th Cir. 2011).  As against a motion to dismiss based on Rule 9 in the context of a FCA claim, the Ninth Circuit joined the Fifth Circuit in holding that "it is sufficient to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993 (9th Cir. 2010), cert. denied, 562 U.S. 1102 (2010).

## V.  ARGUMENT

### A. Defendants are identified by name and role in occurrences forming the basis of each cause of action

Defendants' motion asserts that the 3AC impermissibly lumps all defendants together.  Not so.  The role of Eisenmann Corporation and the Eisenmann entities, the role of specific named Labor Contractor defendants, and of other specified labor contractors, and of Tesla as a specifically named Moving Defendants are separately stated, and the facts supporting the allegations against each are separately specified.

The Third Amended Complaint states the role of affiliated and parent Eisenmann entities, 3AC ¶ 3-8, for actions for which liability is stated is specified in the Third Amended Complaint.  3AC ¶ 70, 116, 172, 211, including subsections, and 212.  This includes identification of specific contracts, 3AC ¶ 143, 211, 213, and specific managers and directors.  3AC ¶ 143, 211, 213.  The Third Amended Complaint states the affiliated Eisenmann entities' factually and statutorily mandated relationship to the workers.  3AC 141, 142, 143, 145, including the role of specified employees of the affiliated entities.

The Labor Contractor Defendants are specified in the charging allegations as to each individual defendant by name, 3AC ¶ 15, 35 to 44, and in the charging allegations for legal responsibility where the identification of the named Labor Contractor Defendants is relevant. See 3AC ¶ 84, 129, 172.

The workers provided construction services for specifically identified Manufacturing Defendants including Tesla.  3AC ¶ 70, 115.  Tesla is a specifically identified Manufacturing Defendant which contracted with Eisenmann, 3AC ¶ 70 and 115, knowing of the use of cheap foreign labor, 3AC ¶ 71 to 79, 94, for financial benefit.  3AC ¶ 71 to 79.  Tesla as a specified Manufacturing Defendant took specified actions to conceal the visa fraud and presence in the United States of the B-1 workers.  3AC ¶ 72 – 83, 95-104, 106.

If the complaint adequately identifies a particular defendant with a category of defendants allegedly responsible for some continuing course of conduct, allegations that "defendants" committed described acts cover each member of the group. In re Equity Funding Corp. of America Secur. Litig., 416 F.Supp. 161, 181 (C.D. Cal.

1976).   Plaintiffs in the 3AC have "inform[ed] each defendant separately" of its allegedly wrongful actions, U.S. v. United Healthcare, 848 F.3d 1161, 1184 (9th Cir. 2016)

### B. Elements of FCA Claim are alleged

A claim under the FCA requires a showing of: (1) A false statement or fraudulent course of conduct; (2) Made with scienter; (3) That was material, causing (4) The government to pay out money or forfeit moneys due. United States v. University of Phoenix, 461 F.3d 1166 (9th Cir. 2006).

Plaintiffs proceed under the "reverse false claims" provision, specified as being pursuant to 31 U.S. Code.§ 3729(a)(1)(G).  3AC ¶ 127, 128; see Cafasso v. Gen. Dynamics C4 Systems., Inc., 637 F.3d at 1056 (9th Cir.2011) (noting § 3729(a)(1)(G) "attempts to provide that fraudulently reducing the amount owed to the government constitutes a false claim." (citation omitted)). Section 3729(a)(1)(G) makes liable any person who "knowingly" uses "a false record or statement material to an obligation to pay … the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay … the Government." *Id.* The FCA defines knowingly to mean that a "defendant knew a claim for payment was false, or that it acted with reckless disregard or deliberate indifference as to the truth or falsity of the claim." United States ex rel. Anita Silingo v. WellPoint, Inc., 2018 WL 4403407, at *9 (9th Cir. Sept. 11, 2018).

Labor contractors – both named defendant Labor Contractors and other labor contractors, 3AC ¶ 45, 46, 84, applied for visas for workers to come to the United States to perform construction services.

To receive a visa for entry into the United States to perform construction services, the obligation to the United States is to pay petition based fees, such as for L-1B, H1-B, or the most appropriate H2-B visas.  The laborers were only eligible for these more costly petition based visas.  The International Union of Bricklayers and Allied Craftsmen v. Meese, 616 F. Supp. 1387 (N.D. Cal. 1985); Matter of Hira, 11 I. & N. Dec. 824 (B.I.A. 1966) ("It does not include local employment or labor for hire. For the purposes of this section building or construction work, whether on-site or in plant, shall be deemed to constitute purely local employment or labor for hire).)  In order to avoid or reduce fees, Defendants Eisenmann directed its labor contractors to apply for B-1 visas.  Because Defendants falsely obtained cheaper visas, they avoided an obligation to pay the government the higher fees associated with the more expensive unskilled-worker visa.

Visa fees are an obligation to pay upon applying for a visa the approximated cost to the government for visa related expenses.  (8 U.S.C. § 1356(m), (n); Federal Register / Vol. 75, No. 123 / Monday, June 28, 2010, 36522; Federal Register / Vol. 81, No. 181 / Monday, September 19, 2016, 64088; Foreign Affairs Manual 402.2-5(B); Foreign Affairs Manual 402.2-5; U.S. Customs and Border Protection (CBP) Inspector's Field Manual, Chapter 15.4(b)(1) Chapter 15.4.  The FCA defines "obligation" broadly to include "an established duty, whether or not fixed, arising from … a fee-based or similar relationship, [or] from statute or regulation …" 31 U.S.C. § 3729(b)(3).  This Court found in its October 1, 2018 Order "that Plaintiffs' FCA claim is permissible to the extent that it relies on the non-payment or under-payment of visa fees."  (Dkt # 255 at 10:18-19).

Defendants Eisenmann Corporation and Eisenmann entities both participated in the fraud in these applications, 3AC ¶ 61-65, and directed the same application process by all labor contractors.  3AC ¶ 57, 185, 188.  Eisenmann actively supported the non-payment and under-payment of visa fees by preparing, signing and giving to the labor contractors letters which were materially false.  The falsity in the visa applications is based in part letters dated April 29, 2013 (re Papes), and November 5, 2014 (re Lesnik), and similar letters for thousands of other workers, that Eisenmann prepared to be sent to the U.S. Consulate.  3AC ¶ 61, 62, 63, 64, 110, 211, 217; see Dkt # 121-1, 121-2, and 121-3 (Keller Decl authenticating letters).

The Eisenmann prepared letters, used by specified labor contractors in visa applications, falsely stated that Lesnik, Papes and others were skilled, and falsely stated that Lesnik, Papes and others worked for Gregurec. 3AC ¶ 62, 63, 117, 217. Neither Lesnik nor Papes worked for Gregurec Ltd, 3AC ¶ 62, 63, nor did thousands of other B-1 visa workers who Eisenmann represented between 2009 and 2017 worked for Gregurec Ltd.  3AC ¶ 217.

The letters state that Eisenmann has a long history of working with Gregurec, describes Gregurec's knowledge and skill in glowing terms, says Eisenmann has a "turnkey contract" with Gregurec to install equipment on Eisenmann's behalf, and seeks to bring Lesnik, to bring Papes - and to bring thousands of other B-1 visa workers to the United States to fulfill that agreement.  The inference that Lesnik, Papes, and thousands are Gregurec employees, are knowledgeable and skilled, and are brought to the United States to apply that skillset to a technically complex equipment installation is a false statement.  Lesnik and Papes lacked specialized

skills, did not work for Gregurec, and were brought to the United States to perform

unskilled construction work. 3AC ¶ 61 – 66.  These are allegations of falsity. United

States ex rel. Hendow v. University of Phoenix, 461 F.3d at 1170-71 (9th Cir. 2006)

("The False Claims Act, however, is not limited to such facially false or fraudulent

claims for payment . . . Rather, the False Claims Act is 'intended to reach all types of

fraud, without qualification, that might result in financial loss to the Government.'")

(quoting United States v. Neifert-White Co., 390 U.S. 228, 232 (1968)).  These are

representative examples of false claims.  United States ex rel. Bledsoe v. Community

Health Systems, Inc., 501 F3d 493, 510 (6th Cir. 2007); Hopper v. Solvay

Pharmaceuticals, Inc., 588 F3d 1318, 1326-1327 (11th Cir. 2009).

 Eisenmann further directed the labor contractors to tell the workers that they

would be supervisors.  Labor contractors including ISM Vuzem, do.o.o. followed the

directions of Eisenmann to tell the workers to tell the consular officials that they would

work as supervisors.  3AC ¶ 61, 62, 66, 89, 90 and 93.  This was an attempt to fit

within an INS regulation exception to allow issuance of B-1 visas "for the purpose of

supervising or training of others . . . ." (8 C.F.R. § 214.2(b)(5); see 9 FAM 402.2-

5(E)(1) ("b. These provisions do not apply to an alien seeking to perform building or

construction work, whether on-site or in-plant.  The exception is for an alien who is

applying for a B1 visa for supervising or training other workers engaged in building or

construction work, but not actually performing any such building or construction

work.").)  Defendants' Eisenmann and labor contractors had if not "actual knowledge"

of a false claim, had acted with "deliberate ignorance" or "reckless disregard" of the

falsity of their representations. 31 U.S.C. § 3729(b)(1).

This was not because of an ambiguity in complex visa law.  Every statute, every regulation, and every policy manual explicitly provide that a B-1 visa is not permissible for unskilled labor.  2 Immigration Law & Procedure § 14.05 (2018) (citing Matter of G-P-, 4 I. & N. Dec. 217, 221-22 (B.I.A. Central Office 1950); Matter of Hira, 11 I. & N. Dec. 824 (B.I.A. 1966)); 31 U.S. Code Section 3729(a)(1)(G)

The 3AC alleges an actual false claim in that the labor contractor Defendants—as to Lesnik and Papes being ISM Vuzem, d.o.o.—paid the fees by placing money for the visa applications in an envelope with the labor contractor's own documents and with Eisenmann documents including letters that included the false representations.  These were given to the workers when the workers arrived at the consulate after being driven there by the labor contractors.  3AC ¶ 67.

Defendant Eisenmann Corporation and its affiliated Eisenmann entities, 3AC ¶ 3 to 8, are liable both for active direct fraud in the applications, 3AC ¶ 61-68, and for encouraging and in assisting others in acts to reduce or avoid payment obligations. 3AC ¶ 84 to 87.  U.S. v Mackby, 261 F.3d 821, 828 (9th Cir. 2001) (clinic owner "caused" submission of false claims by instructing employees how to falsify claim forms); United States ex rel. Kozak v. Chabad-Lubavitch, Inc., No. 2:10-cv-01056-MCE, 2015 WL 2235389, at *9 (E.D. Cal. May 11, 2015) ("requests it orchestrated on behalf of the other Defendants as well as its conduct in managing its own grants" supports "knowingly assisted" liability under FCA).

The Court is required to "construe[s] the pleadings in the light most favorable to the nonmoving party." Manzarek, 519 F.3d at 1031.  The 3AC has set forth with specificity the circumstances of the fraud, including the who, what, when, where and

how of the alleged fraud, in order to state an FCA claim.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

The FCA also allows for conspiracy liability.  The 3AC alleges conspiracy liability, citing to 31 U.S.C. § 3729(a)(1)(C).  3AC ¶ 130, 131.  Subsection (a)(1)(C) imposes liability on any person who "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)").  The 3AC alleges the FCA conspiracy against Eisenmann and Tesla with specific, particularized factual allegations.

Defendants' motion repeatedly argues that insufficient facts are alleged. Defendants' Motion neither mentions nor analyzes any of the factual allegations in paragraphs 58 to 101 of the 3AC, and only minimally summarize portions of the allegations in paragraphs 102 through 106.  Defendants' entire summary of alleged facts covers a total of 8 lines, Deft MPA 4:2-9, in Defendants' brief of 36 pages of text and 33 pages of attachments.

Even what is stated therein is not accurate.  Plaintiffs do not allege contracts for specialized paint shop equipment. *See* Deft MPA 4:5.  Rather, Plaintiffs allege basic construction work.  3AC ¶ 62 ("was brought to the United States to perform unskilled construction work").

Eisenmann and Tesla knew who the workers were.  This includes receiving and reviewing - and for most copying and preparing lists of - the workers visas and passports, completing Form I-9, Employment Eligibility Verification, and issuing security passcards. 3AC ¶ 98-101.  Eisenmann and Tesla knew that they had come to the US to do basic construction work and were not qualified to apply for or receive B-1 visas.

The 3AC alleges that Eisenmann and Tesla as a specifically identified Manufacturing Defendant, 3AC ¶ 70, affirmatively acted to conceal the visa fraud. They wrote and revised contracts, omitted workers compensation insurance and licensing for contractors, and concealed their direct knowledge of hundreds and thousands of cheap foreign laborers who could not all be supervisors.  They were aware of and agreed to act to conceal the fraudulent visa application scheme, who the foreign laborers were working for, that they came over on B-1 visas, that the B-1 workers received low pay, and payments to the workers.  Defendants further took proactive steps to misrepresent whether the work could be done by people already in the US.  3AC ¶ 102-106

Tesla, like all of the other entities that contracted for build out of large facilities, did not require the labor contractors hold contractors licenses or obtain workers compensation insurance.  3AC ¶ 103-104.  This was not mere coincidence.

Defendants Eisenmann and Tesla acted for their financial benefit.  3AC ¶ 11-12.  Defendants benefitted, *see* FAC ¶ 18 ("increase profits")), 102, by evading taxes, (3AC ¶ 2), reduced worker wages, (3AC ¶ 3, 19, 28, 29, 150 - 165, 168), reduced visa application fees (3AC ¶ 16), and avoiding paying for workers compensation coverage, (3AC 105.e.). The 3AC alleges a knowing participation for financial benefit.

Federal Rule of Civil Procedure 9(b) requires that plaintiffs "alleging conspiracy claims under 31 U.S. Code Section 3729(a)(1)(C) must allege the existence of an agreement between the defendants to violate the FCA." United States ex rel. Marion v. Heald Coll., LLC, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015) (collecting cases); U.S. ex rel. Kelly v. Serco, Inc., 2014 WL 4988462, at *11

1
2
3
4
5

(S.D. Cal. Oct. 6, 2014), aff'd sub nom. United States ex rel. Kelly v. Serco, Inc., 846 F.3d 325 (9th Cir. 2017).  The 3AC alleges conspiracy to violate the FCA generally, 3AC ¶ 53 54, 102, and 131, and specifically alleges agreements to "conspire to conceal the violation of the visa laws."  3AC ¶ 115, 120.

6
7

### C. Elements of FLSA Claim are alleged

8
9
10
11
12
13
14
15

Plaintiff Stjepan Papes brings a claim against Vuzem, Gregurec, and Eisenmann under 29 U.S. Code. § 2255(a), on behalf of himself, in addition to California wages claims individually and on behalf of a class against Vuzem, Gregurec, Eisenmann, and Tesla.  Moving Defendants do not dispute the substance of Plaintiffs' claims. Moving Defendants do not, for instance, argue that the workers at Tesla's Fremont facility were actually paid minimum wage.

16
17
18
19
20
21
22
23
24
25

Defendants argue that FLSA claims are time barred, and make this argument based on contentions of fact that are not true.  Defendants assert that a Second Amended Complaint was not filed until November 17, 2017, Deft MPA 23:27, and then conclude without reference to allegations or fact that Papes stopped working in 2015.  "Critically, Papes does not state when he stopped working for Vuzem in California but does not claim employment after 2015."  Deft MPA 23:27.  Defendants falsely assert that "Both Lesnik and Papes last worked for Vuzem in 2015."  Deft MPA 24:20-21.  Papes was an employee into 2016.   Papes worked at Tesla after the Lesnik injury, continued working for Vuzem in the United States after that, and continued to be an employee of Vuzem until after he returned to Europe.  3AC ¶ 333.[1]

---

[1] Lesnik did not physically work after falling 30 feet through a hole in the roof at the Tesla building.  He was not fired until later. See 3AC ¶ 315.

Defendants omit that the wages claim was tolled by the filing of the Alameda Superior Court action until the dismissal upon court approval on June 30, 2016.  The Joint Request for Dismissal of the class action claim in that case accurately stated "this dismissal is without prejudice. The statute of limitations relating to the one cause of action brought in the name of putative class members, as a matter of law, has been tolled during the pendency of this lawsuit."

Further, the applicable time period in this case is three years.  Willfulness, the basis of the third year of the statute of limitations, is a mixed question of law and fact that goes to the jury.  Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1324 (11th Cir. 2007); Alvarez Perez v Sanford, 515 F.3d 1150, 1166 (11th Cir. 2008).  Willfulness is established when the employer "simply disregarded the possibility that it might be violating the FLSA." (Allen, *supra*, 495 F.3d at 1324).  An employer acting with reckless disregard for the FLSA is acting willfully.  Reckless disregard is shown "if the employer should have inquired further into whether [his] conduct was in compliance with the Act, and failed to make adequate further inquiry." (Davila v Menendez, 717 F.3d 1179, 1184-85 (11th Cir. 2013) (quoting 29 C.F.R. § 578.3(c)(3)).  Here, Eisenmann and Tesla were on notice of the failure to pay from a lawsuit, newspaper articles, and internet posting.  Neither Eisenmann nor Tesla nor the labor contractors were in compliance with the FLSA.

Defendants' motion to dismiss on this affirmative defense should be denied. See Supermail Cargo, Inc. v. United States, 68 F3d 1204, 1206 (9th Cir. 1995) (statute of limitations defense usually not amendable to resolution on Rule 12(b)(6) motion).

### D. Elements of California Labor Code Claims are alleged

California Labor Code obligations for minimum wages, overtime, break times, statements and payments of waiting time penalties apply to a California employer's out-of-state nonexempt employees who work temporarily in California.  Sullivan v. Oracle (2011) 51 Cal.4th 1191.

Plaintiff Papes brings "[c]lass action wages claims" against Vuzem, Gregurec, Eisenmann, and Tesla on his own behalf and on behalf of a class

Plaintiffs have identified in separate causes of action the statutes and theories under which they proceed, so that the Court can evaluate the legal sufficiency of Plaintiffs' claims.  This is not disputed by Defendants.

### E. Basis for Responsibility of Employer Defendants is alleged
#### 1. FLSA

A defendant must be an "employer" of the plaintiff to be liable under the FLSA. Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983), abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985). "Two or more employers may be 'joint employers' for the purposes of the FLSA." Maddock v. KB Homes, Inc., 631 F. Supp. 2d 1226, 1232 (C.D. Cal. 2007). "All joint employers are individually responsible for compliance with the FLSA." Id.; see also 29 C.F.R. § 791.2(a). Whether an entity is a "joint employer" under the FLSA is a question of law.  Torres-Lopez v. May, 111 F.3d 633, 638 (9th Cir. 1997).

The 3AC alleges Eisenmann directions for which business to hire individual workers including Papes, 3AC ¶ 79, 82, 143, control over the work performed by the workers, including all Vuzem workers, 3AC ¶ 140, 143, directions for the rate and method of payment to follow European Union compensation of 800 EU per month,

3AC ¶ 140, at 47:10-13, and maintenance of daily work records.  3AC ¶ 140, at 47:7-9.  These facts support finding Eisenmann to be a joint employer under each prong of the Bonette test.  Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983).

2. California Labor Code Section 2750.5 mandates that Tesla and Eisenmann be considered employers

An unlicensed person performing a licensed activity cannot be an independent contractor.  "In addition to the factors, contained in subdivisions (a), (b), and (c), any person performing any function or activity for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code shall hold a valid contractors' license as a condition of having independent contractor status."  Cal. Labor Code § 2750.5

The construction work performed by Gregor Lesnik, Stjepan Papes, and the other B-1 visa workers required a license.  (3AC par 63, 141; Calif. Bus. & Prof. Code § 7048).  Neither the Vuzem entities, nor the general contractor Eisenmann entity(ies) had any contractors license.  3AC ¶ 145, at 49:15-50:8.

Eisenmann Corporation, as general contractor, is as a result of hiring unlicensed workers and "employer" as a matter of law.  Sanders Construction Co. Inc. v. Cerda (2009) 175 Cal.App.4th 430 (wages responsibility).

So, too, is Tesla, Inc.  The California Supreme Court stated:

"It is not unreasonable for the Legislature to conclude that effective implementation of a system of providing for workers' injuries requires liability on the part of the ultimate hirer and that he should not be able to avoid liability on the

ground that he dealt with a contractor when the contractor lacked a required license. While it may seem anomalous to hold that the hirer is liable for compensation only if the contractor lacks the required license, and that he would not be liable if the contractor were licensed, the justification is apparent in that the Legislature has sought to assure that both licensed and unlicensed contractors and their employees will have compensation should they be injured on the job.

State Compensation Ins. Fund v. Workers' Comp. Appeals Bd. (1985) 40 Cal.3d 5, 17-18.

Liability in the State Compensation case was found against Warren Chichester, the owner of the property that hired an unlicensed company whose employee was injured.  The application of California Labor Code Section 2750.5 is not limited to disputes over legal responsibilities between a general contractor and a sub-contractor - Eisenmann, but also over legal responsibilities of the owner— Tesla. See Jones v Sorenson, 25 Cal.App.5th 933 (2018)(restating obligations and liability of owner).

F. Basis for Trafficking and Coerced Labor Claims is stated

Plaintiffs Papes and Lesnik also bring forced labor claims under the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589, et seq., and under California law.

The TVPRA includes a civil cause of action under 18 U.S.C. § 1595 allowing victims to seek damages and attorneys' fees from the "perpetrator" of a violation of laws prohibiting trafficking and forced labor. Section 1595(a) also extends liability beyond perpetrators to anyone who "knowingly benefits, financially or by receiving

anything of value from participation in a venture which that person knew or should have known" committed a violation of applicable trafficking and forced labor laws. See Shuvalova v. Cunningham, 2010 WL 5387770, at *3 & n.3 (N.D. Cal. Dec. 22, 2010) (noting same).  Federal Rule of Civil Procedure 9(b) does not apply to Plaintiffs' § 1595 claim because it does not sound in fraud. See Aragon v. Che Ku, 277 F. Supp. 3d 1055, 1061 n.2 (D. Minn. 2017) (rejecting this argument in case concerning § 1595).

The 3AC alleges that Defendants violated 18 U.S. Code. § 1589, and that this is a basis for Plaintiffs' TVPRA claim. See 3AC ¶ 158, 192, 341, 346 (referring to forced labor violations under "§ 1589").  Section § 1589 prohibits obtaining labor or services in four ways:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

Section 1589(c) defines the "serious harm" referenced in § 1589(a)(2) as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm," that is serious enough to compel a reasonable person to perform labor to avoid the harm. (See United States v. Dann, 652 F.3d 1160, 1169 (9th Cir.

2011) (noting statutory amendments in 2000 sought to broaden § 1589 to nonviolent conduct by, inter alia, defining serious harm broadly).) The 3AC meets this bar.

The 3AC alleges that Vuzem threatened to withhold pay if Lesnik became too sick to work or reported a job injury, threatened to withhold medical benefits if Lesnik reported a job injury, threatened to withhold visas and immigration status, threatened to file a civil suit against Lesnik while he was hospitalized, and even told Lesnik that "this will not go well for you." 3AC ¶ 315; (see Manzarek, 519 F.3d at 1031 (noting courts accept "factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party").)

Defendants argue that because the B-1 visa workers initially came to the United States voluntarily that subsequent events are not actionable.  That is not the law.  Even if they initially came willingly, the coercion to compel them to continue to work is actionable.  (See, United States v. Valenzuela, 495 F. App'x 817, 820 (9th Cir. 2012) ("Even if some of the victims consented initially, Appellants violated § 1591 by continuing to harbor and maintain them ...").

Defendants argue that Plaintiffs' passports were not withheld.  The act of taking passports is not required.  The threat of adverse actions to affect immigration status is actionable.  "[M]ultiple jurisdictions have found that the threat of deportation may itself constitute a threat sufficient to satisfy the second and/or third element of [§ 1589] forced labor." Echon v. Sackett, 2017 WL 4181417, at *14 (D. Colo. Sept. 20, 2017; Nuñag–Tanedo v. E. Baton Rouge, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011) (holding threat of deportation constitutes "abuse of legal process" within the meaning of § 1589 in case concerning H1–B visa holders); Aguirre v. Best Care

Agency, 961 F. Supp. 2d 427, 444 (E.D.N.Y. 2013) (stating "[t]he threat of deportation alone may support a claim for forced labor" under § 1589).

The 3AC alleges this threat. 3AC ¶ 339.  The 3AC alleges:

"w. the foreign nationals were subject to threat to cancel their immigration status if they refused to work as directed. The visas for the foreign nationals were the workers' only means to remain legally within the United States. Thus, cancellation of their visas would render them illegally within the United States and without the ability to find other legal employment, including in conditions - including economic conditions - that would make payment for return flights to their home countries difficult or impossible;"

3AC ¶ 117.w., at 39:14-19

Plaintiffs herein allege not just immigration threats, but also financial threats, threats of litigation, and threats to withhold medical care. Taken together, these allegations are sufficient to state a claim under § 1589. See Aragon v. Che Ku, 277 F. Supp. 3d 1055, 1070 (D. Minn. 2017) (denying motion to dismiss where some undocumented defendants were locked in freezers and others were simply threatened with deportation); United States v. Dann, 652 F.3d 1160, 1172 (9th Cir. 2011) (affirming § 1589 "Shaw v. Hahn, 56F.3d 1128, 1129 n 1 (9th Cir. 1995)" Torres-Lopez v. May, 111 F.3d 633, 638 (9th Cir. 1997)" conviction where defendant threatened undocumented nanny with withholding back pay, false accusations of theft, immigration consequences, and the defendant's potential loss of child custody).

Defendants argue that Plaintiffs were not threatened with "dire consequences." Plaintiffs were subject to and were threatened with abuse of legal process, 22 U.S.

Code 7102(3)(c), 3AC ¶ 328, 335, 339.  Plaintiff Gregor Lesnik continues through 2018 to be threatened with legal process.  3AC ¶ 328.

Defendants, omitting some of the most significant harms, argue that Plaintiffs were merely subject to a poor employer-immigrant relationship.  Deft MPA 14:21-15:5 (summarizing in part the allegations of the 3AC regarding substandard housing, shorted wages, and unsafe work conditions).  Defendants omit that the unsafe work conditions caused injuries to many, depression, death, and severe depression.  3AC ¶ 320, 321, 332.  The actions of withholding pay if they did not work is by itself an actionable threat of harm.  See 3AC ¶ 325, 338.  Other allegations referred to in the MTD support the fact of damages having been suffered.  See 3AC ¶ 316-336. "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc. 588 F3d 585, 594 (8th Cir. 2009).

Defendants assert that working in the United States meant that the workers were not subject to coercion.  Defendants omit that the conditions of employment did not get better over time despite protests.  3AC ¶ 319.  In the case of Papes, when he complained he was transferred, then fired, with defendant not paying taxes.  3AC ¶ 333, 334.

Defendants argue that the workers leaving employment as soon as they reasonably could means that they were not coerced to work.  The workers could not reasonably quit while in the United States working because they would be stuck in the United States illegally without funds to return.  3AC ¶ 326, 327, 339.

Tesla is liable because section 1595(a) imposes liability not only on the "perpetrator" (here, Vuzem), but also on anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has" violated federal trafficking and forced labor laws. This Court has already found based on similar allegations alleged in the Second Amended Complaint that Plaintiffs have stated a TVPRA claim against Eisenmann and Tesla based on Eisenmann and Tesla's knowing participation and benefit from the actions by Vuzem.  10/1/2018 Order, (Dkt # 255).

The 3AC alleges that on June 6, 2014, Tesla and Eisenmann entered into an agreement under which Eisenmann would construct a paint shop at Tesla's facility in Fremont, California. 3AC ¶ 213(b). On September 29, 2014, senior representatives for Vuzem, Eisenmann, and Tesla met and signed a subsequent agreement under which Eisenmann would employ Vuzem as a subcontractor to assist the construction of the paint shop. 3AC, ¶ 213(g).  These allegations are sufficient to show that Eisenmann and Tesla benefitted "financially" or by "receiving anything of value" from participating in a venture that violated § 1589, because Vuzem's actions were committed to fulfill a contract signed with Tesla and Eisenmann.

The 3AC adequately alleges that Eisenmann "knew or should have known" about Vuzem's treatment of its workers. The 3AC alleges, in detail, that Eisenmann submitted false letters to secure B–1 visas for Lesnik, Papes, and other workers. 3AC ¶ 61, 62, 63, 64, 67; see ECF No. 219-3 at 5, 7 (copies of the letters). The 3AC further alleges that Vuzem was a subcontractor for Eisenmann, 3AC, ¶ 213(g), that Eisenmann, "directly employed field managers and project managers for the work

sites," id., ¶ 140, and that Eisenmann supervisors "came from time to time to take a look to see how the work performed by Gregor Lesnik, Stjepan Papes and the other similarly situated alien 'B-1' workers was progressing." Id.; see also id. ("Eisenmann Corporation had all 'subcontractor' defendants come to its headquarters in Illinois for directions."). Given Eisenmann's direct involvement in every aspect of the events at issue, Eisenmann knew or should have known of Vuzem's treatment of its employees.

The 3AC alleges that Tesla knew Vuzem's workers were performing construction work prohibited by their B–1 visas and knew the workers lacked state licenses that are necessary to perform construction work. 3AC ¶ 103, 136, 137, 138, 139, 141, 145, 211(d). Tesla also knew the workers' shifts were extreme because Tesla kept records of their entries and exits into its facility. 3AC ¶ 99, 100, 140, 234. The 3AC alleges Lesnik typically worked 12 hours a day (and never less than 10), over 80 hours a week, over 250 hours a month, and received only 1 day in 14 off. 3AC ¶ 237, 316. At the end of shifts, Vuzem's workers were put in company vans and driven to company accommodations.  3AC ¶ 234. Tesla was also involved in the work performed.  Senior EHS Engineer Bobby Gonzales provided instructions to Lesnik, and Tesla maintained all job hazard forms at the Fremont facility. 3AC ¶ 145.  Based on the requirement that the Court construes the 3AC's allegations in Plaintiffs' favor, (Manzarek, 519 F.3d at 1031), the 3AC sufficiently alleges that Tesla knew or should have known of Vuzem's mistreatment of the workers who spent every day at Tesla's facility.  Eisenmann knew or should have known as it managed the workers. Eisenmann and Tesla "knew or should have known" that there was something

compelling the workers to work the long hours under hazardous and unsafe conditions.

Tesla and Eisenmann became "aware of the anti-trafficking and coerced labor actions [yet] continued to participate in the venture which they knew or should have known included actions in violation of the TVPRA and of state anti-trafficking statutes." 3AC ¶ 162. The fact of the actions in violation of the TVPRA and state statutes was made known by at least the date of publication of a San Jose Mercury News article. The publication was on May 15, 2016, 3AC ¶ 123, and was repeatedly republished through at least July of 2016. See 3AC ¶ 15. The 3AC alleges that B-1 workers under Vuzem and affiliated or successor entities worked thereafter for Eisenmann construction projects at Mercedes Benz, BMW, Volvo and Tesla. 3AC ¶ 344.

Defendants do not dispute that anti-trafficking and coerced labor claims are actionable under California law. The California trafficking and coerced labor cause of action allows victims to seek damages based on violations of California Penal Code section 236, which defines trafficking and forced labor crimes. California Civil Code § 52.5 defines coerced labor similarly to the federal statute.

Defendants assert in a footnote only that "None of the Manufacturing Defendants are alleged to have operations in California." Deft MPA 13:24. Defendants assert that Plaintiffs do not allege "that they (or others) performed work in California for any of the Manufacturing Defendants." Deft MPA 13:25. Papes, Lesnik, and more than 200 ISM Vuzem workers, worked at Tesla in California.

1

2  Liability is sufficiently alleged under the California statute for essentially the

3  same reasons as liability is sufficiently alleged under the TVPRA.

4  G. Elements of RICO Claim are stated

5  Plaintiffs also bring claims under 18 U.S.C. § 1962(c) and (d) of the Racketeer

6  Influenced and Corrupt Organizations Act ("RICO").  To plead a RICO claim under 18

7  U.S.C. § 1962(c), "Plaintiffs must plausibly allege that Defendants participated,

8  directly or indirectly, in (1) the conduct (2) of an enterprise that affects interstate

9  commerce, (3) through a pattern (4) of racketeering activity." In re Chrysler-Dodge-

10 Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig., 295 F. Supp. 3d 927, 957

11 (N.D. Cal. 2018). Plaintiffs also must satisfy "RICO's statutory standing requirements,

12 which require Plaintiffs to plausibly allege (1) an injury to 'business or property,' that

13 is (2) 'by reason of a violation of section 1962.' " *Id.* (quoting § 1964(c)).

14

15 Plaintiffs also proceed under § 1962(d), which provides that "[i]t shall be

16 unlawful for any person to conspire to violate any of the provisions of subsection (a),

17 (b), or (c) of this section."

18

19 "RICO is to be read broadly" and should "be liberally construed to effectuate its

20 remedial purposes." Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (en

21 banc) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497–98 (1985)).

22

23 Defendants argue that an Enterprise has not been pled with specificity.  Many

24 of the elements of a RICO claim are not subject to Rule 9.  Pleading an Enterprise is

25 not subject to Rule 9.  Odom v Microsoft, *supra*, at 550 – 552.

The United States Supreme Court in US v Boyle (2009) 556 U.S. 938 (2009),

provides for a broad definition of an Enterprise.  A RICO "enterprise" consists of "any

individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact although not as a legal entity." 18 U.S.C. § 1961(4). Plaintiffs here allege an associated-in-fact enterprise, which is "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Christensen, 828 F.3d 763, 780 (9th Cir. 2015) (quoting Odom, 486 F.3d at 548). This sort of enterprise has "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." Chrysler, 295 F. Supp. 3d at 957. The Ninth Circuit has clarified that "an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." Odom, *supra*, 486 F.3d at 551.

Plaintiffs have alleged an Association in Fact Enterprise of Eisenmann and its contractors.  The Enterprise is of Eisenmann Corporation and the labor contractors.[2] The individual persons associating in the Enterprise are identified by name.  3AC, ¶ 172, 388, 398, 400; *cf.*, Hill v. Opus Corp., 841 F. Supp. 2d 1070, 1102 (C.D. Cal. 2011) (dismissing because "plaintiffs use collective pleading to allege RICO 'conduct' or 'participation,' making repeated references to an unspecified 'defendant' or 'defendants' who committed the various acts in question.").

The 3AC identifies how Eisenmann and its contractors deal with each other, and how they work with each other.  Eisenman Corporation, an Illinois corporation, is directing the scheme including how to obtain visas.  3AC ¶ 171, 181.  Eisenmann Corporation as the mastermind commits some of the predicate acts directly on its own – such as preparing letters and preparing contracts that hid the absence of

---

[2] Known labor contractors as named Defendants Labor Contractors.  Other labor contractors involved with Eisenmann  in the Enterprise did the same thing and had the same role as named Defendant Labor Contractors.

licenses and workers comp insurance, but also directed and conspired with the labor contractors commit their portion of it. 3AC ¶ 183, 185, 186, 188, 190.  The fraud flowed through Eisenmann and the labor contractors.

The 3AC states that this is an ongoing Enterprise of many years.  3AC ¶ 116.

The 3AC states the illegal purpose of obtaining workers at lower price points, important for Eisenmann in its reduced expenses and in turn profits.  3AC ¶ 191

Defendants argue that the 3AC does not sufficiently plead predicate acts. Defendants' analysis is directed to the TVPA predicate acts.  This predicate act is addressed above.  This predicate act is not based on fraud, and is not subject to Rule 9.  Plaintiffs have alleged facts sufficient to state a claim under § 1962(c) and (d).

Notably, Defendants do not contest in the MTD the other predicate acts, including a section 1546 violation for visa fraud.  Nor could they.  This Court has already found that "the SAC has alleged a false statement" in connection with visas. (Dkt # 255 at 12:21).  The predicate act is alleged to have caused injury to Plaintiffs.

Defendants argue that Plaintiffs cannot claim damages, by reference to the McMahon cases, and by arguing that the government was the victim.

McMahon does not apply.  Although Plaintiffs allege violations of 1546, as was alleged in McMahon, that is where the similarities end.  The Plaintiffs in McMahon alleged that Defendants lowered the overall market wage of unskilled worked by bringing in unauthorized workers, a complicated market based damage.  Here, Plaintiffs allege that the workers came to the United States under the wrong visas.  If they had come to the United States under the correct visas, they would have been

entitled to be paid prevailing wages.  3AC  117.q., 194  Plaintiffs were not paid prevailing wages.

Plaintiffs are the direct victims.  Unlike in McMahon where the fraud was to one group and the damages were claimed to be sustained by another group, the fraud herein is to the people that sustained the damages. 3AC ¶ 191, 197.

Defendants argue that the government is the true victim.   Though this admission is relevant to defendants' liability under the FCA, it is not relevant to the RICO cause of action.  The government will always be a direct victim in visa fraud, because the visa fraud is a criminal act.  "If the existence of a public authority that could prosecute a claim against putative RICO defendants meant that the plaintiff is too remote under Holmes, then no private cause of action could ever be maintained, for every RICO predicate offense, as well as the RICO enterprise itself, is separately prosecutable by the government."  Commercial Cleaning Serv., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 385 (2d Cir. 2001); Phoenix Bond & Indem. Co. v. Bridge, 477 F.3d 928, 932 (7th Cir. 2007, aff'd sub nom. Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008) (same); Tafflin v. Levitt, 493 U.S. 455, 464 (1990) ("…for civil RICO claims are not 'offenses against the laws of the United States'"); (Mohawk Indus., Inc. 465 F.3d 1277, 1290 (11th Cir. 2005).  The Ninth Circuit in Mendoza v Zirkle Fruit, 301 F.3d 1163, 1170 (9th Cir. 2002) rejected the argument raised by defendant Eisenmann.  "Neither the government nor the undocumented workers are an intervening third party in this scheme, despite the growers' arguments to the contrary."  Mendoza v Zirkle, *supra*, 301 F.3d at 1170.

1

### H. Plaintiff Gregor Lesnik's claims are not barred by a settlement agreement

2

Defendants request that the Court take Judicial Notice of one of six documents

3 constituting a settlement agreement.  The purpose is stated in the release itself, to

4 release "all present and prospective claims arising between Claimant and settling

5

6 Defendants as a result of said allegations and claims in the Actions referred to in

7 paragraphs 3(a) through (c) and (d)."  (Dkt # 300-3 at pg 6 of 23).  The Actions are

8 the Alameda Superior Court action and a workers compensation claim.  There is no

9

10 FCA, FLSA, TVPRA, California anti-trafficking or RICO claims in those lawsuits.

11

12 Defendants' then misquote and incompletely quote not just a portion of a

13 settlement agreement, but the very sentence that they rely upon.  Defendants omit

14 that the portion of a sentence they quote, "[A]ll claims, demands, actions, or causes

15

16 of action, known or unknown, including all injuries, damages, or death, arising out of

17 or in any way connected to or resulting from the claims and allegations made, or

18 which could be made in the [Alameda and workers' compensation] Actions" continues

19

20 "allegedly arising out or in any way connected to or resulting from GREGOR

21 LESNIK's alleged injuries and damages **as the result of the accident**."   (Dkt # 300-

22 3 at pg 7 of 23).  The terms of the agreement are stated with reference to this

23

24 accident.

25

The purpose is also stated in all other documents prepared by defendants and

executed by the parties.  Each state that the scope of the agreement is to cover the

May 16, 2015 accident. (See Dresser Decl and Exhibits, Dkt # 130, pg 107 – 187).

The purpose and effect is stated in the 'Joint Request for Dismissal Without

Prejudice of Class Allegations of the Second Amended Complaint':

"On May 26, 2016, the Parties reached a Settlement Agreement and General Release, which disposes of this action, and all the claims and allegations made herein, in their entirety. Under this settlement agreement, in exchange for payments from Defendants, collectively, Plaintiff agreed to dismiss, with prejudice, his individual claims against Defendants in this action as well as his individual claims in a parallel worker's compensation proceeding he has been prosecuting." (Dkt # 130 at pg 152 of 283)

Federal Rules of Evidence Rule 106 states "Additional parts of the recording can be admitted if they are necessary to '(1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding.'" (McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 746-47 (quoting United States v. Flentge, 151 F. App'x 490, 491–92 (unpublished per curiam) (quoting United States v. Sweiss, 814 F.2d 1208, 1211–12 (7th Cir. 1987)). The entirety of the documents constituting the settlement are relevant to the meaning and scope of the agreement. Cal. Civ. Code § 1642.

Defendants by mere argument and incomplete quote cannot change causes of action alleged in the Alameda Superior Court action to be based on other than a single accident. The claims pursued herein on behalf of Gregor Lesnik are not based on that single May 16, 2015 accident, nor on the claims in those actions. Neither the anti-the trafficking nor the RICO claim result from the accident, rather, they are based on actions and agreements long before and after the single occurrence which formed the basis of the Alameda Superior Court action and the workers compensation claim. Nor could they. Gregor Lesnik has a right to further employment. (See Golden v

California Emergency Physicians Medical Group, 896 F.3d 1018 (9th Cir. 2018) ("no employment" provision in settlement agreement is an unenforceable restraint).  The actions by defendants including Vuzem includes false and derogatory statements damaging to reputation, and abuse of process by Vuzem against Gregor Lesnik have occurred between June and October of **2018**.  3AC ¶ 328.

Defendants have the burden of proof on the scope and application of the settlement agreement to bar claims herein.  Marteny v Elementis Chemicals, Inc, Cal.App.5[th] (B283411) (10/5/2018) (citing to Sander/Moses Productions, Inc. v. NBC Studios, Inc. (2006) 142 Cal.App.4th 1086, 1095.)

All agreements and pleadings were prepared entirely by defense counsel without any alteration or amendment by Gregor Lesnik or his counsel.  (4/16/2018 Dresser Decl, ¶ 9, Dkt # 130 at pg 3 of 283).  Any ambiguity must be interpreted against the party preparing the contract.  Cal. Civ Code sec 1654.

Plaintiff Gregor Lesnik, and his counsel, read them and understood them to be exactly as phrased by defendants, being a settlement of the personal injury claims for the fall at the Tesla plant on May 16, 2015 and of a California wages claim. (4/16/2018 Dresser Decl, ¶ 8, 12, Dkt # 130 at pg 3 of 283; 8/9/2018 Declaration of Gregor Lesnik, ¶ 82, Dkt # 236 at pg 12 of 20).  The interpretation and understanding of Mr. Lesnik controls in this instance, where the other parties prepared the agreement. Cal. Civ. Code § 1654.

Settlement agreements of this nature are not to be broadly construed.  *See* Claxton v Waters (2004) 34 Cal. 4th 367 (workers compensation release is not a release of any other claims).  Although a releasor may waive unknown claims despite

the protections of Civil Code section 1542, an "oblique reference to 'all known and unknown' claims" is not enough.   Winet v Price (1992) 4 Cal.App.4th 1159, 1170.

The agreement argued by defendants does not and cannot release other claims.  To be enforceable, if not through the Department of Labor, an FLSA settlement should be court-supervised.  Brooklyn Savings Bank v. O'Neil, 324 US 697 (1945); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982); Beard v DC Housing Authority, 584 F.Supp.2d 139, 142-43 (D.C. 2008); Summers v Howard, 374 F.3d 1188 (D.C. Cir 2004).  The settlement agreement is not a release of FLSA claims.

FCA claims "may be dismissed only if the court and the Attorney General [of the United States] give written consent to the dismissal." 31 U.S.C. 3730(b)(1).  It is significant that the Alameda Superior Court action had not alleged wages claims outside of California.  Cf., Oman v Delta Air Lines, Inc., 889 F.3d 1075 (9th Cir. 2018) (certified question of whether California wages laws applies to out of state employer for partial work in California).

Claims by or through Stjepan Papes were not released.  This includes FLSA claims, California wages claims, anti-trafficking claims, and RICO claims.  Cf., Amey v Cinemark USA, Inc., No. 13-CV-05669-WHO, 2018 U.S. Dist. LEXIS 140156 (Aug. 17, 2018) (Plaintiff who settled individual claims can still pursue class claims in which Plaintiff retained a personal stake in representative actions).)

Where very broad language is adopted, its meaning will be looked at in relation to the context in which it is used.  In this case it is in relation to the claims pled and released, and to alleged injuries and damages as the result of the accident.

The contention that the release bars any claim herein other than the California wages claim by Gregor Lesnik individually should be rejected.

J. This Court has Jurisdiction to decide all alleged claims and causes of action

The FCA is a general jurisdiction claim. (Doc # 219, at 10:12-15 (citing to 31 U.S.C. § 3732(a) (FCA)).  Eisenmann and Telsa are subject to liability for the FCA claim.  Jurisdiction for the RICO claim under 18 U.S.C. § 1965(b) is asserted against Eisenmann Corporation.  Neither Tesla nor Eisenmann contest jurisdiction.

## VI CONCLUSION

The Third Amended Complaint alleges sufficient facts to support a cognizable legal theory for each of the causes of action alleged against remaining Moving Defendants Eisenmann Corporation and Tesla.  The within is an example of why Rule 12(b)(6) motions should be "viewed with disfavor and rarely granted." Broam v. Bogan (9th Cir. 2003) 320 F3d 1023, 1028.

The Third Amended Complaint complies with the general pleading rules of Rule 8 and where applicable the special pleading rules of Rule 9.  Plaintiffs do not by not addressing each individual assertion by of the MTD, as compared with the primary arguments therein, agree that they are meritorious.  Should this Court determine that an element of any cause of action has not been pled with sufficient specificity, Plaintiffs can plead the same, and would in that event request leave to amend to correct any deficiency.

Dated: December 19, 2018

_____
William C. Dresser
Attorney for Plaintiffs and Relators
Gregor Lesnik and Stjepan Papes

United States of America, ex rel. Gregor Lesnik, Stjepan Papes v Eisenmann, et al
U.S. Dist Ct., N.D. Cal. No. 16-cv-01120-LHK

<u>PROOF OF SERVICE</u>
(Certification/Declaration under Penalty of Perjury)

    I am employed in the County of Santa Clara, California.  I am over the age of 18 years and am not a party to the within action.  My business address is:

Law Offices of William C. Dresser
4 North Second Street, Suite 1230
San Jose, CA 95113-1307
(408) 279-7529

    On December 19, 2018 I served the within

Memorandum of Points and Authorities in Opposition to Defendants' Omnibus Motion to Dismiss Plaintiffs' Third Amended Complaint

on the interested parties in this action by electronic case filing in accordance with the Electronic Case Filing provisions of General Order 45 of U.S. District Court, N.D. California via the ecf system by those recipients designated on the Court's website

    I declare under penalty of perjury under the laws of the State of California and of the United States that the above is true and correct, and that this declaration regarding service was executed by me on December 19, 2018 at San Jose, California.


_/s/_____
William C. Dresser


USexrelLesnik_Eisenmann\Pld\OppoMtnDismiss.c19