1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

UNITED STATES OF AMERICA, ex rel.
GREGOR LESNIK; STJEPAN PAPES,

   Plaintiffs,

   v.

EISENMANN SE, et al.,

   Defendants.

Case No. 16-CV-01120-LHK

**ORDER GRANTING DEFENDANT'S
MOTION TO SET ASIDE CLERK'S
ENTRY OF DEFAULT**

Specially Appearing Defendant D2N Tehnologije d.o.o. ("D2N") moves under Federal Rule of Civil Procedure 55(c) to set aside the Clerk's entry of default against D2N. Motion to Set Aside Clerk's Entry of Default, ECF No. 519 ("Mot."). Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS D2N's motion to set aside the entry of default against D2N.

I.      **BACKGROUND**

   A. **Factual Background**

      1. **The Parties**

   D2N is a Slovenian corporation with its principle place of business in Slovenia. Third Amended Complaint, ECF No. 269, at ¶ 33 ("TAC"). Plaintiff Gregor Lesnik is a resident of

Slovenia, and was allegedly hired by ISM Vuzem d.o.o. ("Vuzem"), another Defendant in this case, and brought to the United States to work at the Tesla manufacturing plant in Fremont, California in 2015.  *Id.* at ¶¶ 1, 59.  Plaintiff Stjepan Papes is a resident of Croatia, and was allegedly hired by Vuzem and brought to the United States to work at various locations between 2013 and 2015, including at the Tesla manufacturing plant in Fremont, California.  *Id.* at ¶¶ 2, 60.

### 2.  Alleged Conduct of Defendant

Plaintiffs allege that the Eisenmann Corporation ("Eisenmann"), a former Defendant in this case, formed relations with a number of manufacturing entities, such as Tesla, to perform construction work related to Eisenmann's equipment.  TAC at ¶ 70.  Plaintiffs allege that Eisenmann, to fulfill these agreements, would hire subcontractors who would then provide the laborers necessary to complete the equipment installation.  *Id.* at ¶ 84, 107.  Among those subcontractors were Vuzem and D2N.

Although all of the work described in the TAC occurred in the United States, Vuzem did not use American workers.  Instead, the TAC alleges that Vuzem and the other subcontractor Defendants hired workers internationally.  For example, to help install a paint shop at a Tesla facility in Fremont, California, Vuzem hired Lesnik and Papes.  *Id.* at ¶¶ 1-2, 60, 111, 213.  D2N allegedly helped to supply these international workers.  *Id.* at ¶¶ 33, 84.  Lesnik and Papes were allegedly brought to the United States on B-1 visas that are generally reserved for skilled work, even though D2N and other Defendants allegedly knew the workers would actually be performing unskilled construction work.  *Id.* at ¶¶ 58–91, 211.  D2N and other Defendants allegedly submitted letters to the United States Consulate containing false statements to obtain B-1 vias on Lesnik and Papes' behalf.  *Id.* at ¶¶ 206, 211, 213, 216.

### B.  Procedural Background

Plaintiffs filed the complaint initiating this suit on March 7, 2016.  ECF No. 1.  On July 15, 2016, Plaintiffs filed the First Amended Complaint.  ECF No. 20.  On April 25, 2017, the United States filed a notice that it would not intervene in the instant case.  ECF No. 25.  On April 25, 2017, the Court unsealed the complaint.  ECF No. 26.

Case No. 16-CV-01120-LHK
ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT.

United States District Court
Northern District of California

On August 8, 2017, the Court granted Plaintiffs' motion to file a Second Amended Complaint, and directed the United States to make a "prompt decision" regarding intervention. ECF No. 31.  On October 5, 2017, the United States filed another notice that it would not intervene in the instant case.  ECF No. 34.  On November 11, 2017, Plaintiffs filed the Second Amended Complaint.  ECF No. 37.

On July 12, 2018, various moving Defendants—Eisenmann, Tesla, Mercedes-Benz, Deere, REHAU, LaX, VW, Discatal, and BMW—filed a motion to dismiss the Second Amended Complaint.  ECF No 219.  On October 1, 2018, the Court granted in part and denied in part the motion to dismiss the Second Amended Complaint.  ECF No. 255.

On October 31, 2018, Plaintiffs filed a 108-page Third Amended Complaint.  ECF No. 269.  The Third Amended Complaint alleges 13 causes of action (some of which are duplicative). Relevant to the instant motion are Plaintiffs' claims against D2N pursuant to the False Claims Act (Count 1).  *Id.* at ¶ 202.

On March 28, 2019, Plaintiffs filed a Proof of Service for the Third Amended Complaint as to D2N.  ECF No. 366.  On April 17, 2019, Plaintiffs filed a motion for entry of default on the Third Amended Complaint against D2N.  ECF No. 387.  On January 16, 2020, the Clerk of the Court entered default against D2N.  On February 19, 2020, the Court ordered Plaintiffs to file motions for default judgment by February 28, 2020.  ECF No. 457.  On February 28, 2020, Plaintiffs filed a motion for default judgment on their False Claims Act cause of action against multiple Defendants, including D2N.  ECF No. 461.

On June 26, 2020, the Court denied without prejudice Plaintiffs' motions for default judgment.  ECF No. 498.  The Court explained that there were numerous deficiencies in Plaintiffs' motions, including (1) that Plaintiffs' motions failed to address the Court's subject matter and personal jurisdiction, and (2) that three of Plaintiffs' four default judgment motions failed to brief the *Eitel* factors, which govern entries of default judgment.  *Id*.

On August 24, 2020, Plaintiffs filed an amended motion for default judgment and an entry of final judgment on Plaintiffs' False Claims Act claims against several Defendants, including

Case No. 16-CV-01120-LHK
ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT.

1    D2N.  ECF No. 505.

2         On September 22, 2020, D2N specially appeared to file the instant motion to set aside the

3    entry of default.  ECF No. 519 ("Mot.").  On October 6, 2020, Plaintiffs filed an opposition.  ECF

4    No. 521 ("Opp.").  On October 13, 2020, D2N filed its reply.  ECF No. 526 ("Reply").

5    **II.     LEGAL STANDARD**

6         This Court "may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  To

7    determine whether good cause exists to set aside an entry of default, the Court considers three

8    factors: (1) whether defendant's culpable conduct led to the default; (2) whether the defendant has

9    a meritorious defense; or (3) whether setting aside the entry of default would prejudice the

10   plaintiff.  *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085,

11   1091 (9th Cir. 2010) ("*Mesle*").  Importantly, "judgment by default is a drastic step appropriate

12   only in extreme circumstances; a case should, whenever possible, be decided on the merits."  *Falk*

13   *v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).  Furthermore, if a party was improperly served, the

14   entry of default against it must be set aside.  *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851

15   (9th Cir. 1992) (explaining that a "person is not bound by a judgment in litigation to which he or

16   she has not been made a party by service of process.").

17   **III.    DISCUSSION**

18        The Court begins by addressing D2N's argument that it was improperly served by

19   Plaintiffs.  The Court then turns to whether good cause exists to set aside the entry of default.

20        **A.  Service of Process**

21        D2N first argues that the Third Amended Complaint was not properly served on D2N.  *Id.*

22   at 4.  D2N argues that Plaintiffs' attempted forms of service in Slovenia were not proper under

23   federal law and the Hague Service Convention, and therefore that the entry of default should be set

24   aside.  *Id.*  Plaintiffs argue that service was proper via both personal service and by post.  Opp. at

25   3.

26        Federal Rule of Civil Procedure 4(h) governs the rules of service when a corporation is

27   served outside of the United States.  It states that if a foreign corporation is served "at a place not

28

4

*United States District Court*
*Northern District of California*

within any judicial district of the United States," it must be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)," unless a waiver of service has been filed.  Fed. R. Civ. P. 4(h)(2).  No waiver of service has been filed by D2N.

Under Rule 4(f), a party may serve a corporation abroad using one of three methods:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . unless prohibited by the foreign country's law, by . . . using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)-(3).  Rule 4(f)(1) implements the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters.  20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Service Convention").  The Hague Service Convention "specifies certain approved methods of service and preempts inconsistent methods of service wherever it applies." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (internal citations omitted).  The Hague Service Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad," if the country of destination is a signatory member to the Hague Service Convention. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988).  Slovenia is a signatory to the Hague Service Convention, and therefore the Hague Service Convention governs service on D2N in Slovenia because "compliance with the [Hague Service Convention] is mandatory in all cases to which it applies." *Id.* at 705; Mot. at 4.

The principle means of service under the Hague Service Convention is through a signatory country's "Central Authority," which the Convention requires each country to establish for the purpose of effectuating service in its country. *See* Hague Service Convention, art. 2, 20 U.S.T. at

Case No. 16-CV-01120-LHK
ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT.

362; *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (explaining Central Authority

mechanism in the Hague Service Convention).  However, submitting a document to the Central

Authority is not the only method of service available under the Hague Service Convention.  *See*

*Water Splash*, 137 S. Ct. at 1508 (explaining various methods of service).  Article 10 of the Hague

Service Convention states that "[p]rovided the State of destination does not object, the present

Convention shall not interfere with:

> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Service Convention, 20 U.S.T. at 363; *Water Splash*, 137 S. Ct. at 1508 (explaining that the

Hague Service Convention allows for other forms of service where a country does not object).

   Plaintiffs argue that they properly served D2N via methods 10(a) (postal service) and 10(c)

(personal service).  Opp. at 2.  According to Plaintiffs, Plaintiffs' process server attempted to serve

D2N at its corporate headquarters on February 26, 2019, but the process server did not find

anyone present and the process server was told by someone in the neighboring office that she

rarely saw anyone in the D2N office.  ECF No. 366, at 8 ("Proof of Service").  The process server

then allegedly searched Slovenia's public legal records database and determined that Tanja

Dukaric was a legal representative of D2N.  *Id*; Divjak Decl. at 1–2, ECF No. 521-2.  The process

server visited Tanja Dukaric at the school where she is a teacher, and attempted to serve the Third

Amended Complaint and other documents on her.  *Id.*  Tanja Dukaric told the process server that

she was no longer employed by D2N, and so she did not want to accept the documents.  *Id.* at 9.

However, the process server believed Tanja Divjak was still the legal representative of D2N, and

so the process server left the documents on the table in front of Tanja Dukaric.  *Id.*  Plaintiffs also

Case No. 16-CV-01120-LHK
ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT.

1    allege that they served D2N with the Third Amended Complaint by post on January 3, 2019, in

2    both English and Slovenian.  ECF No. 521-1 at 2.  Plaintiffs provided a US Customs Declaration

3    dated January 7, 2019, documenting the mailing to D2N.  ECF No. 521-1 (Ex. 16).

4         As the United States Supreme Court explained in *Water Splash*, the Hague Service

5    Convention does not by default prohibit service by post or personal service on corporations in

6    cases originating in foreign jurisdictions.  137 S. Ct. at 1508 (acknowledging that other forms of

7    service are not necessarily prohibited).  However, signatory countries are entitled to object to

8    specific methods of service otherwise allowed under the Hague Service Convention.  *Id.*  Article

9    10 of the Hague Service Convention therefore allows for alternative methods of service beyond

10   the Central Authority, including postal service and personal service, "unless the receiving state

11   objects."  *Id.* at 1508; *see also* Hague Service Convention, 20 U.S.T. at 363 (explaining that the

12   Hague Service Convention does not interfere with other forms of service, "[p]rovided the State of

13   destination does not object.").

14        As D2N points out, Slovenia has objected to several methods of service in the Hague

15   Service Convention, including service by post and personal service for cases originating in foreign

16   jurisdictions.  Reply at 2; Republic of Slovenia's Declarations and Reservations to the Hague

17   Service Convention, December 18, 2012, available at

18   https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=420&disp=resdn

19   (last visited January 30, 2021); *see also Water Splash*, 137 S. Ct. at 1514 (acknowledging that

20   numerous signatories to the Hague Service Convention have objected to alternative methods of

21   service under Article 10).  Relevant to the instant case, Slovenia has stated that service by postal

22   channels under Article 10(a) "is only permitted if judicial documents are sent to the addressee by

23   registered letter with acknowledgment of receipt and the documents are written in, or accompanied

24   by, a translation into the Slovene language."  *Id.*  Slovenia also objected to "Article 10, items b)

25   and c)."  Article 10(c) of the Hague Service Convention allows for personal service of process.

26        As D2N correctly argues, Plaintiffs have not provided evidence that the Third Amended

27   Complaint was sent to D2N "by registered letter with acknowledgment of receipt."  Reply at 3.

28

Case No. 16-CV-01120-LHK
ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT.

United States District Court
Northern District of California

Rather, Plaintiffs allege only that service was effected on D2N by post.  Opp. at 3; Divjak Decl. at 3, ECF No. 521-2.  That is insufficient under Slovenia's reservations to the Hague Service Convention, and Plaintiffs have not provided evidence that service was properly carried out on D2N by post.  Furthermore, although Plaintiffs allege that they served Tanja Dukaric, and that Tanja Dukaric remains a legal representative of D2N, Slovenia's objection to Article 10(c) prohibits personal service of process in actions governed by the Hague Service Convention.  As such, the Court finds that Plaintiffs have not provided evidence that D2N was properly served under Federal Rule of Civil Procedure 4(d) and the Hague Service Convention.

If a party was improperly served, the entry of default against it must be set aside.  *Mason*, 960 F.2d 849 at 851 (noting that a "person is not bound by a judgment in litigation to which he or she has not been made a party by service of process."); *see also Bonner v. Arastehjoo*, 2011 WL 5190051, at *1 (N.D. Cal Oct. 31, 2011) (setting aside entry of default because service of process was not proper).  As such, because Plaintiffs have not submitted evidence that D2N was properly served under the Hague Service Convention, that alone is a sufficient ground to set aside the entry of default.  However, the Court also finds that there is good cause under Rule 55(c) to set aside the entry of default.

## B. Good Cause Exists to Set Aside the Entry of Default

Even if Plaintiffs' service of the complaint were effective, there is good cause under Rule 55(c) to set aside the entry of default.  In order to determine whether there is good cause to set aside an entry of default under Rule 55(c), the Court considers three factors: (1) whether the defendant's culpable conduct led to the default judgment; (2) whether the defendant has a meritorious defense; and (3) whether setting aside the default would prejudice the plaintiff.  *Mesle*, 615 F.3d at 1091.  Failure to meet any one of these three factors is sufficient to deny the motion to set aside the entry of default.  *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).  However, judgment by default is disfavored.  *Mesle*, 615 F.3d at 1091.  The Court finds that D2N has shown good cause to set aside the entry of default under this standard.

First, a defendant's conduct is culpable if the defendant had notice "of a filing, discovery

Case No. 16-CV-01120-LHK
ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT.

United States District Court
Northern District of California

request, or other court order and 'intentionally fail[ed]' to respond. *Id.* at 1092 (quoting *TCI Group*, 244 F.3d at 697). Plaintiffs assert that D2N had notice of the complaint because Plaintiffs served the complaint on an ex-employee of D2N and by post. Opp. at 9. However, D2N argues that it did not receive the service of process, and only recently became aware of this litigation. Mot. at 5. Having already explained the deficiencies in Plaintiffs' service of process, the Court agrees with D2N. D2N's initial failure to respond to the complaint does not appear to have been willful, deliberate, or in bad faith. Moreover, D2N has now specially appeared to contest Plaintiffs' claims against it. The Court finds that this factor weighs in favor of setting aside the Clerk's entry of default against D2N.

Second, D2N has offered a meritorious defense to Plaintiffs' allegations in the Third Amended Complaint. A defendant that seeks to vacate an entry of default must present facts that, if true, would constitute a defense. *Mesle*, 615 F.3d at 1094. This burden is not "extraordinarily heavy." *Id.* "The question whether the factual allegation is true is not to be determined by the court when it decides the motion to set aside the default." *Id.* D2N alleges that any D2N employees that entered the United States did so with the correct visas, and that D2N did not make any false statements to the United States government. Mot. at 6. D2N's allegations, if true, would constitute a meritorious defense to Plaintiffs' cause of action asserted against D2N in Plaintiffs' Third Amended Complaint. Accordingly, this factor supports setting aside the entry of default.

Finally, the Court considers whether setting aside the entry of default would be prejudicial to Plaintiffs. "To be prejudicial, the setting aside of a [default] must result in greater harm than simply delaying resolution of the case" or "being forced to litigate on the merits." *TCI Group*, 244 F.3d at 701. Instead, "[t]he standard is whether [the plaintiff's] ability to pursue his claim will be hindered." *Falk*, 739 F.2d at 463. D2N argues that setting aside the entry of default will not prejudice Plaintiffs. Mot. at 6. Plaintiffs argue that they will be prejudiced because D2N's lack of appearance has prevented a timely judgment. Opp. at 10. A delay in the resolution of the case is not sufficient prejudice to deny a motion to set aside an entry of default. *TCI Group*, 244 F.3d at 701. Plaintiffs allege no further prejudice that would result from the granting of D2N's motion.

9

The Court finds that this factor therefore weighs in favor of setting aside the entry of default.

Because all three factors weigh in favor of setting aside the entry of default, the Court finds that D2N has established good cause for setting aside the entry of default against D2N.

## IV.    CONCLUSION

For the foregoing reasons, D2N's motion to set aside the entry of default is GRANTED. The Court also DENIES as moot Plaintiffs' pending amended motion for default judgment as to D2N.  *See* Amended Motion for Default Judgment as to Cause of Action 1, FCA, ECF No. 505; Fed. R. Civ. P. 55(b) (default judgment is only appropriate for defendants who have "defaulted").

**IT IS SO ORDERED.**

Dated: February 10, 2021

_Lucy  H.  Koh_
LUCY H. KOH
United States District Judge

Case No. 16-CV-01120-LHK
ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT.