**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. GREGOR LESNIK; UNITED STATES OF AMERICA EX REL. STJEPAN PAPES, | No. 23-16114 <br><br> D.C. No. 5:16-cv-01120-BLF |
| *Plaintiffs-Appellants*, <br><br> v. <br><br> ISM VUZEM D.O.O.; ISM VUZEM USA, INC.; VUZEM USA, INC.; ROBERT VUZEM; IVAN VUZEM; HRID-MONT D.O.O.; GREGUREC, LTD., | <br> OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted June 12, 2024
San Francisco, California

Filed August 12, 2024

Before: Mary M. Schroeder, Ronald M. Gould, and Ryan D. Nelson, Circuit Judges.

Opinion by Judge Schroeder

**SUMMARY**[*]

### False Claims Act / Trafficking Victims Prevention Reauthorization Act

The panel affirmed the district court's dismissal of an action brought under the False Claims Act and the Trafficking Victims Prevention Reauthorization Act by noncitizen laborers who were brought into the United States to work for construction subcontractor defendants.

Plaintiffs alleged that defendants violated the False Claims Act, which creates liability for submission of a false claim to the government for payment, by fraudulently applying for B-1 employment visas that cost less than the petition-based visas for which defendants should have applied. Plaintiffs alleged that defendants made reverse false claims, defined as knowingly and improperly avoiding or decreasing an obligation to pay the government. An "obligation" is defined as an "established duty" to pay. The panel held that defendants did not have an "established duty" to pay the government because even if they should have applied for the more expensive visas, they did not do so, and they therefore had no legal obligation to pay for such visas. Defendants faced only potential liability contingent upon a finding that they violated applicable regulations in applying for the wrong visas.

One plaintiff alleged that defendants violated the forced labor provision of the Trafficking Victims Prevention Reauthorization Act by threatening prosecution and suing

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

him in order to coerce others to continue working. The panel held that the plaintiff did not state a claim because defendants' actions did not coerce him to provide any labor.

## COUNSEL

William C. Dresser (argued), Law Offices of William C. Dresser, Los Gatos, CA, for Plaintiffs-Appellants.

## OPINION

SCHROEDER, Circuit Judge:

Plaintiffs-appellants are noncitizen laborers who were brought into the United States to work for construction subcontractor defendants.  Plaintiffs' appeal principally seeks to resuscitate a qui tam cause of action for violations of the False Claims Act (FCA).  Plaintiffs allege that defendants violated the FCA by fraudulently applying for employment visas for plaintiffs that cost less than the ones for which defendants should have applied.  The FCA creates liability for submission of a false claim to the government for payment.  31 U.S.C. § 3729(a)(1)(A).  The violations alleged here are known as reverse false claims.  The FCA defines a reverse false claim as "knowingly and improperly avoid[ing] or decreas[ing] an obligation . . . to pay . . . the Government." 31 U.S.C. § 3729(a)(1)(G).  An "obligation" is in turn defined as an "established duty" to pay. 31 U.S.C. § 3729(b)(3).

Defendants made no appearance.  The district court nevertheless dismissed plaintiffs' reverse false claims.  It

reasoned that even if the defendants should have applied for the more expensive visas, they did not do so, and therefore had no legal obligation to pay for such visas. Defendants faced only potential liability contingent upon a finding that they violated applicable regulations in applying for the wrong visas. The court concluded that is not an "established duty" to pay the government, as required by the FCA. 31 U.S.C. § 3729(b)(3).

The district court also dismissed plaintiff Gregor Lesnik's forced labor claim asserted under 18 U.S.C. § 1589(a) of the Trafficking Victims Prevention Reauthorization Act (TVPRA). Lesnik had alleged that defendants threatened prosecution and sued him in order to coerce others to work. As Lesnik admitted, however, defendants' actions did not coerce Lesnik to provide any labor.

We affirm.

### BACKGROUND

Plaintiffs are Gregor Lesnik, a resident of Slovenia, and Stjepan Papes, a resident of Croatia. They were allegedly recruited and hired to perform unskilled work on construction projects for entities in the United States, including Tesla. The lead contractor on the projects was Eisenmann Corporation. It subcontracted with defendants to provide laborers needed to complete the construction work. The defendants include related entities operated by Robert and Ivan Vuzem, residents of Slovenia.[1]

---

[1] The seven defendants-appellees ("defendants") are Robert Vuzem; Ivan Vuzem; ISM Vuzem, d.o.o.; ISM Vuzem USA, Inc.; Vuzem USA, Inc.; HRID-Mont, d.o.o.; and Gregurec, Ltd. The Third Amended

The defendants allegedly helped plaintiffs obtain B-1 visas, to enter the United States, by submitting supporting letters to the United States Consulate.  The B-1 visas are typically reserved for workers performing skilled work.  Defendants allegedly knew that plaintiffs would not be performing such work but still sought the B-1 visas, making false statements in their letters about the nature of the work plaintiffs would perform.  Defendants allegedly did so to avoid the higher application fees for the type of visas known as petition-based visas, intended for unskilled workers, including H2-B visas for temporary, non-agricultural workers.

After plaintiffs arrived in the United States, they worked for defendants at a Tesla plant in Fremont, California.  Papes worked for defendants between 2013 and 2015.  Lesnik was terminated in 2017, and defendants then allegedly sued him and threatened to have him "criminally prosecuted" as an example, in order to coerce the remaining workers to continue working.

Plaintiffs filed this action in 2016.  In their third amended complaint, plaintiffs alleged two types of claims against the defendants relevant to this appeal.  First, plaintiffs claimed that defendants violated the FCA by fraudulently applying for B-1 visas instead of petition-based visas, in order to reduce their visa-payment obligations.   Second, Lesnik claimed that a subset of defendants[2] violated the TVPRA, after he was terminated, by filing suit and threatening

---

Complaint named these defendants alongside numerous others that are not before us on appeal, including Tesla and Eisenmann.

[2] Lesnik brought his TVPRA claim against only five of the defendants-appellees: Robert Vuzem; Ivan Vuzem; ISM Vuzem, d.o.o.; ISM Vuzem USA, Inc.; and Vuzem USA, Inc.

criminal prosecution to coerce defendants' remaining workers to continue working.

Defendants did not appear, and plaintiffs filed motions for default judgment. The district court denied the motions and dismissed both the FCA claims and Lesnik's TVPRA claim. As to the FCA claims, the court held that defendants were never under any obligation to pay application fees for petition-based visas for which they did not apply, so defendants did not reduce or avoid any "obligation" to pay the government. The court dismissed Lesnik's TVPRA claim because he did not allege that defendants' actions coerced him to perform any labor. Plaintiffs appeal both determinations.

## ANALYSIS

### A. Reverse False Claims

We begin with the key statutory provisions of the FCA and its relevant definitions. The complaint alleges that defendants should have applied for visas that cost more than the ones for which they actually applied. While an ordinary false claim involves seeking money from the government to which the claimant is not entitled, we have the reverse situation here: defendants allegedly paid the government less than they should have. The FCA expressly imposes liability for reverse false claims where a person "knowingly makes [or] uses . . . a false record or statement material to an obligation to pay . . . the Government, or . . . knowingly and improperly avoids or decreases [such] an obligation." 31 U.S.C. § 3729(a)(1)(G).

The key issue thus becomes whether the defendants had an obligation to pay more than they did. The FCA provides a definition of "obligation," and that definition is critical to

our analysis. It defines an "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, [or] from statute or regulation." 31 U.S.C. § 3729(b)(3).

Our Court has not yet interpreted this definition since its inclusion in 2009, so the district court looked to our leading pre-2009 authority for determining whether an obligation existed under the FCA, *United States v. Bourseau*, 531 F.3d 1159, 1169–70 (9th Cir. 2008). There, we embraced the Sixth Circuit's determination in *American Textile* that an "obligation" exists where a defendant owes the government "a specific, legal obligation at the time that the alleged false record or statement was made." *Id.* (quoting *Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*, 190 F.3d 729, 735 (6th Cir. 1999)). The Sixth Circuit explained that "[t]he obligation cannot be merely a potential liability[;] . . . a defendant must have had a present duty to pay" the government. *Am. Textile*, 190 F.3d at 735 (quoting *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997)). Congress confirmed this interpretation of the statute when it added a definition of "obligation" to the FCA in 2009. The definition requires that a legal obligation to pay the government be "established" at the time the false statement or record is made. 31 U.S.C. § 3729(b)(3).

In this case, because the statute requires an established legal obligation, it is not sufficient that defendants applied for the wrong visas or may face liability for violating applicable regulations. They had no "established duty" to pay for visas for which they did not apply. 31 U.S.C. § 3729(b)(3). Indeed, the only specific, legal obligation defendants had at the time they applied for the B-2 visas was to pay the application fees for those visas. As then-District

Judge Koh explained in her order dismissing defendants' claims against Tesla and Eisenmann:

> [T]here are no allegations that [defendants] ever submitted a visa application for the petition-based visas. To the contrary, Plaintiffs' allegations that [defendants] *did not* submit a visa application for the petition-based visas form the basis for Plaintiffs' reverse FCA claim. . . . Thus, there was no *obligation* to pay the government for a petition-based visa because no visa application for a petition-based visa was ever actually submitted. . . . As the Ninth Circuit held in *Bourseau*, "[t]he obligation cannot be merely a *potential* liability." 531 F.3d at 1169 (emphasis added). However, that is exactly what Plaintiffs are predicating their reverse FCA claim on: a *potential* liability incurred only if [defendants] had applied for the petition-based visas.

*Lesnik v. Eisenmann SE*, 374 F.Supp.3d 923, 940 (N.D. Cal. 2019).[3]

Two other district courts in other circuits have expressly agreed with Judge Koh's opinion. *See United States ex rel. Kini v. Tata Consultancy Servs., Ltd.*, No. 17-CV-2526 (TSC), 2024 WL 474260, at *4–5 (D.D.C. Feb. 7, 2024) (citing *Lesnik*, 374 F. Supp. 3d at 940) (rejecting a claim that defendant decreased its obligation to pay application fees for

---

[3] In a separate order, Judge Koh used the same reasoning to dismiss plaintiffs' reverse false claims against defendants.

petition-based, H-1B visas by applying for cheaper visas, because defendant did not have an obligation to pay for visas for which they did not apply); *United States ex rel. Billington v. HCL Techs. Ltd.*, No. 3:19CV01185(SALM), 2022 WL 2981592, at *8, *10 (D. Conn. July 28, 2022) (citing *Lesnik*, 374 F. Supp. 3d at 940) (rejecting a similar claim because there was "no obligation for defendants to pay the government for a more expensive H1-B [sic] visa because no such application was ever submitted").

Plaintiffs rely on *Franchitti v. Cognizant Technology Solutions Corp.*, the sole district court decision holding that in similar factual circumstances, a defendant had an "obligation" to pay application fees for visas for which it did not apply. *See* 555 F. Supp. 3d 63, 71 (D.N.J. 2021). That court said that a "plain language reading of the statute" was that the defendant "had an obligation to pay the appropriate fee for the privileges associated" with the more expensive visas. *Id*. The statute contains no such language. Moreover, the court never identified any legal authority that would establish such an obligation. *Id.* The court suggested that the obligation arose from an "implied contractual" or "fee-based" relationship between defendant and the government. *Id.* (quoting 31 U.S.C. § 3729(b)(3)). But it never explained why such a relationship would obligate the defendant to pay a fee for a visa application it did not submit. Plaintiffs here make the same mistake: they never identify any legal authority establishing that defendants had such an obligation.

Plaintiffs criticize the district court for quoting part of a definition of "obligation" from *American Textile*, 190 F.3d at 735, that plaintiffs contend was abrogated when Congress subsequently defined the term in the FCA. The language the district court quoted was: "an obligation . . . must be for a

fixed sum that is immediately due." *Am. Textile*, 190 F.3d at 735 (quoting *Q Int'l Courier, Inc.*, 131 F.3d at 774). Plaintiffs correctly point out that Congress's 2009 definition clarified that an obligation need not be "fixed." *See* 31 U.S.C. § 3729(b)(3) (defining an obligation as "an established duty, whether or not fixed"). The outdated reference to a "fixed sum," however, is not material to the issue decided. The word "fixed" referred to the amount of an obligation, not whether any obligation existed. *See United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1037 (5th Cir. 2016) (explaining that "'fixed' refers to the *amount* of the duty [to pay]," whereas "'established' refers to whether there is *any* [such] duty" (quoting 31 U.S.C. § 3729(b)(3))). The district court's decision did not depend upon whether the amount of an obligation was fixed; the court held defendants had no established obligation to pay for the petition-based visas. That ruling was and remains correct.

## B. TVPRA Claim

The TVPRA renewed previous legislation aiming to "combat trafficking in persons, a contemporary manifestation of slavery" that "includes forced labor." 22 U.S.C. § 7101(a), (b)(3). To that end, the TVPRA includes a section prohibiting forced labor, including "by means of the abuse or threatened abuse of law or legal process." 18 U.S.C. § 1589(a)(3). The statute provides a civil remedy to victims. 18 U.S.C. § 1595(a).

Plaintiffs claim that defendants violated the statute by allegedly suing and threatening criminal prosecution of Lesnik for the purpose of coercing defendants' remaining workers to continue working. The TVPRA defines "abuse or threatened abuse of law or legal process" as improperly

using or threatening the same "to exert pressure on another person to cause *that* person to take some action." 18 U.S.C. § 1589(c)(1) (emphasis added). A plain reading of this section is that the person facing abuse or threats must be the same person who is pressured to provide their labor. While defendants allegedly threatened and sued Lesnik after he was terminated, plaintiffs admitted that these actions were not taken to coerce him to provide any labor or services. The district court therefore correctly held that Lesnik failed to state a TVPRA claim.

## CONCLUSION

Accordingly, we affirm the district court's dismissal of plaintiffs' FCA claims and Lesnik's TVPRA claim.

**AFFIRMED.**